## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Ryan DeKeyser, Thomas Cooper, Harley Granius, and Carlo Lantz, on behalf of themselves and other similarly situated,<br><br>      Plaintiffs and Proposed Collective and<br>      Class Action Representatives,<br><br>-v-<br><br>ThyssenKrupp Waupaca, Inc., d/b/a Waupaca Foundry, Inc.<br><br>      Defendant. | Civil No.  Civil No.  08-C-488 |

## PLAINTIFFS' MEMORANDUM SUPPORTING THEIR OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Standard of Consideration ...................................................................................... 3

Argument ................................................................................................................ 4

I.    Waupaca's Motion Should Be Denied Because It Is Based on a Botched Understanding of Preemption. ......................................................................................................... 4

    A.    Neither the text of FLSA nor its legislative history supports implied preemption of Rule 23 or any state law claim. ........................................................................ 5

        1.    FLSA's language and structure demonstrate congressional intent to permit complementary and supplementary regulation. ......................................... 7

        2.    The 1947 Portal-to-Portal Act amendments do not demonstrate an intent to preempt state law class actions. .............................................................. 8

II.    Waupaca's Motion Should Be Denied Because the Majority of Federal Courts, Including those in Wisconsin, Have Found FLSA and Rule 23 Actions to Be Compatible............. 13

III.    Waupaca's Motion Should Be Denied Because FLSA Does Not Substantively Preempt Any Wisconsin State Law ....................................................................................... 16

    A.    The Wisconsin statutory claims are not preempted. ............................................ 16

    B.    The Wisconsin, Tennessee, and Indiana breach of contract claim is not preempted. ...................................................................................................... 19

IV.    Waupaca's Motion Should Be Denied Because It Cannot Identify Legitimate Insufficiencies in the Complaint. ........................................................................... 21

    A.    Plaintiffs' claim for overtime and recordkeeping violations complies with Rule 8. ...................................................................................................... 21

    B.    Plaintiffs' breach of contract claim complies with Rule 8. ................................. 23

    C.    Plaintiffs' claim for willful violations of the FLSA complies with Rule 8. .......... 24

Conclusion ............................................................................................................ 27

Case 1:08-cv-00488-WCG   Filed 08/11/08   Page 2 of 35   Document 29

# Cases

*Acosta Colon v. Wyeth Pharmaceuticals Co.*, 363 F. Supp. 2d 24 (D.P.R. 2005) ...................... 27

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1945) ............................................ 10, 11, 13

*Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) ................................................... 22, 23

*Arrington v. Nat'l Broadcasting Co.*, 531 F.Supp. 498 (D.D.C. Cir. 1982) ................... 10, 12, 14

*Baas v. Dollar Tree Stores, Inc.*, No. 07-03108, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007) .. 4

*Bank v. Illinois*, 60 F.3d 1249 (7th Cir. 1995) ................................................................. 17, 23, 27

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................................... 8

*Bates v. Dow Agrosciences, LLC, 544 U.S. 431 (2005)* ............................................................... 6

*Bell Atlantic Corp. v. Twombly* ____U.S.____, 127 S.Ct. 1955 (2007) ........................... 3, 28, 29

*Bouaphakeo v. Tyson Foods, Inc.*, ___F. Supp. 2d___, No. 07-4009, 2008 WL 2645759 (N.D. Iowa July 3, 2008) .................................................................................................. 18, 20, 21

*Brothers v. Portage Nat'l Bank*, No. 06-94, 2007 WL 965835 (W.D. Pa. March 29, 2007) ........ 23

*Bull v. United States*, 68 Fed. Cl. 212 (Fed. Cl. 2005) ............................................................... 28

*Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240 (11th Cir. 2003) ............... 15

*Casey v. Rainbow Group, Ltd.*, No. 95-50710, 109 F.3d 765, 1997 WL 114915 (5th Cir. Feb. 19, 1997) ........................................................................................................................... 22

*Cippollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ......................................................... 4, 6

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) ............................................................... 5

*Damassia v. Duane Reade Inc.*, ___F.R.D.___, No. 04-8819, 2008 WL 2201469 (S.D.N.Y. May 27, 2008) ........................................................................................................................ 21

*Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362 (N.D. Ill. 1995) ...................................... 29

*DeAscencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) ................................................. 15

*Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007) ......................... 10, 20, 21

*English v. General Elec. Co.*, 496 U.S. 72, 87 (1990) ................................................................ 21

*Erickson v. Pardus*, ___U.S.___, 127 S.Ct. 2197 (2007) ..................................................... 3, 29

*Flavel v. Svedela Indus., Inc.*, 875 F. Supp. 550 (E.D. Wis. 1994) ................................................ 14

*Frank Bros., Inc. v. Wisc. Dept. of Transp.*, 409 F.3d 880 (7th Cir. 2005) ........................... passim

*German v. Wisconsin Dept. of Transporation,* 612 N.W.2d 50 (2000).................................. 24, 25

*Guzman v. VLM, Inc.*, No. 07-1126, 2008 WL 597186 (E.D.N.Y. March 2, 2008).................... 19

*Henry v. Trammell Crow, SE, Inc.*, 34 F. Supp. 2d 629 (W.D. Tenn 1998)................................ 26

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ..................................................... 28

*IBP v. Alvarez*, 546 U.S. 1 (2005).............................................................................. 2, 10, 11

*In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ..................................................................................................... 9, 15, 18

*In re Walker,* 51 F.3d 562 (5th Cir. 1995) ................................................................................ 17

*Ingersoll-Rand Co. v. McClendon* 498 U.S. 133 (1991) .................................................... 22, 23

*Irwin v. Wisconsin, 998 F.2d 1016, No. 92-2509, 1993 WL 134051 (7th Cir. Apr. 28, 1993)*..... 16

*Kasten v. Saint-Gobain Performance Plastics Corp.*, __ F. Supp. 2d __, No. 07-449, 2008 WL 2252076 (W.D. Wis. June 2, 2008) .............................................................. 8, 17, 27

*King v. General Electric Co.*, 960 F.2d 617 (7th Cir. 1992) ....................................................... 16

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir. 1977)...................................................... 15

*Ladegaard v. HardRock Concrete Cutters, Inc.*, No. 00-5755, 2004 WL 1882449 (N.D. Ill. 2004) ............................................................................................................................. 27

*Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797 (7th Cir. 2008) ................... 29

*Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006) .................................. 12, 17

*Malone v. White Motor Corp.*, 435 U.S. 497 (1978) .................................................................. 6

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ............................................................................. 5

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).......................................................... 28

*Morrison v. Quality Transp. Servs., Inc.*, 474 F. Supp. 2d 1303 (S.D. Fla. 2007) ...................... 27

*Morton v. Mancari*, 417 U.S. 535 (1974) ................................................................................... 5

*Osby v. Citigroup, Inc.*, No. 07-06085, 2008 WL 2074102 (W.D. Mo. May 14, 2008) ............. 18

iv

*Overnite Transp. Co. v. Tianti*, 95 F.2d 220 (2d Cir. 1991) ...................................................... 18

*Powell v. United States Cartridge Co.*, 339 U.S. 497 (1950) .......................................................... 9

*Price v. Wisc. Servs. Corp.*, 55 F. Supp. 2d 952 (E.D. Wis. 1999) ............................................ 26

*Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004) .................................................................. 5

*Remmers v. Remington Hotel Corp.*, 56 F. Supp. 2d 1046 (S.D. Ind. 1999) ............................... 26

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) .................................................................. 6

*Rodriguez v. Pacificare of Tex.*, 980 F.2d 1013 (5th Cir. 1993) .................................................. 17

*Rodriguez v. United States*, 480 U.S. 522 (1987) ......................................................................... 5

*Salazar v. Agriprocessors, Inc.*, 527 F. Supp. 2d 873 (N.D. Iowa 2008) .................................... 18

*See Hoffman LaRoche v. Sperling*, 493 U.S. 165 (1989)......................................................... 13, 15

*Sjoblom v. Charter Communications, LLC*, No. 07-0451, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007) .................................................................................................................. 8, 14, 17, 18

*Spoerle v. Kraft Global Foods, Inc.*, No. 07-300, 2008 WL 2002221 (W.D. Wis. May 6, 2008) 8, 17, 24, 25

*Steiner v. Mitchell,* 350 U.S. 247 (1956) ................................................................................. 2, 10

*The Beanstalk Group, Inc., v. AM General Corp.*, 283 F.3d 856 (7th Cir. 2002) ......................... 3

