UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

_____

Ryan DeKeyser, Thomas Cooper, Harley
Granius, and Carlo Lantz, on behalf of
themselves and other similarly situated,

      Plaintiffs and Proposed Collective and       Civil No. Civil No. 08-C-488
      Class Action Representatives,

-v-

ThyssenKrupp Waupaca, Inc., d/b/a Waupaca
Foundry, Inc.

      Defendant.
_____

**PLAINTIFFS' REPLY MEMORANDUM SUPPORTING THEIR
MOTION FOR CONDITIONAL CERTIFICATION**
_____

# TABLE OF CONTENTS

Argument ........................................................................................................................................ 2

I. Waupaca Does not Dispute Plaintiffs' Evidence of a Common Policy not to Pay for Time Spent Donning, Doffing, Walking, or Showering. ............................................................... 2

    A. The decision not to pay workers for time spent showering is a common decision, practice, and policy. ................................................................................................... 2

    B. The decision not to pay for all time spent donning, doffing, walking, and showering pre- and post-shift constitutes a common decision, practice, and policy. ........................ 4

    C. Variations between the meal break policies at the Wisconsin, Indiana, and Tennessee plants do not defeat collective treatment of Plaintiffs' claims. ........................................ 6

II. Plaintiffs Have Made the Required "Modest Factual Showing" Using Admissible Evidence. 7

    A. Plaintiffs have come forward with admissible representative testimony regarding the practices at each of Waupaca's plants. ........................................................................... 7

    B. Former employees may represent current employees. ..................................................... 10

    C. Over 60 plaintiffs have opted in to this case. ................................................................... 11

    D. FLSA certification focuses on the force, not quantity, of proof. ................................... 11

III. Now is the Time for Conditional Certification. ..................................................................... 12

IV. Plaintiffs' Form and Method of Notice Should be Approved. ............................................... 13

In its opposition to Plaintiffs' motion for conditional certification, Waupaca argues that Plaintiffs' FLSA claims should not proceed collectively—thus requiring this Court to preside piecemeal over 66 separate cases of the Named and Opt-in Plaintiffs, plus any additional claims that may be filed. Waupaca's approach ignores the FLSA's remedial purpose and would tax this Court's resources.

Waupaca bases much of its analysis on this Court's recent decision in *Adair v. Wisconsin Bell, Inc.*, No. 08-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008). But this case differs from *Adair* in several important ways:

- Unlike the defendant in *Adair*, Waupaca fails to dispute that it does not pay Plaintiffs for *all* time spent donning, doffing, walking between their changing areas and work stations, and showering post-shift.

- Unlike the plaintiffs in *Adair*, Plaintiffs offer testimony from individuals who have personal knowledge of each of the six plants at issue.

- Unlike *Adair*, dozens of similarly situated class members have joined this lawsuit.

Further, Waupaca fails to distinguish the long line of caselaw that overwhelmingly confirms that conditional certification of donning and doffing claims is appropriate. Instead, Waupaca attempts to defeat collective treatment of Plaintiffs' claims by contending that it fortuitously pays for "some" donning and "some" walking time by employees purportedly dispersed in 142 job classifications in six different plants. But it does not refute Plaintiffs' evidence of a common decision, plan, and policy not to pay for ***all*** time donning, doffing, walking between changing areas and the plant floor, or, most importantly, showering post-shift. The Plaintiffs are similarly situated with respect to this common policy, and the Court should conditionally certify the Class.

1

# ARGUMENT

## I. Waupaca Does not Dispute Plaintiffs' Evidence of a Common Policy not to Pay for Time Spent Donning, Doffing, Walking, or Showering.

### A. The decision not to pay workers for time spent showering is a common decision, practice, and policy.

Conceding that it uniformly fails to pay employees for post-shift showering, Waupaca contends that because it does not "require" Plaintiffs to shower on site, showering is not "necessary and indispensable" to Plaintiffs' jobs. This is a merits question that is overwhelmingly common to each of the putative class members. In fact, it is likely to be the issue that dominates this litigation.[1]

In *Steiner v. Mitchell*, the Supreme Court decided that "[a]n activity is integral to a principal activity if the activity is made necessary by the nature of the work performed, it fulfills mutual obligations between the employer and his employees, the activity directly benefits the employer in the operation of his business, and the activity is closely related to other duties performed by the employees."[2] On the facts of that case, the Court held the clothes-changing and showering time undertaken by battery plant employees was compensable. The employees, the Court found, had to "make extensive use of dangerously caustic and toxic materials, and *are compelled by the circumstances*, including vital considerations of health and hygiene, to change clothes in facilities which state law requires their employer to provide."[3] Lead poisoning was the principal concern; the primary ways lead poisoning was contracted were through "inhalation and

