# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RYAN DeKEYSER, THOMAS COOPER,
HARLEY GRANIUS and CARLO LANTZ,
on behalf of themselves and others similarly situated,

    Plaintiffs,

  v.              Case No. 08-C-488

THYSSENKRUPP WAUPACA, INC. d/b/a
WAUPACA FOUNDRY, INC.,

    Defendant.

## DECISION AND ORDER GRANTING CONDITIONAL CERTIFICATION AND APPROVING NOTICE TO POTENTIAL FAIR LABOR STANDARDS ACT PLAINTIFFS

  Plaintiffs filed this lawsuit against their current or past employer, Defendant Thyssenkrup Waupaca, Inc. d/b/a Waupaca Foundry, Inc. ("Waupaca"). One of the claims Plaintiffs have brought is a collective action pursuant to the Fair Labor Standards Act of 1938 as Amended, 29 U.S.C. § 201, *et seq*. ("FLSA"). The claim asserted by the Plaintiffs relates to compensation for time spent "donning and doffing gear and equipment, showering, and walking to and from the production floor." (Compl. ¶ 1.) Presently before the Court is the Plaintiffs' motion seeking conditional certification of a collective class pursuant to Section 216(b) of the FLSA, and requesting approval of a proposed notice to be mailed to potential class members. As part of this motion, Plaintiffs make four specific requests: (1) appointing of counsel of record as Class Action Counsel; (2) approving the form and content of Plaintiffs' proposed "Notice of Collective Action"; (3)

requiring Waupaca to provide to Plaintiffs' counsel a list of all persons known by Waupaca to be members of the certified class; and (4) permitting putative class members 120 days from the date the Notice is mailed to opt in to the action. For the reasons stated below, Plaintiffs' motion will be granted subject to the conditions described herein.

**I. BACKGROUND**

The named Plaintiffs in this action are current and former nonexempt hourly workers who were or are employed by Waupaca at its foundries in Marinette or Waupaca, Wisconsin. (Compl. ¶¶ 1, 8-12.) The complaint contemplates three distinct classes of potential plaintiffs in addition to the named Plaintiffs: (1) the "FLSA class," those who were, are or will be employed by Waupaca as a foundry worker at any time within three years[1] prior to the complaint through the date of final disposition of the case; (2) the "Wisconsin class," those who were, are or will be employed by Waupaca as a foundry worker at any time within two years prior to the complaint through the date of final disposition of the case; and (3) other "similarly situated persons currently or formerly employed by Defendant in states other that the State of Wisconsin. . . ." (Compl. ¶ 2-4.)

The Plaintiffs allege that Waupaca, a member of a highly regulated industry, is required to provide proper environmental controls to protect worker safety and provide its workers the means to protect themselves from the dangers inherent in foundry work. (Compl. ¶ 22.) The complaint

---

[1]The Plaintiffs' contention that the putative FLSA Class would contain workers as far as three, *vice* two, years prior to the filing of the complaint is based upon an allegation of willfulness on the part of Waupaca. (Compl. ¶ 43.) The FLSA allows for a class spanning back three years if the alleged violations are willful. 29 U.S.C. § 255(a).

alleges that Waupaca has not fully compensated its employees "donning and doffing gear and equipment, showering, and walking to and from the production floor." (Compl. ¶ 1.) The FLSA claim is that Waupaca failed to pay overtime and failed to keep records of hours worked.

The FLSA class Plaintiffs move to have certified includes all persons who are or were employed by Waupaca at six foundries located in Waupaca and Marinette, Wisconsin, Tell City, Indiana and Etowah, Tennessee, for any time since June 4, 2005. Waupaca currently employs 3,017 hourly production employees at the six plants at these locations. (Def.'s Br. in Opp. to Pls.' Mot. for Conditional Certification ("Def.'s Resp. Br.") at 5; Dkt. #50.) These employees work in 142 distinct jobs in different departments. (Leonard Decl. ¶ 18; Dkt. # 54.) Waupaca avers that of their 3,017 hourly production employees, more than half "can perform their duties in street clothes with minimal, if any, PPE." (Def.'s Resp. Br. at 5.)

