UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Ryan DeKeyser, Thomas Cooper, Harley Granius,
and Carlo Lantz, on behalf of themselves and
other similarly situated,

       Plaintiffs and Collective Action
       Representatives,

-v-

ThyssenKrupp Waupaca, Inc., d/b/a Waupaca
Foundry, Inc.

       Defendant.

Civil No. 1:08-cv-488 (WCG)

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE MEMORANDUM IN
OPPOSITION TO THYSSENKRUPP'S CROSS-MOTION FOR SUMMARY
JUDGMENT**

---

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................... iii

Introduction .................................................................................................................. 1

Standard for Cross Motions for Summary Judgment ................................................... 3

Argument ...................................................................................................................... 4

   I. BECAUSE DONNING, DOFFING, AND SHOWERING ARE "WORK," PLAINTIFFS
      ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW. ........................................ 4

      A.   No Factual Disputes Preclude Judgment as a Matter of Law that Plaintiffs' Donning,
         Doffing, and Showering are Integral and Indispensable. ............................................... 5

      B.   The Unique/Nonunique Dichotomy Does Not Determine Whether Gear is "Integral
         and Indispensable." ....................................................................................................... 9

      C.   The Geographic Location of Plaintiffs' Donning, Doffing, and Showering Activities
         Does Not Determine Whether that Work is Compensable. ........................................... 12

      D.   The Nature of Plaintiffs' Work Renders Showering, Donning, and Doffing
         Compensable. .............................................................................................................. 15

   II.   THYSSENKRUPP DOES NOT POSSESS A VIABLE *DE MINIMIS* DEFENSE ......... 17

      A.   The Undisputed Evidence Demonstrates That Plaintiffs Are Entitled to Summary
         Judgment on The Narrow Issue of Whether Modern Technology Precludes
         ThyssenKrupp From Asserting Its *De Minimis* Defense. ........................................... 17

         1.   No practical obstacles impede ThyssenKrupp from recording and paying for all
            compensable time, since the manner in which ThyssenKrupp sets up its operations is
            completely within its control. ................................................................................. 18

         2.   ThyssenKrupp's attempts to demonstrate that it will face "huge administrative
            difficulties" recording the uncompensated time at issue are insufficient to sustain its
            de minimis defense. ................................................................................................ 19

      B.   The Court Can Decide the Pure Legal Issue of Whether The Absence of
         Administrative Difficulties Renders It Unnecessary For The Court to Analyze The
         Other *De Minimis* Factors. ...................................................................................... 22

   III.   ANALYSIS OF ADDITIONAL *DE MINIMIS* FACTORS DOES NOT SUPPORT A *DE
      MINIMIS* FINDING IN THIS CASE ............................................................................ 22

A.    The Amount of Uncompensated Time At Issue Does Not Entitle ThyssenKrupp To Summary Judgment on Its *De Minimis* Defense. ....................................................... 22

B.    The *De Minimis* Doctrine Does Not Apply Separately To Each Particular Activity In Isolation. ................................................................................................................. 25

C.    ThyssenKrupp Has Not Demonstrated That Plaintiffs Do Not Regularly Engage In The Donning And Doffing-Related Activities At Issue..................................................... 27

IV.    THYSSENKRUPP'S ADDITIONAL AFFIRMATIVE DEFENSES FAIL. .............. 28

A.    ThyssenKrupp Fails to Present Facts Substantiating Its Setoff Defense. ................... 29

B.    ThyssenKrupp's Sixth Affirmative Defense Fails as a Matter of Law....................... 31

C.    ThyssenKrupp's Twenty-Third Affirmative Defense Fails as a Matter of Law. ......... 32

Conclusion ........................................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

*Adair v. Wisconsin Bell, Inc.*,
No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)...............................................20

*Agee v. Wayne Farms LLC*,
626 F. Supp. 2d 643 (S.D. Miss. 2009) .........................................................29, 30

*Alvarez v. IBP, Inc.*
339 F.3d 894 (9th Cir. 2003)...............................................................10, 11

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S.680 (1946) ...........................................................................18

*Anderson v. Perdue Farms, Inc.*,
604 F. Supp. 2d 1339 (M.D. Ala. 2009) ...............................................10, 12, 14

*Apperson v. Exxon Corp.*,
No. 78-192, 1979 WL 1979 (E.D. Cal. Feb. 7, 1979) ........................................ passim

*Armour & Co. v. Wantock*,
323 U.S. 126 (1944) ..........................................................................15

*Ballaris v. Wacker Siltronic, Inc.*,
370 F.3d 901 (9th Cir. 2004).............................................................10, 29

*Bleichner v. Spies Painting & Decorating, Inc.*,
No. 08-057, 2009 WL 281145 (W.D. Wis. Feb. 3, 2009) ........................................4

*Burks v. Equity Group-Eufaula Div., LLC*,
571 F. Supp. 2d 1235 (M.D. Ala. 2008) .......................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..........................................................................32

*Chao v. Tyson Foods, Inc.*,
568 F. Supp. 2d 1300 (N.D. Ala. 2008).....................................................13, 24

*Chavez v. IBP, Inc.*
No. 01-3093, 2005 WL 6304840 (E.D.Wash. May 16, 2005)......................................10

*Collins v. Sanderson Farms, Inc.*,
568 F. Supp. 2d 714 (E.D. La. 2008).................................................23, 25, 26, 27

Case 1:08-cv-00488-WCG   Filed 12/18/09   Page 4 of 40   Document 217

*Davis v. Charoen Pokphand (USA), Inc.,*
  302 F. Supp. 1314 (M.D. Ala. 2004) ........................................................... 21

*EEOC v. Marathon Cty.,*
  No. 79-559, 1981 WL 282 (W.D. Wis. Oct. 8, 1981) .......................................... 31

*El v. Potter,*
  No. 01-6125, 2004 WL 2793166 (S.D.N.Y. Dec. 6, 2004) ..................................... 7

*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................ 32

*Fowler v. Icor,*
  297 Fed. Appx. 590 (10th Cir. 2008) ......................................................... 4

*Fox v. Tyson Foods, Inc.,*
  No. 99-1612, 2002 WL 32987224 (N.D. Ala. Feb. 4, 2002) .................................... 13

*Gonzalez v. Farmington Foods, Inc.,*
  296 F. Supp. 2d 912 (N.D. Ill. 2003) ........................................................ 21

*Hiner v. Penn-Harris-Madison School Corp.,*
  256 F. Supp. 2d 854 (N.D. Ind. 2003) ........................................................ 29

*Hoyt v. Ellsworth Coop. Creamery,*
  579 F. Supp. 2d 1132 (W.D. Wis. 2008) ................................................. passim

*IBP v. Alvarez,*
  546 U.S. 21 (2005) ...................................................................... 6, 11, 25

*Laudenslager v. Globe Union Inc.,*
  180 F. Supp. 810 (E.D. Pa. 1958) ............................................................ 4, 7

*Lemmon v. City of San Leandro,*
  538 F. Supp. 2d 1200 (N.D. Cal. 2007) ..................................................... 12, 14

*Mumbower v. Callicott,*
  526 F.2d 1183 (8th Cir. 1975) ............................................................... 21

*Musch v. Domtar Indus.,*
  ---F.3d---, No. 08-4305, 2009 WL 4061749 (7th Cir. Nov. 25, 2009) ................... 4, 6, 7, 16

*Perez v. Mountaire Farms, Inc.,*
  610 F. Supp. 2d 499 (D. Md. 2009) ................................................. 13, 14, 17, 27

*Pirant v. United States Postal Serv.*,
  542 F.2d 202 (7th Cir. 2008)................................................................. 4, 9, 11

*Reich v. Dep't of Conservation & Natural Res.*,
  28 F.3d 1076 (11th Cir. 1994).............................................................. 21

*Reich v. IBP, Inc.*,
  No. 88-2171, 1996 WL 137817 (D. Kan. Mar. 21, 1996) ............................ 20, 26

*Rutti v. Lojack Corp., Inc.*,
  578 F.3d 1084 (9th Cir. Cir. 2009)........................................................ 23, 24

*Saunders v. John Morrell & Co.*,
  No. C88-4143, 1992 WL 531674, (N.D. Iowa Oct. 14, 1992) ....................... 20

*Spoerle v. Kraft Foods Global,*
  527 F.Supp. 2d 860 (W.D. Wis. 2007)l .................................................. passim

*Steiner v. Mitchell,*
  350 U.S. at 251 ............................................................................... passim

*United States Dep't of Labor v. Cold Enters., Inc.*,
  62 F.3d 775 (6th Cir. 1995)................................................................ 21

*United States v. Levine,*
  185 F. Supp. 889 (E.D.N.Y. 1955)........................................................ 31

*Weber v. Nercon Eng'r & Mfg., Inc.*,
  No. 04-0444, 2005 WL 3579232 (E.D. Wis. Dec. 29, 2005) ........................ 3

**Statutes**

29 U.S.C. § 203(o)............................................................................... 5

29 U.S.C. § 207................................................................................... 31

29 U.S.C. § 207(e)............................................................................... 31

29 U.S.C. § 207(h)............................................................................... 31

29 U.S.C. § 211(c)............................................................................... 18

29 U.S.C. § 254................................................................................... 5

29 U.S.C. § 3(0)................................................................................. 5

29 U.S.C. § 4..................................................................................... 5

v

29 U.S.C. § 785.13 ................................................................................................. 20

**Other Authorities**

Benson Decl. Ex. H, DOL Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006).................... 14

