# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RYAN DeKEYSER, THOMAS COOPER,
HARLEY GRANIUS and CARLO LANTZ,
on behalf of themselves and others similarly situated,

                Plaintiffs,

      v.                            Case No. 08-C-488

THYSSENKRUPP WAUPACA, INC. d/b/a
WAUPACA FOUNDRY, INC.,

                Defendant.

---

## DECISION AND ORDER

---

       Plaintiffs filed this lawsuit against their current or past employer, Defendant Thyssenkrupp

Waupaca, Inc. d/b/a Waupaca Foundry, Inc. ("Waupaca"), claiming they had been denied wages for

hours worked over the preceding three-year period. One of the claims Plaintiffs have brought is a

collective action pursuant to the Fair Labor Standards Act of 1938 as Amended, 29 U.S.C. § 201,

*et seq.* ("FLSA"). Plaintiffs claim that under the FLSA they are owed compensation for time spent

"donning and doffing gear and equipment, showering, and walking to and from the production

floor." (Compl. ¶ 1.) The Court conditionally certified a collective class pursuant to Section

216(b) of the FLSA. Subsequently, the Court adopted Plaintiffs' proposed case management plan,

which provided for a stay of discovery and a round of summary judgment briefing in order to

resolve disputed legal issues. Plaintiffs filed a motion for partial summary judgment, in which they

contend the undisputed facts demonstrate that their donning, doffing and showering are

compensable work under the FLSA as amended by the Portal-to-Portal Act. Plaintiffs also argue

that because modern technology permits Waupaca to record the time spent donning, doffing and showering, the *de mimimis* defense asserted by Waupaca is not available as a matter of law. Finally, Plaintiffs seek summary judgment on a number of Waupaca's affirmative defenses.

Waupaca responded to Plaintiffs' motion for partial summary judgment and filed a cross-motion for summary judgment. Waupaca maintains that donning, doffing and showing are not "work" under the FLSA, and because these activities need not occur at the work site, they are not compensable. It also contends that the *de minimis* defense still applies and that three of its affirmative defenses to the FLSA claim are viable.

Although the Court set this case on a path for potential early and cost-efficient resolution of legal issues, the extent of the factual disputes between the parties appears significant given the motion practice subsequent to Plaintiff's filing of their motion for partial summary judgment. Both parties filed a declaration or affidavit under Fed. R. Civ. P. 56(f). Plaintiff also filed four motions invoking Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to challenge the declarations of Dr. Mark Roberts, Bryant Esch, Frederick Kohloff and Dr. Jeffrey Fernandez made in support of Waupaca's cross-motion for summary judgment. (Dkts. 204, 206, 208, 210.) For the reasons stated below, the motions for summary judgment will be denied, and the Plaintiffs' motions to exclude the declarations of Roberts, Esch, Kohloff and Fernandez will be denied.

## I. BACKGROUND

Defendant Waupaca employs approximately 3,500 people and operates six foundries in Waupaca and Marinette, Wisconsin; Tell City, Indiana; and Etowah, Tennessee. (Dkt. 219 at 2.)

2

It manufactures a variety of ductile and gray iron cast parts for use in the automotive and other industries. (*Id.*) Six different current or former Waupaca foundry employees who opted into this action provided declarations in which they claim Waupaca has not paid them for all of the time they have worked. (Dkt. 153 Exs. II, JJ, KK, LL, MM, NN.) Specifically, the declarants indicate that at various times they entered one of Waupaca's foundries in their street clothes, picked up a uniform that had been laundered by a third party at Waupaca's expense, put on the uniform and such items as boots, protective glasses and earplugs, and then swiped in using their unique badge, from which point they were paid. After they swiped out at the end of the day, the declarants claim they would remove their personal protective equipment ("PPE"), deposit their soiled uniforms in a basket in the locker room, shower and change back into their street clothes. Because these activities occurred after they swiped out for the day, the declarants aver they were not compensated for the time it took to accomplish these tasks.

It is unclear whether this was something the declarants did every work day or only occasionally, as their declarations disclaim any intent to indicate the frequency with which they changed and showered in Waupaca's locker rooms. The parties do not dispute the fact that not all of Waupaca's employees donned, doffed and showered at Waupaca's plants every day. In fact, Waupaca's Director of Human Resources, Joey Leonard, claims to have observed workers entering and leaving all six of its plants wearing their work uniforms (some fire-proof) and work boots, and also observed workers leaving for the day wearing these same items. (Dkt. 177 at ¶ 6; Dkt. 219 at 7.) Further, Waupaca asserts that its staff has observed employees at all six plants putting on and taking off hard hats, safety glasses and earplugs post-swipe in, and pre-swipe out, which would mean that they were being paid during this period of time. (Dkt. 177 at ¶ 7; Dkt. 219 at 7.)

