# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RYAN DEKEYSER, THOMAS COOPER,
HARLEY GRANIUS, and CARLOS LANTZ,
on behalf of themselves and other
similarly situated,

    Plaintiffs,

  v.           Case No. 08-C-488

THYSSENKRUPP WAUPACA, INC., d/b/a
Waupaca Foundry, Inc.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

   This case is before me with a lengthy procedural history. To summarize briefly, Plaintiffs filed this lawsuit in June 2008 against their current or past employer, Defendant Thyssenkrupp Waupaca, Inc. d/b/a Waupaca Foundry, Inc. (Waupaca), claiming they had been denied wages for hours worked over the preceding three-year period. Plaintiffs brought one of their claims as a collective action for violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.*, as amended by the Portal-to-Portal Act of 1947 (Portal Act), 29 U.S.C. § 251, *et seq*. Plaintiffs claim that under the FLSA they are owed compensation for time spent "donning and doffing gear and equipment, showering and walking to and from the production floor." (Compl. ¶ 1.) They claim that changing clothes and showering immediately after work are recommended precautions because of the toxic chemicals to which they are exposed and to minimize the risk of

silica inhalation, which can cause severe and even fatal lung disease. The Court conditionally certified a collective class pursuant to Section 216(b) of the FLSA in December 2008.

In September 2009, Plaintiffs made an effort to obtain an early determination of the viability of its FLSA claim via summary judgment. (ECF No. 147.) Waupaca thereafter filed a cross-motion for summary judgment. (ECF No. 169.) Perhaps out of an abundance of caution, in September 2010 the Court denied both motions in part, stating that factual issues remained as to whether the nature of the work required compensation under the FLSA for time spent donning, doffing and showering. (ECF No. 266.) The parties thereafter embarked on a path of expensive and time-consuming discovery involving inquiry into the medical history of former and current Waupaca employees, as well as the various conditions existing in the different Waupaca foundries. From this, the parties attempted to narrow the inquiry to one or two plants for a bellwether trial of sorts, but discovery was nonetheless exhaustive and focused on the actual health problems, if any, workers had experienced as a result of exposure to cupola dust as a barometer of sorts of what the nature of the work required. The health risks alleged from failing to change and shower after work were not just limited to former and current employees but also included their families and others, yielding a potentially infinite amount of discovery. Discovery also presented many challenges in the form of endless variables in the individual health problems of employees and their causes. In other words, the case seemed to take on the appearance of the kind of expensive and time-consuming investigation and research program that would serve as a basis for adopting a regulatory response to the industry-wide question of whether foundry workers should be required to change their clothes and shower after work, as opposed to the kind of concrete and narrow determination that is more commonly the subject of litigation.

2

Frustrated with the expense and delay involved in proceeding in this manner, Plaintiffs requested that the Court determine what the standard is for compensable "principal activities" under the FLSA. More specifically, Plaintiffs requested that this Court determine that employee activities that were in compliance with the instructions an employer was required to give workers under the Hazard Communication Standard, 29 C.F.R. § 1910.1200, promulgated by the Occupational Safety and Health Administration (OSHA) are compensable "principal activities" within the meaning of the FLSA as a matter of law. Hourly employees, Plaintiffs argue, should not be expected to establish the scientific validity of precautions recommended by government agencies and manufacturers of hazardous chemicals which OSHA requires their employer to convey to them.

To a large extent, Plaintiffs' request amounted to having the Court revisit the central issue raised in the earlier motion for summary judgment. Over Waupaca's objection, the Court agreed with Plaintiffs that the issue they had raised was one of law that would either determine liability or lend itself to certification for determination by the Court of Appeals. Either way, the Court concluded that resolution of the issue would advance the ultimate disposition of the case and rescue the parties from the "bottomless pit" into which they had fallen, been pushed or leaped (depending on one's view of the procedural history of the case). Although the Court suggested that the parties simply supplement their previous summary judgment motions, they reasonably suggested that they submit new briefs that would present their full arguments. The parties have each done so and the case is before me now for resolution. (ECF Nos. 386, 394.)

