UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| RYAN DeKEYSER, THOMAS COOPER, HARLEY GRANIUS and CARLO LANTZ, on behalf of themselves and others similarly situated, | : : : : : | |
| Plaintiffs and Proposed Collective and Class Action Representatives, | : : : : : | |
| v. | : : | Civil Action No. 08-CV-488 |
| THYSSENKRUPP WAUPACA, INC. d/b/a WAUPACA FOUNDRY, INC., | : : : : | |
| Defendant. | : : | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL A SECOND PRODUCTION OF WAUPACA'S MSDS DATABASE**

Defendant, Waupaca Foundry, Inc. ("Waupaca"), by its counsel, submits this brief in opposition to Plaintiffs' motion to compel a second production of Waupaca's database of Material Safety Data Sheets ("MSDS"). (Dkt. ##513-515) In support of its position, Waupaca states the following:

INTRODUCTION

The first time Waupaca produced its entire MSDS database to Plaintiffs, their counsel used it to paint the company's plants as chemical death-traps for employees. Indeed, counsel cherry-picked every MSDS that made reference to "showering," "clothes changing," "personal protective equipment," "clothes laundering," "clothes vacuuming," "skin and clothing contact," "impervious clothing," "hand and skin

washing," "carcinogens/cancer," "skin irritation and skin hazards," "scrap metal," and "silica," and appended these documents as a mountainous summary judgment exhibit in support of their argument that the Court should adopt a legal standard based upon employee compliance with employer recommendations. (*See e.g.,* Dkt. #398, pp. vii-xxix; Dkt. #39-25; Dkt. #399-1 to #399-25) Thankfully, the Court saw through this blatant distortion of the truth and rejected Plaintiffs' position. (*See generally,* Dkt. #427)

Now Plaintiffs want Waupaca to produce its entire MSDS database a second time,[1] ostensibly for the purpose of discovering "what chemicals are or were used in what areas of the plants, by whom and during which time frames within the class period." (Dkt. #514, p.6) But Waupaca has already told Plaintiffs that they will not learn that information from its MSDS database. Waupaca's MSDS database exists to provide employees with information about the materials they are working with. It is not designed to be a roadmap of historical chemical use on a department-by-department basis. Moreover, the Court recognized in its prior Order granting Waupaca's motion for summary judgment that these documents are of little or no value it determining "whether all of the precautions recommended in an MSDS are

---

[1] Although Plaintiffs' characterize their request as a "supplemental production," it is not. (Dkt. #514, p. 1) Indeed, after making this statement, they complain about the manner in which Waupaca made its prior production and then argue that Waupaca should "produce the MSDS Lotus Notes database, including all fields and metadata used in the database, in Microsoft Excel-format," and include a "load file" that "links the metadata and fields from the database to the actual MSDS in an Adobe .pdf file." (*Id.,* pp. 3-4, 7) Moreover, if the Court grants Plaintiffs' motion, it will be less burdensome (but still burdensome) for Waupaca to simply reproduce everything, than it would be to parse out pre-June 2005 MSDSs or determine which MSDSs were never used in any of its foundries. (*See* 2/23/15 Esch. Dec. at ¶3)

reasonably necessary for the health of the employee." (Dkt. #427, p. 19) Thus, forcing Waupaca to produce this irrelevant information a second time is unjustified.

For these reasons, as well as the additional reasons set forth herein, Plaintiffs' motion to compel should be denied.

## BACKGROUND

The parties' dialogue on the issue that is the subject of this motion began in May of 2014, and resumed early July of 2014. (*See* 2/23/15 Benson Dec. at ¶¶2-3, Ex. A) Initially, the inquiries from Plaintiffs' counsels were "mechanical" in nature; that is, how were the Waupaca's MSDSs kept, what software did the company use, etc. (*Id.,* at ¶¶4-8, Exs. B-F) Although Waupaca provided this information to Plaintiffs as a gesture of good faith, its correspondence and other communications made it clear that "Waupaca is in no way agreeing to produce any of these materials … I fail to see how another widespread production of MSDSs can lead to information that is relevant to any issue in this case." (*See id.,* at ¶4, Ex. B, p. 2; *see also* ¶9, Ex. F, p. 2)

