UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RYAN DEKEYSER, THOMAS COOPER,
HARLEY GRANIUS, AND CARLOS LOPEZ,
on behalf of themselves and others
similarly situated,

                Plaintiffs,

      v.                                                                        Case No. 08-C-0488

THYSSENKRUPP WAUPACA, INC.,
d/b/a Waupaca Foundry, Inc.,

                Defendant.

---

## DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION

---

      Defendant Waupaca Foundry, Inc. has requested this court reconsider its November 25, 2014 order in which the court ruled that in order for the plaintiffs to show changing clothes and showering is "required by the nature of the work" at Waupaca's foundries, Plaintiffs' "must convince the finder of fact that changing clothes and showering at work will significantly reduce the risk to the health of the employee." (ECF No. 504 at 9.) As explained below, the motion will be denied.

      Waupaca contends that the standard above, which derives from the tripartite test utilized by the Ninth Circuit in *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004), which itself comes from regulations promulgated after enactment of the Portal-to-Portal Act, 29 U.S.C. § 254, is inconsistent with the Supreme Court's December 9, 2014 decision in *Integrity Staffing Solutions, Inc. v. Busk*, — U.S. —, 135 S. Ct. 513 (2014). In *Integrity Staffing* the Court held that "an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities [i.e.

integral] and one with which the employee cannot dispense if he is to perform his principal activities [i.e. indispensable]." *Id.* at 519. Waupaca argues that *Integrity Staffing* has undermined the continued viability of the tripartite test and the *Integrity Staffing* analysis of what it means for something to be "integral and indispensable" to a worker's principal activities must supplant the tripartite test. According to Waupaca, under *Integrity Staffing*, "the Court must examine what connection, if any, there is between the activities in issue, and the principal activities the workers are employed to perform." (ECF No. 522 at 11–12.) Waupaca argues because no such connection exists in this case the court should dismiss the claims as a matter of law. Thus, Waupaca's motion is really more than one for reconsideration, since dismissal was not at issue before the court issued the November 25, 2014 order. In any event, as I indicated at the December 23, 2014 telephone status conference, I do not agree that *Integrity Staffing* changes the ultimate factual and legal issue in this case.

In *Integrity Staffing*, the Court held that employees' time spent waiting in line and undergoing employer-mandated security screenings at the end of each workday was not compensable. In so ruling, the court reversed the Ninth Circuit's decision, which stated that "postshift activities that would ordinarily be classified as noncompensable postliminary activities are nevertheless compensable as integral and indispensable to an employee's principal activities if those postshift activities are *necessary to the principal work performed and done for the benefit of the employer*." 135 S.Ct. at 516 (emphasis added). The Court noted that it "has consistently interpreted 'the term 'principal activity or activities' [for purposes of compensability under the Portal-to-Portal Act] [to] embrac[e] all activities which are an 'integral and indispensable part of the principal activities.'" *Id.* at 517 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005) and *Steiner v.*

2

*Mitchell*, 350 U.S. 247, 252–53 (1956)). The *Integrity Staffing* Court elaborated:

> Our prior opinions used those words in their ordinary sense. The word "integral" means "[b]elonging to or making up an integral whole; constituent, component; spec[ifically ] necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage." And, when used to describe a duty, "indispensable" means a duty "[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected." An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities. As we describe below, this definition, as applied in these circumstances, is consistent with the Department of Labor's regulations.
>
> Our precedents have identified several activities that satisfy this test. For example, we have held compensable the time battery-plant employees spent showering and changing clothes because the chemicals in the plant were "toxic to human beings" and the employer conceded that "the clothes-changing and showering activities of the employees [were] indispensable to the performance of their productive work and integrally related thereto." [*Steiner*, 350 U.S. at 249, 251]. And we have held compensable the time meatpacker employees spent sharpening their knives because dull knives would "slow down production" on the assembly line, "affect the appearance of the meat as well as the quality of the hides," "cause waste," and lead to "accidents." By contrast, we have held noncompensable the time poultry-plant employees spent waiting to don protective gear because such waiting was "two steps removed from the productive activity on the assembly line."

*Id.* 517–18 (citations omitted).

The Court applied these standards to the security screenings and held they were not principal activities because the employer obviously did not employ its workers to undergo security screenings. The Court also found the screenings were not "integral" because they were not an intrinsic element of retrieving products from warehouse shelves or packing them for shipment (which were the employees' principal activities), and that the screenings were not "indispensable" because the employer could have eliminated the screenings altogether without impairing the employees' ability to complete their work. *Id.* at 518. The Court also explained its rejection of the Ninth Circuit's

approach, which focused on whether the employer required a particular activity: "If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address." *Id.* at 519.

Justice Sotomayor, joined by Justice Kagan, joined the Court's opinion but wrote separately "to explain [her] understanding of the standards the Court applies." *Id.* at 520 (Sotomayor, J., concurring). Justice Sotomayor noted:

> [T]he Court confirms that compensable " 'principal' " activities " 'includ[e] ... those closely related activities which are indispensable to [a principal activity's] performance,' " and holds that the required security screenings here were not "integral and indispensable" to another principal activity the employees were employed to perform. I agree. As both Department of Labor regulations and our precedent make clear, an activity is "indispensable" to another, principal activity *only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively*. Thus, although a battery plant worker might, for example, perform his principal activities without donning proper protective gear, he could not do so safely, [citing *Steiner*]; likewise, a butcher might be able to cut meat without having sharpened his knives, but he could not do so effectively[.]

*Id.* at 519–20 (Sotomayor, J., concurring) (citations omitted) (emphasis added).

There is no question that the principles discussed in *Integrity Staffing* apply to this case. The Supreme Court is interpreting the same statutory provisions, regulatory framework and body of Supreme Court case law, including *Steiner*, as this court and the parties have been since this case started. It is also true that *Integrity Staffing* provides significant guidance to applying the "integral and indispensable" language the Court first articulated in *Steiner*. *Integrity Staffing* clarifies that these words each mean different things—as set forth above, "integral" is akin to intrinsically related to and "indispensable" akin to necessary. It is for this reason that determining compensability solely on the basis of whether an employer requires an activity is wrong; such an analysis ignores the

4

requirement that the activity be integral or intrinsically related to what the employer hired the workers to do. Likewise, "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id.* at 519.

At the same time, *Integrity Staffing* did not relate to employee health and safety. So much is clear from the facts of the case, but the concurring opinion highlights that extrapolating the Court's reasoning to hold as non-compensable activities that are indispensable/necessary for employees to do their jobs safely would not be warranted. It would also run contrary to *Steiner* and the applicable regulations the *Integrity Staffing* Court discussed. In effect, as was true when this case began, what was conceded by the employer in *Steiner* is at issue here: is changing and showering at work integral and indispensable to the employee's productive work? This court has provided a narrower, more specific standard in an effort to assist the parties in determining, essentially, *how* indispensable a health and safety precaution must be to bring a case within the ambit of *Steiner* such that the time is compensable notwithstanding the Portal-to-Portal Act. The standard is that the changing and showering is integral and indispensable if "required by the nature of the work"—in other words, if "changing clothes and showering at work will significantly reduce the risk to the health of the employee." (ECF No. 504 at 9.)

It is therefore ordered that Waupaca's motion for reconsideration is denied.

Dated at Green Bay, Wisconsin this  9th   day of March, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

5