UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN DEKEYSER, THOMAS COOPER,
HARLEY GRANIUS, AND CARLOS LOPEZ,
on behalf of themselves and others
similarly situated,

        Plaintiffs,

    v.                                  Case No. 08-C-0488

THYSSENKRUPP WAUPACA, INC.,
d/b/a Waupaca Foundry, Inc.,

        Defendant.

## DECISION AND ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO DE-CERTIFY CLASS

      Plaintiffs are past and current workers in Defendant Waupaca Foundry Inc.'s iron foundries who seek to be paid for time spent "donning and doffing" (changing into and out of) work clothes and protective gear, and for time spent showering after their shifts in facilities provided by Waupaca. In 2012, I granted summary judgment in favor of Waupaca on Plaintiffs' claims for unpaid wages and overtime under the Fair Labor Standard Act and its Wisconsin-law counterpart. ECF Nos. 427 & 437. The Seventh Circuit reversed, concluding summary judgment was not proper based on a factual dispute as to whether such changing and showering were "required by the nature of the work" in the foundries, and thus compensable under these laws. *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 571 (7th Cir. 2013).

      The case is back before me on Plaintiffs' motion to certify the Wisconsin law claims as a class action under Federal Rule of Civil Procedure 23, and on Waupaca's motion to de-certify the

previously "conditionally" certified FLSA collective action, under 29 U.S.C. § 216(b). For the reasons below, Plaintiffs' motion will be granted and Waupaca's motion granted-in-part and denied-in-part.

## BACKGROUND

This case involves six iron foundries, three located in two plants in Waupaca, Wisconsin ("Plant 1" and "Plant 2/3"), and one located in each of the cities of Marinette, Wisconsin ("Plant 4"), Tell City, Indiana ("Plant 5"), and Etowah, Tennessee ("Plant 6"). Plaintiffs asserted the FLSA claims on behalf of all "similarly situated" workers in these foundries, and they asserted the Wisconsin law claims on behalf of similarly situated workers in the Wisconsin foundries. This Court previously conditionally certified a collective action under the FLSA, 29 U.S.C. § 216(b), based on a preliminary showing that the Plaintiffs were indeed similarly situated to the proposed FLSA class members. ECF No. 91 at 4 (describing two-step approach to certification of FLSA collective action). The proposed class (hereinafter "the FLSA class") was defined as all non-exempt, hourly paid, production workers employed by Waupaca at the six foundries at any time since December 18, 2005. ECF Nos. 91 at 9; 94 at 1. Notices were disbursed, 486 individuals opted into the FLSA class, and 4 subsequently withdrew, leaving the FLSA class comprised of 482 current or former workers. Def.'s Br. in Supp. of Mot. to De-Certify at 3 & n.2, ECF No. 554. These workers perform many different jobs in different departments of the foundries. Waupaca seeks de-certification of the FLSA class.

Plaintiffs oppose Waupaca's motion to decertify the FLSA class and have filed their own motion to certify a Rule 23 class including production workers in the four Wisconsin foundries. Plaintiffs define the proposed class (hereinafter "the Wisconsin class") as follows: "All persons who

2

are or were employed by Waupaca Foundry at any time after June 4, 2006, as nonexempt, hourly paid, production employees (defined as employees in the Millroom, Coreroom, Disa, Shakeout, Melt, Maintenance, and Melt Maintenance departments) at plants located in Waupaca, Wisconsin, or Marinette, Wisconsin, and who are not or have not been paid for their on-site donning, doffing, or showering." ECF No. 547 at 1. Plaintiffs submit that this class includes 4,104 workers. Pls.' Br. in Supp. Mot. for Class Cert. at 15, ECF No. 438.

## ANALYSIS

### I. Wisconsin Class/Rule 23

"A district court may certify a class of plaintiffs if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b)." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). The party seeking certification bears the burden of demonstrating compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011). Here, Plaintiffs seek certification under both Rule 23(b)(2) and Rule 23(b)(3), discussed below.