*Thorpe v. Abbot Labs., Inc.*, 534 F. Supp. 2d 1120 (N.D. Cal. 2008) ......................................... 18

*Tiffy v. Speck Ent., Ltd.*, 418 F. Supp. 2d 1120 (S.D. Iowa 2006) .............................................. 28

*United Food & Commercial Workers Union v. Albertson's, Inc.*, 207 F.3d 1193 (10th Cir. 2000) ............................................................................................................................................. 16

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) .................................................................. 17

*Westerfield v. Quizno's Franchise Co.*, 527 F. Supp. 2d 840 (E.D. Wis.2007) ....................... 3, 29

*Westerfield v. Washington Mut. Bank*, No. 06-CV-2817, 2007 WL 2162989 (E.D.N.Y. 2007).. 17

*Whinery v. Roberson*, 819 N.E.2d 465 (Ind. Ct. App. 2004) ..................................................... 26

*Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000)...................................... 9, 15

*Windsor v. Daumit,* 179 F.2d 475 (7th Cir. 1950) ........................................................................ 4

## Statutes and Administrative Regulations

Act of June 25, 1938, c. 676, 52 Stat. 1069 ........................................................... 8, 12

28 U.S.C. § 1332 .................................................................................................. 4

28 U.S.C. § 1367 .................................................................................................. 4

29 U.S.C. § 202 ................................................................................................... 7

29 U.S.C. § 203 ................................................................................................... 8

29 U.S.C. § 206 ................................................................................................... 18

29 U.S.C. § 213 ................................................................................................... 8

29 U.S.C. § 216 ............................................................................................. 3, 4, 11

29 U.S.C. § 218 ........................................................................................... 8, 17, 20

29 U.S.C. § 253 ................................................................................................... 11

29 U.S.C. § 254 ................................................................................................... 11

29 U.S.C. § 255 ................................................................................................. 9, 24

29 U.S.C. § 260 ................................................................................................... 26

Wis. Stat. § 104.001 ............................................................................................ 18

Wis. Stat. § 109.01 .......................................................................................... 18, 23

Wis. Stat. § 109.03 ...................................................................................... 18, 22, 23

Wis. Stat. § 109.09 ............................................................................................. 18

Wisconsin Administrative Code § 274.02 ........................................................... 22, 23

Wisconsin Administrative Code § 274.06 ........................................................... 23

## Rules

Fed. R. Civ. P. 1 ............................................................................................... 2, 15

Fed. R. Civ. P. 23 ............................................................................................. passim

Fed. R. Civ. P. 8 .............................................................................................. passim

**Legislative History**

H.R. Rep. 71 (1947), *as reprinted in* 1947 U.S.C.C.A.N. 1029, 1034 ........................................ 12

H.R. Rep. No. 80-326, at 3-4 (April 29, 1947) ........................................................................... 12

S. Rep. No. 80-48 (Mar. 10, 1947) ............................................................................................. 12

93 Cong. Rec. pt. 2, 2176 (1947) ............................................................................................... 13

**Other Authorities**

1 Newberg on Class Actions §§ 1:9, 1:10 (1st ed. 2004) ............................................................ 10

G.W. Foster, *Jurisdiction, Rights, and Remedies for Group Wrongs under the Fair Labor Standards Act*, 1975 Wis. Law. Rev. 295, 325, 333, 335, & n.142 (1975) ................. 10, 11, 13

William Eskridge, Jr, & Phillip P. Frickey, *Legislation: Statutes and the Creation of Public Policy* (West 1995) ..................................................................................................................... 13

# INTRODUCTION

**Michael Best's Guide to the Fair Labor Standards Act**

**SECTION 9:  STATE LAW COMPLIANCE**

Finally, as noted in the Introduction to this Guide and throughout the discussion of the various substantive issues covered by the FLSA, many states, including Wisconsin and Illinois, have enacted their own wage and hour laws. Some states' wage and hour laws are more protective of employees than the FLSA, meaning that it is possible that an employer in compliance with the FLSA might still be in violation of state law.  In fact, Wisconsin and Illinois have explicitly declared that they will not follow the FLSA's *new* regulations related to exempt positions.  <u>Given that the FLSA does not pre-empt state laws</u>, employers in those states must ensure that they comply with both the FLSA and with state law. Employers should consult their attorney with specific state law questions, and should not assume that the FLSA and state law are identical.

Exhibit A, *Michael Best's Guide to the Fair Labor Standards Act*, Mitchell Quick, Esq., & Neil B. Stekloff, Esq., Eds. (c. 2005) (emphasis added).

Despite the advice of its counsel, Thyssen-Krupp Waupaca (Waupaca) resists Plaintiffs' complaint based upon the untenable assertion that Plaintiffs' Wisconsin statutory and common law claims are procedurally and substantively "preempted" by the Fair Labor Standards Act (FLSA).  If the Court were to adopt Waupaca's radical view, the consequence would be that virtually no individual or class action could ever be brought under Wisconsin, Tennessee, and Indiana laws meant to protect employees working in those states, in either state or federal court. Congress manifestly did not intend that result, and the Wisconsin Legislature would be surprised to learn that statutes in existence since the early 20th century are now without effect.

Preemption doctrine does not entitle Waupaca to dismissal for a variety of reasons, all rooted unequivocally in the plain language, purpose, and legislative history of the FLSA, caselaw, and common sense.  *First*, Waupaca's "procedural preemption" argument founders because one federal statute cannot preempt another.  Moreover, the 1947 Portal-to-Portal amendments to the FLSA did not preempt "opt-out" actions under Rule 23, because in 1947, no such thing as an "opt-out" class existed, under FLSA or Rule 23.  This fact dismantles Waupaca's motion.

1

*Second*, what Waupaca calls "procedural preemption" is really a poorly disguised argument about supplemental jurisdiction. Because the Class Action Fairness Act (CAFA) grants to this Court original jurisdiction over the state law claims in this case, Waupaca's supplemental jurisdiction argument must fail. "Procedural preemption"—if there is such a thing—is a virtual nullity in light of CAFA. And, pre-CAFA and now, the majority view is that both opt-in and opt-out actions can peacefully coexist in a single action in federal court. *See* Table A. It is misleading—if not improper—for Waupaca to suggest otherwise.

*Third*, Waupaca fares no better peddling its "substantive preemption" argument, because no Wisconsin, Tennessee, or Indiana law stands as an "obstacle" to accomplishing the FLSA's results. FLSA does not substantively preempt state law, and in fact contains an express savings clause permitting states to enact more stringent regulations.

*Finally*, Waupaca's attempts to dismiss certain allegations on pleading grounds misses the mark. Waupaca's motion should be denied because Plaintiffs' Complaint fully complies with Rule 8 of the Federal Rules of Civil Procedure, which governs the pleading here, and puts Waupaca on notice of the claims in this case.

Not only is Waupaca's motion inaccurate, it also promotes an inefficient and unjust approach to the resolution of the claims here, Fed. R. Civ. P. 1, and distracts the Court from the important issues this case presents. At summary judgment and trial, Plaintiffs will show that they, like the workers in *Steiner v. Mitchell,* 350 U.S. 247, 254 (1956), and *IBP v. Alvarez*, 546 U.S. 1 (2005), are entitled to compensation for time spent donning and doffing necessary protective gear, walking to and from plant production areas, and for showering after shifts, because these activities are integral and indispensable to their work. Like the workers in *Steiner* and *IBP*, the foundry workers here perform dangerous and hard labor, and Waupaca should fully compensate

them for all of the time they work.

The issue presented by Waupaca's motion is far more straightforward than Waupaca makes it: can the Court certify Plaintiffs' FLSA claims under 29 U.S.C. § 216(b), while also eventually certifying Plaintiffs' state law claims under Rule 23? District courts in Wisconsin, as elsewhere, overwhelmingly say yes. The preemption shibboleth is misleading to this Court, and Waupaca's motion must be denied.

## STANDARD OF CONSIDERATION

Faced with a motion to dismiss, a court must accept all the pleaded facts as true, and draw all inferences in the light most favorable to the plaintiff. Even after the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, "'[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.'"[1] "Specific facts are not necessary."[2]

Courts that are asked to dismiss a complaint based upon a federal preemption defense, particularly one aimed at eviscerating the traditional police powers of the state, should begin with a "strong presumption against" preemption.[3] When a defendant advocates preemption, it bears the burden of proof.[4]

---

[1] *Bell Atlantic Corp. v. Twombly* ____U.S.____, 127 S.Ct. 1955, 1965 (2007); *Westerfield v. Quizno's Franchise Co.*, 527 F. Supp. 2d 840, 845 (E.D. Wis.2007) (quoting *The Beanstalk Group, Inc.*, *v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)).