---

[1] The question of compensability for showering and other hygiene activities is one for summary judgment or trial. *See, e.g., Musch v. Domtar Indus., Inc.*, ---F.R.D.---, No. 07-524, 2008 WL 2751231, at *2-5 (W.D. Wis., Jan. 30, 2008) (Shabaz, J.) (certifying for purposes of FLSA and Rule 23 class of pipefitters who sought compensation for pre- and post-shift hygiene, including showering, activities). All unpublished decisions are attached as Ex. H to the Affidavit of Anne T. Regan, October 20, 2008.

[2] *Steiner,* 350 U.S. 247, 252 (1956) (emphasis added). To interpret *Steiner's* standard as Waupaca does—mandating compensation only for those activities that an employer *requires* to be done—would create an enormous moral hazard, i.e., an employer could not "require" something officially, at the expense of the health and safety of its employees, so as to avoid ever compensating for it.

[3] *Id.* at 248 (emphasis added).

ingestion…lead dust and lead fumes [could]…attach themselves to the skin, clothing and hair of the employees. Even the families of battery workers may be placed in some danger if lead particles are brought home in workers' clothing or shoes."[4] Notably, industrial hygiene and medical experts had recommended "the removal of clothing and showering at the end of the work period," and the Tennessee Workers' Compensation Act made "lead poisoning a compensable occupational disease."[5] The Court also noted that "the insurance carrier would not accept the insurance risk if defendants refused to have showering and clothes-changing facilities for their employees."[6]

To avoid *Steiner*'s implications, Waupaca's non-expert declarants go to the merits and astonishingly contend that they are "unaware of any statute, regulation, health or safety reason that would require Plaintiffs to shower on Waupaca's premises."[7] This is clever phraseology, but importantly not one declarant contends that it is safe *not* to shower. In contrast to Waupaca's declarations, the United States Department of Labor specifically warns foundry employers and employees that foundry workers should shower and change into clean clothes on-site due to silica exposure.[8] For example, an Occupational Health and Safety Administration (OSHA) "Fact Sheet" advises that employers and their employees protect against crystalline silica exposure by wearing approved respirators and "disposable or washable work clothes," and by showering on site and changing into clean clothes thereafter.[9] The risk, if a showering and clean clothes

---

[4] *Id.* at 250.

[5] *Id.* The States of Indiana, Tennessee, and Wisconsin have long recognized silicosis as a compensable occupational disease. *See, e.g., Gray v. Daimler-Chrysler Corp.*, 821 N.E. 431, 436 (Ind. Ct. App. 2005); *Wilson v. Van Buren Cty.*, 268 S.W. 2d 363, 363-64 (Tenn. 1954); *Milwaukee Malleable & Grey Iron Works v. Indus. Comm'n of Wi.*, 2 N.W.2d 197, 198 (Wis. 1942).

[6] *Id.* at 251.

[7] Def. Mem. at 14-15. Suffice to say that these statements would not withstand *Daubert* scrutiny.

[8] *See* Regan Aff. Ex. A (OSHA Fact Sheet).

[9] *Id.*

practice is not followed, extends to the foundry workers' children[10] who are at increased risk of industrial disease.[11] Material Data Safety Sheets for Waupaca's products contain silica warnings and confirm the obvious existence of silica in the foundry process.[12]

Undoubtedly all employees are similarly situated with respect to the central question whether post-shift showering is integral to the Plaintiffs' and putative class' principal activities, and on this basis alone the Court should grant Plaintiffs' motion.

### B. The decision not to pay for all time spent donning, doffing, walking, and showering pre- and post-shift constitutes a common decision, practice, and policy.

Waupaca does not refute that Plaintiffs and the putative opt-in class are paid based upon the time that they clock in and clock out, which does not capture all the pre- and post-shift time Plaintiffs spend donning, doffing, walking from the locker room and other plant areas to their work stations, and showering post-shift.[13] In *Adair*, this Court recognized the "significant distinction between the allegation that the Company was using a mechanical timekeeping system that, by its very nature, failed to capture its employees' entire time at work and the allegation that…they *thought* it was doing so…The first reflects a company-wide policy that would merit a collective response."[14] Faced with being on the "collective response" side of this distinction, Waupaca responds to Plaintiffs' allegations by claiming that there are "approximately" 142

---

[10] *See, e.g.,* Montana Dep't of Labor and Industry, Silica Dust Exposure, at *7 ("Wearing work clothes home covered in silica dust can expose workers family to the hazard."). Regan Aff. Ex. B.