## II. LEGAL STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA permits collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, a class action pursuant to Section 216(b) of the FLSA requires employees or former employees to "opt in" to the class, by filing a written consent to join the action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (explaining differences between collective action under the FLSA and class action certified pursuant to Rule 23). District courts may, in their discretion, facilitate notice to potential plaintiffs to a FLSA collective action, to implement this "opt in" procedure. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169

(1989); *Woods*, 686 F.2d at 580; *see also King v. ITT Continental Baking Co.*, 1986 WL 2628, *3 (N.D. Ill. Feb. 18, 1986) (noting that the district court "has both the power and the duty to ensure that the notice is fair and accurate"). "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

This Court recently adopted the two-step approach embraced by other courts on the question of whether the representative plaintiffs are "similarly situated" to the potential plaintiffs. *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008). In *Adair* I noted,

> During the first step, the court must determine whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Austin*, 232 F.R.D. at 605. If so, notice may be sent to other potential members of the class. Then, typically upon a defense motion for decertification at the close of discovery, the court proceeds to step two, at which point it must determine whether plaintiffs who have opted in are, in fact, similarly situated. See *Kasten v. Saint Gobain Performance Plastics Corp.*, 2008 WL 2262076, *14 (W.D. Wis. 2008).

2008 WL 4224360, *3.

At this time, Plaintiffs are at the first step, seeking initial conditional certification of the class and judicial approval of a proposed notice to potential members. In *Adair*, this Court followed the lead of other courts and required that a plaintiff seeking conditional certification make at the first stage "at least a modest factual showing that such collective action is appropriate before a class is even conditionally certified." *Id.*

4

### III. ANALYSIS

**A. Conditional Certification**

Plaintiffs contend that they and putative class members are similarly situated as victims of Waupaca's common illegal policy or practice of failing to compensate them for all of their hours worked for their time spent donning and doffing their personal protective equipment ("PPE"), walking to and from their production areas, and showering at Waupaca's facilities. (Pls.' Mem. Supporting Their Mot. for Conditional Certification at 3; Dkt. # 43.) They also claim they are victims of Waupaca's failure to keep records as required by the FLSA. (*Id.*) Plaintiffs allege that their time records are kept electronically, and that they clock-in at their production areas only after they have donned their PPE and walked to the production area. They also allege the same occurs when they clock-out at the end of the day–they then have to exit the production area, doff their PPE and shower for reasons of industrial hygiene. (*Id.*)

Plaintiffs have provided seven affidavits describing how they clock in and out of their jobs relative to their donning and doffing of PPE, walking to and from the job, and showering after work. (Regan Aff. Exs. A-G, Sept. 9, 2008; Dkt. # 44.) Four of these affidavits are from the named Plaintiffs, and three from employees who have filed consent to join in the FLSA action after the complaint was filed.

Waupaca opposes Plaintiffs' motion and argues that Plaintiffs have not sufficiently shown that they are similarly situated with the putative class members or subject to a common illegal practice. Waupaca points to the fact that there are six plants in question with employees in a wide variety of jobs, some of which do not require PPE. Waupaca argues that under these circumstances certifying the class requested by Plaintiffs, without regard to the department or job description of

5

the putative class member, would result in an over-inclusive class. Further, Waupaca claims that different employees swipe the electronic time clocks at different points before and after their shifts, some in such a way as to be "on the clock" while they don and doff whatever PPE they wear. (Chandler Decl. ¶ 12; Flees Decl. ¶ 12.) Waupaca also argues that differences in the treatment of breaks for employees at the plants prevents a finding a common illegal practice.