Brief of Amicus Curiae, U.S. Secretary of Labor, *Dege v. Hutchinson Tech., Inc.*, No. 06-3754
   (D. Minn. Sept. 12, 2007) ................................................................................ 18

DOL Adv. Mem. 2006-2 (May 31, 2006)................................................................. 11

USDOL Op. Letter, 2001 WL 58864, at *1-2 (Jan. 15, 2001) .................................. 19

USDOL, Wage and Hour Advisory Memo No. 2006-2 (May 31, 2006) ................... 26

**Regulations**

29 C.F.R. § 1910.1000.............................................................................................. 7

29 C.F.R. § 1910.132(a) ........................................................................................... 7

29 C.F.R. § 1910.132(h) ........................................................................................... 7

29 C.F.R. § 784.47 ............................................................................................. 1, 23

29 C.F.R. § 785.11 .......................................................................................... 15, 21

29 C.F.R. § 785.26 ................................................................................................... 6

29 C.F.R. § 785.47 ................................................................................................. 18

29 C.F.R. 790.7(g) n.49 ........................................................................................... 6

29 C.F.R. § 516.2(a)(7)........................................................................................... 18

29 C.FR. § 516.6(a)(1)............................................................................................ 18

# INTRODUCTION

Plaintiffs present two primary legal issues in their pending motion for partial summary judgment (ECF No. 147):

> (1) In situations where foundry workers are exposed to materials that can cause industrial disease, specifically including respirable silica dust, such that: (a) showering and clothes changing on-site after the work shift are recommended work practices by OSHA, NIOSH, and the employer's hazard communication program as a means of preventing industrial diseases; but (b) are not expressly required by OSHA regulation, is compensation for showering and clothes changing on-site after the work shift required by the Fair Labor Standards Act ("FLSA")?

> (2) In situations where modern technology permits the recording of actual work time, is the *de minimis* defense 29 C.F.R. § 784.47 available to employers?

Additional discovery concerning these two legal issues will never change the material facts in this case. As it relates to donning, doffing and showering, the evidence will always show that the collective action class members work in a foundry. Foundry operations generate respirable dust known to contain silica. ThyssenKrupp conducts air testing, but its testing is conducted only for a handful of the thousands of employees, or in small areas of the plants – and on two percent or less of all work days in a given year. These tests confirm the presence of respirable silica in different areas of the plants, because a significant percentage of ThyssenKrupp's air tests show silica exposures in excess of OSHA PELs, NIOSH RELs or ACGIH TLVs. While there is a dispute as to the level of exceedance, this dispute does not materially affect the outcome of Plaintiffs' motion. Industrial realities preclude air testing of each employee on a given work-day. There is not a designated "safe" or "silica free" production area in any plant.

Additional discovery will also not change the fact that OSHA, NIOSH and ThyssenKrupp's own written OSHA hazard communication documents instruct all foundry workers to shower and change clothes–without exception or reference to any particular air standards. Nor will additional discovery change the evidence on whether employee donning, doffing and showering

is "required" versus "recommended." At the same time, no evidence will be introduced that conflicts with the mandatory language concerning showering and clothes changing in ThyssenKrupp's written OSHA hazard communications.

Given these facts, what is the standard for compensation for time spent showering, donning and doffing to minimize silica exposure? The standard for compensability for donning, doffing, and showering should **not**, as ThyssenKrupp suggests, depend upon whether Plaintiffs or their co-worker have become ill or died as a result of silica exposure. Notably, none of the workers who worked in the battery storage plant in *Steiner* had lead poisoning. *Steiner v. Mitchell*, 215 F.2d 171, 175 (6th Cir. 1954), *aff'd* 350 U.S. 247 (1956).

Nor should the standard for compensability under the FLSA depend, as ThyssenKrupp would alternatively suggest, on whether the employer formally "requires" – or the employee "chooses" – to engage in doffing or showering on ThyssenKrupp's premises. The employer in *Steiner* did not order or formally require clothes changing or showering. *Id.* In *Steiner*, the lower court found that most, but not all, employees changed and showered on the employer's premises, and had the choice of using the clothing the employer provided. *Id.* at 174. The alleged "requirement" or "choice" to don, doff and shower on the premises did not render these activities any less compensable under the FLSA.

This Court must apply the simple, common-sense approach to compensability adopted by the Supreme Court in 1956, and by numerous lower courts since then: If concerns of health, hygiene, or workplace hazards necessitate clothes changing or showering, the time spent in those activities is compensable under the FLSA. If the DOL, industrial hygienists, and industry groups recommend that foundry employees engage in the specific donning, doffing and showering

activities at issue here to safeguard their health, there is no factual issued to be decided. The time at issue should be paid.

Finally, the Court can also now decide the issue of whether modern technology precludes an employer from relying on the *de minimis* defense to escape FLSA liability. The *de minimis* defense is never available to an employer who has the technology to record and pay for the activities in question, but has chosen not to do so – the technology-feasibility factor is a required, outcome determinative element of the affirmative defense. Failure to satisfy this factor is determinative of the employer's *de minimis* defense. *Hoyt v. Ellsworth Coop. Creamery*, 579 F. Supp. 2d 1132, 1139 (W.D. Wis. 2008).

## STANDARD FOR CROSS MOTIONS FOR SUMMARY JUDGMENT

The standard of consideration for the parties' cross-motions for summary judgment is well known to this Court:

> [T]he court must assess the merits of each summary judgment motion independently. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion.

*Weber v. Nercon Eng'r & Mfg., Inc.*, No. 04-0444, 2005 WL 3579232, at *3 (E.D. Wis. Dec. 29, 2005) (internal citations omitted). While both parties have the burden of establishing no genuine issue of material fact, "[m]aterial' means that the factual dispute must be outcome-determinative under governing law. Failure to support any essential element of a claim renders all other facts immaterial." *Id.*

Here, ThyssenKrupp, in support of its opposition to Plaintiffs' Motion for Partial Summary Judgment, has offered over 100 additional "factual propositions." *See* ECF No. 194, Defendant's Additional Factual Propositions ("DAPF"). None of these additional factual

propositions present a genuine issue of material fact, such that Plaintiffs' motion cannot be granted. *See* Pls. Reply to DAPF, filed concurrently herewith; ECF No. 164, Pls.' Proposed Findings of Fact ("PPFOF"); ECF No. 151, Pls.' Statement of Undisputed Fact ("PSOUF"). Conversely, ThyssenKrupp has also filed its own Proposed Findings of Fact ("DPFOF"), none of which support the essential elements of its Portal-to-Portal Act, *de minimis*, or other affirmative defenses.

Not surprisingly, ThyssenKrupp altogether fails to acknowledge that ThyssenKrupp, not Plaintiffs, has the burden of proving its Portal Act and *de minimis* defenses to Plaintiffs' FLSA claims. "An employer seeking to avoid application of the FLSA's general rule that work is compensable bears the burden of proving an exception." *Fowler v. Icor*, 297 Fed. Appx. 590, 598 (10th Cir. 2008); *Bleichner v. Spies Painting & Decorating, Inc.*, No. 08-057, 2009 WL 281145, at *7 (W.D. Wis. Feb. 3, 2009).

## ARGUMENT

### I.  BECAUSE DONNING, DOFFING, AND SHOWERING ARE "WORK," PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

ThyssenKrupp has the burden of showing that the Portal Act's exemptions apply to Plaintiffs' donning, doffing, and showering. It has not done so. It fails to distinguish this case from *Steiner*, and does not even attempt to distinguish *Apperson v. Exxon Corp.*, No. 78-192, 1979 WL 1979 (E.D. Cal. Feb. 7, 1979)*, or *Laudenslager v. Globe Union Inc.*, 180 F. Supp. 810 (E.D. Pa. 1958). Nor can it align this case with the Seventh Circuit's recent decisions *Musch and Pirant.  Musch v. Domtar Indus.*, ---F.3d---, No. 08-4305, 2009 WL 4061749 (7th Cir. Nov. 25, 2009); *Pirant v. United States Postal Serv.*, 542 F.2d 202 (7th Cir. 2008). While ThyssenKrupp may believe that Plaintiffs' donning, doffing, and showering are only compensable if Plaintiffs or other employees are dying or suffering from silicosis or any of the other industrial diseases

associated with silica exposure, that is not the law. As Judge Crabb noted in *Spoerle v. Kraft Foods Global*, any suggestion that *Steiner* should be limited in its application to work "done in a lethal atmosphere" is "truly bizarre." 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007). Addressing the cramped argument that *Steiner* applies only to "workplace dangers that transcend ordinary risks," the court said:

> In other words, unless the activity is necessary to prevent the employee from actually *dying,* it is not "integral" to a principal activity. From a public policy perspective, this reading is obviously troubling because it creates an uncomfortable distinction between hazards that kill and hazards that maim (or pose only a *risk* of death) and suggests that an employee is entitled to compensation for protecting herself from the former only.

> Fortunately, *Steiner* does not support such a distinction.

*Id.* (emphasis in original).