The parties dispute what PPE Waupaca employees must wear. According to Plaintiffs, all Waupaca production employees must wear a hard hat, safety glasses, earplugs, steel toed shoes, 100% cotton clothing or a uniform provided by Waupaca and gloves (for employees in two specific plants). Waupaca, on the other hand, maintains that the only items that all of its production employees must wear are steel toed shoes and 100% cotton clothing or a company-provided uniform. (Dkt. 196 at v.)

Another point of contention between the parties is whether or not Waupaca requires its production employees to don and doff their PPE and cotton clothes or uniforms and shower at Waupaca's plants. While Plaintiffs admit that Waupaca has no formal policy requiring these items to be donned at the work site, they argue that the fact Waupaca provides uniforms, a laundry service, safety glasses, boots and ear plugs, along with lockers and a locker room, suggests that Waupaca at least encourages donning these items on site. As to doffing and showering, Plaintiffs point to a September 2005 Hazard Communication from Waupaca to its employees which discusses silica. The document discusses the health risks of exposure to silica and lead, both of which are present in cupola dust, and reads as follows:

> After working in a dusty area, practice good personal hygiene by showering and leaving your uniform at work. Cupola dust poses no hazard from skin contact, but showering at work will prevent the material from being tracked into your car or home. During the day, wash hands and face prior to eating, drinking, or smoking.

(Dkt. 153 Ex. U at TKW0167298; *see also* Dkt. 152 Ex. X at TKW0236658.) Plaintiffs also intimate that it is likely Waupaca's insurance carrier requires it to provide a place for its production employees to change and shower on site, although Waupaca has made clear in reply that its carrier does not require such amenities. (Rob Johnson Decl., ¶¶ 1-5.) It is undisputed that Waupaca

4

provides its foundry employees the use of lockers, locker rooms and showers to allow them to change clothes and shower on site. Plaintiffs concede that certain employees may not shower on certain days, and as noted above even the six declarants themselves do not indicate how often they shower at work. From Waupaca's point of view, it does not demand that its employees change and shower at its plants, and it is at liberty to close the locker rooms and showers as it is not required to provide these facilities.

The parties are also at loggerheads on the question of whether the nature of the work undertaken by production employees at Waupaca requires them to change clothes and shower at Waupaca's plants. Plaintiffs assert that, given the health risks associated with exposure to respirable crystalline silica, Waupaca's employees must change and shower at work; they submit that the relevant literature on industrial hygiene supports their position. Waupaca contends that this literature is distinguishable and not applicable to the operations at its plants. (Dkt. 234 at 14-15.) Waupaca's experts contend that the nature of the work does not require clothes changing and showering at the end of the work day, though Plaintiffs challenge the reliability of these opinions under Fed. R. Evid. 702 and *Daubert,* and seek discovery regarding the bases of these opinions.

In addition to disputing whether the nature of the work at Waupaca's facilities and Waupaca itself requires the production employees to change and shower on site, the parties dispute whether the law requires them to do so. While they have not identified a statute or regulation requiring foundry workers to change and shower at the foundry, Plaintiffs maintain that the Occupational Safety and Health Administration ("OSHA"), the National Institute for Occupational Safety and Health ("NIOSH") and the Department of Labor ("DOL") all recommend that foundry workers change out of work clothes at the end of their work shifts in an effort to minimize the health risks

5

associated with exposure to respirable silica. OSHA also recommends that construction employees exposed to crystalline silica "shower if facilities are available." (Dkt. 149, Ex. AA at 2.) Waupaca filed a declaration of Frederick Kohloff, the director of the Environmental Health and Safety Division of the American Foundry Society ("AFS"), a trade association. (Dkt. 179.) In it, Kohloff claims that no federal, Wisconsin, Indiana or Tennessee law or regulation requires foundry workers to doff their clothing and shower at their foundries at the end of their shifts. Kohloff also states that the AFS does not require its members, such as Waupaca, to mandate that their employees change out of their work clothes and shower at the end of their shifts. This opinion is subject to Plaintiffs' motion to exclude Kohloff's testimony.

The parties do agree that, at least on occasion, the work done at Waupaca's plants generates dust containing silica. (Dkt. 234 at 2.) Current and former employees of Waupaca provided declarations in which they claim that a black mucus discharge containing dust would appear when they blew their noses. (*Id*. at 4.) Although Plaintiffs attribute this to exposure to respirable silica at Waupaca's plants, Waupaca notes that at no time did the declarants complain to Waupaca regarding the silica in the air at the plants or any black mucus discharge. While there have been instances in which the levels of silica in the air at Waupaca's plants exceeded those recommended by federal agencies such as the OSHA and the NIOSH, and the American Conference of Governmental Industrial Hygienists ("ACGIH"), the record is unclear as to the frequency and magnitude of testing indicating silica levels above those recommended by OSHA, NIOSH and ACGIH.