For the reasons discussed herein, the Court now concludes that employee activities that are in compliance with the hazard communication instructions that OSHA requires employers to give its employees are not for that reason alone compensable principal activities within the meaning of

3

the FLSA. The Court further concludes that the legal standard applicable to the disposition of this case is whether the donning, doffing and showering activities are required by (1) the law; (2) the employer; or (3) the nature of the work. The undisputed facts of the case reveal that the activities at issue do not meet this standard and thus are not "work" under the FLSA. They therefore are not compensable. As a consequence, Waupaca is entitled to summary judgment on Plaintiffs' FLSA claim.

## BACKGROUND

Defendant Waupaca employs approximately 3,500 people and operates six foundries in Waupaca and Marinette, Wisconsin; Tell City, Indiana; and Etowah, Tennessee. (ECF No. 219 at 2.) It manufactures a variety of ductile and gray iron cast parts for use in the automotive and other industries. (*Id.*) The parties agree that the work done at Waupaca's plants generates dust containing silica. (ECF No. 234 at 2.) The parties also agree that silica can be extremely hazardous to human health if ingested or inhaled in sufficient amounts.

Waupaca, like all employers whose employees can be exposed to hazardous chemicals or substances in the workplace, is governed by the Hazard Communication Standard (HSC) promulgated by OSHA. The HSC regulation imposes various requirements on employers aimed at ensuring that their employees are informed of the potential hazards posed by chemicals found at their workplace. Specifically, the standard required chemical manufacturers to label containers of hazardous chemicals with appropriate warnings. "Downstream" manufacturers — commercial purchasers who use the chemicals in their manufacturing plants — are obliged to keep the original labels intact or else transfer the information onto any substitute containers. The standard also

4

requires chemical manufacturers to provide material safety data sheets (MSDS) to downstream manufacturers. The MSDSs are required to list the physical characteristics and hazards of each chemical, the symptoms caused by overexposure and any pre-existing medical conditions aggravated by exposure. In addition, the data sheets must recommend safety precautions and first aid and emergency procedures in case of overexposure, and provide a source for additional information. Both chemical manufacturers and downstream manufacturers are required to make the data sheets available to their employees and to provide training on the dangers of the particular hazardous chemicals found at each workplace. *Dole v. United Steelworkers of America*, 494 U.S. 26, 28–29 (1990). Covered employers are required by OSHA to have a written hazard communication program (HAZCOM) which is intended to convey the required information to the employees. 29 C.F.R. § 1910.1200(e).

Although Plaintiffs have previously focused primarily on exposure to silica dust as the primary risk warranting on-site changing and showering, in their more recent motion they have submitted many of the large number of MSDSs Waupaca produced in the course of discovery. Many concern chemicals that Waupaca does not use anymore. Others are used only in certain defined areas by specialized personnel who take other precautions to avoid the kind of exposure for which remedies are described. The showering, clothes handling/changing and laundering practices that are referenced in a number of the MSDSs relate to exposure circumstances that do not typically occur at the Waupaca plants. The showers, eye wash and fountains referenced in several MSDSs are safety showers, emergency eye wash stations and water fountains that are on the production floor and are used by employees in situations – often emergencies – where there can be an acute exposure to a particular chemical that requires immediate flushing of the area with water.

These are not the same showers as those that are found in the locker rooms at the Waupaca plants, and the types of emergency washing recommended in these MSDSs are performed on the clock and are not at issue here.

Waupaca's training materials, which form part of its HAZCOM program, state the following concerning silica dust and lead dust:

**CUPOLA DUST**

Cupola dust is a grayish-brown flour-like material that can be intentionally collected within a bag house or may drop out in portions of Melt area emission control equipment. Cupola dust is the resultant combination of dust from incoming scrap, cupola additives (such as limestone), and by-products of the cupola combustion process. Though cupola dust is a stable, inert material, it does pose a long-term exposure hazard due to the presence of crystalline silica and lead. Both silica and lead can be detrimental to your health if inhaled in excessive quantities.