On September 16, 2014, Plaintiffs made their first proposal that Waupaca "produce the data and documents maintained within Waupaca's MSDS databases." (*Id.,* at ¶9, Ex. G) In it, Plaintiffs requested, among other things:

> Plaintiffs would like to request a flat file or structured export of the data within both the current and archived MSDS databases in Lotus Notes, including all nine (9) fields listed in the screenshot enclosed with your letter. The flat file or structured export should be produced in either a Comma Separated Values (CSV) or other delimited format. The format should be searchable and loaded into an electronic Microsoft Excel file (i.e., no TIFFs or PDFs). Plaintiffs' proposed Excel file would look similar to the example provided on the next page.
>
> Plaintiffs would then request that each chemical item be listed in its own Excel row, with the data from the nine fields split into separate columns. The

3

first column of each row should contain a control ID number unique to the chemical item (e.g., "CU.MSDS.1"), and the last column of each row should contain a matching MSDS control ID number, which will be used to link the MSDS document(s) with the appropriate chemical item (e.g., "CU.MSDS.1.1"). These control ID numbers should start with "CU" for MSDS documents and data retrieved from the current MSDS database, and with "AR" for those retrieved from the archived MSDS database.

Plaintiffs would further request that the MSDS documents be produced in native, electronic format. Each MSDS document should be named and saved by a control ID number to match its corresponding chemical item (e.g., "CU.MSDS.1.1"). If more than one MSDS document is applicable to a single Excel row, the suffix number should increase sequentially. For example, if three MSDS documents are applicable to a single Excel row, the MSDS documents would be numbered and saved as: "CU.MSDS.1.1," "CU.MSDS.1.2," and "CU.MSDS.1.3". By providing a control ID number with sequential suffix numbers, there would be no need to apply additional bates numbers.

***

Finally, Plaintiffs would request that the Excel file and MSDS documents in native, electronic format be produced on an encrypted hard drive. The password required to open the Excel file and MSDS documents may be sent to me *via* e-mail.

(*Id.*)

Waupaca provided a three-fold response. (*Id.,* at ¶10, Ex. H) First, it indicated that Plaintiffs' proposal was inappropriate under both the Federal Rules and the parties' agreed upon discovery protocol.[2] Second, Waupaca argued the information being sought was irrelevant. Third, Waupaca indicated that compliance with Plaintiffs' proposal would be unduly burdensome, taking "several weeks, and possibly months, to rename/link all these MSDSs into the format that you suggest. Your re-

---

[2] Notably, Plaintiffs' motion refuses to acknowledge the fact that Waupaca has always made this argument against the production of its MSDS database, and continues to do so. (*See* Dkt. #514, p. 1 (referencing only Waupaca's relevance and burden arguments))

quest would essentially require Waupaca to completely overhaul and reformat its own data before producing it to Plaintiffs." (*Id.,* at p. 1)[3]

Plaintiffs responded by indicating that their "outside technical consultant" did not believe the production would be all that burdensome, and complaining – for the first time – that "the prior 2009 MSDS electronic productions were not undertaken in accordance with the agreed upon discovery production protocol." (*See* 2/23/15 Benson Dec. at ¶11, Ex. I) Waupaca responded by arguing that it had complied with the parties' protocol and requesting, among other things, how specifically Plaintiffs believed its prior production was deficient. (*Id.* at ¶12, Ex. J) Plaintiffs claimed that Waupaca did not produce metadata. (*Id.* at ¶13, Ex. K) Waupaca responded with evidence that it had. (*Id.* at ¶14, Ex. L)[4] Thereafter, Plaintiffs abandoned their argument that Waupaca's prior production failed to comply with the parties' discovery production protocol. (*Id.* at ¶15)