**A. Rule 23(a)**

As Plaintiffs estimate the Wisconsin class includes more than 4,000 workers, the numerosity requirement ("the class is so numerous that joinder of all members is impracticable") is not in dispute.

The commonality requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single such common question is enough to satisfy Rule 23(a)(2), and the existence of a mixture of common and individual questions presents an issue of

3

whether common questions "predominate" over individual questions under Rule 23(b)(3), not an issue of commonality under Rule 23(a)(2). *See Wal-Mart Stores*, 131 S. Ct. at 2556. At the same time, the Supreme Court has warned that because any competently crafted class complaint literally raises common questions, what matters for commonality purposes is whether the classwide proceeding will generate common answers to those questions. *Id.* at 1551.

Here, the obvious common question is whether the donning, doffing and changing activities are compensable under the FLSA and Wisconsin laws.[1] More specifically, the question is whether such activities are "required by the nature of the work" in Waupaca's foundries, and more specifically yet, to the extent Waupaca does not require its employees to don and doff their clothes at work, the question at trial will be whether Plaintiff can establish that "changing clothes and showering at work will significantly reduce the risk to the health of the employee." ECF No. 504 at 9. Plaintiffs maintain that this basic question concerning Waupaca's liability can be resolved with common evidence, namely written materials Waupaca provided to workers advising of the hazards of some of the chemicals workers in the foundries might be exposed to, and, more importantly, the expert opinion of an industrial hygienist hired by Plaintiffs which holds that such changing and showering will indeed "substantially decrease" health risks to foundry workers and their families.

---

[1]Plaintiffs argue the Wisconsin liability standard under Wis. Admin. Code § DWD 272.12(2)(e)1. is more employee-friendly than that under the FLSA. I have previously concluded otherwise, ECF No. 437, but Plaintiffs argue my decision was called into question by subsequently-decided Wisconsin lower court decisions. ECF No. 548 at 22. However, Plaintiffs' briefs were submitted before the Wisconsin Supreme Court decided *United Food & Commercial Workers Union, Local 1473 et al. v. Hormel Foods Corporation*, in which the Court suggests the Wisconsin standard is substantially similar to the FLSA standard, 2016 WI 13, ¶ 43 n.13 & ¶ 69 (lead opinion), and because I conclude class certification is appropriate even in light of the supposedly more demanding FLSA standard, there is no need at the moment to address Plaintiffs' position (if it is still their position) regarding the Wisconsin liability standard.

4

ECF No. 552-14, ¶ 7A & B.

Waupaca argues Plaintiffs are trying to bring "toxic tort" claims on a classwide basis. In other words, Waupaca's position is that Plaintiffs' and the class members' claims are inherently individualized by nature, requiring each claimant to show that his or her changing and showering before leaving work was required given such factors as his or her individual health history, his or her "exposure profile" (e.g. the intensity, frequency, and duration of exposures to hazardous materials), and even the length of his or her commute home from work. *See* ECF No. 554 at 9. Waupaca maintains that such an individualized showing is called for in order for a claimant to sustain the burden to show that on-site changing and showering would indeed significantly reduce the health-related risks of working in a foundry.

But Plaintiffs' are not seeking damages for "toxic tort." Indeed, Plaintiff's position is that the preventative measures of changing clothes and showering at work are reasonably necessary to avoid injury from "toxic tort." The question for trial is not whether the class members are currently suffering from illnesses and diseases caused by exposure to hazardous materials, but whether changing clothes and showering at work are reasonably necessary to protect human beings from such illnesses and diseases. Thus, the inquiry is not the individualized one that Waupaca claims; it is the more general question of whether the conditions that production workers are exposed to in the plants warrant the safety precautions for which Plaintiffs seek compensation.