[2] *Erickson v. Pardus*, ___U.S.___, 127 S.Ct. 2197, 2200 (2007).

[3] *Cippollone v. Liggett Group, Inc*., 505 U.S. 504, 518 (1992).

[4] *Frank Bros., Inc. v. Wisc. Dept. of Transp.*, 409 F.3d 880, 886-898 (7th Cir. 2005)

3

**ARGUMENT**

I.    **Waupaca's Motion Should Be Denied Because It Is Based on a Botched Understanding of Preemption.**

The most basic flaw in Waupaca's motion is that it misapplies preemption doctrine to two sets of *federal* procedural rules, both of which have the force of statute.[5]  The first procedural scheme at issue is FLSA's collective action provision, which requires each party plaintiff to give her consent to become a member of an action brought under FLSA.[6]  The second procedural scheme is Rule 23 of the Federal Rules of Civil Procedure, which governs how state law claims should be brought on a class basis.[7]  In 2005, Congress amended Rule 23 through the Class Action Fairness Act (CAFA) to grant district courts original jurisdiction over state law actions in which minimal diversity exists, as here.[8]  In addition to CAFA, courts that consider complaints with parallel FLSA and state wage and hour claims may exercise jurisdiction over the state law claims through 28 U.S.C. § 1367.

While it is true that in narrow circumstances, Congress has the power to preempt state law, it is never the case—imprecise language in certain opinions to the contrary—that Congress can preempt itself.[9]  As the Seventh Circuit has observed, "[o]ne federal statute does not preempt another.  When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other—and repeal by implication is a rare bird indeed."[10]

---

[5] *Windsor v. Daumit,* 179 F.2d 475, 477 (7th Cir. 1950) (stating federal rules have force of statute).

[6] 29 U.S.C. § 216(b).

[7] Fed. R. Civ. P. 23(a), (b).

[8] 28 U.S.C. § 1332(d)(2), (5); *see also Baas v. Dollar Tree Stores, Inc.*, No. 07-03108, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007). Plaintiffs here have asserted that the court has jurisdiction pursuant to § 1332(d), Compl. ¶__, and Waupaca has not contested this allegation.

[9] *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

[10] *Id.* (criticizing district court for stating that one federal statute preempted another) (internal citations omitted).  *See also Rodriguez v. United States*, 480 U.S. 522, 524 (1987) ("[R]epeals by implication are

4

Waupaca must concede that even under its own erroneous version of the legislative history of the FLSA, Congress did not, by enacting § 216(b), impliedly repeal Rule 23. Rather, what it did was clarify the procedural mechanism through which employees could vindicate their FLSA rights. Congress did not, however, establish that an employee who wished to vindicate her or his rights under state wage and hour laws also had to pursue those rights under § 216(b). Rule 23 is and was still the means through which employees could pursue their state wage and hour claims.

**A. Neither the text of FLSA nor its legislative history supports implied preemption of Rule 23 or any state law claim.**

Any Court asked to find preemption under the Supremacy Clause must begin with the presumption that Congress did not intend to displace state law.[11] As Justice Thomas observed in his partial concurrence in *Bates v. Dow Agrosciences, LLC*, over the years the Supreme Court has expressed "increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption. This reluctance reflects that pre-emption analysis is not '[a] freewheeling judicial inquiry into whether a state statute is in tension with federal objectives' but an inquiry into whether the ordinary meaning of state and federal law conflict."[12] Further, as the Court explained in *Cippollone v. Liggett Group*, "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of

---

not favored, and will not be found unless the intent to repeal is 'clear and manifest.'"); *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed intention to the contrary, to regard each as effective.").

[11] *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 668 (1993) (stating the "presumption against preemption"); *Frank Bros.*, 409 F.3d at 886 (holding that Davis-Bacon Act does not preempt Wisconsin prevailing wage legislative scheme).

[12] 544 U.S. 431, 459 (2005) (emphasis added and citations omitted).

Case 1:08-cv-00488-WCG    Filed 08/11/08    Page 12 of 35    Document 29

Congress.'"[13]

Waupaca takes a blunderbuss approach to preemption, often never clearly stating what kind of preemption applies. Knowing that the FLSA's plain language makes express preemption off-limits, Waupaca rests its analysis on a conflation of implied and conflict preemption principles.[14] Under implied preemption, Waupaca has the burden of proving that it was Congress' "clear manifest purpose" to preclude the states from enacting their own laws or regulations governing payment of wages.[15] Implied field preemption may be:

> [E]vinced by either a scheme of federal regulation…so pervasive to make reasonable the inference that Congress left no room for the States to supplement it, or the passage of an Act that touches the field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.[16]

Obversely, conflict preemption occurs "only in those circumstances where compliance with both federal and state regulations is a[n] impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[17] Waupaca claims, but never establishes, that the latter kind of conflict preemption, "obstacle preemption," applies both to its procedural and substantive preemption theses. In order for conflict preemption to apply, Waupaca must "allege facts or cite empirical evidence that would establish that the congressional objective at work behind the enactment of the [FLSA] would either be frustrated or rendered ineffective" if the states mandate that a certain wage or maximum hours

---

[13] *Cippollone*, 505 U.S. at 518 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) and *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)).

[14] While Waupaca seems to be arguing only conflict preemption, its repeated references to FLSA's "exclusive enforcement scheme," and "elaborate and exclusive statutory scheme," Def. Br. at 20, 23, also suggest that an implied (field) preemption analysis is appropriate here.

[15] *See Frank Bros.*, 409 F.3d at 887.

[16] *Id.* (internal quotations and citations omitted).

[17] *Id.* at 893-94 (internal quotations and citations omitted).

6

provision applies.[18]

While the Seventh Circuit has never done a preemption analysis of the FLSA, it has recently considered the preemptive effect of the Davis-Bacon Act and the Federal-Aid Highway Act, which together govern prevailing wages on federally funded construction projects, on the Wisconsin prevailing wage law applicable to workers on state and federal highway projects.[19] The Court of Appeals concluded that the Wisconsin law was not preempted, after applying a full preemption analysis to the Wisconsin prevailing wage law.[20] That analysis is persuasive and guides this Court to the conclusion that the FLSA neither preempts Rule 23 nor any state law. Further, the Wisconsin federal courts that have considered the issue have concluded that the FLSA does not preempt state law.[21]

1. ***FLSA's language and structure demonstrate congressional intent to permit complementary and supplementary regulation.***

The ultimate indication of Congressional intent and purpose is the language and structure of the statute itself.[22]  Undisputedly, the principal purpose of the FLSA is to "to protect all covered workers from substandard wages and oppressive working hours."[23]

The clearest expression of Congress' intent not to preempt state law or any employment contract meeting or exceeding FLSA's requirements is found in section 18 of FLSA, the FLSA

---

[18] *See id.* at 894.

[19] *Frank Bros.*, 409 F.3d at 882-83.

[20] *See id.* at 886-98.

[21] *Kasten v. Saint-Gobain Performance Plastics Corp.*, __ F. Supp. 2d __, No. 07-449, 2008 WL 2252076 (W.D. Wis. June 2, 2008); *Spoerle v. Kraft Global Foods, Inc.*, No. 07-300, 2008 WL 2002221 (W.D. Wis. May 6, 2008); *Sjoblom v. Charter Communications, LLC*, No. 07-0451, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007); *Kasten*, Dec. 7, 2007 Order (Shabaz, J) (denying motion to dismiss on substantive preemption grounds) (Ex. B).  All unpublished opinions are attached as exhibits to the Affidavit of Anne T. Regan.

[22] *Frank Bros.*, 409 F.3d at 885-86.

[23] *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (citing 29 U.S.C. § 202(a)).

7

savings clause.[24]   The savings clause conclusively demonstrates that Congress declined to establish uniform regulation of the employer-employee relationship: states could supplement the FLSA by enacting laws stricter than FLSA's minimum wage and overtime requirements, even where those requirements might affect interstate commerce, because laws that met or exceeded FLSA's baseline standards would ensure that the goods produced by "free labor and a free people" would meet "rudimentary standards of decency" that the FLSA was enacted to establish.[25]

In addition to the saving clause, Congress demonstrated its intent not to enact uniform national legislation by exempting from the Act's coverage certain employers or employees, to whom FLSA would not apply.[26]  Thus, in the absence of federal labor standards that apply to these types of employers or employees, the states are free to enact their own standards that would cover these types of employers or employees.[27]

### 2.   *The 1947 Portal-to-Portal Act amendments do not demonstrate an intent to preempt state law class actions.*

Despite the fact that the language and structure of the FLSA indicate a clear intent not to

---

[24] 29 U.S.C. § 218(a).  The FLSA saving clause has been part of the Act since 1938.  Act of June 25, 1938, c. 676, 52 Stat. 1069.