[11] *See, e.g.*, Pennsylvania Foundry Association, Protecting Yourself From Silicosis in the Foundry Industry, A Worker Education Module, Slide 11, ("Children are more susceptible to lung disease from dusts because they breathe faster than adults."). Regan Aff. Ex C.

[12] Regan Aff. Ex. D.

[13] *See, e.g.*, Cooper, Granius, DeKeyser, Lantz, Koschak, Butts, Kinser, Wennesberg Affs. at ¶¶ 13-16.; Compl. ¶¶ 1, 24, 40. Waupaca's failure to dispute this fact critically distinguishes this case from *Adair*, where "Wisconsin Bell responded to plaintiffs' motion…with unequivocal evidence that it does not calculate its employees' wages based on the time they are logged onto the phone system…Rather…its employees are paid on the basis of their scheduled shift." *Adair*, 2008 WL 4224360, at *5.

[14] *Adair*, 2008 WL 4224260, at *5.

4

different job classifications at its six plants, which purportedly have different requirements for donning and doffing, and different requirements for when employees must swipe in or out, thus requiring individualized analysis of each Plaintiff. Def. Mem. at 13.

Putting aside that this argument requires the Court to "ignore the realities of the industrial world,"[15] Waupaca has failed to produce unequivocal, admissible evidence of how these minute differences defeat collective treatment of Plaintiffs' claims. First, the statement concerning the purported 142 job classifications lacks foundation and is inadmissible.[16] Second, none of Waupaca's declarants provide specifics on what precisely these "job classifications" are, or where they fall within Waupaca's 13 departments, nine of which are common to each plant.[17] When it comes time to show how the donning and doffing and clock in and out policies differ between each department or classification, Waupaca's declarants only state that "some" production employees are required to wear certain types of uniforms and personal protective equipment. Similarly, "some" production employees swipe in and out at certain time clocks, while others swipe in or out at different locations. When closely examined, these declarations merely provide an inference that pre- and post-shift, some employees may be paid for some time walking from a timeclock located near the changing area to the work station. Not one declarant indicates that any hourly employee is permitted to swipe out *after* post-shift doffing or

---

[15] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691 (1947), *superseded by statute on other grounds*.

[16] *See* Leonard Decl. ¶18. Leonard is the only declarant to offer this unsworn testimony. However, as he is only the Personnel Manager for Plants 2 and 3, had experience in Plant 1 for only a few months of the proposed Class Period, and has not provided any other testimony to explain how he has personal knowledge of the operations at the remaining four plants, this statement lacks foundation and is inadmissible.

[17] Each plant has the following departments: Melt, Coreroom, Millroom, Quality, Disa, Maintenance, Pattern Shop, Shakeout, Shipping and Receiving. Flees Decl, ¶ 5; Leonard Decl. ¶ 6, Zobel Decl. ¶ 6; Zellers Decl. ¶ 5; Chandler Decl. ¶5. Every plant except Plant 1 has a Stockroom. *Id.* Plant 4 has a "Press" department, Zobel Decl. ¶ 6, and Plant 5 has a Sand Lab and a Metallurgical Lab. Zellers Decl. ¶ 5.

5

showering, and is therefore paid for this time.[18] Moreover, even "some" suggests Waupaca's categorical decisions concerning timekeeping and what is "necessary and indispensable" to an employee's work, and what is not.[19]

Plaintiffs need only be "similarly situated," not identically situated to gain conditional certification.[20] The kind of argument Waupaca now makes has been rejected at the second stage of the FLSA collective action inquiry. Recently, in refusing to grant a poultry processor's motion to decertify a class of poultry processing workers employed at three plants in two states, the United States District Court for the District of Minnesota quashed the argument that on a plant by plant and department by department basis there was "wide variation in what opt-in plaintiffs don and doff, and in how different plants are physically configured, [making] this case unsuitable for class treatment."[21] The court disagreed, stating, "[i]f one zooms in close enough, differences will abound…plaintiffs' claims need to be considered at a higher level of abstraction."[22]

Here, at the first stage of the FLSA certification analysis, the appropriate level of abstraction is the common decision not to pay for all time worked. Waupaca does not refute this central claim. Plaintiffs' motion should be granted.

### C. Variations between the meal break policies at the Wisconsin, Indiana, and Tennessee plants do not defeat collective treatment of Plaintiffs' claims.