Beyond taking issue with the scope of the proposed class to be certified, Waupaca asserts that the quantity and quality of the evidence Plaintiffs provide in support does not constitute even the "modest factual showing" to demonstrate that Plaintiffs were, along with the potential class members, victims of a common policy or plan that violated the law. Waupaca contends that seven affidavits is insufficient support for the request for certifying a class of approximately 4,000 current and former employees. It further asserts that the affidavits contain hearsay, are speculative and of dubious reliability. Finally, Waupaca claims that as only 67 people have filed consent to opt-in to the litigation, there is an insufficient degree of interest or "critical mass" of opt-in participants to warrant conditional certification. (Def.'s Resp. Br. at 15.)

In their reply brief Plaintiffs argue for the admissibility of the affidavits, and also provide six declarations from the named Plaintiffs and two former employees. (Dkt. #s 72-77.) This second iteration of affidavits provides more first-hand information of what the affiants witnessed prior to and after their shifts. They claim to have routinely observed "hundreds" of Waupaca employees donning their PPE prior to clocking-in before each shift, and also that they saw hundreds of employees routinely clock-out prior to taking off their PPE and showering. (Butts Decl. ¶¶ 4, 6-8, Oct. 14, 2008; Cooper Decl. ¶¶ 4-5, 9-10, Oct. 14, 2008; Dekeyser Decl. ¶¶ 4-5, 9-10, Oct. 14, 2008; Granius Decl. ¶¶ 4-5, 9-10, Oct. 16, 2008; Koschak Decl. ¶¶ 9, 13-15, Oct. 15, 2008; Lantz Decl.

6

¶¶ 9-10, 15, 17, Oct. 14, 2008.) The declarations contain observations regarding Waupaca facilities in Tell City, Indiana and the four plants in Wisconsin.[2] One former employee claims he was only aware of a single foreman who, on occasion, deviated from the clocking-in and out described above. (Koshak Decl. ¶¶ 13-15.)

Plaintiffs have provided other information on the question of whether they and the potential class members were victims of a common illegal policy or plan. A former employee's declaration says that at safety meetings his supervisors discussed exposure to silica and other carcinogens and encouraged employees to take showers and change out of their PPE prior to leaving the foundry. (Lantz Decl. ¶ 18.) A current employee also claims that Waupaca does not allow him to clock-in prior to donning his PPE and also does not permit him to clock-out after doffing or showering. (Wessenberg Aff. ¶ 13.) A former employee from the Tell City, Indiana plant alleges that Waupaca considered showering prior to punching out for the day to be "time clock fraud." (Butts Decl. ¶ 10.)

I am persuaded that the Plaintiffs have the better argument. The fact that Plaintiffs have only submitted affidavits from seven current and former employees for a putative class of approximately 4,000 does not necessarily render the sampling insufficient. Unlike other FLSA cases in which plaintiffs moved for conditional certification, several of the affiants in the instant case have provided information regarding their observations of how hundreds of their co-workers begin and end the work day. *See, e.g., Flores v. Lifeway Foods, Inc.*, 289 F. Supp.2d 1042, 1046 (N.D. Ill.

---

[2]Former employee James Koschak worked in Plant 3 at the Waupaca, Wisconsin, site, though he also claims to have observations regarding Plants 1 and 2 at the Waupaca, Wisconsin site. (Dkt. # 76 ¶¶ 3-4, 6-7.) The only information regarding the Etowah, Tennessee plant was provided in Billy Kinser's affidavit, which claims "[v]irtually all of the foundry/production employees" don their PPE before clocking-in and doff the same after clocking-out. (Kinser Aff. ¶ 10, August 13, 2008, Dkt. # 44-7.)

2003) (affidavits by two employees alleging violation of the FLSA for putative class of 50 failed to make a "modest factual showing" of a common policy or plan by defendant employer where the information presented only related to the two affiants). The force of the proof and not merely its quantum is an appropriate consideration in the analysis of whether the Plaintiffs have made the required factual showing. The information provided by Plaintiffs includes the observations of foundry workers who claim to have witnessed hundreds of their fellow employees behave in a way consistent with a common policy on the part of Waupaca not to allow them to be on the clock for donning and doffing their PPE, showering after work and walking to and from the production floor.