In this case, however, Plaintiffs **have** shown that their donning, doffing, and showering take place because of "workplace dangers that transcend ordinary risks." Plaintiffs' motion for partial summary judgment should be granted.

### A. No Factual Disputes Preclude Judgment as a Matter of Law that Plaintiffs' Donning, Doffing, and Showering are Integral and Indispensable.

It is clear that ThyssenKrupp's default argument—that donning and doffing and showering are "normally" noncompensable—needs to be reset. Both the legislative history of section 4 of the Portal Act, 29 U.S.C. § 254, and the enactment of section 3(o) of the FLSA, 29 U.S.C. § 203(o), make clear that the Portal Act, and thus the FLSA, does not exclude from compensable "hours worked" time spent by an employee changing into and out of clothes that are integral and necessary to his job. *Steiner*, 350 U.S. at 254-58. In *Steiner*, the Court not only held that the battery plant employees' changing of clothes and showering was "an integral and indispensable part of the principal activity of the[ir] employment," but that **Congress intended** that "the activities of changing clothes and showering to be within the protection of the Act if they are an

integral part of and are essential to the principal activities of the employees." *Id.* at 254, 256; 29 C.F.R. § 785.26. The Seventh Circuit recently affirmed this interpretation of the FLSA: "[A]n employee *can be compensated* for activities such as washing up or changing clothes if these activities are 'integral' and 'indispensable' to that employee's employment." *Musch*, 2009 WL 4061749 (7th Cir. Nov. 25, 2009) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005)) (emphasis in original); *see also* 29 C.F.R. 790.7(g) n.49 ("Washing up after work, like the changing of clothes, may in certain situations be *so directly related to the specific work* the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity.'"(emphasis added)).

In this case, ThyssenKrupp has failed to carry its burden and refute that Plaintiffs' donning and doffing activities are directly related, and thus integral, to the safe performance of their job duties of melting, forming, grinding, sanding, and otherwise processing gray ductile iron at ThyssenKrupp's six plants. Incredibly, ThyssenKrupp avers that it does not "control or require" Plaintiffs' donning and doffing of uniforms, safety glasses, ear protection, foot protection, and hard hats. This conclusory assertion fails in light of the fact that ThyssenKrupp does not dispute that it requires Plaintiffs to wear all of these items while working in the plant—it only weakly disputes that it does not require them to be donned on the premises. PPFOF ¶¶ 5-8; SOUF ¶¶ 12, 14-15; Pls. Reply to DAPF ¶¶ 13-15; Pls. Response to DPFOF ¶¶ 18-24; *see also* Section I.C., *infra*. But these items are indisputably part of ThyssenKrupp's Safety Program and Plaintiffs are subject to formal reprimand if they do not wear them. PPFOF ¶ 9; DPFOF ¶ 30; DAPF ¶ 25 (admitting that Plaintiffs may be written up). These items are not only required by ThyssenKrupp, but are often provided or paid for by the Company—a requirement embedded in OSHA's extensive regulations, which indisputably apply to ThyssenKrupp's foundry operations.

6

*See* 29 C.F.R. § 1910.132(a) (stating that PPE "shall be provided…whenever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact"), 29 C.F.R. § 1910.1000 & Table Z-3 (identifying crystalline silica as a controlled air contaminant); PPFOF ¶¶ 5-9; SOUF ¶¶ 10-16 (discussing ThyssenKrupp's PPE requirements); 29 C.F.R. § 1910.132(h) (generally requiring payment for PPE).  It is not as if Plaintiffs collectively decided that they would voluntarily wear these items of PPE for their own personal comfort or convenience.

Similarly, Plaintiffs' post-shift showering is directly related to the continued safe performance of their job duties, just as it was for the battery plant employees in *Steiner*.[1]  It is undisputed that respirable silica is present in ThyssenKrupp's plants, and that the OSHA PEL, NIOSH REL, and ACGIH TLVs have been exceeded, even on the infrequent occasions when ThyssenKrupp actually conducts air testing.[2]  Production activities take place in large areas with few partitions, barriers, or walls, preventing containment of respirable dust to one particular area. PPFOF ¶ 16; SOUF ¶¶ 21, 23.  In a tacit concession to the fact that the Company's so-called engineering controls cannot eliminate silica exposure or assure 100% compliance and conformity

---

[1] In addition to *Steiner*, many courts have recognized that showering time is directly related to an employee's work where an employee is required to work with toxic and hazardous materials.  *See Laudenslager*, 180 F. Supp. at 812 (noting employees were compensated for showering); *Musch*, 2009 WL 4061749, at *3 (denying summary judgment on plaintiffs' showering claims because employer paid employees for time spent showering or washing when employee came into contact with hazardous materials); *El v. Potter*, No. 01-6125, 2004 WL 2793166, at *2 (S.D.N.Y. Dec. 6, 2004) (discussing CBA between unionized post office employees and Postal Service, and grant of "reasonable wash up time to those employees who perform dirty work or work with toxic chemicals").

[2] *See* Pls.' Reply to DAPF ¶¶ 83-91; Pls.' Additional Factual Propositions Relevant to Their Responses to ThyssenKrupp's Cross-Motion ¶¶ 16-31, filed concurrently herewith ("PAFP").  While there is a dispute as to the actual level of exceedance, this dispute is immaterial for the purposes of resolving Plaintiffs' Motion for Summary Judgment. ThyssenKrupp does not dispute that its own air sampling tests—which are conducted, on average across all six plants, on 2% or less of working days in a year—indicate that the OSHA PEL, NIOSH REL, and ACGIH TLVs are often exceeded.  DAPF ¶¶ 83-91.

with the OSHA PELs, NIOSH RELs, and ACGIH TLVs, 100% of the time, ThyssenKrupp advises employees, through its Safety Program, Hazard Communication, and the MSDSs that Plaintiffs consult in their work, that they should shower and doff post-shift due to the potential for injury from silica exposure. PPFOF ¶¶ 33-44; SOUF ¶¶ 79-85.

ThyssenKrupp's own admonitions comport with numerous federal, state, and industrial hygiene organizations and standard-setting bodies—in particular OSHA, NIOSH, and the ACGIH—that state that employees exposed to silica should "wear disposable or washable work clothes and shower if facilities are available." SOUF ¶¶ 79-85; PPFOF ¶¶33-44. The American Foundry Society states that clothes changing and showering are important "work practices." *See* Snodgrass Aff. Ex. L, at 2-1, 3-5; *see also* Pls. Reply to DAPF ¶ 40. In all of the relevant literature, showering and clothes changing are consistently identified as important work practices and controls for silica exposure. PPFOF ¶¶ 33-44; SOUF ¶¶ 63-78, 79-85.

While ThyssenKrupp contends that it has a "robust" industrial hygiene program, it cannot refute that Plaintiffs' donning, doffing, and showering are an integral part of that program and are made necessary by that program. *See* Pls. Reply to DAPF ¶¶ 40-41, 60-61, 71; *see generally also* ECF Nos. 206, 207, Pls. Motion to Exclude the Expert Testimony of Mark A. Roberts and MOL in Support. ThyssenKrupp therefore cannot reasonably refute Plaintiffs' donning, doffing, and showering inures to ThyssenKrupp's benefit. Like the employer in *Steiner*, Plaintiffs' on-site donning, doffing, and showering benefits ThyssenKrupp because it enables compliance with OSHA and industry standards, potentially avoiding legal liabilities for workers' compensation or disability, and also "contribute[s] to the continued and uninterrupted operation of the defendants' business by promoting the health of defendants' employees."[3] *Steiner*, 215 F.2d at 175 (citing

---

[3] While it is not material for the purposes of deciding Plaintiffs' Motion for Summary Judgment, Plaintiffs note that ThyssenKrupp's donning, doffing, and showering requirements may also flow from its workers'

trial court); *see also Apperson*, 1979 WL 1979, at *5-7 (employee donning of uniform was beneficial to Exxon because it allowed the employees to work in a potentially hazardous environment).

In light of these undisputed facts, ThyssenKrupp's attempt to analogize this case to *Pirant v. United States Postal Service* falls flat. In *Pirant*, based on the lower court's decision that the Plaintiffs' "[postal service] uniform, gloves, and work shoes," did not protect the plaintiff from any particular hazard in her job as a mail handler, the Seventh Circuit concluded that the plaintiffs' donning and doffing of a uniform was "showering and changing clothes 'under normal conditions'." *Pirant*, 542 F.3d at 208-09; *see also Pirant*, No. 03-9383, 2006 WL 3590072, at *7 (N.D. Ill. Dec. 7, 2006) ("There is no evidence that that activity touches upon the type of vital considerations of health, safety, or hygiene that would take Pirant's clothes changing activities out of the range of ordinary clothes changing and showering that need not be compensated under the FLSA.")

*Pirant* is not remotely analogous to this case. Plaintiffs here have shown that their donning, doffing, and showering "touch[] upon…vital considerations of health, safety, or hygiene." *See also* PPFOF ¶¶ 18-29, 33-34; SOUF ¶¶ 24-35, 38-52.