6

## II. ANALYSIS

### A. Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id*. at 322-24. Where each party has moved for summary judgment, as is the case here, each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law.

### B. Motions to Strike Declarations

Before turning to the merits of the cross-motions for summary judgment this Court must address Plaintiffs' motions to strike several declarations, in whole or in part, submitted by Waupaca. Specifically Plaintiffs take issue with the declarations of Dr. Mark Roberts (Dkt. 176 and 248), Bryant Esch (Dkt. 178), Frederick Kohloff (Dkt. 179), and Dr. Jeffrey Fernandez (Dkt. 180). Plaintiffs argue that the declarations fail to meet the requirements of *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579 (1993).

Under the *Daubert* framework, a court must determine whether the proffered expert's testimony is both relevant and reliable. *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007). This is a three-step analysis: the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; the expert's reasoning or methodology

7

underlying the testimony must be scientifically reliable, *Daubert,* 509 U.S. at 592-93; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. In determining reliability, Daubert also sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

Plaintiffs have not challenged the qualifications of any of Waupaca's experts. The declarations do assist the trier of fact–this Court for purposes of the cross-motions for summary judgment–to understand the evidence. The only *Daubert* issue presented is whether the experts' reasoning or methodology underlying their opinions is scientifically reliable. Here the declarations offered, to the extent they contain expert opinions, do not clearly fall below the standard enunciated in *Daubert* for admission of expert testimony. This Court cannot rule that these declarations would be inadmissible and, therefore, will consider them for purposes of the cross-motions for summary judgment.

### 1. Dr. Mark Roberts

Dr. Roberts is a Principal Scientist and Director at the Center for Occupational and Environmental Health of Exponent, a scientific research and consulting company. On behalf of Waupaca he submitted two declarations. (Dkt. 176 and Dkt. 248.) His first declaration states that "there is no peer-reviewed, published literature that provides support for a policy of mandatory showering or clothes doffing after work with silica in the foundry setting." (Dkt. 176 ¶ 64.) To be sure, Dr. Roberts' opinion as to the *absence* of peer-reviewed literature is not subjected to scientific testing or submitted for peer review or publication. But the Supreme Court in *Kumho Tire Co., Ltd.*

8

*v. Carmichael* noted that whether *Daubert's* specific factors are reasonable measures of reliability in a particular case is a matter the trial judge has "considerable leeway" to determine. 526 U.S. 137, 152 (1999). The goal is to ensure that an expert employs procedures and analysis in a way that is similar to how an expert in the given field would operate outside of court. Here, the expert offered an opinion as to the lack of "peer-reviewed, published literature" in an area. Such an opinion does not, itself, need to be tested or peer-reviewed. Dr. Roberts' opinion that showering is recommended but not required is likewise relevant and reliable, as is his medical opinion that the dose makes the poison. The remainder of the opinions in Dr. Roberts' declarations are not clearly inadmissable and will be considered for the limited purpose of the cross-motions for summary judgment. Dr. Roberts' declarations support this Court's denial of Plaintiff's motion for summary judgment but do not conclusively support granting Defendant's motion for summary judgment. Because of, and despite, Dr. Roberts' declarations, a key factual issue remains in this case: whether the nature of the work performed by the employees requires the donning, doffing and showering for which they seek compensation at the various Waupaca plants.

### 2. Bryant Esch

Mr. Esch is the Environmental Coordinator for Waupaca. He declares that the company does not require employees to shower and/or doff their uniforms on-site after work. (Dkt. 178 ¶ 25.) His declaration also describes silica testing performed at the Waupaca foundries. Plaintiffs take issue with Esch's declaration to the extent that Esch opines that the Waupaca's engineering controls and respiratory protection program has lowered the risks from silica exposure. Esch's opinions are not wholly unsupported; rather they are based on his education, training, and experience at

9

Waupaca. As such, Esch's opinions are not clearly inadmissable and are appropriately considered for purposes of the pending cross-motions for summary judgment.

### 3. Frederick Kohloff

Mr. Kohloff is the Director of the Environmental Health and Safety Division of the American Foundry Society. His declaration includes his opinion that foundries are not required, by state or federal law or industry standards, to have employees shower or don and doff clothing due to the presence of silica. (Dkt. 179 ¶ 5.) Notwithstanding Mr. Kohloff's opinion, the fundamental issue remains whether the nature of the work performed requires donning, doffing, and showering. His opinion is adequately supported by his professional position and experience and the opinion is, therefore, not clearly inadmissable.