Silica (also quartz) can be hazardous when particles smaller than four-ten thousandths of an inch are inhaled into the lungs. High or long term exposures can result in silicosis, a scarring of the lungs that results in shortness of breath, wheezing, and coughing. Complicated cases involving increasing exposures can exhibit increasing forms of respiratory disease.

Lead also poses a hazard if inhaled or ingested. Both short and long-term overexposures may produce symptoms, though short-term overexposures are rare. Long-term overexposure may result in damage to the blood-forming, nervous, urinary, and reproductive systems. Some common symptoms include loss of appetite, metallic taste in the mouth, anxiety, constipation, nausea, pallor, excessive tiredness-weakness, muscle and joint pain, tremors, and dizziness.

Both silica and lead exist within cupola dust as dust particles. With the proper practices and personal protective equipment, cupola dust can be handled safely. When working in an area that contains cupola dust, effort must be made to avoid generating airborne dusts. Clean-up should be performed via dustless methods (e.g. vacuum). Air wands or aggressive sweeping should be avoided. Areas should be engineered to keep dust contained within bins or hoppers, not all over the floor.

*After working in a dusty area, practice good personal hygiene by showering and leaving your uniform at work. Cupola dust poses no hazard from skin contact, but showering at work will prevent the material from being tracked into your car or home.* During the day, wash hands and face prior to eating, drinking, or smoking.

6

Industrial hygiene sampling must be performed within each work area to confirm the necessary Personal Protective Equipment (PPE) required. Generally, plant floor locations require no respiratory protection, maintenance workers may require a High Efficiency half-face dust mask when working near chutes and conveyors, and workers may require a High Efficiency full-face powered respirator when cleaning cupola dust from within confined spaces or other activities that generate significant dust within enclosed areas.

Following these procedures, along with good work habits, will help eliminate unnecessary exposures to cupola dust. If you work within an area that contains cupola dust, and you have any questions, contact the Environmental Department.

(ECF No. 398-7) (italics added).

Plaintiffs have not identified a statute or regulation requiring foundry workers to change and shower at the work place. Nor have they presented evidence of an employer rule or policy mandating that they do so. Instead, Plaintiffs point to the numerous MSDSs that Waupaca produced during discovery which recommend washing, changing clothes and/or showering in the event of skin contact or some other form of exposure, and the fact that Waupaca recommends that foundry workers change out of work clothes at the end of their work shifts in an effort to minimize the health risks associated with exposure to respirable silica. OSHA does recommend that construction employees exposed to crystalline silica "shower if facilities are available" (ECF No. 149, Ex. AA at 2.), but of course construction work is usually performed in locations that do not have the environmental controls that exist in a closed plant, such as a foundry. In any event, Plaintiffs argue from these recommendations that the nature of their work requires changing and showering at the work site and that these activities therefore constitute compensable principal activities within the meaning of the FLSA.

7

## LEGAL STANDARD

Rule 56 provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322–24. Where, as here, each party will move for summary judgment, each movant bears this burden. *DeKeyser v. ThyssenKrupp Waupaca, Inc.*, 747 F. Supp. 2d 1043, 1049 (E.D. Wis. 2010).

## ANALYSIS

The FLSA provides that employees receive "[a] fair day's pay for a fair day's work." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942); superseded by statute, Portal-to-Portal Act, 29 U.S.C. § 251. Specifically:

> [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). This guarantee of compensation at time and one-half for any hours beyond the forty hour workweek only applies to "work or employment engaged in by employees covered by the Act." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602–603 (1944); superseded by statute, Portal-to-Portal Act, 29 U.S.C. § 251.