The parties held a conference call on Thursday, November 6, 2014, with counsel, Plaintiffs' technical consultant, and IT people from Waupaca. (*Id.* at ¶17) Notably, a few days before this call, Plaintiffs' counsel provided Waupaca with "a couple Excel spreadsheet charts" that we want to refer to doing our meet and confer call." (*Id.* at

---

[3] Plaintiffs complain that "Waupaca has offered no specific explanation in terms of the time or financial costs it believes would be incurred attempting to comply with Plaintiffs' request." (Dkt. #514, p. 7) While it is true that Waupaca has not given Plaintiffs a financial breakdown quantifying the precise cost to the company to "rename/link all these MSDSs into the format" Plaintiffs' request and essentially perform a complete "overhaul and reformat" of its MSDS database, it can do so if the Court deems it necessary. However, Waupaca believes the information it has given is sufficient to establish burden, especially considering its other arguments in opposition to Plaintiffs' motion.

[4] Exhibit L makes reference to an attached text file of metadata. This was included with Waupaca's email to Plaintiffs' counsel but has not been included with this filing due to its size. Should the Court wish to see the actual metadata, Waupaca will provide it.

¶16, Ex. M)[5] Both spreadsheets originated from Waupaca. During the call, Waupaca's counsel indicated that even if the parties were able to work out their differences on the issue of burden, Waupaca still intended to object to the production of MSDS database information on the grounds of relevance and because Plaintiffs were seeking to place production obligations on Waupaca that exceed the requirements of the Federal Rules. (*Id.* at ¶17)

Also during the conference call, Plaintiffs largely abandoned the majority of the requests they made of Waupaca in their first proposal on September 16, 2014. (*Id.* at ¶18; *see also id.,* at ¶9, Ex. G) As a result, Plaintiffs appeared to limit their request to what is essentially a production of Waupaca's MSDS database and some type of load file, subject to further information from Waupaca as to a number of issues. (*Id.* at ¶18, Ex. N) Waupaca provided that information a week after the conference call. (*Id.* at ¶19, Ex. O)

During the week of either December 8 or 15, 2015, Waupaca received another communication from Plaintiffs on the subject of the MSDS database. Plaintiffs were now requesting that their consultant have access to Waupaca's system so that he could copy all the information in the database and then link the actual MSDSs to the line items in the databases. (*Id.* at ¶20) The open questions for Waupaca were: (1) whether this could be done remotely or would the consultant have to come to Waupaca to do this; (2) when could this be done given that Waupaca employees

---

[5] One of the spreadsheets referenced in Exhibit M is the metadata text file Waupaca reproduced as part of Exhibit L. For the reasons noted previously, Waupaca has not attached it to this exhibit. And due to the size of the other spreadsheet referenced in Exhibit M, Waupaca is only producing the first two pages.

need to access the system around the clock; and (3) how long do would this process take – i.e., would the consultant essentially have to take up residence in Waupaca for an unknown amount of time to complete this linking process? (*Id.*)

Due to the intervening holidays and the flurry of motions and discovery requests it received, Waupaca did not respond to this proposal prior to the filing of Plaintiffs' motion. (*Id.* at ¶21)

## ARGUMENT

As the record of this dispute demonstrates, exactly what Plaintiffs' have requested from Waupaca has morphed over time. What began as a clearly overly burdensome request in September of 2014, became somewhat narrowed in November of 2014 and possibly even more so in December of 2014.[6] According to Plaintiffs' motion, they are now asking the Court to compel Waupaca to "produce the MSDS Lotus Notes database, including all fields and metadata used in the database, in Microsoft Excel-format," and a "'load file' that links the metadata and fields from the database to the actual MSDS in an Adobe .pdf file." (Dkt. #514, p. 7)

I. **THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL BECAUSE MSDS DATABASE INFORMATION IS NOT RELEVANT TO THE ISSUES PENDING BEFORE THE COURT.**

It is now the law of the case that neither the law nor Waupaca requires that employees don, doff, or shower on-site. Similarly, the Court has found that the recom-