If Waupaca were correct about the individualized nature of the liability standard, class certification would seem to never be appropriate for this type of case, i.e., where the precautions at issue are not required by law or by the employer. In fact, the exacting burden of proof demanded by Waupaca would seem to doom even such claims brought individually, because workers have no

5

way of knowing exactly what or how much hazardous material they are actually exposed to. It is for that reason that Plaintiffs' expert opines that an "individualized risk assessment" would not be proper with respect to workers in Waupaca's foundries, and that the only reasonable thing to do in the workers' position, given the potential of exposure to materials known to be dangerous, is to shower and change clothes at work. ECF No. 552-14, ¶¶ 7E, 39. Of course, the jury or other factfinder will not be required to accept Plaintiffs' expert's opinion with respect to the dangerousness of working in Waupaca's foundries and the necessity of the changing and showering at work. It may instead disregard Plaintiff's expert's opinion based on opinions provided by experts hired by the defense or based other evidence in the case. In any event, the issue with respect to commonality is simply whether Plaintiffs have produced common evidence tending to prove their common assertion, and the opinion of their expert is just that.

The typicality requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims need not be identical to the Wisconsin class members' claims, but Plaintiffs' claims must have the same essential characteristics as the Wisconsin class members' claims. "This boils down to two considerations: whether the same event, practice, or course of conduct gives rise to the claims of the class and whether the claims are grounded in the same legal theory." *Curry v. Kraft Foods Global, Inc.*, No. 10-1288, 2011 WL 4036129, at *7 (N.D. Ill. Sept. 12, 2011) (citing *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006); and *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). The answer to both questions is clearly "yes" here, where all claims arise out of the same Waupaca practice or course of conduct not to pay employees for time spent changing or showering, and where all claims

6

are based on the same legal theory that such activities were "required by the nature of the work" and thus compensable under the FLSA and Wisconsin law.

Waupaca vigorously disputes that the typicality requirement is met, noting differences in the workers' employment histories, health histories and habits, exposure profiles, the manner in which they were paid, etc., ECF No. 563 at 17–20; ECF No. 554 at 5–14, 10–21, but these variations are more germane to Waupaca's commonality argument addressed above and its Rule 23(b)(3) argument addressed below. Simply put, "[f]actual distinctions among the different class members do[] not prevent Plaintiffs from meeting the typicality requirement so long as a similar legal theory binds the named Plaintiffs and the other class members." *Curry*, 2011 WL 4036129, at *7; *see also De La Fuente*, 713 F.2d at 232 ("[S]imilarity of legal theory may control even in the face of differences of fact.").

The adequacy of representation requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Again there are two considerations: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). There is no dispute that Plaintiffs have retained qualified counsel. Waupaca disputes the adequacy of representation of class members' interests, however, on two grounds. ECF No. 563 at 22–23; *see also* ECF No. 554 at 23–24. First, Waupaca notes none of the proposed class representatives currently works at "Plaint 1," one of the foundries located in Waupaca, Wisconsin, and that former employees will not adequately represent the interests of current employees. However, the proposed class representatives do include current employees Thomas Cooper and John Cummings and former

7

employee Debra Wilde, who previously worked at Plant 1, ECF No. 548 at 17, so these individuals will adequately represent the interests of the proposed class both with respect to current workers and with respect to Plant 1 workers.

Second, Waupaca argues Plaintiffs "conceded" they were only seeking "modest" wages estimated at 10 minutes per day, thereby violating their fiduciary duty to the Wisconsin class by "throwing away," according to Waupaca, compensation for any workers who took longer than 10 minutes. ECF No. 563 at 22–23. But Plaintiffs have not conceded any particular amount of time or disclaimed any entitlement to wages; the 10 minute figure was merely used to provide an estimated damage amount for reference in relation to, among other things, Plaintiffs' Rule 23(b)(2) argument that their claims for injunctive relief are as important as their claims for damages.

Accordingly, all four conditions of Rule 23(a) are satisfied, and the question becomes whether either or both of the requirements in Rule 23(b)(2) and (3) are also satisfied.

**B. Rule 23(b)**

Plaintiffs seek and Waupaca opposes certification under both Rule 23(b)(2) and (b)(3). The former provision authorizes certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Waupaca cites *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999), for the proposition that where compensatory damages are also sought, certification under Rule 23(b)(2) is likely to be improper. This is because claims for compensatory damages "'introduce new and substantial legal and factual issues' requiring the Court to find an actual injury based on individualized proof for each class member." ECF No. 563 at 24 (citing *Jefferson*, 195 F.3d at 898).