[25] *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516 (1950) (quoting President Roosevelt's message to the Congress in transmitting the legislation) (internal quotations and citations omitted); *see Williamson v. Gen. Dynamics Corp.*, 208 F.3d at 1150-51 (noting that the saving clause constituted "evidence that Congress did not intend to preempt the entire field"); *cf. Frank Bros.*, 409 F.3d at 887 (finding no implied field preemption where statutory language "suggest[s] that congress intended federal law to be complementary to, rather than preclusive of, state law")..

[26] *See, e.g.*, 29 U.S.C. §§ 203(d), (e), 213; *see also In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig.*, 481 F.3d at 1134 (discussing exemptions to the FLSA and stating that "the purpose behind the FLSA is to establish a national floor…not to establish uniformity in minimum wage and overtime standards nationwide at levels established in the FLSA").

[27] The most ready example of this would be FLSA's exemptions for certain categories of "executive, administrative, or professional" employees.  29 U.S.C. § 213(a)(1).  States are free to enact laws that cover these employees.  Another example is employers who do not meet the definition of employer in 29 U.S.C. § 203(d), because they do not work in interstate commerce. Indiana's FLSA is a case in point:  it covers employees in the state that are not already covered by the FLSA.

Case 1:08-cv-00488-WCG   Filed 08/11/08   Page 15 of 35   Document 29

preempt, Waupaca contends that in 1947, Congress amended the FLSA to extinguish "opt-out" class actions. Def. Br. at 14-15. Waupaca's history lesson is riddled with glaring errors, and its story cannot be credited.

Waupaca's foundational error is the contention that the Portal-to-Portal amendments were designed to extinguish the "opt-out" action under Rule 23.  Def. Br. at 14-15.  But no such thing as an "opt-out" action existed in 1947, under Rule 23 or FLSA.[28]  In fact, the collective action procedure that the Portal-to-Portal Act endorsed—essentially a permissive joinder device— tracked the "spurious" class action under the original Rule 23(a)(3), in which the only parties bound by a judgment were those who had joined and been named in the Rule 23 action.[29]  The "opt-out" Rule 23(b)(3) damages class did not exist until the 1966 Amendments to Rule 23.[30]

What the Portal-to-Portal Act amendments were designed to correct, as explained by the Supreme Court in *Steiner v. Mitchell*, was "an '***existing emergency***' resulting from claims which, if allowed in accordance with *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1945)…would have created 'wholly unexpected liabilities, immense in amount and retroactive in operation.'"[31]  The liabilities the Court spoke of resulted from a trio of decisions, culminating in *Anderson*, in which the Court had interpreted the FLSA to require compensation for "all time during which an employee is required to be on the employer's premises, on duty or at a

---

[28] 1 Newberg on Class Actions §§ 1:9, 1:10, at 30-38 (1st ed. 2004).

[29] *See id.*; *see also* G.W. Foster, *Jurisdiction, Rights, and Remedies for Group Wrongs under the Fair Labor Standards Act*, 1975 Wis. Law. Rev. 295, 325, 333, 335, & n.142 (1975) [hereinafter Foster].

[30] Foster, at 335.

[31] 350 U.S. 247, 254 (1956) (emphasis added); 29 U.S.C. § 255(a); *see also IBP v. Alvarez*, 546 U.S. at 25-26 (examining legislative history of Portal-to-Portal Act); *Arrington v. Nat'l Broadcasting Co.*, 531 F.Supp. 498, 502 (D.D.C. Cir. 1982) (declining to read legislative history broadly because the Portal-to-Portal amendments accomplished "limited objectives undertaken by Congress during [a] unique period of the country's history").  Waupaca's history relies on the lone decision in *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 450 (W.D. Pa. 2007).  For the reasons set forth in this section, the *Ellis* court also got its history wrong.

prescribed workplace."[32]  This broad interpretation of the FLSA resulted in retrospective liability for "activities not thought compensable at the time they took place,"[33] such as "time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations."[34]  So Congress amended the FLSA with "two statutory remedies, the first related to 'existing claims,' and the second to 'future claims.'"[35]  The existing claim amendment relieved employers of retrospective liability for "portal-to-portal" compensation, where an express contract or existing custom had established that these kinds of activities were not compensable. The future claims amendment:

> [P]reserved potential liability for working time not made compensable by contract or custom but narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under our cases: walking on the employer's premises to and from the actual place of performance of the principal activity…and activities that are 'preliminary or postliminary' to that principal activity.[36]

The Portal-to-Portal Act and the caselaw construing it undisputedly have application to this case, but not for the reasons Waupaca urges here.  The "emergency" Waupaca notes did not evolve from a post-war influx of "opt-out" actions, but from the Supreme Court's broad construction of the definition of "work" and "workweek."  The House Report accompanying the amendments, which Waupaca cites on page 14 of its brief, does indeed state that sections 3 and 4 of the Portal to Portal Act "prohibit the maintenance of such suits in any of the courts of the United States, either in Federal or State, and declare that such courts shall have no jurisdiction to proceed with such actions."[37]  But Waupaca badly misreads this language—it does not mean, as

---

[32] *Anderson*, 328 U.S. at 690-91.

[33] Foster, at 333.

[34] *IBP*, 546 U.S. at 26; *see also* Exs. C-F (containing legislative history).

[35] *Id.* (citing to legislative findings and to 29 U.S.C. §§ 254(a), 255(a)).

[36] *Id.*

[37] H.R. Rep. 71 (1947), *as reprinted in* 1947 U.S.C.C.A.N. 1029, 1034 (Ex. C).

Waupaca says, that the courts were divested of jurisdiction to decide claims brought under Rule 23 or under any state law. Sections 3 and 4 of the amendments were codified at 29 U.S.C. §§ 253-254, and refer only to the existing and future claims for portal-to-portal activity. These sections make absolutely no mention of the collective action procedure that was codified at 29 U.S.C. § 216(b).[38]

By contending that the chief concern of the Portal-to-Portal amendments was "the continued viability of 'opt-out' FLSA class actions," Waupaca fictionalizes the legislative history. It is true that the Portal-to-Portal provisions eliminated the so-called "representative action." This does not mean what Waupaca thinks it means. As originally enacted, section 16(b) permitted an action to be brought by "one or more employees for and in behalf of himself or themselves and other employees similarly situated, [the collective action provisions] *or such employee or employees may designate an agent or representative* to maintain such action for an in behalf of all employees similarly situated [the representative action provisions.]"[39] As explained by one commentator, the 1938 FLSA authorized two kinds of representative actions:

> In the first of these, the representatives were themselves members of the class of similarly situated employees in whose behalf the suit was maintained. In the second, an "agent or representative"—not required to be a member of the class of employees represented—could be designated by one or more of the class to maintain the action on 'behalf of all employees similarly situated.'"[40]

---

[38] *See* H.R. Rep. No. 80-326, at 3-4 (April 29, 1947) (Ex. D); *see also* S. Rep. No. 80-48 (Mar. 10, 1947) (Ex. E).

[39] Act of June 25, 1938, ch. 676, § 16(b), 52 Stat. 1069; *see Arrington v. Nat'l Broadcasting Co.*, 531 F.Supp. at 502 (D.D.C. Cir. 1982) (summarizing legislative history and stating the FLSA's "consent in writing" and ban on "representative actions" were to prevent recovery "as a result of some third party's action in filing suit."). Waupaca notes that the *Arrington* decision has "been endorsed widely by circuits across the nation," Def. Br. at 15, failing to note that the D.C. Circuit, in which *Arrington* district court resides, has recently rejected arguments similar to the ones that Waupaca espouses here. *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) (rejecting argument that FLSA and Rule 23 are incompatible).

[40] Foster, at 323.