Waupaca contends that purportedly "crucial" distinctions between the meal break practices at Plants 1-4, in Wisconsin, and Plants 5 and 6, in Indiana and Tennessee, respectively, mean that

---

[18] Flees Decl. ¶ 12; Leonard Decl. ¶ 13; Zobel Decl. ¶ 13; Chandler Decl. ¶ 12. Notably, Darrell Zellers fails to state what the practice in Tennessee is, indicating only that employees are paid based upon the time an employee swipes in or out. Zellers Decl. ¶ 12.

[19] For example, that employees can put on a uniform at home does not take it out of the realm of compensability. *See, e.g., Apperson v. Exxon Corp.*, No 78-192, 1979 WL 1979, at *8-9 (E.D. Cal. Feb. 7, 1979).

[20] *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848-49 (N.D. Ill. 2008).

[21] *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018, 2007 WL 728504, at *4 (D. Minn. Sept. 24, 2007) (Schiltz, J.).

[22] *Id.* at *4.

6

Case 1:08-cv-00488-WCG   Filed 10/20/08   Page 8 of 17   Document 70

employees are not similarly situated. Def. Mem. at 10-11. But Waupaca concedes that each plant has *a* single meal break policy, demonstrating that on a plant by plant basis, with respect to the meal break policies Plaintiffs and the putative class members are similarly situated.[23] Rather than defeating collective treatment, these plant-wide uniform policies mean that subclasses could be certified to reflect the distinctions in meal break policies at the Indiana and Tennessee plants. Subclasses are commonly used in FLSA actions as a case management tool to distinguish between geographic locations, or between FLSA claims and state wage and hour claims.[24] However, for the purposes of sending FLSA notice, it is not necessary to create and certify these subclasses now. Subclasses can be considered and formed after additional discovery.

## II. Plaintiffs Have Made the Required "Modest Factual Showing" Using Admissible Evidence.

### A. Plaintiffs have come forward with admissible representative testimony regarding the practices at each of Waupaca's plants.

Waupaca asks the Court to abandon common sense and assume that each of the Plaintiffs who submitted affidavit testimony has somehow worked in a vacuum all these years, unaware of his fellow co-workers and how his job(s) fits within the overall scheme of Waupaca's manufacturing operations. Many of the Plaintiffs have held multiple positions, in different plants and on multiple shifts.[25] These representative Plaintiffs laid the foundation for their personal

---

[23] Waupaca concedes that none of the Wisconsin Plaintiff affidavits *claims* they were not paid for their breaks. Def. Mem. at 11, n.8. These Plaintiffs merely describe the policies at their respective plants; they do not contend that these meal break policies violated FLSA.

[24] *See, e.g., Crawford v. Lexington-Fayette Urban Cty. Gov't,* , No. 06-299, 2008 WL 2598345, at *1 (E.D. Ky. June 25, 2008) (describing three subclasses based on type of alleged violation); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. 07-01841, 2008 WL 2397424, at *1 (N.D. Cal. June 10, 2008) (describing two FLSA subclasses based on type of alleged violation as well as geographic distribution of employees); *Trotter v. Perdue Farms, Inc.*, No. 99-893, 2001 WL 1003448, at *3 (D. Del. Aug. 16, 2001) (certifying Rule 23 and FLSA subclasses that reflect geographic distinctions).

[25] Cooper Aff. ¶ 2; Granius Aff. ¶ 2; DeKeyser Aff. ¶ 2; Lantz Aff. ¶ 2; Koschak Aff. ¶ 2; Butts Aff. ¶ 2; Kinser Aff. ¶ 2; Wennesberg Aff. ¶ 2. For example, Carlo Lantz' and Jim Koschak's supplemental declarations demonstrate that they do, in fact, have personal knowledge concerning the various departments, job positions, and employees in all three Waupaca facilities. *See* Lantz Decl. at ¶¶ 5-7; Koschak Decl. at ¶¶ 4-6; *see also* Wennesberg Aff. at ¶ 2. Moreover, Waupaca's argument that Plaintiffs who work(ed) at Waupaca Plant 3 cannot possibly have knowledge

7

knowledge of Waupaca's foundry operations and pay polices in their affidavits. In addition, they have submitted supplemental affidavits and declarations, further laying the foundation for their knowledge of how Waupaca operates.[26] This supplemental testimony shows how Plaintiffs have built their knowledge of Waupaca's policies.