Waupaca's concern that the proposed class would be too inclusive given the alleged differences in jobs and PPE requirements is understandable, and these purported differences could later, on a defense motion for decertification, result in a smaller class. Given the posture of the case now, however, it would be premature to limit the putative class.

> [T]he exact nature and scope of these different positions are unknown at this point, but they should be revealed by the end of discovery. These differences may or may not bear on the determination of whether the plaintiffs are similarly situated to the potential class members. *See Neary*, 517 F.Supp.2d at 623 ("Any categorical differences in job positions/duties can be explored on discovery and provide a basis for de-certification or class limitation motion by defendant after discovery has concluded."). Furthermore, at this point, "[t]he court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." Thus, now is not the time for the court to determine if the potential class is perfectly uniform; rather, it need only determine if the plaintiffs made "a modest factual showing" sufficient to show they were subjected to the same policy denying them overtime wages.

*Marcus v. Am. Contract Bridge League*, --- F.R.D. ---, 2008 WL 4878910, *3 (D. Conn. Nov. 10, 2008) (some citations omitted).

8

Finally, Waupaca's contention that there is an insufficient degree of interest among the putative class does not carry the day. As sixty-seven individuals have already opted into this litigation prior to the dissemination of any court-approved notice, there is a sufficient interest in the litigation to support conditional certification.

I conclude that Plaintiffs have met their burden under the "notice stage," and I will grant their motion for conditional certification. The collective action class will include all current and former non-exempt, hourly paid, foundry production employees at Waupaca's six foundries from three years prior to June 4, 2005, to the present.

**B. The Notice**

As I have found that Plaintiffs have made the modest factual showing required at this stage to conditionally certify the collective class, I now consider their request that the Court facilitate the sending of a notice to this group. As noted above, district courts have discretion in appropriate cases to implement the opt-in provision of § 216(b) by facilitating notice to potential plaintiffs. *Hoffman-Laroche Inc.*, 493 U.S. at 169; *see also Woods*, 686 F.2d at 580. "Authorization of notice serves the broad, remedial purpose of the statute and comports with the court's interest in managing its docket." *Sjoblom v. Charter Communications, LLC*, 2007 WL 4560541, *7 (W.D. Wis. Dec. 19, 2007) (citing *Hoffman-Laroche*, 493 U.S. at 172-74). Whatever the justification advanced for a court facilitating notice of the collective action, "courts must be scrupulous to respect judicial neutrality." *Hoffman-Laroche*, 493 U.S. at 174. The obvious concern is that the court will be viewed as a sponsor of the collective action, so "courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id*.

Plaintiffs request that such notice issue sooner rather than later, as the statute of limitations is continuing to run for those individuals who have not consented. *See* 29 U.S.C. 256(b); *see also Adair v. Wisconsin Bell, Inc.*, 2008 WL 2690716, *2 (E.D. Wis. July 2, 2008). Plaintiffs have provided a proposed notice. (Regan Aff. Ex. J; Dkt. # 44-10.) Waupaca has lodged several objections to the proposed notice and has offered an alternative notice. (Benson Decl. Ex. C; Dkt. # 58-3.)

Waupaca's first objection to Plaintiffs' proposed notice is that it misleads potential opt-in plaintiffs into believing their only choice for counsel is the law firms representing the named Plaintiffs. The proposed notice does not have this effect, as it notes "If you choose to hire a different lawyer, you may do so at your own expense." The second objection is related, as Waupaca claims the proposed notice has the effect of operating as a retainer agreement. This objection is well-founded, as the proposed notice does not leave room for an opt-in plaintiff to write in other counsel. As I see no reason why such a provision designating counsel should be included in a notice under § 216(b) in the first place, I will order it removed.