**B. The Unique/Nonunique Dichotomy Does Not Determine Whether Gear is "Integral and Indispensable."**

ThyssenKrupp further suggests it can avoid compensation for Plaintiffs' donning and doffing by contending that certain PPE is "nonunique" or "not extensive." *E.g.*, Def. Mem. at 7. As a matter of law, this contention fails. First, it has no statutory basis. Second, the Supreme Court has never adopted ThyssenKrupp's unique/non-unique distinction. In fact, in *Steiner*, the

---

compensation insurer's requirements. *See Steiner*, 350 U.S. at 251-252 (noting "the insurance carrier would not accept the insurance risk if defendants refused to have showering and clothes-changing facilities for their employees"); *see also* Affidavit of T. Joseph Snodgrass, submitted pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

9

protective work clothes donned at the start of the shift and doffed at the shift end was not unique or special to battery manufacturing. They were simply "old but clean work clothes." 350 U.S. at 251. Even in light of this, the Supreme Court held that this gear was an integral and indispensable part of the workers' principal activities and therefore compensable. *Id.* at 252.

Following *Steiner,* the Ninth Circuit, in *Alvarez v. IBP, Inc* held that the donning and doffing of *both* standard and specialized protective gear worn by employees at a meat processing plant constituted "work." 339 F.3d 894, 902-03 (9th Cir. 2003). In so concluding, the court held that the distinction between unique and non-unique gear is irrelevant for the purposes of determining whether that gear is "integral and indispensable." *See id.*; *see also Ballaris v. Wacker Siltronic, Inc.*, 370 F.3d 901, 911-12 (9th Cir. 2004) (donning and doffing a so called "non-unique" uniform constituted work). The Ninth Circuit's approach is sound, and other courts and the United States Department of Labor ("USDOL") agree.[4]

For instance, in *Jordan v. IBP, Inc.* the district court specifically rejected an argument similar to that advanced by ThyssenKrupp here, finding that the donning of a "frock" began the compensable workday:

> [T]he donning and doffing of the frocks does not constitute the "changing of clothes and showering under normal conditions," which is not compensable under *Steiner*, but rather an integral and indispensable activity for which compensation is required. As the donning and doffing of the frocks are integral and indispensable to the plaintiffs' principal activities, then, under *Alvarez*, the donning and doffing themselves are principal activities and mark the beginning and the end of the continuous workday, such that the plaintiffs are entitled to compensation for those activities and any and all other activities-including any walking, waiting, collecting, sanitizing, and donning of standard or specialized gear - that occurs between those two activities.

---

[4] *See also De Asencio v. Tyson Foods, Inc*, 500 F.3d 361, 373 (3d Cir. 2007); *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1355 (M.D. Ala. 2009); *Perez*, 601 F. Supp. 2d at 674-679; *Jordan*, 542 F. Supp. 2d at 809; *Hoyt*, 579 F. Supp. 2d at 1140-41; *Spoerle*, 527 F. Supp. 2d at 863-65; *see also Chavez v. IBP, Inc.* No. 01-3093, 2005 WL 6304840, at *10 (E.D.Wash. May 16, 2005).

*Jordan*, 542 F. Supp. 2d at 809 (internal citations omitted); *see also Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1245-46 (D. Kan. 2007; *Garcia v. Tyson Foods, Inc.,* No. 06-2198-JWL, 2007 WL 1299199, at *3 (D. Kan. May 2, 2007); *Perez*, 601 F. Supp. 2d at 678 (disregarding *unique/nonunique* distinction based upon the Ninth Circuit's decision in *Alvarez v. IBP*).[5] Similarly, the USDOL has stated, in an Advisory Memorandum that ThyssenKrupp relies upon, that "whether required gear is 'unique' or 'non-unique' is irrelevant to whether donning and doffing is a principal activity." DOL Adv. Mem. 2006-2 (May 31, 2006).

The Seventh Circuit has also not endorsed ThyssenKrupp's unique/nonunique dichotomy as the means for determining whether gear is integral and indispensable. In *Pirant*, the court ultimately decided that none of the gear the plaintiff wore was "protective." 542 F.3d at 209.[6] This characterization flowed from its conclusion that the plaintiffs' job as a mail handler did not present any special hazards. *Id.* Thus, it is clear that the Seventh Circuit's rationale for finding that Pirant's donning and doffing was not compensable rested on the analysis of whether that gear was integral and indispensable to the plaintiffs' job as a mail handler—not on whether it was "nonunique." *See id.*

---

[5] While the beginning of the continuous workday is not an issue this Court must decide for the purposes of resolving either party's motion, that day would begin with the donning of the first compensable item that is common to each production worker's position. Thus, for example, it is undisputed that all employees must wear boots with metatarsal guards within the plants. PPFOF ¶ 5. Thus, regardless of whether only "certain" employees are required to wear any other piece of equipment, such as a hard hat, Plaintiffs' donning of their boots might begin their continuous workday.

[6] To the extent that the Seventh Circuit's decision can be read as requiring plaintiffs to show that donning and doffing are onerous or burdensome (because "extensive" equipment is involved), that reading of the FLSA would in fact directly contravene the Supreme Court's interpretation that a task need not be burdensome in order to be compensable. *IBP v. Alvarez*, 546 U.S. 21, 25 (2005). Even nonproductive work is compensable under the FLSA. *See id.*

### C. The Geographic Location of Plaintiffs' Donning, Doffing, and Showering Activities Does Not Determine Whether that Work is Compensable.

Throughout its brief, ThyssenKrupp plays semantic games: All but conceding that Plaintiffs' donning, doffing, and showering activities are required by the nature of Plaintiffs' work or Defendant's own rules, ThyssenKrupp qualifies its admissions—and attempts to take these activities out of the realm of compensability under the FLSA—by stating that Plaintiffs' donning, doffing, and showering do not need to performed "on the premises."[7] This argument fails as a matter of law.

It is not true that donning, doffing, and showering are rendered compensable *only* if they "required to be performed at the employer's facilities." Def. Mem. at 11. Plaintiffs can find no Supreme Court or other appellate case that establishes this proposition as an explicit requirement or bright-line rule to be followed. *See, e.g., Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1355 (M.D. Ala. 2009) (citing cases and stating that with a "single exception…courts in [the Eleventh] Circuit have uniformly ignored or dismissed the distinction between donning at home and donning on the employer's premises when equipment like PPE was in issue"); *Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200, 1206 (N.D. Cal. 2007) (noting "there is no explicit requirement in the Ninth Circuit that the preliminary or postliminary activity take place on the employer's premises" and refusing "to inject a location limitation into the analysis for finding compensability under the FLSA"); *see also Perez v. Mountaire Farms, Inc.¸* 610 F.

---

[7] Every statement that ThyssenKrupp makes with regard to its purported lack of "requirements" for donning, doffing, or showering is qualified by phrases such as "on the premises" or "Waupaca's facilities," or by assertions that these activities may be done off site. *See* ECF No. 171, Def. Mem. at 6-16.

Supp. 2d 499, 518-19 (D. Md. 2009) (discussing employer's "take-home" defense and holding that it was "illusory").[8]

The decisions declining to follow ThyssenKrupp's "rule" uphold *Steiner*, and square with the facts of *Steiner*. Contrary to what ThyssenKrupp represents, the employer in *Steiner* did not "require[] the employees to change and bathe on site." Def. Mem. at 12. The lower courts explicitly found, because the parties had stipulated, that the defendant had "never issued any order, nor made any formal requirement," that the battery plant employees use the on-site clothes changing and shower facilities provided by the defendant. *Steiner*, 215 F.2d at 175; *see also Steiner*, 350 U.S. at 251 (stating employer had "issued no written instructions"). Instead, as here, the company in *Steiner* had merely "[f]rom time to time instructed the employees to change clothes and shower on defendants' premises." 215 F.2d at 175; *see also* PPFOF ¶¶ 33-44. From these occasional instructions, both the employees and the Supreme Court inferred a requirement. *Steiner*, 350 U.S. at 251.

ThyssenKrupp's cramped, bright-line rule would clearly undermine *Steiner*. As the court in *Apperson* noted, if such a requirement existed, it would mean that an employer would have to compensate any employee "who chooses to change clothes on the premises" because "the compensability of this activity would be determined, not by the nature of the work, but by the employee's decision as to which location is most convenient for such purposes. That was not the intent of *Steiner*." *Apperson*, 1979 WL 1979, at *9. Conversely, "the employer cannot negate his responsibility to compensate the worker who performs this work on the premises **merely because it may be performed** at home." *Id.* at *8 (emphasis added).

---

[8] *See also Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1311-15 (N.D. Ala. 2008); *Burks v. Equity Group-Eufaula Div., LLC*, 571 F. Supp. 2d 1235, 1240-46 (M.D. Ala. 2008); *Fox v. Tyson Foods, Inc.*, No. 99-1612, 2002 WL 32987224, at *7-8 (N.D. Ala. Feb. 4, 2002).

13

*Apperson*'s reasoning remains sound. If the locale of donning, doffing, and showering determined whether those activities were compensable, then an employer could "skirt the *Steiner* holding by allowing an employee to leave when it would hazardous to his health and safety to do so with changing." *Id.* at *7. Numerous courts have agreed with this principle, and as recently as this year. *See Perez*, 601 F. Supp. 2d at 679, n.2 (disregarding defendant's take home argument and noting that employees testified that they did not take home lab coats because of concern for bacterial contamination); *Lemmon*, 538 F. Supp. 2d at 1206 (refusing "to inject a location limitation into the analysis for finding compensability under the FLSA" and finding a police officer's uniform "consists of 'specialized clothing' that forms part of the continuum of force designed to protect against rogue elements and to inform the citizenry of the legitimacy of the officer's official position").