### 4. Dr. Jeffrey Fernandez

Dr. Fernandez is an engineering consultant whose declaration relates to the time it takes Waupaca employees to shower and don and doff PPE. His opinion is that it takes between six and seven minutes for an employee to shower and about two and a half minutes to don and doff PPE. (Dkt. 180 ¶¶ B-D.) Plaintiffs contend that Dr. Fernandez did not conduct a time study to calculate all off-the-clock time under the USDOL's "continuous work-day" test. Dr. Fernandez's opinions are, however, based on his detailed observations at several Waupaca plants and, as such, are not clearly inadmissable for purposes of the present cross-summary judgment motions.

Finally, local rules disfavor motions to strike in the context of briefing a motion for summary judgment. Civil L.R. 56(b)(9). Thus, this Court will not strike any of the declarations for purposes of the cross-motions for summary judgment, analyzed in detail below. Plaintiffs may,

10

however, renew their motions prior to trial should any of the Defendant's expand on the opinions described above.

## C. Compensability of Time Spent Donning/Doffing and Showering

Plaintiffs contend that summary judgment is appropriate on their claim that the time spent donning and doffing PPE and showering after their shifts is "work" under the FLSA, and that such time is compensable as it does not fall within the preliminary/postliminary exception contained in the Portal-to-Portal Act. Waupaca disagrees and argues that because these activities are not "work" and nothing required these activities to occur on the premises, Plaintiffs' time spent donning, doffing and showering is not compensable.[1]

Under the FLSA, employers must pay their employees a wage for all their "work." *Spoerle v. Kraft Foods Global Inc.*, 527 F. Supp. 2d 860, 862 (W.D. Wis. 2007) (citing 29 U.S.C. §§ 206, 207). Although the statute does not define "work," the Seventh Circuit has defined the term as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009) (quoting *Jonites v. Exelon Corp.*, 522 F.3d 721, 726 (7th Cir. 2008)). The Portal-to-Portal Act of 1947 amended the FLSA to exclude from compensability any time spent performing "preliminary" or "postliminary" activities, which "occur

---

[1]The parties have treated the issue of whether donning, doffing and showering is "work" for purposes of their FLSA claim separately from the issue of whether time spent on such activities is compensable. Because the two issues appear intertwined in this case and compensability is dispositive to the FLSA claim, the following analysis will focus on whether the time is compensable. *See, e.g., Pirant v. United States Postal Service*, 542 F.3d 202 (7th Cir. 2008) (court analyzed claim for credit of time spent donning and doffing gloves, work shirt and shoes under the Portal-to-Portal Act's exclusion from compensability of preliminary/postliminary activities without separate consideration of whether the activities were "work").

11

either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2). If an activity that would otherwise be preliminary or postliminary is "integral and indispensable" to the employee's principal activity, the Portal-to-Portal Act's exclusion from compensability does not apply as such activity is itself a "principal activity." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30, 37 (2005). As the employer, Waupaca bears the burden of proving that an exception applies to the general rule that "work" is "compensable" under the FLSA. *See Bleichner v. Spies Painting & Decorating, Inc.*, No. 08-057, 2009 WL 281145, at *7 (W.D. Wis. Feb. 3, 2009).

According to Plaintiffs, given the risks of exposure to a variety of hazards, including respirable crystalline silica, their donning/doffing PPE and showering are integral and indispensable to their principal activities working at Waupaca's plants. They liken this case to *Steiner v. Mitchell*, 350 U.S. 247 (1956), where the Supreme Court held that time spent changing clothes and showering by employees of a battery plant, a plant in which they were exposed to various forms of lead and sulphuric acid, was integral and indispensable to the principal activity of battery production, and therefore compensable under the FLSA. The Supreme Court noted that the production employees in *Steiner* routinely worked with lead metal, lead oxide, lead sulphate, lead peroxide and sulphuric acid, and that in general these chemicals "permeate[d] the entire plant and everything and everyone in it." *Id*. at 249. Given the fact the battery plant employees made "extensive use of dangerously caustic and toxic materials," *id*. at 248, they were compelled by the circumstances to change clothes and to shower in the employer's facilities. The *Steiner* Court contrasted these conditions with

12

"changing clothes and showering under normal conditions," which are noncompensable preliminary and postliminary activities.