8

But the FLSA does not define "work" leaving a crucial hole the courts must fill. Early decisions interpreted the term very broadly to include "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer . . . " *Id.* at 598. In 1944, the Supreme Court held that work may include "non-exertional acts" because an employer "may hire a man to do nothing or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

In 1946, the Court held that the FLSA required employers to pay employees for donning and doffing aprons and overalls, and walking to their work stations, all of which occurred after they arrived at the front gate and punched in at a time clock. *Anderson v. Mount Celmons Pottery Co.*, 328 U.S. 680, 691–93 (1946). In 1947, largely in response to claims that the Court's ruling in *Anderson* would result in "wholly unexpected liabilities, immense in amount and retroactive in operation," *Steiner v. Mitchell*, 350 U.S. 247, 253 (1956), Congress enacted the Portal-to-Portal Act. The Portal-to-Portal Act excludes certain activities from the concept of work under the FLSA, including:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). The phrase "preliminary to or postliminary to said principal activity or activities" is not contained in the FLSA's statutory definitions, 29 U.S.C. § 203, or the definitions set forth in the Portal Act. *See* 29 U.S.C. § 262. Nor are any of the words within that phrase. *Id.*

9

After the enactment of the Portal-to-Portal Act, the Secretary of Labor promulgated regulations, which remain largely unchanged to this day. The regulations make clear that as a general rule, changing clothes and showering are normally considered non-compensable preliminary and postliminary activities. 29 C.F.R. § 790.7(g). The regulations also make clear, however, that donning and doffing work clothes can, under certain circumstances, constitute compensable work:

> If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises … would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity . . .

29 C.F.R. § 780.8(c). The regulation further explains: "Such a situation may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." 29 C.F.R. § 790.8(c), n.65.

The Supreme Court considered whether donning and doffing clothes were "principal activities" or merely "preliminary and postliminary activities" within the meaning of the Portal-to-Portal Act in *Steiner v. Mitchell*, 350 U.S. 247 (1956). Under the Portal-to-Portal Act, "changing clothes . . . under normal conditions" was found to be not compensable but "activities performed either before or after the regular work shift . . . are compensable . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." *Id.* at 249, 256. This ruling created, in essence, an exception to the exception. If any activity is found to be "integral and indispensable" to a worker's principal activity, it must be paid for under the FLSA, irrespective of whether or not it is "preliminary or postliminary" under the Portal-to-Portal Act. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011). Under

10

the facts of *Steiner*, the Supreme Court had "no difficulty" concluding that the employees should be compensated for donning, doffing and showering. 350 U.S. at 256.

Since *Steiner*, different circuits have adopted different approaches to determining whether the donning and doffing of certain protective gear is "integral and indispensable" to employees' work. In general, however, it appears that *Steiner*'s "integral and indispensable" standard is considered met if, in the words of the DOL regulation, the activity at issue is required by law, the rules of the employer, or by the nature of the work. The most predominant case seems to come out of the Ninth Circuit. Its formulation of the legal standard is that where:

> the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work, the activity may be considered integral and indispensable to the principal activities.

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004); *see also Bamonte v. City of Mesa*, 598 F.3d 1217, 1233 (9th Cir. 2010).

Waupaca argues that the Court should adopt what it refers to as the "at home" rule, under which employees need not be compensated for donning, doffing and showering activities if they have the option of performing them at home. (Def.'s Br. In Supp. Of Mot. For S. J., ECF No. 395, at 24.) Under the "at home" rule, as Waupaca views it, changing clothes and showering are considered integral and indispensable to the employee's principal activities only if the law or the employer require that they be performed on site. Since neither the law in this case, nor the employer's work rules, require that employees change their clothes and shower at the plant, Waupaca contends that such activities are not compensable.

In essence, Waupaca is urging the Court to ignore the possibility that changing clothes and showering immediately after work could be required "by the nature of the work." Absent a law or

11

work rule, of course, employees will always have the option of performing these activities at home, even if doing so seriously endangers their health. The "nature of the work" can never compel an employee to shower on site in the same sense that a law or work rule can. The law and the employer have authority over an employee that can be exercised to compel him (if he wants to retain his employment) to perform activities that he might not want to do; the nature of the work does not. Thus, if the nature of the work can require the employee to do anything, it obviously means something different. As Plaintiffs' argument suggests, it must mean that the nature of the work is such that it is reasonably necessary for employees to change clothes and shower on site in order to protect their health.