---

[6] Indeed, because Waupaca had not yet responded to Plaintiffs' last proposal an argument could be made that this motion does not comply with Civil L.R. 37 because it is currently unknown whether the parties have failed to reach an accord on this issue. However, because any accord reached would only resolve the question of burden, and Waupaca has continuously interposed other objections to the second production of its MSDS database, the motion appears to be ripe.

mendations contained within the MSDSs are insufficient to rise to the level of an "employer requirement." To the extent Plaintiffs believe the MSDS are relevant to the nature of the work standard, the Court has already rejected that position:

> … in their more recent motion [Plaintiffs] have submitted many of the large number of MSDSs Waupaca produced in the course of discovery. Many concern chemicals that Waupaca does not use anymore. Others are used only in certain defined areas by specialized personnel who take other precautions to avoid the kind of exposure for which remedies are described. The showering, clothes handling/changing and laundering practices that are referenced in a number of the MSDSs relate to exposure circumstances that do not typically occur at the Waupaca plants. The showers, eye wash and fountains referenced in several MSDSs are safety showers, emergency eye wash stations and water fountains that are on the production floor and are used by employees in situations – often emergencies – where there can be an acute exposure to a particular chemical that requires immediate flushing of the area with water. These are not the same showers as those that are found in the locker rooms at the Waupaca plants, and the types of emergency washing recommended in these MSDSs are performed on the clock and are not at issue here.
>
> ***
>
> The mere fact that foundries are required to convey [MSDS] recommendation[s] to its employees does not mean that it has been scientifically tested and proven necessary … OSHA requires that chemical manufacturers or importers prepare data sheets that identify the hazards of the product they sell and the measures that should be taken to minimize any health risk … While a manufacturer or seller is likely to incur liability for injury resulting from a failure to adequately warn, there is no penalty for over-warning. Thus, there may be good reason to question whether all of the precautions recommended in a MSDS are reasonably necessary for the health of the employee. As Waupaca notes, even water has a MSDS, the recommended personal protection for which is 'safety glasses' and a 'lab coat.'

(Dkt. #427, pp. 5-6, 18-19 (citations omitted)). MSDSs provide little to no information about the supposed "hazards" Waupaca employees are exposed to in the workplace. And even if they did, the Court recognized: "The amount of exposure varies among employees and from plant to plant, within plants from location to location, and even from day to day depending on the kind and amount of work per-

formed." (*Id.* p. 13). Thus, Waupaca fails to see how producing a second round of MSDSs – in whatever form – could be relevant to the sole remaining issue in this case; whether on-site donning, doffing and showering is required by the nature of the work at the Waupaca plants.[7]

Of course, Plaintiffs claim that Waupaca's MSDS databases will allow them to "discover what chemicals are or were used in what areas of the plants, by whom and during which timeframes within the class period." (Dkt. #514, p. 6) This, in turn, will supposedly allow their experts "to more precisely identify the chemical hazards present in the plants" and "address the primary liability issue left for trial … and challenge Defendant's specific defenses." (*Id.*) This is untrue.

Waupaca's MSDS database is set up to allow employees to obtain information regarding the materials in their work environment. (*See* 2/23/15 Esch Dec. at ¶ 4) It will not tell Plaintiffs (or anyone else for that matter) what chemicals were used in what departments of the plants and when. (*Id.,* at ¶ 5) Indeed, Waupaca told Plaintiffs this back in July of 2014:

> Waupaca does not have a system whereby it can exactly match chemicals/products to specific departments. We do have two inexact methods for roughly tracing how chemicals/products are *ordered* by department. One method is based upon SAP ordering queries (assuming the persons doing the queries indicates the department(s) for which s/he is ordering the materials) and the other is based upon the materials that appear on warehouse lists, which are grouped together loosely by department. These methods can be

---

[7] MSDSs have even less relevance under the FLSA compensability standard articulated by the Supreme Court in *Integrity Staffing Solutions, Inc. v. Busk,* 574 U.S. ___, 135 S.Ct. 513, 190 L.Ed.2d 410 (2014). MSDSs tell the Court nothing about whether "an activity is integral and indispensable to the principal activities that an employee is employed to perform," nor do they speak to whether donning, doffing and showering is "an intrinsic element" of a principal activity that "the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing,* 135 S.Ct. at 519.