8

It is not clear that *Jefferson* would bar certifying the class under Rule 23(b)(2) here, however, since the damages Plaintiffs seek are essentially back pay awards. As the *Jefferson* court noted, "back pay is a form of equitable relief, but this relief was treated as incidental to the injunction—and, because it was deemed equitable, neither side had a right to a jury trial, so that handling the suit as a consolidated proceeding in equity did not threaten anyone's rights." *Id.* at 896. In *Jefferson*, the damages sought by the plaintiffs included both compensatory damages and punitive damages. Because that is not the case here, I conclude that certification under Rule 23(b)(2) is permissible.

Certification is also proper under Rule 23(b)(3). That subsection applies where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Given my conclusion above that the central liability question in this case can be answered with common evidence, the first question is whether that question "predominates" over, or can be considered more important than, individualized questions. *See Tyson Foods, Inc. v. Bouaphakeo*, --- S. Ct. ---- , 2016 WL 1092414, at *7 (March 22, 2016). Frankly, the importance of the common question is hard to overstate in this case. *Cf. id.* at *7 ("[T]he parties do not dispute that there are important questions common to all class members, the most significant of which is whether time spent donning and doffing the required protective gear is compensable work under the FLSA."). It is the central issue the parties have spent years litigating. In its response regarding Rule 23(b)(3), Waupaca reiterates its view that the liability issue requires considering each individual claimant's varied work and health histories in conjunction with their unique exposure/dose scenarios and commute times, the same argument I rejected above. Beyond

9

that, Waupaca argues calculating individual class members' damages will take an extraordinary amount of time, considering that individuals will have engaged in varying amounts of compensable time and were and/or are paid differently. But these are mere mathematical computations, and "[i]t has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015).

Finally, the superiority requirement is that the class action is superior to other methods of adjudication. Rule 23 directs courts to consider such factors as class members' interests in individually controlling the prosecution of the actions, the extent and nature of any litigation concerning the controversy already begun by class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Rule 23(b)(3)(A)–(D). Although Waupaca correctly points out that there will be difficulties in managing the Wisconsin class given its size and the fact that each claimant will conceivably (if Plaintiffs are successful as to liability) be entitled to a unique amount of unpaid wages and/or overtime, the rest of the factors favor the class action. Moreover, contrary to Waupaca's arguments, Waupaca's rights under the Wisconsin Constitution do not prohibit bifurcating the liability and damages issues for separate proceedings. *Int'l Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) ("Even where, as here, a district court is applying the substantive law of a state, federal procedural law controls the question of whether there is a right to a jury trial."). For all of these reasons, I conclude that Rule 23 is satisfied, and I therefore will certify the Wisconsin class as defined below.

**II. FLSA Class**

Naturally, Waupaca's arguments for de-certification of the FLSA class mirror its arguments against certification of the Wisconsin class. The FLSA authorizes employees to bring suit against an employer individually and on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). Factors relevant to the FLSA certification question include any disparate factual and employment settings of the individual plaintiffs, the various individualized defenses available to the defendant, and fairness and procedural considerations. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001) (cited approvingly in *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013)). The Seventh Circuit has indicated in dicta that the standards for certification under § 216 and Rule 23 should be treated as the same, *Espenscheid*, 705 F.3d at 771–772 ("[T]here isn't a good reason to have different standards for the certification of the two different types of action . . . . Simplification is desirable in law, especially in the present context, because joining a collective action and a class action or actions in one suit, as in this case, is both common and, we have held, permissible."), and at a minimum logic would seem to dictate that a class satisfying Rule 23(a) and Rule 23(b)(3), including the requirements of commonality, typicality, adequacy of representation, predominance, manageability, etc., also satisfies the FLSA's less onerous "similarly situated" requirement (even if it is conceivable that the converse may not always be true).