Case 1:08-cv-00488-WCG   Filed 08/11/08   Page 18 of 35   Document 29

What this meant was that third parties **who were not even employees** of a particular company could seek redress for FLSA violations.[41]  It was this latter category of representative action that the Portal-to-Portal amendments eliminated, and accordingly the amendments had a limited purpose.[42]  The floor comments of Senator Donnell, cited in on page 14 of Waupaca's brief, make this abundantly clear.[43]

Waupaca wishfully reads into the legislative history a Congressional desire to squelch meritorious litigation, such as this case, rather than an attempt to correct an existing problem resulting from judicial interpretations of the terms "work" and "workweek."  But the Portal-to-Portal amendments were not designed to prevent employees from bringing representative suits in their own right.  They merely clarified what had, to date, been an unclear procedure.[44]  Nor were the amendments a response to any state actions.  Fatally for Waupaca, none of the authorities it cites stand for the proposition that the Portal-to-Portal amendments preempt Rule 23; rather, these cases state the Portal-to-Portal's "**strictures…must be limited solely to prohibiting actual representation by a union**."[45]  The fact that the FLSA's section 216(b) procedure tracked the Rule 23 spurious action demonstrates that Congress did not intend to curtail or preempt Rule 23, as it applied to other types of wage actions.  Because Waupaca has failed to "allege facts or cite

---

[41] *Hoffman LaRoche v. Sperling*, 493 U.S. 165, 173 (1989).  Senator Donnell's floor comments regarding the effect of the representative action constitute a small percentage of the debate on the floor of the Senate on March 18, 1947; indeed, the preponderance of comments were devoted to describing the issues that arose after the Supreme Court's decision in *Anderson*.  93 Cong. Rec. pt. 2, 2176, 2182 (1947) (Ex. F).  Commentators have noted that "statements made during committee hearings and floor debates have traditionally received less weight in evaluating legislative intent."  William Eskridge, Jr, & Phillip P. Frickey, *Legislation: Statutes and the Creation of Public Policy*, at 773 (West 1995).

[42]  Foster, at 335.

[43] 93 Cong. Rec. at 2182.

[44] *See* Foster, at 324-26, for a discussion of pre-1947 reported cases under the FLSA, and the interrelationship between section 16(b) and Rule 23.

[45] *Arrington*, 531 F.Supp at 503.

empirical evidence" showing that Congress intended to preempt Rule 23 actions, Waupaca's motion must be denied.[46]

## II. Waupaca's Motion Should Be Denied Because the Majority of Federal Courts, Including those in Wisconsin, Have Found FLSA and Rule 23 Actions to Be Compatible.

As shown, Waupaca's motion to dismiss is not based on true preemption doctrine or a correct view of the legislative history. The cases Waupaca cites correctly state that FLSA and Rule 23(b)(3) are different—sometimes calling these differences "irreconcilable"—but at the end of the day, these cases stand for two simple propositions: first, employees cannot bring their FLSA or Age Discrimination in Employment Act (ADEA) claims under Rule 23, and second, in exceptional cases—the vast majority decided before CAFA—courts have chosen not to exercise supplemental jurisdiction over state law claims.[47] *See* Def. Br. at 16-17, n. 18, 19, & 20. These decisions have little relevance here, because Plaintiffs are not trying to bring their FLSA claims under Rule 23, and because this Court has original jurisdiction over the Wisconsin, Indiana, and Tennessee state law claims.

Waupaca concedes jurisdiction exists. Def. Br. at 1. Instead, it misdirects this Court to consider the topic of preemption, stopping just short of actually saying that seven circuit courts of appeal have concluded that FLSA has preempted state law class actions. Def. Br. at 16, & n.17. In fact, no Court of Appeal has decided any such thing, and it is improper for Waupaca to imply otherwise. Plaintiffs supply the correct analysis of the cases supplied in footnote 17 here:

- In *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1248-49

---

[46] *See id.* at 894.

[47] *See, e.g., Sjoblom*, 2007 WL 456 0541, at *4 (collecting cases); *Campbell v. Entergy Nuclear Ops., Inc.,* No. 05-11951, Aug. 7, 2007 Order, at *1-2 (describing lack of "uniform resolution" on issue of concurrent Rule 23 and FLSA certification, and concluding "the federal claim does not preempt the state remedy"); *see also Flavel v. Svedela Indus., Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994) (discussing reasons why an ADEA age discrimination plaintiff could not bring motion under Rule 23).

(11th Cir. 2003), the Eleventh Circuit held that an FLSA plaintiff who had settled his individual claim after bringing a motion to certify and to send notice to other similarly situated employees under section 216(b), but before a decision on that motion, did not have standing to appeal the subsequent order denying his motion to notify, because his claim was moot. The Court of Appeals correctly noted that the 1947 amendments to the FLSA still permit an employee to sue on behalf of other employees, provided the latter consent to join the action.

- In *DeAscencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003), the Third Circuit noted only that FLSA plaintiffs cannot bring their claims under Rule 23. The court never describes the differences between these two procedures in terms of preemption or in terms of "irreconcilable differences."

- The cited opinions by the Fifth and Eighth Circuits merely hold that an ADEA plaintiff cannot bring her action under Rule 23, because the ADEA incorporates by reference specific FLSA provisions.

- The Ninth Circuit opinion and quotation from *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 861 (9th Cir. 1977) is no longer good law, having been reversed by the Supreme Court in *Hoffman La-Roche v. Sperling*, 493 U.S. 165 (1989). The specific statement Waupaca quotes—that "Rule 23 procedures were inappropriate for the prosecution of class actions under section 216(b)"—was reversed, as it refers to whether an FLSA plaintiff has the right to send notice to a potential plaintiffs. The precise issue decided by *Hoffman La-Roche* was whether FLSA or ADEA plaintiffs may send judicially ordered notice, just as in Rule 23 class actions. In fact, the Ninth Circuit long ago concluded that the FLSA does not preempt state statutory or common law claims. *In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig.*, 481 F.3d 1119, 1134 (9th Cir. 2007); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1150-51 (9th Cir. 2000).

- The Tenth Circuit in *United Food & Commercial Workers Union v. Albertson's, Inc.*, 207 F.3d 1193, 1200 (10th Cir. 2000), dismissed a *union's* claims under the Colorado Declaratory Judgment Act because it attempted to avoid the prohibitions under section 216(b) against union representative actions.

As for the Seventh Circuit decision in *King v. General Electric Co.*, its conclusion that the collective action "procedure preempts the class action procedure under [Rule 23]" was merely an imprecise description for the reasons why an ADEA plaintiff could not bring an age discrimination action under Rule 23.[48] The Seventh Circuit did not actually conduct a preemption analysis. If, in fact, the Seventh Circuit had decided that FLSA preempts Rule 23, it would be

--------

[48] 960 F.2d 617, 621 (7th Cir. 1992).

highly unusual for district courts in this Circuit to ignore that ruling, which they apparently have.[49]

Plainly, Waupaca is wrong about what these cases say. Its inability to credibly present a case is exemplified where it states "[the Seventh Circuit's]...best statement…on the incompatibility of the 'opt-in' requirement of § 216(b) with 'opt-out' provisions of Rule 23" is in the case of *Irwin v. Wisconsin*. Def. Br. at 17. This statement was not written by a Seventh Circuit panel, but by Judge Crabb.[50] As Waupaca knows too well, Judge Crabb has issued three recent opinions rejecting the arguments Waupaca advances here.[51] In addition, Judge Shabaz has also rejected preemption arguments identical to those presented here.[52]

The United States District Court for the Western District of Wisconsin's line of decisions joins the vast majority of courts—including the Court of Appeals for the D.C. Circuit—that have *expressly* held that FLSA and Rule 23 actions are procedurally compatible, and finding it proper, for reasons of judicial economy and efficiency, to exercise jurisdiction over the state law claims.[53] In *Lindsay v. Gov't Employees Ins. Co.*, the D.C. Circuit reasoned that:

> While there is unquestionably a difference—indeed, an opposite requirement—between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep. Regardless of any policy decision implicit in section 216(b)'s opt-in requirement, …in enacting section 1367(a), the Congress made its intent regarding the exercise of supplemental jurisdiction clear: "Congress conferred a broad grant of jurisdiction upon the district courts, indicating

---

[49] Table A, appended to this brief, lists decisions from district courts in the Seventh Circuit where Rule 23 and FLSA actions have proceeded concurrently.

[50] 998 F.2d 1016, No. 92-2509, 1993 WL 134051, at *1 (7th Cir. Apr. 28, 1993) (adopting in full "Chief Judge Barbara Crabb's comprehensive opinions granting summary judgment to the defendants"). That statement merely describes, again, that FLSA actions cannot be brought under Rule 23. *Id.* at *5.

[51] *Kasten*, 2008 WL 2252076, at *14-15; *Spoerle v. Kraft Global Foods, Inc.*, 2008 WL 2002221, at *4-5; *Sjoblom v. Charter Communications, LLC*, 2007 WL 4560541, at *1.