### 1. Plaintiffs' affidavits do not contain inadmissible hearsay.

Waupaca contends that portions of Plaintiffs' testimony are inadmissible hearsay. Contrary to Waupaca's belief, Jim Koschak's account of his conversation with his foreman, Jerry Jeske, is not hearsay.[27] The verbal reprimand Koschak received is not a "statement offered to prove the truth of the matter asserted."[28] The account for the reasons why the reprimand issued is also not hearsay, because it is offered for the "distinct and legitimate purpose" of establishing the basis for Koschak's testimony concerning the reprimand.[29] And even if the account of Koschak's Supervisor's statements were hearsay, it would be deemed a party admission under 801(d)(2)(A), (C), and (D).[30]

Finally, the statements concerning fears of retaliation are also not inadmissible hearsay. They are expressions of a state of mind, and fall within the exception contained in Federal Rule

---

of or have observed employees in Plant 2 is belied by the fact that Plants 2 and 3 are physically connected to one another and employees from both Plants share a single locker room. *See* Lantz Decl. at ¶ 8; Koschak Decl. at ¶ 7; *see also* J. Leonard Decl. at ¶ 1 (identifying himself as the Personnel Manager of both Plants 2 and 3).

[26] *See generally* Wennesberg Aff.; Lantz Decl.; Koschak Decl.; Granius Decl.; DeKeyser Decl.; Butts Decl.; Cooper Decl.

[27] Koschak Aff. ¶ 19.

[28] Fed. R. Evid. 801(c); Fed. R. Evid. 801, Advisory Cmte. Notes, 56 F.R.D. 183, 293 (defining a "verbal act" as having significance "solely in the fact it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay" and as "a circumstance bearing on conduct affecting their rights"); *see also see also United States v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999) (distinguishing between hearsay and verbal acts); *United States v. Robinzine*, 80 F.3d 246, 252 (7th Cir. 1996).

[29] *See United States v. Bursey*, 85 F.3d 293, 296 (7th Cir. 1996).

[30] Waupaca has provided no facts to show that its foremen are not in some way responsible for enforcing pay policies, and thus are agents. However, even if the agent or servant party admission prong does not apply, Jeske was apparently authorized to inform other employees of Company policy.

8

of Evidence 803(3).[31] They are offered to demonstrate how Plaintiffs have interpreted Waupaca's efforts to chill participation in this lawsuit, and accordingly are admissible.[32]

### 2. Plaintiffs' affidavits are reliable.

Waupaca further objects to Plaintiffs' affidavits on the grounds that they are unreliable. Plaintiffs first note the irony of attacking Billy Kinser, now a former employee, for fearing retaliation—because he was in fact fired after he submitted his declaration to counsel stating his fear that he would be retaliated against for participating in this action.[33]

Second, the Court must reject Waupaca's inflammatory characterization of Plaintiffs as liars. Thomas Cooper explains in his supplemental declaration that he considers his title to be "General Laborer" because "ThyssenKrupp's 'Department Staffing Report' lists my position as 'General Foundry.'" He acknowledges that he works typically, but not always, as a Disamatic Operator.[34] Similarly, Harley Granius explains that he is still employed as a Shake-Out operator, but because of work restrictions has been working in a light duty position.[35] This does not change the fact that as a Shake-Out Operator employed during the proposed Class Period he was required to don

---

[31] Fed. R. Evid. 803(3); *see also Lightner for and on behalf of NLRB v. Dauman Pallet, Inc.*, 823 F. Supp. 249, 252 n.2 (D.N.J. 1992) (citing cases and stating "employees' statements that they feared employer retaliation is admissible to prove that in fact they feared retaliation").

[32] *E.g.*, Granius Aff. ¶ 22-23. It would make little sense for Plaintiffs to name the co-workers who fear retaliation, as this would remove the cover of anonymity from people who currently wish to remain anonymous. If the Court requests, Plaintiffs can provide the names of other co-workers who have expressed their concern in an *ex parte* letter or affidavit.

[33] Similarly, former employees may well fear retaliation in the form of a negative performance appraisal to a future employer, so Carlo Lantz genuinely expressed his concern. The fact that the Affidavits or Declarations submitted in support of this Motion contain substantially similar allegations supports Plaintiffs' argument that they and other members of the putative class are similarly situated and should not be used to deny this Motion. *See Stanfield v. First NLC Fin. Servs., LLC*, No. C 06-392, 2006 WL 3190527, at *4 (N.D. Cal. Nov. 1, 2006) (denying employer's motion to strike plaintiffs' declarations in support of conditional certification where are each was substantially the same); *see also Doe v. Texaco, Inc.*, No. C06-02820 WHA, 2006 WL 2850035, at *2 (N.D. Cal. Oct. 5, 2006) (holding that "'plaintiffs' use of identical language is not grounds for striking their declarations'").