Waupaca's third objection to the document is that it lacks contact information for defense counsel. Although it may be that another court has ordered that a notice contain such information, *Guzman v. VLM, Inc.*, 2007 WL 2994278, *8 (E.D.N.Y. Oct. 11, 2007), I decline to include it. *See Cryer v. Intersolutions, Inc.*, 2007 WL 1053214, at *3-4 (D.D.C. Apr. 7, 2007) ("The Court also sees no reason to include defense counsel on the class notice. . . Including additional lawyers only creates the potential for confusion of those who receive the notice.").

Waupaca also takes exception to the proposed notice's space for signature of the Court and the heading "U.S. District Court for the Eastern District of Wisconsin." I agree that both are

10

unnecessary and could have the effect of creating the appearance of judicial sponsorship of the notice. The Seventh Circuit noted:

> But we think it improper for the district court to direct that the notice go out on its letterhead, over the signature of the clerk of court or other judicial officer. We can think of no good reason for apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiff's allegations have any merit; and we can think of a good reason against it, which is that the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit.

*Woods*, 686 F.2d at 581. *See also Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008) (proposed notice containing name of court at top of first page deemed inappropriate as it "could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case.").

Plaintiffs' proposed notice provides for a period of 120 days in which members of the potential collective action are permitted to opt-in under 29 U.S.C. § 216(b). Waupaca contends this period of time is too extensive and should be limited to 45 days. There is no indication why 45 days, an opt-in period ordered by other courts in FLSA actions, would not be sufficient time under these circumstances. *See, e.g., Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825, *3 (S.D. Ohio Aug. 2, 2006); *Carmody v. Florida Ctr. for Recovery, Inc.*, 2006 WL 3666964, *4 (S.D. Fla. Nov. 8, 2006); *Champneys v. Ferguson Enters., Inc.*, 2003 WL 1562219, *7 (S.D. Ind. Mar. 11, 2003). I will therefore approve a notice which will require opt-in forms to be returned to plaintiffs' counsel postmarked no later than 48 days (45 days plus three days for mailing) after the date the notice is sent.

Waupaca also objects to being required to post the notice in its six plants. Because it is unclear why transmitting the notice by first class mail and publishing it through newspapers would be insufficient, I will not order Waupaca to post the notice in its plants.

Finally, Waupaca contends the proposed notice is deficient for not indicating that the Court has yet to take a position on the merits of the claims. In order to allay Waupaca's concern about the appearance of Court sponsorship of the claims, Plaintiffs have agreed to adding the following language: "The Court has allowed this case to be a Fair Labor Standards Act collective action and has authorized this Notice. The Court has not, however, taken a position on the merits of either party's position." (Pls.' Reply Br. at 14.) This language sufficiently clarifies the fact the Court has not taken a position on the merits and will be incorporated into the finalized notice prepared by the Court.

In addition to the changes noted above, I find that some further modification of the Plaintiffs' proposed notice is warranted. The Court has created a finalized notice form to be sent out to the putative plaintiffs.

**THEREFORE IT IS ORDERED** that counsel of record for Plaintiffs are appointed as Class Action Counsel.

**IT IS FURTHER ORDERED** that within 14 days of the date of this order Waupaca will provide the names and addresses of all persons who are or were employed by Waupaca at its six foundries for any time since June 4, 2005, to Plaintiffs' counsel.

**IT IS ALSO ORDERED** that Plaintiffs are authorized to give notice of this lawsuit to all non-exempt, hourly-paid production employees, employed at any of its six foundries during the period commencing three years prior to the filing of this lawsuit, in the finalized notice form

12

prepared by this Court. Such notice may be sent via first class mail to the conditionally-certified class and may also appear in newspapers.

Dated this  17th  day of December, 2008.

                                                            s/ William C. Griesbach
                                                            William C. Griesbach
                                                            United States District Judge