The Wage and Hour Division's Memorandum provides ThyssenKrupp no refuge. *See* Def. Mem. at 13 (citing Benson Decl. Ex. H, DOL Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006)). That memorandum simply affirms that the nature of the work, *or* the employer's requirements—not where donning and doffing takes place—determines whether donning and doffing is compensable. *Id.* (noting that just because clothes changing takes place on the premises does not make it compensable). Moreover, the Wage and Hour Division's position has been rejected. *Anderson*, 604 F. Supp. 2d at 1354-55.

In any event, ThyssenKrupp's own actions and admissions undermine its "location, location, location" argument. ThyssenKrupp provides PPE, laundry services, locker rooms, and shower facilities to all of its productions employees. PPFOF ¶¶ 5-15; SOUF ¶¶ 14-20. The majority of employees, including all Foundry-Declarants use the showering facilities, locker rooms, and laundry services. PPFOF ¶ 6; SOUF ¶ 13; *see also* Pls. Exs. II ¶¶ 10-11; JJ ¶¶ 11-12; KK ¶¶ 11-

12; LL ¶¶ 13-14; MM ¶¶ 11-12; NN ¶¶ 12-13.[9] Because these activities constitute "work" under the FLSA, the time spent engaged in these activities must be compensated. *See Armour & Co. v. Wantock*, 323 U.S. 126, 132 (1944) (stating that the term "employ' includes to suffer or permit to work"); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time");

### D. The Nature of Plaintiffs' Work Renders Showering, Donning, and Doffing Compensable.

Rather than use the location of donning, doffing, and showering as the outcome-determinative factor for compensability, this Court should instead focus on whether ThyssenKrupp's purported "option" to don, doff, and shower at home is meaningful under the circumstances of this case. It is not. Plaintiffs' donning, doffing, and showering are not, as ThyssenKrupp contends, merely to ensure "good personal hygiene," whatever that means. Def. Mem. at 13. This argument demonstrates ThyssenKrupp's fundamental misunderstanding of *Steiner*.

*Steiner* establishes that "good personal hygiene" is not separable from safety or health when an employee's personal hygiene is affected by workplace hazards. 350 U.S. at 231-53. *Steiner*'s "vital considerations of….hygiene" standard does not distinguish in any between personal or industrial hygiene. Even if "good personal hygiene" were separable, Plaintiffs have shown that their donning, doffing, and showering are necessitated by the specific working conditions of Defendant's foundries. PPFOF ¶¶ 16-17; SOUF ¶¶ 21-22; Pls.' Exs. II ¶¶ 14-16; JJ ¶¶ 15-16; KK ¶¶ 14-15; LL ¶¶ 16-17; MM ¶¶ 14-15; NN ¶¶ 15-16 (testifying on presence of silica); *see also* Plaintiff's Additional Factual Propositions ("PAFP") ¶¶ 1-16, 25-45, filed concurrently herewith. *See also* Section I.A., I.C., *supra*. Further, the record is replete with evidence

---

[9] Pls.' Exhibits A-NN are attached to the Affidavit of T. Joseph Snodgrass, filed September 1, 2009. Pls.' Exhibits OO-RRR are attached to the Supplemental Affidavit of T. Joseph Snodgrass, filed December 18, 2009. Pls.' Exhibits 1-66 are attached to the Affidavit of Troy F. Tatting, filed December 18, 2009.

demonstrating that OSHA, NIOSH, ACGIH, and the AFS all state that changing clothes and showering are well-recognized "work practices" or "controls" that can prevent potential long-term injury due to silica exposure. PPFOF ¶¶ 33-44; Pls.' Reply to DAPF ¶¶ 40-41; *see also* PAPF ¶¶ 17-24. ThyssenKrupp offers no facts in opposition that genuinely counter these facts.

Thus, this case is unlike *Musch*, where the maintenance employee plaintiffs were unable to provide any facts evidencing that their onsite donning, doffing and showering was necessitated by the nature of their work. *See Musch v. Domtar Indus.*, No. 07-524, 2008 WL 4735171 (W.D. Wis. Oct. 24, 2008). The trial court granted summary judgment for the employer because the plaintiffs failed to offer credible, non-speculative evidence that they had hazardous chemicals on their skin. *Id.* at *8.

In sharp contrast to *Musch*, here Plaintiffs have demonstrated that 1) despite ThyssenKrupp's purported engineering controls, the OSHA PEL, NIOSH REL, and ACGIH TLVs for silica are often exceeded even when ThyssenKrupp conducts its infrequent tests, 2) because the tests are infrequent, and Plaintiffs do not know on a day-to-day basis their precise silica exposure on any particular day, so they must don and doff protective clothing and shower post-shift. PPFOF ¶¶ 10-15, 17, 31-32; Pls. Exs. II ¶¶ 10-11, 14-16; JJ ¶¶ 11-12, 15-16; KK ¶¶ 11-12, 14-15; LL ¶¶ 13-14, 16-17; MM ¶¶ 11-12, 14-15; NN ¶¶ 12-13, 15-16; *see also* PAPF ¶¶ 25-45. Plaintiffs must then take at face value the recommendations that they shower and change clothes in order to protect themselves—which they do. *See id.* These recommendations have all but become a requirement. These facts take this case out of *Musch*, and align it squarely with *Steiner*. *See* ECF No. 151, Pls. Mem. of Law in Support of MSJ, at 11-20.

ThyssenKrupp is fond of telling the Court that its expert believes that ThyssenKrupp "could decide *tomorrow* to eliminate its uniform laundering program, board up the entrances and exits

to its locker rooms, and turn off all the water in its showers[.]" Def. Mem. at 7, 13 (citing Roberts Decl ¶ 16 and Kohloff Decl. ¶¶ 5-6, 10). Repetitive hyperbole aside, this assertion begs the question: why doesn't ThyssenKrupp make good on its threat? It will not, because ThyssenKrupp has not undertaken to provide PPE, lockers, and showers on its premises out of an excess of munificence and paternalistic concern for employees' appearance and convenience. As the court in *Perez* stated, "[i]f changing at home were a bona fide option, there would be no real need for employee lockers, and defendants would not likely incur the costs for doing so." 601. F. Supp. 2d at 679. This reasoning applies with equal force here to ThyssenKrupp's provision of PPE, lockers, and showering facilities at its plants.

Nowhere does ThyssenKrupp factually refute that the nature of Plaintiffs' work requires them to don and doff PPE, and shower post-shift. Def. Mem. at 12. Nowhere does the Company contend that it is safe for employees *not* to doff post-shift or shower.[10] Rather, it hopes to evade liability by contending that these activities are not required to be performed *on site*. This is a distinction without a difference. Plaintiffs have shown that they "cannot safely wear such clothing home at the end of the day," *Apperson*, 1979 WL 1979, *9, and must shower on site to ensure their health and well-being.

## II. THYSSENKRUPP DOES NOT POSSESS A VIABLE *DE MINIMIS* DEFENSE.

### A. The Undisputed Evidence Demonstrates That Plaintiffs Are Entitled to Summary Judgment on The Narrow Issue of Whether Modern Technology Precludes ThyssenKrupp From Asserting Its *De Minimis* Defense.

ThyssenKrupp cannot rely on a *de minimis* defense to avoid paying its employees all the time they spend donning, doffing and showering on-site. The narrow *de minimis* exception "applies

---

[10] As Plaintiffs discuss in Doc. 207, Pls.' Mem. in Support of their Motion to Exclude Dr. Mark A. Roberts, ThyssenKrupp's expert's contention that there is nothing in the relevant literature suggesting that employees shower or change clothes to avoid contaminating their cars or homes is a bare, conclusory assertion. This assertion is countered by ThyssenKrupp's own communications. *See* Pls. Ex. U; *see also* PAPF ¶¶ 17-24.

only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, **and** where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. § 785.47 (emphasis added). According to the Secretary of Labor, the "regulation makes clear that **if it is feasible for the employer to record the time**, **then the employer cannot escape liability** for [not] paying its employees for this time by relying on the *de minimis* rule." Pls.' Ex. PP at 4, Brief of Amicus Curiae, U.S. Secretary of Labor, *Dege v. Hutchinson Tech., Inc.*, No. 06-3754 (D. Minn. Sept. 12, 2007) (emphasis added) (hereinafter "SOL Amicus Brief"). Because there is no practical impediment to ThyssenKrupp recording the uncompensated time at issue in this case, it cannot escape liability by relying on the *de minimis* doctrine.

> 1. *No practical obstacles impede ThyssenKrupp from recording and paying for all compensable time, since the manner in which ThyssenKrupp sets up its operations is completely within its control.*

The FLSA requires that employers record their employees' work hours. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.680, 687 (1946). Accordingly, employers must structure their operations in a manner that allows for the accurate recording of this time. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7) (employers must keep records of hours worked each workday); 29 C.FR. § 516.6(a)(1) (employers must maintain time cards or sheets showing daily starting and stopping time of individual employees).