But from Waupaca's point of view, the conditions of the battery plant discussed in *Steiner* are far removed from what its employees face in its six plants. For example, the employer in *Steiner* required its employees to shower on site at the end of the day, and Waupaca maintains that it has no such policy. 350 U.S. at 25. Waupaca claims that not only does it not require its employees to shower on site, but it need not even provide showering facilities. In other words, Waupaca's argument boils down to a claim that the conditions under which Plaintiffs work are "normal," and therefore noncompensable under *Steiner*. *See Pirant v. United States Postal Service*, 542 F.3d 202, 208-209 (7th Cir. 2008) (where Postal Service employee was not required to wear extensive and unique protective equipment, but only a uniform shirt, gloves, and work shoes, the time spent donning and doffing such items was akin to changing clothes under normal conditions and therefore noncompensable); *Musch v. Domtar Indus., Inc.*, No. 07-cv-524, 2008 WL 4735171, at *7 (W.D. Wis. Oct. 24, 2008), *aff'd*, 587 F.3d 857 (7th Cir. 2009) (because the activities of donning and doffing t-shirts, jeans or bibs, safety shoes and safety glasses occurred under normal conditions, they were noncompensable preliminary and postliminary activities); *see also* 29 C.F.R. § 790.7(g) (noting that "changing clothes, washing up or showering," when performed "under the conditions normally present" are properly classified as preliminary/postliminary activities); 29 C.F.R. § 785.24(c) ("if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity"). Instead, Waupaca asserts that because not all of its employees are required to wear extensive and nonunique PPE, the instant case more closely resembles *Pirant*,

13

as the postal employee in that case was not required to wear extensive and unique protective equipment.[2]

As noted above, the parties dispute what articles of PPE Waupaca's production employees must wear on the job, which counsels against concluding that Waupaca's employees are merely changing clothes (and not extensive and unique protective equipment) under normal conditions. The other significant issue is whether or not the conditions at Waupaca's six plants are "normal." While Plaintiffs make much of the fact that Waupaca's testing of the ambient air at its plants on various occasions exceeds the levels of silica recommended by various authorities, Waupaca claims that this was "worst case scenario" testing and not reflective of what occurs in every part of all of its plants on a daily basis. By Waupaca's estimation, the toxicity of silica, like any substance, is a function of the dose ("the dose makes the poison"). Because it maintains that silica levels in most areas of its plants are normally low enough so as not to be toxic, Waupaca considers the conditions under which its production employees work to be normal. In short, given the state of the record here, disputed issues of material fact preclude me from deciding whether Waupaca's employees are required to don or doff nonunique PPE or shower under other than normal conditions.

Waupaca suggests that no matter what PPE it requires its employees to wear, and even if it requires that they shower after their shifts, if the Court were to find that Waupaca's production employees need not change clothes and shower at the work site any time spent on these activities would be noncompensable as a matter of law. A number of courts have held that unless the law, the employer, or the nature of the work require that a preliminary or postliminary activity be

_____

[2]In his declaration, which Plaintiffs challenge, Dr. Roberts notes that examples of unique PPE used in the foundry setting include eye protection with colored lenses for work around furnaces, reflective turn-out gear, respirators and insulated gloves. (Dkt. 137 ¶ 37.)

14

performed on the employer's premises, the time spent on such activity is not compensable. *Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010); *Dager v. City of Phoenix*, 646 F. Supp. 2d 1085 (D. Ariz. 2009), *aff'd*, No. 09-15356, 2010 WL 2170992, (9th Cir. May 28, 2010); *see also In re Tyson Foods, Inc.*, --- F. Supp. 2d ----, 2010 WL 935595, at *4 (M.D. Ga. Mar. 16, 2010) ("The employees are required to don and doff the sanitary gear, such as smocks and gloves, at the plant and *only* at the plant, and they are not permitted to wear the sanitary gear home or into the restroom or break room. These circumstances are markedly different from "normal" clothes changing, where the clothes are merely a convenience to the employee and the employee can wear the clothes to and from work.") (citations omitted); *Spoerle*, 527 F. Supp. 2d at 864 (holding that donning and doffing of safety and sanitation equipment that meat processing plant employees were required to wear but did not have option of taking home was a principal activity). These decisions are consistent with the DOL's interpretation that time spent changing clothes on the employer's premises is only compensable "where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." 29 C.F.R. § 790.8(c) n.65; *see also* Dkt. 174-8, DOL Wage and Hour Administrator's Memorandum No. 2006-2 (May 31, 2006) (confirming its "long standing position" that changing and showering is compensable only "when the employer or the nature of the job mandates that it take place on the employer's premises."). Courts holding that claims for time spent performing an activity that could have been done off the employer's premises are noncompensable frequently cite this interpretation and note the deference it is owed under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), namely that it is entitled to "respect proportional to its 'power to persuade.'" *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore*, *supra* at 140).