It is this issue that prevented me from previously disposing of the case on summary judgment. In my earlier ruling, I concluded that a factual dispute over whether the nature of the work required the employees to don, doff and shower at work precluded entry of summary judgment. Plaintiffs argued, as they do here, that because OSHA requires Waupaca to advise its employees who work around silica dust to change their clothes and shower before leaving work that those activities are necessarily compensable when actually performed at work by the employees. Plaintiffs also submitted evidence of specific employee complaints of dusty working conditions and black mucus discharges. Waupaca, on the other hand, argued that general recommendations mandated by OSHA were not sufficient to compel such a conclusion, especially in light of evidence that health risks to employees who elected not to change and shower at work were negligible. Waupaca supported its argument with declarations by several experts who opined, *inter alia*, that Waupaca's engineering controls and respiratory protection program significantly lowered the risks from silica exposure and that there was no peer-reviewed published literature that provided support

for a policy of mandatory showering or clothes doffing after work with silica in the foundry setting. Given this state of the record, I concluded that a trial, or at least further discovery, was needed.

As the record reflects, discovery since that decision has been directed at the underlying question of whether the risks associated with exposure to silica at the Waupaca foundries poses a substantial risk to workers such that donning and doffing work clothes and showering at the plant at the end of the work day can be said to be required by the nature of the work. This is not a question that either a court or a jury is well-equipped to answer. The amount of exposure varies among employees and from plant to plant, within plants from location to location, and even from day to day depending on the kind and amount of work performed. The plants are equipped with environmental controls that are designed to limit the amount of silica in the air, which they do with varying success. In response to Plaintiffs' claim that on-site showering is necessary and their suggestion that at least some employees may have contracted respiratory diseases as a result of exposure to silica, Waupaca has sought Plaintiffs' medical records in discovery and wants to schedule an unknown number of depositions and perhaps its own medical examinations to determine the number of former or current employees who have health problems attributable their employment at Waupaca. Even assuming an employment-related health condition is discovered, it is unclear whether and how it will be determined that it was due to the employee's failure to change clothing and shower at work, as opposed to the employee's ordinary exposure to silica over the course of the typical workday. In light of these difficulties, Plaintiffs' argument that a simpler standard should be adopted is reasonable. But I cannot agree with Plaintiffs' argument as to what that standard should be.

13

Plaintiffs ask the Court to hold that as a matter of law "pre- and post-shift activities performed in compliance with an employer's hazard communication instructions and training are compensable 'principal activities' under Fair Labor Standards Act." (Pl.'s Mem. In Supp. Of Mot for Partial S.J., ECF No. 398, at 1.) This holding is warranted, Plaintiff contend, given the federal framework for addressing employee health risks resulting from exposure to hazardous substances and the liberal rule of construction afforded to remedial statutes. Plaintiffs note that activities that are necessary in order for employees to safely perform their jobs are "an integral and indispensable part of a principal activity" and therefore compensable under the FLSA. (*Id.* at 11 (citing *Perez*, 650 F.3d at 367; *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp.2d 860, 864 (W.D. Wis. 2007)). It follows from this, Plaintiffs contend, that activities that are in compliance with recommendations mandated by OSHA are likewise integral and indispensable to principal work activities. "These warnings and precautions do not involve mere 'recommendations' provided solely for employees' convenience — they are instead mandated by federal law." (*Id.* at 23.) And if the recommendations are mandated by federal law, then the actions taken in compliance with those recommendations should be considered required by the nature of the work.

But what the law cited by Plaintiffs requires is that employees be given information, not that they be compelled to act on it. In other words, OSHA requires that employees be provided information, including safety precautions about hazardous chemicals and substances to which they may be exposed at work and recommendations of what to do if they are exposed. OSHA does not require that employees comply with those recommendations, nor does it require that employers compel their employees to comply. The difference is significant.