9

used to give you a very general, albeit imprecise idea of the chemical and product usage in the various departments in the various plants.

(*See* 2/23/15 Benson Dec. at ¶4, Ex. B, p. 2 (emphasis in original); *see also* 2/23/15 Esch Dec. at ¶ 5) Notably, the two inexact methods identified by Waupaca that Plaintiffs could possibly use to link chemicals to departments, *do not involve the MSDS database!* And to the extent Waupaca employees may on occasion input information into the MSDS database that is relevant to this topic, Waupaca has explained to Plaintiffs that this information is "inconsistent and sometimes unreliable." (*See* 2/23/15 Benson Dec. at ¶6, Ex. D, p. 2; *see also* 2/23/15 Esch Dec. at¶ 6)[8]

Waupaca should not be required to again produce its MSDS database. The Court has found this information to be irrelevant. And even if it were relevant, the database does not contain the information Plaintiffs claim they and their experts are seeking.[9] The motion should be denied.

---

[8] Plaintiffs make reference to certain information found in the MSDS database that is "inputted by Waupaca safety personnel," and attempt to create the inference that this information is somehow unique to Waupaca. (Dkt. #514, pp. 2-4) This is a red-herring. The information being referred to is already on the MSDS. (*See* 2/23/15 Lehman Dec. at ¶ 5)

[9] Plaintiffs complain that in opposing their motion for summary judgment, Waupaca used the testimony of Bryant Esch to address the myriad MSDSs that Plaintiffs submitted to the Court. (Dkt. #514, p. 4) They assert that "Plaintiffs requested the documents and electronic data relied upon by Mr. Esch" and "were instructed that only two sources of information exist … MSDS databases; and … SAP databases." (*Id.*) The only support cited for this supposed information request is the letter quoted above – which says *nothing* about MSDS databases being an information source for Mr. Esch's testimony. Similarly, while it is true that Mr. Esch examined the MSDSs in preparing his declaration (how else could he respond to them?), his declaration does not state that he used the database to prepare his testimony. (Dkt. #410)

## II. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL BECAUSE IT REQUIRES WAUPACA TO PRODUCE INFORMATION IN A MANNER BEYOND WHAT IS REQUIRED BY THE FEDERAL RULES OF CIVIL PROCEDURE.

Rule 34(b)(2)(E)(i) requires a party to "produce documents as they are kept in the ordinary course of business." Rule 34(b)(2)(E)(ii) goes on to state that: "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Rule 34's Committee Notes make clear that its underlying purpose is to provide the requesting party with documents "in a form or forms that are reasonably usable" and that, if not usable, the responding party must "if necessary … 'translate' information it produces into a 'reasonably usable' form."[10]

Here, Plaintiffs are demanding that Waupaca produce its database in "Microsoft Excel-format" and provide a "load file" so that their consultant can manipulate the information contained therein. (Dkt. #514, p. 6) This is not how the database is currently maintained and Waupaca does not currently possess the "load file" Plaintiffs are requesting. (*See* 2/23/15 Lehman Dec. at ¶ 3) The Federal Rules do not require Waupaca to do Plaintiffs' work. If the process is as easy as their consultant claims it

---

[10] Case law bears out this standard: "[U]nder Rule 34, it is up to the producing party to decide how it will produce its records, provided that the records have not been maintained in bad faith." *Rowlin v. Alabama Dep't of Public Safety*, 200 F.R.D. 459, 462 (M.D. Ala. 2001); *Alford v. Aaron Rents, Inc.*, 2010 U.S. Dist. LEXIS 67790, *70 (S.D. Ill. May 17, 2010) (without court order or stipulation regarding form of production, responding party was "free to produce the documents in … the 'usual course of business'). "The plain language of Rule 34 makes clear that 'a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business.'" *State ex rel. Edmondson v. Tyson Foods, Inc.*, 2007 U.S. Dist. LEXIS 36308, *11 (N.D. Okla. May 17, 2007) (citing, *e.g.*, *Hagemeyer N. Am., Inc. v. Gateway Data Sci. Corp.*, 222 F.R.D. 594, 598 (E.D.Wis. 2004)).