Of course, there is the fact that the FLSA class conditionally certified in this case is of a different scope than the Wisconsin class. The FLSA class includes all production workers in the six foundries since December 2005; the Wisconsin class includes all production workers in the four Wisconsin foundries since June 2006. There is no reason to believe that the different starting dates will affect the class certification analysis, however. Notwithstanding the foregoing, Plaintiffs do not

11

oppose decertifying the workers from the non-Wisconsin foundries included in the FLSA class. Pls.' Br. in Opp. to Mot. to De-certify at 29, ECF No. 559 ("The parties agree that [the] Indiana and Tennessee opt-ins do not belong in this lawsuit.").

This presents an unusual situation. Plaintiffs previously moved to sever the non-Wisconsin opt-in workers and transfer those portions of the case to district courts in their home states. Waupaca opposed Plaintiffs' motion and convinced the Court that it would suffer prejudice if it was required to defend essentially the same case in three different venues. Waupaca made clear that it expected to defeat Plaintiffs' motion to certify any class under Rule 23 and to successfully move to de-certify the FLSA collective class the Court had conditionally certified at the inception of the action. Based on the circumstances of the case at that time, the Court denied Plaintiff's motion to sever and transfer. Waupaca's expectations have not been realized, however, and thus the circumstances have changed. The effect of decertifying the non-Wisconsin opt-ins would be dismissal of their claims which would require that they start over from scratch in the district courts in the states where they reside. This would require counsel to file new lawsuits on behalf of some of the non-Wisconsin opt-ins, provide notice of the proposed class and gather hundreds of new opt-in forms from workers who have already opted in to this lawsuit. It would also introduce questions of whether applicable statutes of limitations have been tolled by virtue of the worker's prior decisions to opt in to this lawsuit.

Taking these matters into consideration, the Court concludes that Plaintiffs' request to sever and transfer the non-Wisconsin portions of the case to the appropriate district courts in Indiana and Tennessee is the more prudent course. The residence of those workers and location of the plants where they work make those districts more convenient forums now that the non-Wisconsin opt-ins

12

have been decertified from initial collective action class and Plaintiffs have not sought to include them in the class they have requested the Court to certify under Rule 23. The Court will therefore follow the procedure utilized by the court in *Medina v. Happy's Pizza Franchise, Inc.*, Case No. 10-3148, 2012 WL 1094353 (N.D. Ill. Feb. 3, 2012), and partially decertify the FLSA collective action into three classes based on the federal judicial district in which they worked. Upon Plaintiffs filing amended complaints for each sub-class, the Court will transfer the non-Wisconsin cases to the appropriate district.

## CONCLUSION

For the reasons above, Plaintiffs' motion to certify the Wisconsin class under Rule 23 is **GRANTED** and Waupaca's motion to de-certify the FLSA class is **GRANTED-IN-PART** and **DENIED-IN-PART**.

The Wisconsin class is defined as follows: All persons who are or were employed by Waupaca Foundry at any time after June 4, 2006, as nonexempt, hourly paid, production employees (defined as employees in the Millroom, Coreroom, Disa, Shakeout, Melt, Maintenance, and Melt Maintenance departments) at plants located in Waupaca, Wisconsin, or Marinette, Wisconsin, and who are not or have not been paid for their on-site donning, doffing, or showering.

The FLSA class is divided into three sub-classes with the opt-in workers in Indiana and Tennessee each comprising a separate class from the Wisconsin class. The Wisconsin FLSA class is now defined as follows: All persons who are or were employed by Waupaca Foundry at any time after December 18, 2005, as nonexempt, hourly paid, production employees (defined above) at plants located in Waupaca, Wisconsin, or Marinette, Wisconsin, and who are not or have not been paid for their on-site donning, doffing or showering. As to the Indiana and Tennessee sub-classes,

13

the courts to which they are transferred will address further certification questions as they arise. Proposed amended complaints for each subclass shall be filed no later than May 6, 2016. The case is set for a telephone status conference on May 16, 2016, at 9:30 a.m.

**SO ORDERED** this   31st    day of March, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