[52] *Kasten*, Dec. 7, 2007 Order (Shabaz, J) (denying motion to dismiss on substantive preemption grounds) (Ex. B).

[53] *Lindsay*, 448 F.3d at 424; *see also* Fed. R. Civ. P. 1.

a congressional desire that, 'supplemental jurisdiction at least in the first instance ... go to the constitutional limit, to which it appeared to be carried in ... [*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)].' "[54]

This view makes ultimate sense. The reality is that courts—including district courts within the Seventh Circuit—frequently allow wage and hour lawsuits to proceed simultaneously as ***both*** "opt-in" collective actions asserting FLSA violations ***and*** Rule 23 "opt-out" class actions asserting violations of state wage laws. Looking outside of the Seventh Circuit, the cases in which district courts certify *both* Rule 23 class actions arising under state wage law and FLSA collective actions are too numerous to be exhaustively referenced here. Plaintiffs respectfully refer the Court to Table A, appended to this brief, for a sample of these decisions.

## III. Waupaca's Motion Should Be Denied Because FLSA Does Not Substantively Preempt Any Wisconsin State Law.

### A. The Wisconsin statutory claims are not preempted.

Despite acknowledging FLSA's savings clause, which states Congress' intent not to preempt a state law, Waupaca contends that Plaintiffs' second and third claims, brought under the Wisconsin FLSA, are substantively preempted. Def. Br. at 24. Unlike its procedural preemption argument, Waupaca's preemption claim would apply to any individual who seeks overtime compensation under Wisconsin's FLSA, in state or federal court, irrespective of whether class allegations are at play. Waupaca's precise argument has been squarely rejected by the Wisconsin federal courts that have considered the argument, the Second and Ninth Circuits, and numerous other district courts.[55]

---

[54] *Id.* (citing *In re Walker,* 51 F.3d 562, 571-72 (5th Cir. 1995) (quoting *Rodriguez v. Pacificare of Tex.*, 980 F.2d 1013 (5th Cir. 1993), (alterations in *In re Walker*))); *see also Westerfield v. Washington Mut. Bank*, No. 06-CV-2817, 2007 WL 2162989, *3 (E.D.N.Y. 2007) (following *Lindsay*).

[55] *Sjoblom*, 2007 WL 4560541, at *5 ([T]he Fair Labor Standards Act does not preempt Wisconsin wage and hour laws"); *see, e.g., In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig.*, 481 F.3d at 1134 (discussing exemptions to the FLSA and stating that "the purpose behind the FLSA is to establish a national floor…not to establish uniformity in minimum wage and overtime standards

The gist of Waupaca's argument is that because the Wisconsin FLSA is supposedly not "more generous" than the federal FLSA, the savings clause does not apply to the statute, and therefore Plaintiffs' claims are preempted. Def. Br. at 24. Contradiction permeates Waupaca's syllogism. Following Waupaca's logic, no conflict exists where states have enacted more stringent requirements than Congress, but in states that have enacted identical requirements, that legislation would stand as an obstacle and frustrate congressional intent. As a textual and logical matter, this cannot be right. FLSA's text and structure evince an intent to establish a national floor from which the states could rise.[56] By FLSA's plain terms, state legislation cannot frustrate congressional intent if a state has chosen to provide the same substantive rights as Congress.

Even if the "more generous" requirement were correct, it would still be inapposite here. Contrary to Waupaca's representation, many provisions of the WFLSA are "more generous" than the FLSA. First, Wisconsin's statutes set forth a broader definition of "wages" than exists under the FLSA. Under the WFLSA, wages means:

> [R]emuneration payable to an employee for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, supplemental unemployment benefit plan payments when required under a binding collective bargaining agreement, bonuses and *any other similar advantages* agreed upon between the employer and the employee or provided by the employer to the employees as an established policy.

---

nationwide at levels established in the FLSA"); *Overnite Transp. Co. v. Tianti*, 95 F.2d 220, 222 (2d Cir. 1991) ("[E]very Circuit that has considered the issue has reached the same conclusion—state overtime laws are not preempted by the [Motor Carrier Act] or the FLSA."); *Thorpe v. Abbot Labs., Inc.*, 534 F. Supp. 2d 1120, 1124 (N.D. Cal. 2008); *Salazar v. Agriprocessors, Inc.*, 527 F. Supp. 2d 873, 885 (N.D. Iowa 2008) ("In the thirty-two years since [the Iowa Wage Payments and Collections Act's] passage, Congress has refrained from enacting a law which provides for FLSA preemption of this state counterpart"); *Bouaphakeo v. Tyson Foods, Inc.*, ___F. Supp. 2d___, No. 07-4009, 2008 WL 2645759, at *8 (N.D. Iowa July 3, 2008); *Osby v. Citigroup, Inc.*, No. 07-06085, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008); *Guzman v. VLM, Inc.*, No. 07-1126, 2008 WL 597186, at *10 (E.D.N.Y. March 2, 2008).

[56] 29 U.S.C. § 218(a).

Wis. Stat. § 109.01(3) (emphasis added). The "similar advantages" language incorporates into the definition of wages contractual bargains—such as payment at hourly rates higher than the mandated minimum wage—that neither the Wisconsin FLSA nor the FLSA require.[57]

Second, FLSA, unlike the WFLSA, does not have a provision requiring timely payment of wages. Wisconsin Statute § 109.03(1) sets forth 31 days as the required frequency of payments, and § 109.03(7) protects from retaliation any employee who attempts to enforce this provision. This provision provides the basis for Plaintiffs' Third Cause of Action, wherein if Waupaca is found to have failed to pay the employees for all hours worked, then it will have also failed to timely pay the employees this compensation under section 109.03. Courts have found that state statutory provisions like these are not preempted by the FLSA.[58]

Third, Wisconsin's wage laws provide employees with a level of financial protection that is unavailable under FLSA. Wisconsin Statute § 109.09(2)(a) and (b) grant an employee or employees a lien upon all property of the employer, real or personal, located in the state, for the full amount of any wage claim or any wage deficiency.[59]

These are just a few examples of how WFLSA is "more generous" than the FLSA. But this Court need not decide whether the WFLSA is more or less generous. Waupaca's statutory preemption argument tacitly recognizes the unstable foundation on which it stands: the lone decision of *Ellis*, which uniquely holds that the FLSA "preempts" *all* state statutory or common laws that "conflict" with FLSA.[60] *Ellis*' source of the "conflict," for preemption purposes, was not the substantive rights guaranteed by a state law, but the fact that the plaintiffs were trying to

---

[57] 29 U.S.C. § 206; Wis. Stat. § 104.001, et seq.

[58] *See Bouaphakeo*, 2008 WL 2645759, at *6 (collecting cases).

[59] Wis. Stat. § 109.09 (2)(c)(1m); *see also id.* at 2(c)(2).

[60] 527 F. Supp. 2d at 452.

prosecute their claims under Rule 23.[61]  As shown, nothing in the legislative history of the FLSA or its amendments permits this conclusion.

*Ellis* has been rejected or distinguished by every court outside of the Third Circuit that has examined it, and should not be followed here.[62]  Waupaca's motion to dismiss the Wisconsin statutory claims must be denied.

### B.  The Wisconsin, Tennessee, and Indiana breach of contract claim is not preempted.

Again relying on out-of-circuit authority, Waupaca claims that Plaintiffs' breach of contract claim conflicts with the FLSA "under the theory of obstacle preemption because the FLSA enforcement scheme is exclusive."  Def. Br. at 23.  But the Supreme Court has stated, "the mere existed of a federal regulatory or enforcement scheme,…does not by itself imply pre-emption of state remedies."[63]  Moreover, Waupaca's precise argument was rejected by Judge Shabaz in *Kasten*, where the defendant argued that the plaintiffs' common law claims were "mere duplicates of their FLSA and state statutory claims and being as such the common law claims should be dismissed as 'preempted' by the federal and state statutes.'"[64]  Judge Shabaz noted that Rule 8(e)(2) "permits a party to plead alternative theories of relief under both legal and equitable grounds…plaintiffs have merely plead state common law claims as alternative theories of recovery based on the same facts as their claims under federal and state statutes, which means that dismissal of their common law claims is inappropriate."[65]

---

[61] *Id.*  at 453 (analyzing claim in complaint and stating, "Plaintiffs seek no remedies…that they do not seek under FLSA…prosecution of this claim would frustrate Congerss' intent in establishing FLSA's opt-in notice regime).