[34] Cooper Decl. ¶ 2.

[35] Granius Decl. ¶ 2. Granius' personnel manager also quibbles with his reported hourly base rate, without reporting what the rate actually is.

9

and doff certain items of equipment. Carlo Lantz, in response to Joey Leonard's statement that he did not have to wear a uniform, in fact did wear a uniform.[36]

### B. Former employees may represent current employees.

Courts have overwhelmingly certified classes where only former employees initiated suit.[37] This is because even if former employees have no interest in obtaining prospective relief, there is no disincentive for seeking it. Moreover, the FLSA affords a private plaintiff only the remedies of back wages, liquidated damages, and costs and attorneys' fees; only the DOL can bring a claim for injunctive relief.[38]

Even so, Waupaca claims that to "certify a class of potentially thousands of employees…solely on the affidavits from 1 or 2 former employees…is unwarranted as a matter of law." Def. Mem. at 10. Waupaca fails to cite even one case supporting this sweeping proposition. The sole case that it relies upon, *Infantino v. Martam Con., Inc.*, is clearly inapposite.[39] There the court determined that the affidavit of a former employee who had left his position *more than two years* before the case was filed was not indicative of "the employment practices during the relevant time period."[40] These facts do not exist here; more importantly,

---

[36] Lantz Decl. ¶ 11. Mr. Lantz erroneously stated in his affidavit that his uniform was flame resistant. Nevertheless, given that Waupaca has stated that there is no difference between the flame resistant and non-flame resistant uniforms, this is a distinction without a difference. Leonard Decl. ¶ 10.

[37] *See, e.g., Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1974); *Gutierrez v. Johnson & Johnson*, 467 F. Supp. 2d 403, 413 (D.N.J. 2006) (denying class certification on grounds other than adequacy, and stating that "in non-class action context, former employees do not have standing to assert claims for injunctive relief" but stating that in class action context, former employees are adequate representatives of current employees); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *19 n.7 (N.D. Ill. Nov. 30, 2000) (holding former employee adequate); *Church v. Consol. Freightways, Inc.*, No. C-90-2290, 1991 WL 284083, at *5-7 (N.D. Cal. June 14, 1991) (citing cases and holding former employees may represent current employees).

[38] 29 U.S.C. § 217.

[39] No. 04-5665, 2004 WL 3132362, at *1 (N.D. Ill. July 18, 2005).

[40] *Id.*

10

Waupaca has come forth with no evidence to suggest that its practices have changed since these employees left Waupaca.

### C. Over 60 plaintiffs have opted in to this case.

Despite the fact that over 60 current or former Waupaca employees have opted in to this case, Waupaca contends that this showing is insufficient to support certifying a class.[41] Even assuming this standard applies, courts measure "interest" by examining whether other class members would opt-in.[42] Plaintiffs have already met this standard in spades.

### D. FLSA certification focuses on the force, not quantity, of proof.

Waupaca criticizes Plaintiffs for not coming forth with affidavits from each of the opt-ins in this case. Of course, such a supposed requirement would defeat the very nature of a collective action. None of the authority Waupaca cites supports this fictional standard. In *West v. Border Foods, Inc.*, the court could not infer that the alleged illegal practice at one location was more widespread, because the defendant had "presented evidence which refutes the Plaintiffs assertion that a centralized policy required shift managers to work off the clock."[43] In contrast to the defendant in *West*, Waupaca has not come forth with facts showing that individual foremen or supervisors are charged with determining when employees clock in or out, or determining whether employees can get paid for showering post-shift.

Similarly, in *Flores v. Lifeway Foods, Inc.*, two of the original four plaintiffs essentially conceded that no FLSA violation existed as to them; based on those facts, the court found it more likely that the alleged violations were personal to the two remaining plaintiffs.[44] Last, *Harrison*

---

[41] Def. Mem. at 15-16.

[42] *E.g., Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991).

[43] No. 05-2525, 2006 WL 1892527, at *6-7 (D. Minn. Jul. 10, 2006). Importantly, some discovery had taken place, including depositions of the defendant's officers, plaintiffs, and document production. *Id.* at *6-8.

[44] 298 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003).