Here, ThyssenKrupp has purposely structured its operations in a manner that effectively precludes the possibility of accurate timekeeping. Although Plaintiffs are paid from the moment they swipe-in at a ThyssenKrupp foundry, the company mandates that its employees don required equipment before they swipe-in and doff this equipment and shower only after they swipe-out. *See* PFOF ¶¶ 4, 50-52, 56. ThyssenKrupp thus exercises its control over the

workforce to ensure that the time Plaintiffs spend performing their first and last principal activities are not captured in its records. *See id.* at ¶ 56.

If, on the other hand, ThyssenKrupp modified its current practices, it could accurately capture time from the first principal activity to the last principal activity, as required to comply with the FLSA and its implementing regulations. *See De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374-75 (3d Cir. 2007); Ex. QQ, USDOL Op. Letter, 2001 WL 58864, at *1-2 (Jan. 15, 2001). Nothing prevents ThyssenKrupp from **requiring** its employees to don their required work clothing and PPE (*i.e.*, items required by the nature of their work) after they swipe-in, or to doff the same and shower prior to swiping-out at the end of the workday. In fact, it is undisputed that ThyssenKrupp already has a computerized timekeeping system that utilizes numerous time clocks stationed throughout the foundries to record employees' time for pay purposes. *See* PFOF ¶ 54. As such, it is certainly within ThyssenKrupp's control to pay its employees for the employees' on-site pre-shift donning and post-shift doffing and showering activities by simply expanding the currently enforced parameters of the employees' compensable day to comport with the requirements of the FLSA. In other words, ThyssenKrupp can capture the uncompensated time at issue by simply eliminating its current policy prohibiting employees from recording the time they spend donning, doffing and showering pre- and post-shift. No other adjustments need to be made.

> 2. *ThyssenKrupp's attempts to demonstrate that it will face "huge administrative difficulties" recording the uncompensated time at issue are insufficient to sustain its de minimis defense.*

The parade of horribles presented by ThyssenKrupp on pages 23-25 of its brief can be given short shrift from the Court. First, ThyssenKrupp's assertion that it "simply *cannot* … 'record an employee's actual hours worked to the precise minute and overtime down to the penny' because Waupaca does not have the technical capability to record the 'hours worked' that occur off its

premises," completely misses the mark. Def.'s Brief at 23 (emphasis in original). Plaintiffs are not seeking nor have they ever sought compensation for any donning and doffing-related activities that occur off ThyssenKrupp's premises. Accordingly, Plaintiffs are not advocating that ThyssenKrupp monitor or record such time.

Second, ThyssenKrupp argues that it would be administratively difficult to record the time employees spend donning, doffing and showering on-site because employees allegedly "often arrive to work early and socialize before, during and after their donning, doffing and showering activities." *Id.* However, this is not sufficient to establish that, "in this day of modern technology, [ThyssenKrupp] cannot record the compensable work performed by its employees." *Reich v. IBP, Inc.*, No. 88-2171, 1996 WL 137817, at *7 (D. Kan. Mar. 21, 1996) (citing *Saunders v. John Morrell & Co.*, No. C88-4143, 1992 WL 531674, at *2 (N.D. Iowa Oct. 14, 1992)).[11] Indeed, ThyssenKrupp's argument that some employees may socialize or lollygag when performing these activities, *see* Def.'s Brief at 23-24, does not excuse it from failing to record or pay for working time. As an employer, ThyssenKrupp has a responsibility to control when work is performed on its premises. *See Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at * 7 (E.D. Wis. Sept. 11, 2008) (recognizing that "it is the responsibility of management to see that work is not performed if it does not want it to be performed. The management 'cannot sit back and accept the benefits without compensating for them.'") (citing 29 U.S.C. § 785.13)); *see also Reich v. Dep't of Conservation & Natural Res.*, 28 F.3d 1076,

---

[11] Likewise it is no excuse that the amount of donning, doffing and showering time at issue might vary from employee to employee. *Compare* Def.'s Brief at 24-5 *with Reich*, 1996 WL 137817, at *7 (holding that employer's argument that the pre-shift and post-shift activities at issues were not performed in any prescribed manner and the actual time spent by employees varied depending on a myriad of factors was insufficient to demonstrate that administrative difficulties precluded the employer from recording such time). As it is, employees' compensable time currently varies based on the timing of the employees' actual swipes in and out of ThyssenKrupp's time-clocks. ThyssenKrupp has not alleged that it currently has any difficulty monitoring or recording this time, or in controlling allegedly excessive socializing and dawdling by its employees.

1081-82 (11th Cir. 1994) (holding that an employer who does not want work to be performed has an obligation to exercise its control over the workforce to prevent the work from occurring); *United States Dep't of Labor v. Cold Enters., Inc.*, 62 F.3d 775, 779-80 (6th Cir. 1995) (same); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) (same).

Because ThyssenKrupp knows, and indeed recommends, that its employees don, doff and shower on-site due to the nature of their work, and is fully aware that employees are doing so outside the current parameters of ThyssenKrupp's purposely restricted compensable workday, ThyssenKrupp must pay for this additional time. *See Lindow v. United States.*, 738 F.2d 1057, 1060-61 (9th Cir. 1984); *Mumbower*, 526 F.2d at 1188 ("[I]t is settled that duties performed by an employee before and after scheduled hours, even if not requested, must be compensated if the employer 'knows or has reason to believe' the employee is continuing to work." (quoting 29 C.F.R. § 785.11)).

Third, ThyssenKrupp argues that Plaintiffs rely upon easily distinguishable case law to support their focused attack on ThyssenKrupp's *de minimis* defense since the employers in Plaintiffs' cases already required donning and doffing activities to occur on their premises. In addition, ThyssenKrupp argues that Plaintiffs' cited cases involve employers who either conceded or made no attempt to argue that there was a practical impediment to recording the time at issue. Def.'s Mem. at 25 (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941 (W.D. Wis. 2008)); *Hoyt*, 579 F. Supp. 2d 1132; *Spoerle*, 527 F. Supp. 2d 860; *Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 1314 (M.D. Ala. 2004); and *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003)). For the reasons set forth above, ThyssenKrupp's half-hearted attempt to distinguish Plaintiffs' cases fails. Again, Plaintiffs are not seeking compensation for employee-time spent donning, doffing or showering off

ThyssenKrupp's premises. Further, ThyssenKrupp, like the employers at issue in *Kasten*, *Spoerle*, and *Hoyt*, failed to demonstrate that it lacks the technological wherewithal to record the compensable work performed by its employees. The fact that ThyssenKrupp made an attempt to show that administrative difficulties prevent it from recording the time at issue but failed to meet its burden in doing so, does nothing to magically extract ThyssenKrupp from the scope of these rulings.

### B. The Court Can Decide the Pure Legal Issue of Whether The Absence of Administrative Difficulties Renders It Unnecessary For The Court to Analyze The Other *De Minimis* Factors.

Even if the Court were to conclude that a genuine issue of material fact exists regarding whether industrial realities justify ThyssenKrupp's failure to record the uncompensated time at issue, the Court can still determine the pure legal issue Plaintiffs' present: In situations where modern technology permits the recording of actual work time, is the *de minimis* defense still available to employers, or is *Lindow's* "practical administrative difficulty"-factor outcome determinative, as suggested by Judge Shabaz in *Hoyt*? According to Judge Shabaz: "The Court need not discuss the [other *de minimis*] factors because the defendant's failure to provide evidence that there would be any practical administrative difficulty in recording the extra time **prevents** the Court from concluding that plaintiffs' time spent changing is de minimis as a matter of law." *Hoyt*, 579 F. Supp. 2d at 1139; *see also* SOL Amicus Brief at 4-5. This legal issue is ripe for this Court's consideration now.

### III. ANALYSIS OF ADDITIONAL *DE MINIMIS* FACTORS DOES NOT SUPPORT A *DE MINIMIS* FINDING IN THIS CASE.

### A. The Amount of Uncompensated Time At Issue Does Not Entitle ThyssenKrupp To Summary Judgment on Its *De Minimis* Defense.

Contrary to ThyssenKrupp's assertion, Plaintiffs' motion does not ignore what ThyssenKrupp deems to be the most critical factor in determining whether the *de minimis*

defense applies, *i.e.*, the amount uncompensated time is at issue. Def.'s Brief at 18. Rather, the point ThyssenKrupp ignores is that there is simply no need to discuss the amount of uncompensated time at issue where the employer fails to first demonstrate that there exists any practical administrative difficulty in recording the extra time, as ThyssenKrupp has failed to do here. *See Hoyt*, 579 F. Supp. 2d at 1139; 29 C.F.R. § 785.47; *see also* SOL Amicus Brief at 4-5. "After all, many jobs could be divided up into tasks that take only a few minutes a piece. Taken to its logical conclusion, a 'de minimis' rule that focuses only on time could swallow up an entire shift." *Spoerle*, 527 F. Supp. 2d at 869; *Hoyt*, 579 F. Supp. 2d at 1138. Accordingly, Plaintiffs' motion for partial summary judgment is not dependent on any analysis of the uncompensated time at issue.