15

Here, even if the Court were to hold that in order to be compensable an activity must occur on the employer's premises, as Waupaca recommends, factual disputes prevent granting summary judgment to Waupaca on its claim that time spent changing clothes and showering is not compensable because Plaintiffs are free to do so at home. While the parties have divergent views of the recommendations of federal agencies regarding silica exposure and whether or not Waupaca requires its employees to change out of their work clothes and shower before going home at the end of the day, the record before me does not support a finding that the law requires Waupaca's employees to change clothes and shower on the premises. But while the law may not require such activities at Waupaca's plants, I cannot conclude that neither Waupaca nor the nature of the work itself does not require changing clothes and showering on the premises. Although it is undisputed that not all employees change out of their work clothes and shower, Plaintiffs point to the fact Waupaca's Hazard Communication recommends this, along with the presence of locker rooms and showers at its plants, as evidence that Waupaca requires it. After all, it is unlikely that the showers are provided merely for employee convenience, for example for those employees who might want go for a run during their lunch break and shower afterwards.

An even greater dispute exists between the parties on whether the nature of the work requires that Waupaca's employees change clothes and shower on site at the end of the workday. Waupaca provided declarations touching on this issue from its experts, but because Plaintiffs have not taken discovery regarding these opinions, they contend that it would be improper to consider them at this point. Plaintiffs also seek to have the opinions of Waupaca's experts excluded under Fed. R. Evid. 702 and *Daubert*. Given the disputed issue of material fact, namely whether or not the nature of the work at Waupaca's six plants requires the production employees to change out of their clothes and

16

shower on the premises before leaving for the day, I cannot grant summary judgment in favor of Waupaca on its claim that time spent on such activities is not compensable because it could be done at home.

Because factual disputes prevent resolution of Waupaca's assertion that Plaintiffs' activities need not be performed on its premises, it necessarily follows that I also cannot grant Plaintiffs' motion for partial summary judgment on their claim that their donning, doffing and showering is compensable work under the FLSA.

## D. *De Minimis* Defense

Waupaca asserts that even if the time spent by Plaintiffs changing clothes and showering is compensable work under the FLSA, it is not required to pay Plaintiffs for such time under the *de minimis* defense. Plaintiffs seek summary judgment on Waupaca's *de minimis* defense in this case, contending that such a defense is not available as a matter of law when modern technology permits an employer to track the amount of time spent on compensable work, no matter how short the time.

Any analysis of the *de minimis* defense is premature, where as here, it is not yet been determined what preliminary and/or postliminary activities are required. For example, the evidence may show that while donning and doffing PPE is required, showering is not mandated by the nature of the work or the requirements of the employer. Under these circumstances it is far from clear that the *de minimis* defense would not apply.

In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court noted that while the FLSA requires employers to pay employees for their work, if the amount time spent in uncompensated activities amounts to a mere trifle, it is not compensable.

17

When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

328 U.S. at 692. *Anderson* is the only Supreme Court decision discussing the *de minimis* defense, and the defense has no statutory basis. *Spoerle*, 527 F. Supp. 2d at 868. Although there has not been much discussion of the defense by the Supreme Court, a number of Circuits have applied a *de minimis* rule in FLSA cases. *See, e.g., Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1056 (9th Cir. 2010); 596 F.3d 1046, 1056 (9th Cir. 2010); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed.Appx. 448 (5th Cir. 2009); *Sing v. City of New York*, 524 F.3d 361 (2d Cir. 2008); *Bobo v. United States*, 136 F.3d 1465 (Fed. Cir. 1998); *Frank v. Wilson & Co.*, 172 F.2d 712 (7th Cir. 1949). The regulation found at 29 C.F.R. § 785.47 also recognizes that in recording hours worked under the FLSA, "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded."

The Ninth Circuit's decision in *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), is often cited for its criteria regarding whether the *de minimis* defense applies. In *Lindow,* the court explained that "in determining whether otherwise compensable time is de minimis, we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." 738 F.2d at 1063.