14

OSHA is the administrative agency within the Department of Labor responsible for promulgating and enforcing standards under the Occupational Safety and Health Act of 1970 (the OSH Act), 29 U.S.C. § 651 *et seq*. The OSH Act "was enacted for the purpose of ensuring safe and healthful working conditions for every working man and woman in the Nation." *Industrial Union Dept., AFL-CIO v. American Petroleum Institute*, 448 U.S. 607, 611 (1980); 29 U.S.C. § 651(b). Congress sought to accomplish this purpose "by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce . . . ." 29 U.S.C. § 651(b)(3). The Act defines the "occupational safety and health standard" as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). Standards that deal with toxic chemicals or harmful physical agents must also comply with § 655(b)(5), which provides:

> The Secretary, in promulgating standards dealing with toxic materials or harmful physical agents under this subsection, shall set the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to the hazard dealt with by such standard for the period of his working life. Development of standards under this subsection shall be based upon research, demonstrations, experiments, and such other information as may be appropriate. In addition to the attainment of the highest degree of health and safety protection for the employee, other considerations shall be the latest available scientific data in the field, the feasibility of the standards, and experience gained under this and other health and safety laws.

29 U.S.C. § 655(b)(5).

The procedure OSHA must follow to set occupational safety and health standards contrasts markedly with the litigation process. "OSHA can begin standards-setting procedures on its own initiative, or in response to petitions from other parties, including the Secretary of Health and

15

Human Services (HHS); the National Institute for Occupational Safety and Health (NIOSH); state and local governments; any nationally-recognized standards-producing organization; employer or labor representatives; or any other interested person."  OSHA Standards Development, Dept. of Labor website, http://www.osha.gov/OCIS/stand_dev.html (last visited July 12, 2012).  If OSHA determines that a specific standard is needed, it may call upon any of several advisory committees to develop specific recommendations.  *Id.*  Once OSHA determines what the standard should be, it publishes a "Notice of Proposed Rulemaking" in the Federal Register.  The Notice of Proposed Rulemaking includes the terms of the new rule and provides a specific time period for the public to respond.  Interested parties can submit written arguments and pertinent evidence, and also may request a public hearing on the proposal if none has been announced in the notice. When such a hearing is requested, OSHA will schedule one, and will publish, in advance, the time and place for it in the Federal Register.  *Id.*

Since it is OSHA's job to "set mandatory occupational safety and health standards" for businesses such as Waupaca, 29 U.S.C. § 651(b)(3), and to determine the "practices, means, methods operations or processes reasonably necessary or appropriate to safe or healthful employment or places of employment," 29 U.S.C. § 652(8), the fact that OSHA does not require workers in foundries such as Waupaca's to change clothes and shower on site would seem to indicate that OSHA has concluded that such activities are not required by the nature of the work. OSHA clearly has the authority to compel employers to require their employees to shower and change clothes at the work site when it concludes that risks to health or safety require such precautions.  *See, e.g.*, 29 C.F.R. § 1910.1003(c)(4)(v), (vii) (requiring employees who work in

16

areas with certain carcinogens to remove and leave protective clothing and equipment at the point of exit and to shower upon leaving at end of day). Indeed, it has the duty to do so.

It is not as if OSHA is not aware of the risk to employees health and safety that exposure to silica presents. OSHA has an established Permissible Exposure Limit, or PEL, which is the maximum amount of crystalline silica to which workers may be exposed during an 8-hour work shift. *See* 29 CFR 1926.55, 1910.1000. In fact, OSHA has recently proposed a new standard for silica that would lower the PEL. Although the proposed new standard has apparently been stalled in the Office of Information and Regulatory Affairs, http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201010&RIN=1218-AB70 (last visited July 12, 2012), the fact that OSHA has acted demonstrates that it is aware of the health risks involved and has used its considerable expertise and resources to address it. If OSHA has not so far adopted a standard that requires foundry workers exposed to silica to change clothes and shower on site, it must mean that it has not found such procedures to be "reasonably necessary or appropriate to safe or healthful employment or places of employment." 29 U.S.C. § 652(8).

Plaintiffs, apparently dissatisfied with the standard OSHA has adopted, have in essence asked this Court to overrule OSHA and adopt a more stringent standard under which they would be entitled to compensation for donning and doffing their work clothes before and after work and for showering at the end of the day. They base their request on the fact that even though OSHA has not mandated the specific procedures they advocate, it does require their employer to provide them information about the dangers of silica exposure, including recommendations for changing clothes and showering immediate after work. If OSHA has concluded that the risks from silica exposure

17

warrant requiring employers to recommend such activities, Plaintiffs argue, then it only makes sense to conclude that those activities are reasonably necessary for employee health and safety.