11

is, let him convert the database into "Microsoft Excel-format" and go out on the open market and obtain the "load file" he needs.

Despite Plaintiffs' recent complaints about the manner in which Waupaca produced MSDS information in the past,[11] it was plainly "reasonably usable" by Plaintiffs. As noted above, Plaintiffs used Waupaca's MSDS information extensively in their prior summary judgment briefing. Waupaca is therefore not obligated to "translate" that information from one useable form into another form. *See* Fed.R.Civ.P. 34(b)(2)(E)(iii). Plaintiffs' request clearly falls outside the language and the intent of Rule 34.

### III. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL BECAUSE IT PLACES AN UNNECESSARY, UNDUE BURDEN ON WAUPACA.

Although Plaintiffs appear to have significantly narrowed the scope of their proposal since it was originally articulated in September of 2014, it will still create an unnecessary undue burden on Waupaca.

As an initial matter, Plaintiffs need to make up their minds. On the one hand, they claim Waupaca's "database is not large." (Dkt. #514, p. 3) But in the next breath they bemoan the "extremely time-consuming" process of dealing with "approximately eleven (11) banker's boxes of MSDS documents." (*Id.*) The simple fact is

---

[11] The issues raised in paragraph 15 of Plaintiffs' motion were not brought to Waupaca's attention until this process began. (*See* 2/23/15 Benson Dec. at ¶ 22) As noted above, Waupaca produced its MSDS information to Plaintiffs consistent with the parties' agreed-upon document production protocol and in the manner in which these materials were kept in the ordinary course of its business. (*Id.* at ¶ 23) If Plaintiffs were frustrated by "duplicate productions, [the] absence of any organization and small font-size" when Waupaca produced this information in 2009, that frustration will likely be compounded with the production of 5-plus years of additional information. (Dkt. #514, p. 3)

12

that Waupaca's MSDS database is not "small." (*See* 2/23/15 Lehman Dec. at ¶ 4) Depending upon the scope of any order compelling Waupaca to take action, Waupaca's IT staff will have to devote significant time and resources to produce this information that would otherwise go toward their normal job responsibilities. (*Id.*)

## CONCLUSION

The Court has been to this movie once before and knows how it will end. If Plaintiffs are again allowed access to Waupaca's MSDS database, it will only be a matter of time before they use it to trot out a massive "parade-of-chemical-horribles," causing one to wonder how Waupaca's employees can survive even an hour in their working environments. And to what end? The Court has already ruled (after wading through Plaintiffs' earlier massive production of MSDSs) that these documents provide no support for such a position. Waupaca's MSDS database will not tell Plaintiffs who worked around what chemicals in what parts of the plant, and when. (*See generally,* 2/23/15 Esch Dec.)

Waupaca should not be compelled to produce this irrelevant information again. Especially when, as here, Plaintiffs' requests go beyond the requirements of the Federal Rules and would impose an unnecessary burden on Waupaca. Plaintiffs' motion should be denied.

Dated this 23rd day of February, 2015.

                              **MICHAEL BEST & FRIEDRICH LLP**

                          By:    s/Paul E. Benson
                                  Mitchell W. Quick, SBN 1001493
                                  *mwquick@michaelbest.com*
                                  Paul E. Benson, SBN 1001457
                                  *pebenson@michaelbest.com*
                                  Joseph Louis Olson, SBN 1046162
                                  *jlolson@michaelbest.com*
                                  Benjamin A. Kaplan, SBN 1082802
                                  *bakaplan@michaelbest.com*
                                  100 East Wisconsin Avenue, Ste. 3300
                                  Milwaukee, Wisconsin 53202-4108
                                  Telephone:  (414) 271-6560
                                  Facsimile:   (414) 277-0656

                        Attorneys for Defendant, Waupaca Foundry, Inc.

094015-0090\16658337.1