[62] *See Bouaphakeo*, 2008 WL 2645759, at *11 (declining to adopt *Ellis*' Rules Enabling Act argument); *Damassia v. Duane Reade Inc.*, ___F.R.D.___, No. 04-8819, 2008 WL 2201469, at *12 (S.D.N.Y. May 27, 2008) (criticizing *Ellis*' reading of the Rules Enabling Act).

[63] *English v. General Elec. Co.*, 496 U.S. 72, 87 (1990).

[64] *Kasten*, Dec. 7, 2007 Order, at *4.

[65] *Id.*  The court correctly noted that plaintiffs would not be entitled to double recovery.

19

The single decision that provides the basis for Waupaca's argument is distinguishable. In *Anderson v. Sara Lee Corp.*, the Fourth Circuit decided that the plaintiffs' common law claims were preempted by FLSA because "[no] North Carolina law entitles them to unpaid wages. Rather [the plaintiffs] rely on the FLSA for their rights, and they invoke state law only as a source of remedies for the alleged FLSA violations."[66] In other words, because the common law claims could not be read as providing remedies additional to a North Carolina wage and hour statute, the plaintiffs' claims derived from federal law. Here, however, Plaintiffs have not invoked any federal statutory rights as forming the basis of their breach of contract claim—that claim centers on Waupaca's contractual obligation to pay its employees for their work, under Indiana, Tennessee, and Wisconsin law. *See* section IV. B, *infra*.[67]

The additional problem with Waupaca's reliance on *Anderson* is that the Fourth Circuit's preemption analysis was chiefly based on a case decided under ERISA. FLSA, unlike ERISA, does not expressly preempt any state law; nor does it completely preempt a state law.[68] FLSA, unlike ERISA, is not the only source of law guaranteeing employees the right to be paid for their work, nor is it the only source of remedies to vindicate those rights. In fact, FLSA's savings clause expressly contemplates that employers and employees can agree through contract to hourly rates higher than the mandated minimum wages, and the FLSA does not permit an employer to use the FLSA to go back on its deal.[69] Thus, even where an at-will employment agreement is involved, if an employee is not paid the promised hourly rate of pay for the work

---

[66] 508 F.3d 181, 193 (4th Cir. 2007) (citing *Ingersoll-Rand Co. v. McClendon* 498 U.S. 133, 136, 144-45 (1991)).

[67] *See also Williamson,* 208 F.3d at 1153 (finding no preemption of state common law fraud claim).

[68] *See Casey v. Rainbow Group, Ltd.*, No. 95-50710, 109 F.3d 765, 1997 WL 114915, at *4-5 (5th Cir. Feb. 19, 1997) (discussing the relationship between FLSA, ERISA, and the Labor Management Relations Act, and concluding that FLSA does not completely preempt any state law).

[69] 29 U.S.C. § 218(a).

that he does, an action for breach of contract would lie, and would not be covered or preempted by the FLSA.[70]  That is the essence of Plaintiffs' claim here.

Moreover, *Anderson* says that a state law claim is preempted only to the extent that it is brought alongside an FLSA claim.  In other words, but for the FLSA claim, a North Carolina Sara Lee employee could bring a claim for breach of contract, claiming that contract required payment for all time worked.  That is not a proper preemption analysis:  preemption lies where a federal statute guarantees certain rights and remedies, and spells out how to vindicate those rights and remedies.  Upon a finding of preemption, a state law claim can *never* be brought.[71]

As numerous courts have held, common law claims are not preempted by the FLSA. Waupaca's motion should be denied.

## IV.  Waupaca's Motion Should Be Denied Because It Cannot Identify Legitimate Insufficiencies in the Complaint.

### A.  Plaintiffs' claim for overtime and recordkeeping violations complies with Rule 8.

Waupaca attacks Plaintiffs' Second Cause of Action, claiming first that there is no private cause of action for recordkeeping violations under Wisconsin law, and second that Plaintiffs have not identified the statutory basis for their overtime claim.  Both can be summarily dispatched.

*First*, there is ample authority that a private cause of action exists to enforce the recordkeeping provisions of the Wisconsin FLSA, which are found in chapters 103, 104, and 109 of the Wisconsin Statutes.  Rather than undertake the proper analysis, Waupaca merely repeats

---

[70] *See Brothers v. Portage Nat'l Bank*, No. 06-94, 2007 WL 965835, at *6 (W.D. Pa. March 29, 2007) (explaining "gap-time" wage problems and stating "[t]he FLSA's failure to create liability for gap-time [i.e., straight-time, or hours under 40] wages heavily mitigates any concern for undercutting the protections of its opt-in mechanism").

[71] *Ingersoll-Rand*, 498 U.S. at 144-45; *see also English*, 496 U.S. at 87 (holding that claim for intentional infliction of emotional distress "does not fall within preempted filed of nuclear safety" and noting that "[n]or does the legislative history of § 210 reveal a clear congressional purpose to supplant state-law causes of action that might afford broader relief").

what the court in *Spoerle v. Kraft Foods Global* concluded.[72]  With due respect to the *Spoerle* court, that court's reading of Wisconsin chapter 109 (the Wage Payments Act), and the Department of Workforce Development (DWD) administrative regulations, is too narrow.  As explained by the Wisconsin Supreme Court in *German v. Wisconsin Dept. of Transporation*, in 1993 the Wisconsin Legislature amended the Wage Payments Act to permit employees to bring an action for wages in the trial courts: "[T]he scope of the employee-initiated *wage claim actions* [were not intended] to be more limited than the scope of actions that DWD is authorized to pursue on the employee's behalf."[73]  By "wage claim actions," the *German* court did not mean actions for wages only, but all actions brought under chapter 109 and the accompanying administrative regulations.[74]  It is true that, as the *Spoerle* court noted, that the Wisconsin Supreme Court was not concerned with the recordkeeping provisions of the act or the administrative regulations, but the *German* court's reasoning applies with equal force here.[75]

In *German*, the issue was whether state police officers had standing to bring an action to enforce the on-duty meal provisions of the Wisconsin administrative code.  The supreme court decided that section 103.005(14), which "provided that the DWD shall administer laws related to employment and the regulation of employment…when read together with Wisconsin Statute ch. 109, [shows] that employees are authorized by the legislature to seek enforcement of Wisconsin Administrative Code § 274.02(3) through Wisconsin Statute § 109.03(5)."[76]  Simply because the *German* court was focused on the on-duty meal period provision of § 274.02(3) does not mean that it established a rule that the remaining provisions of DWD 274 were not susceptible of

---

[72] *Spoerle*, 527 F. Supp. 2d at 872.

[73] 612 N.W.2d 50, 54 (2000) (emphasis added).

[74] *See id.*

[75] *See Spoerle*, 527 F. Supp. 2d at 872.

[76] *Id.* at 585.

enforcement by employees through § 109.03(5). If section 274.02(3)—a specific provision of that "Hours of Work and Overtime" regulation—could be enforced by a private plaintiff, it is reasonable to conclude that other provisions of § 274, such as the entirety of the "hours of work" section, § 274.02(1)-(3), and § 274.06, the recordkeeping provision, could also be enforced in a private employee action.

*Second*, as shown by *German*, it is well-established that there is a private cause of action for overtime pay in Wisconsin. The statutory basis for Plaintiffs' unpaid overtime claim is found in chapter 109, to which Plaintiffs cite in paragraph 51 of their Complaint. The specific provision is § 109.03(5). In addition to providing a private right of action, that chapter defines "wages" as including "overtime pay," Wis. Stat. § 109.01(3); "overtime pay" is defined in DWD 274.03. Compl. ¶¶ 46-51.[77] Waupaca's motion to dismiss Plaintiffs' overtime claim must be denied.

### B. Plaintiffs' breach of contract claim complies with Rule 8.

Waupaca argues that Plaintiffs have not adequately plead the elements of a breach of contract claim. While Waupaca limits its discussion to Wisconsin law, the breach of contract claim is applicable to Indiana and Tennessee putative class members as well.

Essentially, Waupaca misconstrues this claim. Def. Br. at 28. Plaintiffs have not plead that Waupaca's contractual agreement was to comply with federal or state law. Rather, Plaintiffs have plead that the offer was for payment for all time they have worked, at the contractual rates they are promised. Compl. ¶¶60-61. It is well-settled that at-will employment arrangements create enforceable contract rights, and specifically the entitlement to specified pay in exchange

---

[77] Section 103.02 grants to the DWD to the power to "classify such periods of time into periods to be paid for at regular rates and periods to be paid for at the rate of at least one and one-half times the regular rates." If the Court requires that this claim be plead with additional specificity, Plaintiffs request that they be permitted to amend their complaint.