11

*v. McDonald's Corp.* does not support Waupaca's argument that Plaintiffs must come forward with a larger sample of affidavit testimony. In that case, the defendant had "produced over 4,000 pages of timekeeping records."[45] In addition, because portions of the two affidavits the plaintiffs submitted were stricken, there was "scant evidence that any employee…was not fully compensated for all the hours he or she worked."[46]

Here, Plaintiffs submit unrebutted evidence of a common scheme in which *all* Waupaca production employees are not fully compensated for time spent donning, doffing, walking between changing areas and the plant floor, and post-shift showering.[47] This representative testimony reflects the economies of scale collective treatment affords; no greater sample is needed.

## III.  Now is the Time for Conditional Certification.

Plaintiffs' motion is not premature. Plaintiffs brought their motion to ensure that certification ensues at the earliest possible date, so as not to prejudice the putative class of opt-ins, whose statute of limitation continues to run.

Plaintiffs find it hard to take seriously Waupaca's concern, expressed in note 19 of its brief, that if the Court were to grant FLSA certification now, and then grant Plaintiffs' motion to certify the state law claims under Rule 23, putative class members will be confused by receiving two forms of notice. Multiple actions across the country have combined FLSA and Rule 23 classes.[48] Plaintiffs are confident that the parties can work together to craft and submit proposed Notices

---

[45] 411 F. Supp. 2d 862, 870 (S.D. Ohio 2005).

[46] *Id.*

[47] *See Burch v. Qwest Communications,* 500 F. Supp. 2d 1181, 1188-89 (D. Minn. 2007) (finding number of plaintiff affidavits sufficient even where they constituted less than 1% of the putative class, because there was a common policy).

[48] *See, e.g., In re Farmers Ins. Exchange Overtime Pay Litig.*, 300 F. Supp. 2d 1020, 1028-29 (D. Or. 2003); *see also Musch*, 2008 WL 2751231, at *8.

that eliminate any potential for confusion and that are carefully tailored to explain to class members their legal rights and obligations.[49] For example, those who have previously opted in could receive a different notice than Notice than those who have not.[50]

## IV. Plaintiffs' Form and Method of Notice Should be Approved.

Waupaca's proposed changes to Plaintiffs' Notice only act to create confusion among putative class members and to dissuade them from participating in this action.[51] Notably, each of the purported notice "deficiencies" raised by Waupaca have previously been approved and authorized by various district courts, including the Eastern District of Wisconsin.[52]

*First*, contrary to the notice found lacking in *Guzman v. VLM, Inc.*, Plaintiffs' proposed Notice expressly informs potential opt-in plaintiffs that they can retain independent counsel.[53]

*Second*, it is entirely appropriate for opt-in parties to agree to be represented by Plaintiffs' attorneys and to authorize the attorneys' law firms to file their consent forms with the Court on the opt-in plaintiff's behalf.[54]

---

[49] *E.g., Musch*, 2008 WL 2751231, at *8. As Waupaca notes, most of the plaintiffs have a high school or technical college education. Far from being uncharitable characterization, these facts show the need for court-ordered notice advising these individuals' of their legal rights and obligations if they choose to join.

[50] *See, e.g., Frank v. Gold'n Plump Poultry, Inc.,* Preliminary Approval Order (approving FLSA Settlement Notice and Rule 23 Settlement Notice) (Ex. E).

[51] Waupaca seeks to cut the applicable opt-in period to a mere 45 days. However, Plaintiffs' proposed 120-day notice period is in line with the time periods used in other similar FLSA actions. Indeed, Waupaca faces no prejudice from a longer opt-in period, especially in light of its previous communications to members of the putative class. *See Prentice v. Fund for Public Interest Research, Inc.*, No. 06-7776, 2007 WL 2729187, at *4 (N.D. Cal. Sept. 18, 2007) (120-day opt-in period); *see also Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (90-day opt-in period deadline and ordering equitable tolling); *Cryer v. Intersolutions, Inc.*, No. 06-2032, 2007 WL 1053214, at *3-4 (D.D.C. Apr. 7, 2007) (90-day opt-in period; citing cases approving longer periods).

[52] *See* 09/09/08 Regan Aff. Ex. K (examples of notices approved in other FLSA cases) (Doc. No. 44).