With respect to its cross-motion, ThyssenKrupp has failed to demonstrate that the amount of time Plaintiffs spend donning, doffing and showering is so insubstantial as to be *de minimis*. First, despite ThyssenKrupp's assertions to the contrary, many courts have **not** adopted a 10-minute *de minimis* threshold, including this Court's sister district. *Compare* Def. Mem. at 19 *with Kasten*, 556 F. Supp. 2d at 954 ("even accepting defendant's estimate of 4.117 minutes to 4.755 minutes spent donning, doffing and walking, the amount of time does not fall under the *de minimis* exception"); *Hoyt*, 579 F. Supp. 2d at 1138 (calling into question the perceived 10-minute *de minimis* threshold); *Spoerle*, 527 F. Supp. 2d at 868 (same).[12] In fact, one district court observed that it "is highly doubtful that four to eight minutes donning and doffing …each workday, could appropriately be considered "*de minimis*" without an additional showing that there is a significant administrative burden on the employer to count such time." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 724 (E.D. La. 2008). Accordingly, the baseline

---

[12] Recently, the Ninth Circuit expressly observed that it has "not adopted a ten or fifteen minute *de minimis* rule." *Rutti v. Lojack Corp., Inc.*, 578 F.3d 1084, 1097 (9th Cir. Cir. 2009).

from which ThyssenKrupp compares the results of its proffered expert's time study is not without its critics.

Second, ThyssenKrupp has failed to proffer any reliable evidence to demonstrate that the amount of time at issue is in fact *de minimis*. *See generally* ECF No. 210 & 211, Pls.' Mot. to Exclude Fernandez Decl., and MOL in Support of Motion. Significantly, the time study performed by ThyssenKrupp's expert, Dr. Jeffrey Fernandez, related **solely** to employee-activities at ThyssenKrupp Plants 2 and 3. *See* ECF No. 211, Pls.' MOL, at 5, 19-20. Fernandez offered no opinion as to the time it takes employees to don and doff PPE or shower at any other ThyssenKrupp foundry location, nor did Fernandez suggest that his time estimates for Plants 2 and 3 could somehow be extrapolated to Plants 1, 4, 5 or 6. *Id.* at 19-20. Accordingly, Fernandez's time estimates are completely irrelevant to ThyssenKrupp's cross-motion as it relates to those additional Plants. *Id.*

Third, and as discussed in section III.B below, ThyssenKrupp's time study failed to address the central time measurement issue in this case, *i.e.*, the amount of actual, uncompensated time production employees incur during the continuous workday – beginning with their first principal work activity and ending with their last principal work activity. *See generally id.* at 2-3 (citing Pls.' Ex. RR, SOL's Mot. to Exclude Reports and Testimony of Def.'s Experts Javitz and Fernandez, *Chao v. Tyson Foods, Inc.*, No. 2:02-cv-01174-VEH-TMP (N.D. Ala.) (Dkt. No. 107); Pls.' Ex. SS, SOL's Reply in Supp. of Mot. to Exclude (Dkt. No. 140).) In fact, the time study purposely did not measure a normal and continuous workday. Accordingly, ThyssenKrupp's assertion that the time spent by Plaintiffs donning, doffing and showering on a daily basis amounts to no more than 8.868 minutes cannot be sustained. *See Rutti v. Lojack Corp., Inc.*, 578 F.3d 1084, 1096 (9th Cir. 2009) (holding that record did not compel a finding

that the time at issue took less than 10 minutes where record showed that additional activities were not included in proffered time estimates). Moreover, even if the Court were to accept this amount as true, the Court could not similarly conclude that such time is *de minimis* as a matter of law in light of relevant case law demonstrating that, in some circumstances, as little four to eight minutes for donning and doffing-related activities is **not** *de minimis*. *See Kasten*, 556 F. Supp. 2d at 954; *Collins* 568 F. Supp. 2d at 724.

Finally, genuine issues of material fact preclude summary adjudication in favor of ThyssenKrupp on its *de minimis* defense. Plaintiffs must be afforded the opportunity to conduct their own time motion study to properly refute the study presented by ThyssenKrupp.[13] *See* Affidavit of T. Joseph Snodgrass, submitted pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

### B. The *De Minimis* Doctrine Does Not Apply Separately To Each Particular Activity In Isolation.

Plaintiffs' donning, doffing and showering activities cannot be analyzed in isolation by arbitrarily separating out particular activities. *See* Pls. Ex. PP, SOL Amicus Brief at 5. Rather, a *de minimis* determination requires consideration of the aggregate time for which an employee seeks compensation during his or her continuous workday from the employees' first principal activity until the start of paid time and from the employees' end of paid time until their last principal activity.[14] *See De Asencio*, 500 F.3d at 374-75 (holding that district court must

---

[13] Of course, the Court voiced a preference to defer costly time motion studies until **after** hearing Plaintiffs' motion for partial summary judgment. *See* Pls.' Ex.UU at 19, 33-34; Tr. of July 30, 2009 Status Conf.

[14] While the Supreme Court in *IBP, Inc. v. Alvarez* did not rule directly on the scope and meaning of *de minimis* activities, or on the effect of *de minimis* activities on the compensability of donning and doffing-related activities, it did make rulings concerning the effect of the timing of these activities for purposes of determining their compensability. 546 U.S. 21, 38-41 (2005). For example, the jury in *Tum v. Barber Foods, Inc.*, only considered whether Barber Foods was required to compensate its employees for time they spent actually donning and doffing in determining that the time at issue was *de minimis*. *See Alvarez*, 546 U.S. at 39. The Supreme Court reversed and remanded, finding that the district court improperly excluded from the jury's consideration

consider time spent donning, doffing, and walking the aggregate for purposes of analyzing employer's *de minimis* defense); *see also* Pls.' Ex. TT, at 3, USDOL, Wage and Hour Advisory Memo No. 2006-2 (May 31, 2006) ("The *de minimis* rule applies to the aggregate amount of time for which an employee seeks compensation, not separately to each discrete activity"). Any other approach is meaningless because "independent *de minimis* determinations of each task would rarely result in findings of compensable time – work can always be subdivided into small enough tasks to be considered *de minimis*." *Reich v. IBP, Inc.*, No. 88-2171, 1996 WL 137817, at *6 (D. Kan. May 16, 1996); *see also Spoerle*, 527 F. Supp. 2d at 869.

Besides, "[c]ourts have granted relief for claims that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim." *Lindow*, 738 F.2d at 1063 (citing cases). According to the Ninth Circuit, "[w]e would promote capricious and unfair results, for example, by compensating one worker $50 for one week's work while denying the same relief to another worker who has earned $1 a week for 50 weeks." *Id.* Indeed, "to the plaintiffs, who work for subsistence or near-subsistence wages, even a half-an-hour's wages each week is important, and is not appropriately considered a 'trifle.'" *Collins*, 568 F. Supp. 2d at 724. In addition, post-*Lindow*, courts have also held that it is "appropriate to consider the aggregate based on the total number of workers." *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998).

Accordingly, even if the Court were to accept Fernandez's estimate of 8.686 minutes per day, over time this amount, when aggregated, necessarily amounts to a substantial claim for the

---

the time employees spent walking to the production floor after donning required PPE and the time they spent walking from the production floor to the area where they doff such gear. *Id.* at 40-41. Accordingly, in determining whether the otherwise compensable activities at issue in the present case can be deemed non-compensable by virtue of ThyssenKrupp's *de minimis* defense, this Court must keep in mind the analytical framework set forth in *Alvarez* and consider the time at issue in light of the continuous workday. *See De Asencio*, 500 F.3d at 374-75.

workers in question. *See Collins*, 568 F. Supp. 2d at 724, n.12. This becomes more readily apparent when one considers the fact that the previously uncompensated time of nearly 500 workers is at issue. *See Monfort*, 144 F.3d at 1334; *see also Perez*, 610 F. Supp. 2d at 525 (considering both the size of a single plaintiff's claim aggregated over length of case and the aggregate claim of all 280 opt-in plaintiffs to hold that the amount at issue was not *de minimis*).

### C. ThyssenKrupp Has Not Demonstrated That Plaintiffs Do Not Regularly Engage In The Donning And Doffing-Related Activities At Issue.

Finally, ThyssenKrupp asserts that the regularity with which Plaintiffs engage in the donning, doffing and showering activities at issue necessitates a *de minimis* finding. Def.'s Brief at 21-22. In analyzing this consideration courts are mindful that some employees may not have performed all of the additional work at issue on a daily basis. *Reich*, 1996 WL 137817, at *7. However, so long as the employees perform the additional work "at least several times a week," courts may properly hold that the work occurred with "sufficient regularity that the de minimis doctrine does not preclude compensation." *Id.* (holding that 14 minutes per day of pre-shift and post-shift donning, doffing and sanitizing equipment was not *de minimis*).

In arguing that Plaintiffs have offered no evidence regarding demonstrating the regularity with which Plaintiffs perform their uncompensated activities, ThyssenKrupp mistakes who bears the burden of proof on this issue. The fact is that the burden of establishing "regularity," or the lack thereof, properly remains with ThyssenKrupp, irrespective of which party moved for summary adjudication on the defense. *See Spoerle*, 527 F. Supp. 2d at 868.