Plaintiffs focus on the first of these three factors identified by the *Lindow* court, perhaps because they contend that an employer's failure to demonstrate "practical administrative difficulty"

18

means that such an employer cannot enjoy the *de minimis* defense.  *See Hoyt v. Ellsworth Co-op. Creamery*, 579 F. Supp. 2d 1132, 1149 (W.D. Wis. 2008) (declining to discuss other *Lindow* factors and finding defendant employer's *de minimis* defense unavailable where defendant failed to provide evidence of any practical administrative difficulty); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 954 (W.D. Wis. 2008) ("Because defendant has admitted that it would incur no additional administrative burden in compensating plaintiffs for time spent donning, doffing and walking, its de minimis defense fails as a matter of law.").  The gist of Plaintiffs' argument is that because Waupaca has sophisticated timekeeping software and a system by which it tracks when its employees swipe in and out of work, Waupaca cannot credibly complain about any practical administrative difficulty of recording additional time.  In response, Waupaca avers that even though it uses timekeeping software, keeping track of the time Plaintiffs spend donning, doffing and showering would present a number of administrative difficulties.  (Dkt. 171 at 80-83 & n.21-24.)  Waupaca's concerns mainly relate to its perceived need to keep track of which employees report to or leave work already wearing some or all of their PPE, and the need to limit socializing and lollygagging during donning, doffing and showering.  In other words, although technology does allow Waupaca the ability to determine whether an employee is using the correct time station in swiping in and out for the day, and will indicate the exact amount of time elapsed between these events, it does not provide Waupaca a picture of what quantity of this time is actually spent doing compensable work.

I conclude that summary judgment in favor of Plaintiffs on Waupaca's *de minimis* defense is inappropriate given the administrative difficulties Waupaca maintains it will face in keeping track of the time spent by its production employees donning and doffing PPE and showering after work.

The instant case is unlike *Hoyt* and *Kasten* in that Waupaca has presented evidence of the administrative difficulties it would face and contested the point in response to Plaintiffs' motion. And given the dispute of fact on the remaining *Lindow* factors in the record before me, the aggregate amount of compensable time and the regularity of the additional work, removing the *de minimis* defense from Waupaca at this stage of the litigation would be inappropriate. Dr. Fernandez opines that Plaintiffs spend less than an aggregate of 9 minutes each day donning and doffing PPE and showering. Without providing a number of their own, Plaintiffs dispute this number and wish to exclude the opinion from the Court's consideration. The regularity with which Plaintiffs don, doff and shower at work is also unknown at this stage in the litigation, and Plaintiffs' six declarants sidestep the issue of how often they change and shower at Waupaca's plants. These same reasons also require me to deny Waupaca's corresponding motion for summary judgment in its claim that the defense applies.

### E. Waupaca's Affirmative Defenses

In their motion for partial summary judgment, Plaintiffs seek summary judgment on a number of Waupaca's affirmative defenses. This request is contained in their motion for partial summary judgment, but Waupaca argues that Plaintiffs are really seeking to have its affirmative defenses stricken and that this is untimely given the fact they seek this relief approximately 8 months after the Rule 12(f) deadline for motions to strike. Waupaca concedes in its response that it is not asserting a number of the defenses Plaintiffs challenge as to the FLSA claims, but does maintain that its defenses of setoff, failure to satisfy prerequisites to proceeding collectively under the FLSA, and the existence of credits under 29 U.S.C. § 207, are all viable.

20

## 1. Setoff

Waupaca's thirty-fifth affirmative defense states: "Plaintiffs' claims are barred in whole, or in part, by the doctrine of setoff." (Dkt. 84 at 15.) Waupaca maintains that because it has paid its production employees for non-work time, any amount it may be found to owe for unpaid compensable work time should be reduced by these amounts. Plaintiffs acknowledge that although setoff may be a viable defense in certain FLSA cases, Waupaca's failure to substantiate that it has compensated Plaintiffs for time not otherwise compensable under the FLSA entitles Plaintiffs to summary judgment. (Dkt. 217 at 29.) But in order to survive Plaintiffs' motion for summary judgment on the setoff defense, Waupaca need only designate specific facts showing that there is a genuine issue for trial. In his declaration, Dr. Fernandez indicates that many of Waupaca's production employees are swiping in before their assigned shift commences and taking breaks in excess of the time allowed. (Dkt. 180 at 9-10.) The additional minutes taken outside of Waupaca's provided rest breaks should be considered compensable work time under the FLSA. Five to twenty minute rest breaks must be considered hours worked, 29 C.F.R. § 785.18, and "[u]nder the [FLSA] an employee must be compensated for all hours worked ... [which] is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness," 29 C.F.R. § 778.223. The principles in the two regulations support the conclusion that the "additional" break time is compensable work time. *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 556 F. Supp.2d 941, 953 (W.D.Wis. 2008).

Defendant's setoff defense as to excess break time fails as a matter of law. The undisputed facts establish that defendant has not paid plaintiffs for break time not otherwise compensable under the FLSA. However, Waupaca does have a potential setoff affirmative defense as to whether

21

employees were compensated for swiping in before their assigned shift–a period of time not otherwise compensable under the FLSA. Plaintiffs have filed a motion to strike Dr. Fernandez's declaration, which I denied above, and wish to take discovery on Dr. Fernadez's methods. Against this backdrop I conclude that it would be premature to grant summary judgment in favor of Plaintiffs on Waupaca's setoff defense as it relates to early swipe in.