There is a difference, however, between requiring employers to pass on information to employees about health and safety precautions and recommendations and mandating the recommended actions. Plaintiffs' proposed standard for work under the FLSA would incorporate into the definition of compensable activities any on-site pre- or post-shift activity that is performed in compliance with an employer's hazard communication instructions and training. This goes beyond the purpose or intent of OSHA's HCS, 29 C.F.R. § 1910.1200. The purpose of OSHA's HCS is to provide information to employees about the hazardous chemicals and substances that are in the workplace, not to mandate certain conduct. As explained in the preamble to the final rule:

> It should also be noted that just as a chemical manufacturer cannot make specific control measure recommendations for unknown downstream uses, it also cannot accurately predict the hazard presented by the chemical downstream. Therefore, the chemical manufacturer must provide thorough hazard information, which would be applicable to a full range of reasonably foreseeable exposure situations, rather than limiting the information on the basis of presumed use. The downstream employer will then be assured of having the information reasonably necessary to make informed choices for control measures.

48 Fed. Reg. 53280-01 (Nov. 25, 1983). Thus, the employer remains free, absent an OSHA standard providing otherwise, to determine the health and safety rules that best protect its workforce taking into consideration the unique circumstances of its workplace.

A further difficulty with Plaintiffs' argument is that it assumes that the recommendations contained in the MSDS the employers are required to incorporate into their HAZCOM programs and make available to employees are supported by extensive scientific research. But there is no evidence that this is the case. Of course, no one disputes that ingesting or inhaling silica in

sufficient amounts can cause serious disease and even death. Thus, employees are encouraged to take reasonable measures to insure that they minimize their exposure. But there is no evidence that showering after work appreciably reduces the risk to human health that otherwise exists at plants like Waupaca's. The mere fact that foundries are required to convey such a recommendation to its employees does not mean that it has been scientifically tested and proven necessary. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (holding that a MSDS has limited scientific value when it is unknown what tests were conducted in generating the MSDS); *Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000) (same). OSHA requires that chemical manufacturers or importers prepare data sheets that identify the hazards of the product they sell and the measures that should be taken to minimize any health risk. 29 C.F.R. § 1910.1200(g). While a manufacturer or seller is likely to incur liability for injury resulting from a failure to adequately warn, there is no penalty for over-warning. Thus, there may be good reason to question whether all of the precautions recommended in a MSDS are reasonably necessary for the health of the employee. As Waupaca notes, even water has a MSDS, the recommended personal protection for which is "safety glasses" and a "lab coat." (Def. St. Of Additional Facts, "DSAF," ECF No. 408, ¶ 60.)

For these reasons, I reject Plaintiffs' proposed standard and hold that activities in compliance with the recommendations contained in the employer's HAZCOM are not for that reason alone compensable under the FLSA. To adopt Plaintiffs' standard would be to expand the FLSA definition of compensable principal activities to an unforeseeable limit. Instead, I conclude that the fact that OSHA has promulgated a standard for silica exposure that does not mandate changing clothes and showering after work requires the conclusion that such activities are not required by the

nature of the work. As the history of this case surely demonstrates, the process of litigation is poorly suited to determining the practices and procedures that should be mandated to protect worker health and safety in the workplace on an industry-wide basis. Congress, in enacting the OSH Act, intended such issues to be determined through the regulatory process that the Act establishes. For this Court to conclude that changing clothes and showering after work is required by the nature of the work Plaintiffs are hired to perform would be to usurp the role Congress explicitly delegated to the Department of Labor. This I decline to do. Given the power and authority Congress has delegated to OSHA over such matters, it makes no sense to subject employers to the huge costs and unpredictable results of litigating the same issues in the nation's courts.