Case 1:08-cv-00488-WCG   Filed 08/11/08   Page 30 of 35   Document 29

for specified work.[78]  Waupaca's offer is that it will pay its employees for the time they work on an hourly and piecerate basis, and the employees promise in return to do the work assigned to them.  Their wages constitute the consideration in the bargain.  As noted, neither the FLSA nor (for the Wisconsin sub-class, WFLSA) mandate payment at hourly rates other than the minimum wage.

Here, Plaintiffs have alleged sufficient facts to support the elements of a contract between themselves and Waupaca; breach of that contract through Waupaca's failure to provide the employees "with full payment based upon all of the hours they worked"; and damages as a result. Compl. ¶¶ 61-62.  At this nascent pleading stage, Plaintiffs do not need to show the specific facts that show that as a matter of law they will ultimately prevail and prove that Waupaca promised to pay for all work activities—including time spent donning, doffing, showering, and walking to and from the production floor.[79]

### C.  Plaintiffs' claim for willful violations of the FLSA complies with Rule 8.

Finally, Waupaca argues that Plaintiffs have not plead a "plausible factual basis" for their assertion that Waupaca has willfully violated the FLSA.  If Waupaca's violations of the FLSA are found to be willful, the standard two-year statute of limitations will be extended to three years.[80]

---

[78] *Price v. Wisc. Servs. Corp.*, 55 F. Supp. 2d 952, 955 (E.D. Wis. 1999) (holding that under § 1981 an at-will arrangement is an enforceable contract and noting that "an at-will employment arrangement can still create enforceable contract rights (i.e., the employee performs specified work in consideration for specified pay)); *Henry v. Trammell Crow, SE, Inc.*, 34 F. Supp. 2d 629, 635-36 (W.D. Tenn 1998) (stating Tennessee courts recognize enforceable contractual rights in at-will arrangements); *Whinery v. Roberson*, 819 N.E.2d 465, 472 (Ind. Ct. App. 2004) (stating "an employment agreement to work for a specified period of time or an at will relationship is considered contractual") (quoting *Remmers v. Remington Hotel Corp.*, 56 F. Supp. 2d 1046, 1052 (S.D. Ind. 1999).

[79] *See Kasten*, 2008 WL 2262076, at *12 (denying plaintiffs' motion for summary judgment on breach of contract claim).

[80] 29 U.S.C. § 255(a).

24

The question of willfulness is a fact question not capable of resolution in a motion to dismiss.[81]   As explained by *Acosta Colon v. Wyeth Pharmaceuticals Co.*, which considered allegations similar to those plead by Plaintiffs here:

> [E]ven if this Court were certain that Plaintiffs could not prove the willful acts of their employer, and thus, no relief existed that this Court could grant, the issue of their employer's acts being willful must still be left for the trier of facts to decide once it is determined whether the gowning, doffing and donning subject of the instant case is, in fact compensable…it is evident that plaintiffs' sufficient allegation regarding the defendant's conduct as willful, which in turn, triggers the applicability, at least temporarily, of the three year statute of limitations.

The standard of **proof**—and **not pleading**, as Waupaca contends—for willfulness is whether the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."[82]   Willfulness can be found not just where an employer knowingly violates the act, but where it fails to ensure compliance with the FLSA.[83]   In *Alvarez v. IBP*, for example, the Ninth Circuit upheld the district court's willfulness finding because "IBP was on notice of its FLSA requirements, yet took no affirmative action to assure compliance…To the contrary, IBP's actions may be more properly characterized as attempts to evade compliance, or to minimize actions necessary to achieve compliance."[84]

---

[81] *Morrison v. Quality Transp. Servs., Inc.*, 474 F. Supp. 2d 1303, 1309 (S.D. Fla. 2007); *Acosta Colon v. Wyeth Pharmaceuticals Co.*, 363 F. Supp. 2d 24, 29 (D.P.R. 2005); *Ladegaard v. HardRock Concrete Cutters, Inc.*, No. 00-5755, 2004 WL 1882449, at *7 (N.D. Ill. 2004); *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003) (noting "the determination of willfulness is a mixed question of law and fact); *Bank v. Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995) (stating that question of willfulness was a "factual decision that the jury had to make.").

[82] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Notably, both *McGlaughlin* and *Tiffy v. Speck Ent., Ltd.*, 418 F. Supp. 2d 1120, 1127 (S.D. Iowa 2006), which Waupaca also cites, were summary judgment cases.

[83] *Alvarez*, 339 F.3d at 908-909 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)).

[84] *Alvarez*, 339 F.3d at 909.  Other courts have found violations to be willful where "an employer disregards the DOL's Wage and Hour Division warnings, ignores the advice of its own legal department, or has been penalized previously for violating the FLSA."  *Bull v. United States*, 68 Fed. Cl. 212, 272 (Fed. Cl. 2005) (internal citations omitted).

Waupaca's boilerplate recitation to *Twombly* does not entitle it to dismissal. As the Seventh Circuit has recently cautioned, "*Bell Atlantic* must not be overread."[85] While a complaint "must always…allege 'enough facts to state a claim to relief that is plausible on its face,'…***how many facts are enough will depend on the type of case.***"[86] Here, contrary to what Waupaca states, Plaintiffs have not plead that Waupaca negligently disregarded the FLSA. Instead, each of the Plaintiffs have asserted that no employee was paid for donning and doffing, or showering time—so it can be plausibly inferred that this is a common policy, and the company made a deliberate choice not to pay for this time, in contravention of the FLSA. Compl. ¶¶ 24-25, 43.

As Waupaca admits, this is a "simple and straightforward" case. Def. Br. at 7. Waupaca has not shown how it would be burdened by discovery into its attempts to ensure compliance with the FLSA—in fact, because Plaintiffs anticipate that Waupaca will eventually plead "good faith" as an affirmative defense to the FLSA claims, for which it has the burden of proof, the same facts that purportedly will establish that defense will support or undermine the willfulness claim.[87] Indeed, because Waupaca has conceded that Plaintiffs' FLSA claim passes the Rule 8 test, and is therefore plausible, it is disingenuous to argue that the willfulness allegations should be dismissed under Rule 12(b)(6).

Waupaca believes that Plaintiffs must, at this stage, plead facts that "***demonstrate*** that

---

[85] *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008) (examining *Bell Atlantic* and *Erickson*, 127 S.Ct. 2197).

[86] *Id.* (emphasis added); *see also Westerfield*, 527 F. Supp. 2d at 845 (recognizing that certain kinds of cases require "'enough facts to raise a reasonable expectation that discovery will reveal evidence of [illegal conduct]'").

[87] *See McGlaughlin*, 486 U.S. at 1682 (noting that a "completely good faith but incorrect assumption" does not give rise to a finding of a willful violation); 29 U.S.C. § 260 (stating a court may mitigate or deny liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]"); *see also Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1369-70 (N.D. Ill. 1995) (discussing interrelationship between the good faith defense and willfulness).

26

Waupaca was aware that its practices violated the FLSA." Def. Br. at 34 (emphasis added). This foists a burden of pleading on Plaintiffs that does not exist. Plaintiffs are not required, at the pleading stage, to plead or know all facts that entitle them to judgment as a matter of law. Waupaca's motion must therefore be denied.

## CONCLUSION

Waupaca's motion flies in the face of binding Seventh Circuit authority, as it has not produced empirical evidence or alleged any fact establishing that state law frustrates or renders ineffective any congressional objective. Waupaca has not met its burden and demonstrated that it was the "clear and manifest" purpose of Congress to preempt Rule 23 actions. Nor has Waupaca met its burden and shown that Congress intended to preempt any state statutory or common law claim. It would be clear error for this Court to follow Waupaca's novel interpretation of preemption and the FLSA.

Waupaca has also not shown that Plaintiffs' Complaint fails to comply with Rule 8. Waupaca's motion should be denied.

Dated: August 11, 2008                   Respectfully Submitted,

                                         **ZIMMERMAN REED, P.L.L.P.**


                                         By: s/Anne T. Regan_____
                                             Ron Goldser (WI#01021302)
                                             J. Gordon Rudd, Jr. (#222082)
                                             Anne T. Regan (#333852)
                                             651 Nicollet Mall, Suite 501
                                             Minneapolis, MN 55402
                                             Telephone: (612) 341-0400

                                             **LARSON ● KING, LLP**
                                             T. Joseph Snodgrass (#231071)
                                             Kelly Swanson (#330838)
                                             Troy Tatting (#354156)

2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6510

***ATTORNEYS FOR PLAINTIFFS***