[53] *Compare* Doc. No. 44-11 at 5 (advising opt-ins that "[i]f you choose to hire a different lawyer, you may do so at your own expense"); *with Guzman v. VLM, Inc.*, No. 07-1126, 2007 WL 2994278, at *7 (E.D.N.Y. Oct. 11, 2007) (modifying plaintiffs' proposed notice because it simply stated that putative opt-in plaintiffs had a right to consult with an attorney, followed by plaintiffs' counsel's name and contact information without any further information). Waupaca further seeks to eliminate language concerning the costs of litigation, which serves only to confuse rather than fully inform class members, and to dissuade their participation in this action out of fear that they will incur attorneys' fees by participating. Moreover, the proposed change runs contrary to the court-authorized notice in *Guzman* – a fact Waupaca conveniently omits from their discussion. *Compare* Benson Decl. Ex. A at 5 (Doc. No. 58), *with Guzman*, 2007 WL 2994278, at *8. Waupaca's proposed changes should be rejected accordingly.

*Third*, Waupaca's request that the notice include defense counsel's contact information is wholly unwarranted.[55] "Including additional lawyers only creates the potential for confusion of those who receive the notice."[56] Given Waupaca's prior improper communications with existing and putative opt-in plaintiffs, there is simply no reason to include Waupaca's attorneys contact information in either the Notice or the consent form.

*Fourth*, it is entirely proper for the Notice to refer to this Court. Court-authorized notices routinely include a court heading affixed to the first page of the notice, a section wherein the Court has signed and dated the notice, or both.[57] Nevertheless, to alleviate Waupaca's concerns that putative opt-ins will otherwise be misled into believing that the Court has sponsored or approved of Plaintiffs' claims on the merits, Plaintiffs agree to change the second bullet point on page 1 of Plaintiffs' proposed Notice by adding: "The Court has allowed this case to be a Fair Labor Standards Act collective action and has authorized this Notice. The Court has not, however, taken a position on the merits of either party's position."

---

[54] *See Belcher v. Shoney's, Inc.*, 927 F.Supp. 249, 254 (M.D. Tenn. 1996). Waupaca similarly objects to Plaintiffs' proposed consent form out of a feigned concern that it "improperly discourages class members from seeking outside counsel." Def.'s Brief at 26. However, Waupaca's notice does nothing to cure this purported defect. If the Court finds that Plaintiffs' consent form lacks appropriate language concerning class members' ability to obtain independent counsel, Plaintiffs propose that the Court use language similar to that used in *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018 PJS-RLE (D. Minn.). *See* Ex. F at ¶¶ 3-4.

[55] *Cryer v. Intersolutions, Inc.*, No. 06-2032, 2007 WL 1053214, at *3-4 (D.D.C. Apr. 7, 2007) (rejecting similar request by defense counsel).

[56] *Id.* at *3. Significantly, "[t]he lack of [defense] counsel's [contact information in the notice], in addition to the direction to contact only Plaintiffs' counsel for additional information …, sufficiently guards against potential opt-in plaintiffs improperly contacting [defense] counsel." *Parks v. Eastwood Ins. Servs., Inc.*, No. 02-507, 2002 WL 34370244, at *4 (C.D. Cal. 2002) (identifying defense counsel but refusing to include counsel's contact information in notice); *see also Belcher*, 927 F.Supp. at 255 (authorizing notice that identified defense counsel, but also directed that all additional information be obtained by writing or telephoning *plaintiffs'* counsel). Even the notice authorized in *Guzman* advises putative opt-in plaintiffs that "[i]f you choose to join this case, **you should not** contact the defendants' lawyers directly yourself." *Id.*, 2007 WL 2994278, at *8.

[57] *See* 09/09/08 Regan Aff. Ex. K (Doc. No. 44); *see also* Ex. G. In addition, Waupaca ignores the fact that Plaintiffs' proposed Notice already states that the "Court has not yet decided whether the workers of Waupaca are correct" as it relates to their wage and hour claims" on page 2. Doc. No. 44-11 at 2. Even Waupaca's proposed notice does not include such a disclaimer on page 1. *See* Benson Decl. Exs. A and C (Doc. No. 58) Doc. No. 44-11 at 2.

*Finally*, the Notice should be posted at Waupaca's plants to assure that potential collective action members receive actual notice of the case, and to combat Waupaca's attorneys' prior communications with putative class members, which sought to dissuade putative opt-in plaintiffs from joining this action.

Dated: October 20, 2008

Respectfully Submitted,

**ZIMMERMAN REED, P.L.L.P.**


By: s/Anne T. Regan
Ron Goldser (WI#01021302)
J. Gordon Rudd, Jr. (#222082)
Anne T. Regan (#333852)
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Telephone: (612) 341-0400

**LARSON ● KING, LLP**
T. Joseph Snodgrass (#231071)
Kelly Swanson (#330838)
Troy Tatting (#354156)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6510


*ATTORNEYS FOR PLAINTIFFS*