Here, ThyssenKrupp has failed to meet its burden of conclusively demonstrating that Plaintiffs do not perform the activities in question on a regular basis. ThyssenKrupp first points to the foundry worker declarants' statements that they performed donning, doffing and showering activities "on certain days" and in "certain workweeks," as evidence that Plaintiffs do

not regularly engage in such activities. Def.'s Brief at 22. In doing so, ThyssenKrupp ignores the fact that each of the foundry worker declarants did not address the issue of how regularly they engaged in the activities described in their respective declarations. *Compare id. with* Plaintiffs' Exs. II, JJ, KK, MM, and NN at ¶ 18; Ex. LL at ¶ 19 (ECF No. 153). As such, the declarations do not support ThyssenKrupp's argument.

The only other evidence proffered by ThyssenKrupp on this issue is the conclusory opinions of Fernandez and ThyssenKrupp's Director of Human Resources, Joey Leonard. *See* Def.'s Brief at 22 (citing Fernandez Decl. at ¶¶ 31-32 (ECF No. 180); Leonard Decl. at ¶ 18 (ECF No. 177)). Rather than support ThyssenKrupp's position, the proffered declarations actually demonstrate that some employees at Plants 2 and 3 do, in fact, regularly engage in the activities in question. *See, e.g.,* Fernandez Decl. at ¶ 32.E. ("71.7% of Waupaca employees at Plant 2 and 3 shower at the end of shift"); *see also* Leonard Decl. at ¶ 18 (only averring on when and how "some" employees engage in donning and doffing-related activities). Consequently, this factor does **not** favor a *de minimis* finding.

## IV. THYSSENKRUPP'S ADDITIONAL AFFIRMATIVE DEFENSES FAIL.

Plaintiffs additionally move for judgment as a matter of law as to certain affirmative defenses. ThyssenKrupp admits that its common law defenses of estoppel, contract, lack of consideration, statute of frauds, and mitigation of damages are not properly plead as defenses to Plaintiffs' FLSA claims. Def. Mem. at 26, n.25. In addition, it concedes that its Eighth Affirmative Defense fails as a matter of law. Def. Mem. at 27-29. Nevertheless, it argues that it is entitled to assert a "setoff" defense, as well as two additional defenses that fail to make sense even when ThyssenKrupp attempts to explain them in it memorandum.[15]

---

[15] ThyssenKrupp makes much of Plaintiffs' loose use of the word "strike" in their opening memorandum of law. Def. Mem. at 27. Plaintiffs have not moved to strike ThyssenKrupp's affirmative defenses under Rule 12(f),

### A. ThyssenKrupp Fails to Present Facts Substantiating Its Setoff Defense.

While setoff may be a viable defense in certain cases, ThyssenKrupp has failed to substantiate its defense with admissible, relevant evidence and show that it is viable here. Def. Mem. at 27 (citing Fernandez Decl.). Nor will it be able to. ThyssenKrupp contends that because Plaintiffs are purportedly paid for "early swipe-ins" and "longer break times," payment for that "non-work" time may be used to offset the "amount of time that employees take to don and doff non-unique items, and to shower while off the clock." Def. Mem. at 27 (citing Fernandez Decl.). In other words, ThyssenKrupp argues that due to its failure to take appropriate disciplinary measures for policy violations, it does not need to compensate employees for work performed because that time can be credited against prior compensation for purported non-work time. *Id.* at 28, n.27.

This precise argument has been rejected by the Ninth Circuit and numerous district courts, including those in the Seventh Circuit, as having no basis in law. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903, 913-14 (9th Cir. 2004); *Kasten*, 556 F. Supp. 2d at 953; *see also Agee v. Wayne Farms LLC*, 626 F. Supp. 2d 643, 646 (S.D. Miss. 2009); *see also Hiner v. Penn-Harris-Madison School Corp.*, 256 F. Supp. 2d 854, 860 (N.D. Ind. 2003).

In *Ballaris,* the Ninth Circuit denied a defendant's request to credit a 30-minute "paid lunch" against the additional compensation it was found to have owed plaintiffs. *Ballaris*, 370 F.3d at 913-14. The court noted that "the parties treated the half-hour paid lunch as non-working time," and thus "constituted an additional benefit for the employees and not compensation for hours worked." *Id.* at 909. Relying upon section 207(h) of the FLSA, the court stated that permitting a defendant to credit previously compensated non-work time would "be in direct violation of the

which does impose a 20-day limitation, but under Rule 56 of the Federal Rules of Civil Procedure. Accordingly, ThyssenKrupp's timeliness argument should be disregarded.

express provisions of section 7(h)," *id.* at 913, and "would undermine the purpose of the FLSA" because it would promote "false and deceptive 'creative' bookkeeping." *Id.* at 914.

Similarly, in *Kasten*, the defendant argued that it should be entitled to offset any uncompensated work time by "any time for which plaintiffs were compensated but not working," specifically five minutes of paid time at the end of lunch breaks that was meant to compensate for donning and doffing, and "extra time" plaintiffs took after their 10 minute rest breaks. 556 F. Supp. 2d at 952-53. The court rejected that argument, noting that "defendant has not compensated plaintiffs for time not otherwise compensable under the FLSA," because rest breaks are required to be compensated. *Id.* at 953. While the defendant was "entitled to take disciplinary measures against employees who take excessively long breaks,…it cannot be permitted to offset such time against uncompensated work time in its attempts to satisfy the requirements of the FLSA." *Id.*

Last, in *Agee*, a poultry processor argued that it was not liable under the FLSA because it paid to plaintiffs 11 extra daily minutes for non-work "personal time" and for a portion of the lunch break. Those 11 extra minutes, the defendant argued, would swallow the time spent in uncompensated work activities, and should be used to offset the poultry processing plaintiffs' claims for unpaid work time. 626 F. Supp. 2d at 645-56. The court rejected that argument, noting that even if the defendant's "facts of the case are as [defendant] represents them to be," the defendant's setoff/credit argument was unsupported by any legal authority. 626 F. Supp. 2d at 645-56.

Here, ThyssenKrupp has failed to show that it has not paid plaintiffs for any time not otherwise compensable under the FLSA. Its offset defense fails as a matter of law. It should not be granted leave to amend its defense, because such amendment would be futile. *See United*

30

*States v. Levine*, 185 F. Supp. 889 (E.D.N.Y. 1955) (denying leave to amend answer because proposed defenses failed as a matter of law) *cited by EEOC v. Marathon Cty.*, No. 79-559, 1981 WL 282, at *4 (W.D. Wis. Oct. 8, 1981).[16]

### B. ThyssenKrupp's Sixth Affirmative Defense Fails as a Matter of Law.

ThyssenKrupp fails to refute why Plaintiffs should not be granted summary judgment on ThyssenKrupp's sixth affirmative defense. That defense states that "Plaintiffs' *claims* are barred, in whole or part, *to the extent that the work performed falls within* exemptions, exclusions, exceptions, or credits provided for in Section 7 of the FLSA, 29 U.S.C. § 207." (emphasis added). Putting aside the fact that this defense in no way tracks the statutory language found in section 207, which is the FLSA's "Maximum Hours" provision, ThyssenKrupp fails to specify how any specific subsections of 207 exempt, exclude, except, or credit "work performed" and would thus "bar" Plaintiffs' claims under the FLSA.

Even when given the opportunity to explain what it means by this defense, ThyssenKrupp can only state that "Waupaca believes that there are certain credits available to it under § 207 that can be counted against any award of damages." Def. Mem. at 29. Only one subsection of section 207 deals with credits—section 207(h), which incorporates by reference subsections of section 207(e)—and ThyssenKrupp does not even attempt to demonstrate how these credits may apply. Nearly two years into this litigation, this is an unreasonable position.

Plaintiffs have demonstrated that the defense fails as a matter of law not only because it is improperly and nonsensically plead, but also because ThyssenKrupp has failed to put forth any facts entitling ThyssenKrupp to this defense. At this stage in the litigation, ThyssenKrupp must surely know what those facts are, given that it controls how and when plaintiffs are paid.

---

[16] ThyssenKrupp's request to amend should also be denied given that it does not formally move for leave to amend under Rule 15.

Because ThyssenKrupp bears the burden of proof at trial, Plaintiffs' motion must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"). ThyssenKrupp should be denied leave to amend both because its inability to clarify its defense—two years into this litigation—reflects a dilatory motive, and because any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### C. ThyssenKrupp's Twenty-Third Affirmative Defense Fails as a Matter of Law.

ThyssenKrupp contends that its twenty-third defense should not be dismissed because the "statutory prerequisites" that are referred to are thereafter referenced in affirmative defenses 24-33. This does not make its twenty-third affirmative, and separate, defense any more clear or viable. Plaintiffs have found no case suggesting that ThyssenKrupp's statutory prerequisites defense exists. It fails as a matter of law.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order granting Plaintiffs' motion for partial summary judgment in its entirety and denying ThyssenKrupp's cross-motion for summary judgment.

Respectfully submitted,

Dated: December 18, 2009

**LARSON • KING, LLP**

**By** s/T. Joseph Snodgrass
T. Joseph Snodgrass (#231071)
Shawn Raiter (#240424)
Kelly Swanson (#0330838)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500

**ZIMMERMAN REED, P.L.L.P.**
J. Gordon Rudd, Jr. (#222082)
Anne T. Regan (#333852)
651 Nicollet Avenue, Suite 501
Minneapolis, MN 55402
(612) 341-0400

*ATTORNEYS FOR PLAINTIFFS AND*
*COLLECTIVE ACTION*
*REPRESENTATIVES*

1271081