## 2. Statutory Prerequisites

Waupaca's twenty-third affirmative defense is that "The Complaint, and each claim purported to be alleged therein, is barred, in whole or in part, because Plaintiffs failed to satisfy statutory and/or other prerequisites to proceed collectively under the FLSA and/or to proceed as a class action under state law." (Dkt. 84 at 14.) Plaintiffs claim this affirmative defense is too vague to alert them as to what it is and the grounds upon which it rests. Waupaca responds by claiming that the "statutory prerequisites" it references are contained in its affirmative defenses 24-33, which apply to both the FLSA claim and state law claims. It also maintains that this defense is viable because it is "axiomatic that Plaintiffs, not Waupaca, have the burden to prove that their claims can be properly brought as a class and/or collective action." (Dkt. 232 at 20 n.25.) The parties have already briefed and the Court has already decided whether conditional certification of the FLSA class is appropriate, and as Waupaca notes it is likely there will be further motion practice on the issue of certification under Rule 23 for the state class claims. Because Waupaca fairly raised its challenge to Plaintiffs' efforts to proceed in a collective and/or class action in its twenty-third affirmative defense, I will deny Plaintiffs' motion.

22

### 3.   Credits under 29 U.S.C. § 207

Waupaca apparently believes that there are certain credits available to it under 29 U.S.C. § 207 that could be counted against any award of damages Plaintiffs may receive.  Its sixth affirmative defense states: "Plaintiffs' claims are barred, in whole or in part, to the extent that the work performed falls within exemptions, exclusions, exceptions, or credits provided for in Section 7 of the FLSA, 29 U.S.C. § 207."  (Dkt. 84 at 12.)  Plaintiffs contend that this affirmative defense is inadequately pled and fails to specify how credits would apply.  In its reply brief in support of its cross-motion for summary judgment, Waupaca spells out how it believes it could be entitled to credits.  It avers that because it pays its employees time and one half for all hours worked on Saturdays and double time for all hours worked on Sundays, regardless of whether the employee has worked more than 40 hours during the workweek, § 207(h)(2) allows it to credit such "premium pay" against any unpaid overtime obligations it may have under the FLSA.  Because Waupaca has properly pled a viable credit defense under § 207 and provided factual support for it (Dkt. 244), Plaintiffs' motion will be denied as it relates to Waupaca's sixth affirmative defense.[3]

## III.  CONCLUSION

Although the Court was optimistic that a stay of discovery and a round of summary judgment motions could efficiently narrow the legal issues in this case, disputed issues of material

---

[3] Plaintiffs filed a motion to strike Joey Leonard's second declaration [Dkt. 244], Waupaca's additional factual propositions [Dkt. 233], and portions of Waupca's reply to Plaintiffs' additional factual propositions [Dkt. 234].  (Dkt. 252.)  As the local rules note, such motions are disfavored in the context of briefing a motion for summary judgment.  Civil L.R. 56(b)(9).  Plaintiffs complain that Waupaca's submission of additional factual propositions and Leonard's declaration along with its reply brief violates Civil L.R. 56(b)(3).  The motion to strike will be denied, as the materials Waupaca submitted in reply are permitted by Civil L.R. 56(b)(3).

23

fact preclude the Court from granting summary judgment to either party. The principal factual issue is whether the nature of the work performed by the employees requires the donning, doffing and showering for which they seek compensation at the various plants. Further development will also be needed on other issues as well. Waupaca has submitted evidence in various declarations on a number of these issues, which Plaintiffs challenge. Because it appears that further discovery is warranted, Plaintiffs will have an opportunity to more fully explore Waupaca's evidence and present evidence of their own on these topics.

THEREFORE, IT IS ORDERED that Plaintiffs' motion for partial summary judgment [Dkt. 147] is **DENIED**.

IT IS FURTHER ORDERED that Waupaca's cross-motion for summary judgment [Dkt. 169] is **DENIED**.

IT IS ALSO ORDERED that Plaintiffs' motions to exclude the declarations of Roberts, Esch, Kohloff and Fernandez [Dkts. 204, 206, 208, 210] are **DENIED**.

IT IS ALSO ORDERED that Plaintiffs' motion to strike [Dkt. 252] various documents submitted by Waupaca in reply to Plaintiffs' response to Waupaca's cross-motion for summary judgment is **DENIED**.

IT IS ALSO ORDERED that the Clerk set this matter for a scheduling conference.

Dated this ___27th___ day of September, 2010.

      s/ William C. Griesbach        
      William C. Griesbach
      United States District Judge

24