Throughout this litigation, Plaintiffs have pointed to *Steiner* as support for their position that their working conditions by themselves made changing clothes and showering compensable under the FLSA, even in the absence of a statute or work rule requiring such activities. But *Steiner* is distinguishable from the facts of this case. In *Steiner,* the Supreme Court noted that the production employees routinely worked with lead metal, lead oxide, lead sulphate, lead peroxide, and sulphuric acid, and that in general these chemicals "permeate[d] the entire plant and everything and everyone in it." *Id.* at 249. The conditions at issue here are far less severe. More importantly, the employer in *Steiner* required the employees to change and shower. In its statement of the material facts, the Court expressly noted: "Petitioners issued no written instructions to employees on this subject, but the employees testified and the foreman declared in a signed statement that 'In the afternoon the men are required by the company to take a bath because lead oxide might be absorbed into the blood stream.'" 350 U.S. at 251. While Plaintiffs dispute this finding, pointing to the statement of facts in the lower court decisions in the case, (Pl.s' Mem. In Supp. Of Mot. For S.J., ECF No. 398, at

20

11–13), there can be no doubt that as the Supreme Court saw the facts, the employer did require the activities for which the employees sought compensation. Finally, *Steiner* differs from this case in that at the time *Steiner* was decided, OSHA did not exist. The fact that Congress has created an agency that has as its express purpose the setting of health and safety standards for the workplace and that that agency has promulgated regulations addressing the risk of silica exposure that do not mandate changing clothes and showering at the work site are enough to distinguish this case from *Steiner*.

Of course, nothing said here should be interpreted as suggesting that employees who work in a foundry should not change their clothes and shower after work. Most employees who perform manual labor under hot, dirty or dusty conditions shower and change their clothes after work with no expectation of being paid for it, not because of concerns for their health, but simply because they, or their families, insist that they be clean. Plaintiffs have an added reason to shower and change their clothes and enjoy the added benefit of being able to do so at work using soap and water supplied by their employer. But for the reasons stated above, I conclude that the nature of their work is not such as to require that they do so.

One final point should be made. It is the point Judge Posner recently made in addressing this issue with respect to employees at a U.S. Steel plant in Indiana:

> From a worker's standpoint any time spent on the factory grounds is time "at work" in the sense of time away from home or some other place where he might prefer to be if he weren't at work. But it is not time during which he is making steel, and so it is not time for which the company will willingly pay. If the workers have a legal right to be paid for that time, the company will be less willing to pay them a high wage for the time during which they are making steel; it will push hard to reduce the hourly wage so that its overall labor costs do not rise. The steel industry is international and highly competitive, and unions temper their wage demands to avoid killing the goose that lays the golden eggs. They don't want the American

> steel industry to go where so much American manufacturing has gone in recent years—abroad. The plaintiffs are adverse to their union, to the interests of other steelworkers, and to their own long-term interests.

*Sandifer v. U.S. Steel Corp.,* 678 F.3d 590, 594–95 (7th Cir. 2012). As Plaintiffs correctly note, *Sandifer* is not directly relevant here because it was decided under the collective bargaining exception to the Portal to Portal Act, 29 U.S.C. § 203(o). There is no collective bargaining agreement here. But the same concerns apply. The foundry industry is also international and highly competitive. For the same reasons suggested by Judge Posner in *Sandifer*, the interests of Plaintiffs, many of whom are no longer employed by Waupaca, may be adverse to the long-term interests of the current and future employees.

## CONCLUSION

For the reasons set forth above, I conclude that as a matter of law the time spent by Plaintiffs donning and doffing work clothes, as well as showering at the end of the day, even when performed on the employer's premises, are not compensable under the FLSA. These activities are not required by the law, required by the employer or required by the nature of the work. Accordingly, Defendant's motion for partial summary judgment (ECF No. 394) is granted, and Plaintiffs' motion is denied. (ECF No. 386). The parties shall advise the Court within the next ten days whether they believe anything further remains to be determined before judgment can be entered.

**SO ORDERED** this  19th  day of July, 2012.

s/ William C. Griesbach
_____
William C. Griesbach
United States District Judge