# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

RYAN DeKEYSER, *et al.*,                  :
                                          :
                    Plaintiffs,           :
                                          :
          v.                              :          Civil Action No. 08-CV-488
                                          :
THYSSENKRUPP WAUPACA, INC. d/b/a          :
WAUPACA FOUNDRY, INC.,                    :
                                          :
                    Defendant.            :
_____   :

## BRIEF IN SUPPORT OF DEFENDANT, WAUPACA FOUNDRY INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

This Court should dismiss Plaintiffs' amended complaint (Dkt. 606)[1] filed against

Defendant Waupaca Foundry, Inc. ("Waupaca"), and do so with prejudice.

As a threshold matter, the amended complaint fails as a matter of law under the Su-

preme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk,* 574 U.S. ___, 135 S. Ct.

513 (2014). In *Integrity Staffing*, a unanimous Supreme Court held that "an activity is in-

tegral and indispensable to the principal activities that an employee is employed to per-

form – and thus compensable under the FLSA – *if it is an intrinsic element of those ac-*

*tivities and one with which the employee cannot dispense if he is to perform his princi-*

*pal activities.*" 135 S. Ct. at 519 (emphasis added). Here, Plaintiffs were employed by

Waupaca to make iron castings, not to change clothes and shower. Thus, because don-

ning, doffing and showering are not "principal . . . activities which [the] employee[s

---

[1] "Dkt. _" refers to the number of the document on the Court's docket for this case.

1

were] employed to perform" *id.* (citing 29 U.S.C. § 254(a)(1)), Plaintiffs' claims are legally baseless and should be dismissed with prejudice.

As the Court will recall, Waupaca raised the *Integrity Staffing* decision almost three years ago via a motion to reconsider. (Dkt. 522.) Respectfully, in denying the motion, the Court misread *Integrity Staffing* and ignored the governing standard articulated by a unanimous Supreme Court. The Court issued its decision in March 2015, only a few months after *Integrity Staffing* was decided. Since that decision, multiple courts have relied on *Integrity Staffing* to reject claims of FLSA compensability for "off the clock" activities employees allegedly engaged in because of health and safety concerns – a rationale the Court used to distinguish this case from *Integrity Staffing*. The Court should therefore re-examine its reasoning, follow these other courts and dismiss Plaintiffs' amended complaint with prejudice.

Separate and apart from *Integrity Staffing*, Plaintiffs' state law claims fail on other grounds. First, since this Court ruled on Waupaca's motion to dismiss the original complaint, subsequent case law has made clear that the FLSA preempts Plaintiffs' state common law and statutory claims, and therefore those claims must be dismissed with prejudice. Second, even if Plaintiffs' state law claims are not preempted, they fail on their merits as a matter of law.

## PLAINTIFFS' CLAIMS

Plaintiffs filed their original complaint on June 3, 2008. (Dkt. 1.) Plaintiffs' original pleading asserted claims under (i) the FLSA (*id.* ¶¶38-44); (ii) Wisconsin's overtime pay

2

statutes (*id.* ¶¶45-51); (iii) Wisconsin's general wage statutes (*id.* ¶¶52-58); and (iv) common law breach of contract (*id.* ¶¶59-63).

In response, Waupaca moved to dismiss Plaintiffs' Second, Third, and Fourth Causes of Action in their entirety. (Dkt. 21, 22.) Waupaca argued that the FLSA preempted Plaintiffs' Second and Third Causes of Action (Wisconsin statutory claims), and otherwise argued the Complaint failed to state a claim upon which relief could be granted. (Dkt. 22 at 20-28.) This Court essentially denied[2] the motion, holding that because Wisconsin wage and hour laws "are not less generous than those of the FLSA, it seems clear that the FLSA does not displace the state law." (Dkt. 82 at 6.)

Waupaca argued the FLSA preempted Plaintiffs' Fourth Cause of Action (breach of contract), and also argued the complaint failed to state a claim under Wisconsin contract law. (Dkt. 22 at 20-23, 28-30.) The Court rejected this argument, stating that while the very nature of the allegations suggested the parties did not agree that Plaintiffs would be paid to don, doff, or shower on site, "other evidence could support a finding that a contract existed." (Dkt. 82 at 14-15.)

Finally, Waupaca argued that Plaintiffs' "willfulness" claim should be dismissed and their FLSA claims should therefore be limited by the two-year statute of limitations. (Dkt. 22 at 30-34.) The Court denied these requests, concluding "the general assertion that Plaintiffs make is sufficient" to allege a willful FLSA violation. (Dkt. 82 at 15-16.)

After years of litigation, on November 25, 2014, this Court articulated the legal standard governing whether Plaintiffs' alleged donning, doffing, and showering at

---

[2] The Court did dismiss Plaintiffs' record-keeping claim. (Dkt. 82 at 16.)

Waupaca's facilities is compensable: "[t]o prevail at trial, Plaintiffs must convince the trier of fact that changing clothes and showering at work will significantly reduce the risk to the health of the employee." (Dkt. 504 at 9.)

Two weeks later, the Supreme Court issued its 9-0 decision in *Integrity Staffing*, which pronounced the following legal standard for FLSA compensability:

> We hold that an activity is integral and indispensable to the principal activities that an employee is employed to perform – and thus compensable under the FLSA – *if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities*.

135 S. Ct. at 519 (emphasis added). This decision, discussed more fully below, crystallized the compensability standard governing this case.

Due to that clarification on the compensability standard, Waupaca moved for reconsideration of this Court's legal standard. (Dkt. 521, 522.) Waupaca explained why *Integrity Staffing* mandated dismissal of Plaintiffs' claims, as Plaintiffs could not meet the new Supreme Court standard of compensability. (Dkt. 522.) This Court disagreed and denied Waupaca's motion, holding that although "[t]here is no question that the principles discussed in *Integrity Staffing* apply to this case," the case "did not relate to employee health and safety" and therefore did not dictate the dismissal of Plaintiffs' claims. (Dkt. 529 at pp. 4-5.)

Now Plaintiffs have filed an amended complaint, after the Seventh Circuit affirmed this Court's order granting Plaintiffs' motion for class certification and their request to sever and transfer out of state opt-ins to their home districts. (Dkt. 606.) Plaintiffs'

4

amended pleading asserts the same four causes of action with little variation from their original pleading.

**ARGUMENT**

The standards for granting a motion to dismiss under Rule 12(b)(6) are well-known: A plaintiff must provide sufficient grounds for his entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a case of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must describe the claim in enough detail to give defendant "fair notice of what the . . . claim is and the grounds upon which it rests," raising the right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. To do so, the complaint must state a claim that is facially plausible. *Id.*; *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

**I.     Plaintiffs' FLSA Claim Fails as a Matter of Law Under *Integrity Staffing*.**

This Court should dismiss Plaintiffs' amended complaint under the Supreme Court's decision in *Integrity Staffing*. In *Integrity Staffing*, a unanimous Supreme Court held that "an activity is integral and indispensable to the principal activities that an employee is employed to perform – and thus compensable under the FLSA – ***if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities*.**" 135 S. Ct. at 519 (emphasis added). Here,

5

Waupaca employed Plaintiffs to make iron castings, not to change clothes and shower. Donning, doffing, and showering are not "principal . . . activities which [the] employee[s were] employed to perform." *Id.* (citing 29 U.S.C. § 254(a)(1)). Thus, Plaintiffs' claims are legally baseless and should be dismissed with prejudice.

In denying Waupaca's motion to reconsider, the Court acknowledged that "the principles discussed in *Integrity Staffing* apply to this case." (Dkt. 529 at 4.) Nevertheless, the Court refused to dismiss Plaintiffs' claims on the ground that the activities deemed noncompensable in *Integrity Staffing* "did not relate to employee health and safety." (*Id.* at 5.) The Court reached its conclusion based on Justice Sotomayor's concurrence, which set forth her understanding of the standards adopted by the majority opinion. (*Id.* at 4.) Justice Sotomayor wrote that "an activity is 'indispensable' to another, principal activity only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively." *Integrity Staffing*, 135 S. Ct. at 520 (Sotomayor, J., concurring). Thus, in the Court's view at the time, *Integrity Staffing* did not bar Plaintiffs' claims here because changing clothes and showering can be integral and indispensable to the nature of the work if it "will significantly reduce the risk to the health of the employee." (Dkt. 529 at 5.)

Respectfully, the Court misread *Integrity Staffing* and ignored the governing standard, articulated by a unanimous Supreme Court, which applies in cases like this where health and safety concerns are alleged. And while the Court issued its decision in March 2015, only a few months after *Integrity Staffing* came out and without the benefit of other analyses, multiple courts have since then relied on *Integrity Staffing* to reject claims of

FLSA compensability for "off the clock" activities employees allegedly engaged in because of health and safety concerns. The Court should follow these cases and dismiss Plaintiffs' amended complaint with prejudice.

### A. The Facts, Procedural History, and Holdings of *Integrity Staffing*.

The Supreme Court's decision in *Integrity Staffing* sets the benchmark for FLSA compensability of preliminary and postliminary "off the clock" activities. Under the facts here, it mandates dismissal of Plaintiffs' amended complaint.

In *Integrity Staffing*, the defendant company employed non-exempt hourly production workers to retrieve products from warehouse shelves and pack them for delivery to Amazon.com customers. 135 S. Ct. at 515. Before they could leave work at the end of the day, Integrity Staffing required the workers to undergo antitheft security screenings, during which the workers "removed items such as wallets, keys and belts from their persons and passed through metal detectors." *Id*. These screenings allegedly took up to 25 minutes each day, and were conducted "to prevent employee theft." It was undisputed the screenings were required and undertaken "solely for the benefit of the employers and their customers." *Id*. at 515-16.

Two workers filed a putative collective class action against Integrity Staffing for alleged violations of the FLSA and Nevada labor laws. Their complaint asserted they were entitled to compensation for the time spent at the end of each shift waiting and undergoing the security screenings. *Id*. at 515. Integrity Staffing moved to dismiss the complaint for failure to state a claim.

7

The district court granted Integrity Staffing's motion, holding as a matter of law that the activities at issue were not compensable under the FLSA. *Id.* at 516. Because these activities took place after the regular work shift, the only way they could be compensable was "if the screenings were an integral and indispensable part of the principal activities [the workers] were employed to perform." *Id.* The district court held they were not, and "instead fell into a noncompensable category of postliminary activities." *Id.*

The Ninth Circuit reversed, reasoning that postshift activities are compensable as integral and indispensable to an employee's principal activities "if those postshift activities are necessary to the principal work performed and done for the benefit of the employer." *Id.* (citing Ninth Circuit Opinion, 713 F.3d 525 (2013)). Because Integrity Staffing required the security screenings for the purpose of preventing employee theft, the Ninth Circuit concluded they were "'necessary' to the employees' primary work as warehouse employees and done for Integrity Staffing's benefit." *Id.*

The Supreme Court reversed the Ninth Circuit and established a clear, bright-line legal standard for what constitutes compensable "integral and indispensable" activities under the FLSA:

> We hold that an activity is integral and indispensable to the principal activities that an employee is employed to perform – and thus compensable under the FLSA – ***if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.***

*Id.* at 519 (emphasis added). In so holding, the Supreme Court noted that its precedents have "consistently" interpreted the phrase "principal activity or activities" as embracing all activities that are an "'integral and indispensable' part of the principal activities."

8

*Id.* at 517. Citing definitions found in the Oxford English Dictionary, the Court defined both "integral" and "indispensable" in "their ordinary sense." *Id.*[3] The result of this analysis was the legal standard reproduced above which, the Supreme Court noted, is consistent with regulations from the Department of Labor. *Id.* at 518 (citing 29 C.F.R. §§ 790.8(b), 790.8(c) and 790.7(g)).

Importantly, the Supreme Court discussed precedents where the workplace activities in issue satisfied the legal standard and where the activities did not. One situation that satisfied this standard was *Steiner v. Mitchell*, 350 U.S. 247 (1956):

> For example, we have held compensable the time battery-plant employees spent showering and changing clothes because the chemicals in the plant were "toxic to human beings" and the employer conceded that "the clothes changing and showering activities of the employees [were] indispensable to the performance of their productive work and integrally related thereto." *Steiner*, *supra*, at 249, 251.

*Id.* Another case was *Mitchell v. King Packing Co.*, decided the same day as *Steiner*:

> And we have held compensable the time meatpacker employees spent sharpening their knives because dull knives would "slow down production" on the assembly line, "affect the appearance of the meat as well as the quality of the hides," "cause waste," and lead to "accidents." *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956).

*Id.* The Supreme Court contrasted these cases with *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), where time spent waiting to don protective gear was held noncompensable be-

---

[3] *Integrity Staffing* also reaffirmed that "integral" and "indispensable" do not mean the same thing, and must be separately established before an activity is deemed compensable under the FLSA. *Id.* at 517-19. Prior to *Integrity Staffing*, the Second Circuit engaged in a nearly identical analysis of the difference between "indispensable" and "integral." *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593-94 (2d Cir. 2007) (donning and doffing of "helmet, safety glasses, and steel-toed boots may be indispensable to plaintiffs' principal activities without being integral."). As *Gorman* noted, "indispensable is not synonymous with integral." 488 F.3d at 592.

9

cause "such waiting was 'two steps removed from the productive activity on the assembly line.'" *Id.* (citing *IBP*, 546 U.S. at 42).[4]

Turning to the security screenings at issue in *Integrity Staffing*, the Supreme Court had no difficulty determining they were not compensable under the FLSA:

> Integrity Staffing did not employ its workers to undergo security screenings but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers. The security screenings . . . were not "integral and indispensable" to the employees' duties as warehouse workers . . . . The screenings were not an intrinsic element of retrieving products from warehouse shelves or packing them for shipment. And Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.

135 S. Ct. at 518.

The Supreme Court then chided the Ninth Circuit for applying the wrong legal standard. First, it noted the Ninth Circuit had "erred by focusing on *whether an employer required* a particular activity." *Id.* at 519 (emphasis in original). The Court concluded such a standard "would sweep into 'principal activities' the very activities the Portal-to-Portal Act was designed to address" and eliminate from FLSA compensability. *Id.* Second, it concluded "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id.*

**B. The Supreme Court's Holding in *Integrity Staffing* Applies in Situations Involving Employee Health and Safety.**

Contrary to the Court's prior decision, *Integrity Staffing **does*** mandate dismissal in

---

[4] The Supreme Court's citation to these cases demonstrates that *Integrity Staffing* was not limited to its facts. Indeed, ***nothing*** in the Supreme Court's analysis cabined or limited its holding to security screenings. Moreover, *Integrity Staffing* noted the consistency of its approach with the Department of Labor's regulations, which unquestionably apply to all employers in all contexts.

10

this case. The Court thought otherwise in light of the health and safety concerns triggered by Plaintiffs' allegations:

> At the same time, *Integrity Staffing* did not relate to employee health and safety. So much is clear from the facts of the case, but the concurring opinion highlights that extrapolating the Court's reasoning to hold as non-compensable activities that are indispensable/necessary for employees to do their jobs safely would not be warranted. It would also run contrary to *Steiner* and the applicable regulations the *Integrity Staffing* Court discussed. In effect, as was true when this case began, what was conceded by the employer in *Steiner* is at issue here: is changing and showering at work integral and indispensable to the employee's productive work? This court has provided a narrower, more specific standard in an effort to assist the parties in determining, essentially, ***how*** indispensable a health and safety precaution must be to bring a case within the ambit of *Steiner* such that the time is compensable notwithstanding the Portal-to-Portal Act. The standard is that the changing and showering is integral and indispensable if 'required by the nature of the work' – in other words, if 'changing clothes and showering at work will significantly reduce the risk to the health of the employee.'

(Dkt. 529 at 5 (emphasis in original).)

Subsequent case law has refuted this analysis. *See infra*. But regardless, the Court relied on the standard set forth in the concurring opinion, endorsed by only two of the nine justices. This was error. The analysis of the concurring opinion is not the governing standard. *See Maryland v. Wilson*, 519 U.S. 408, 412-13 (1997) (statements in a concurrence are not binding precedent); *see also Fernandez v. Mukasey*, 544 F.3d 862, 870 (7th Cir. 2008) (suggestion by Justice Thomas in concurrence is not binding precedent); *Davon, Inc. v. Shalala*, 75 F.3d 1114, 1125 n. 9 (7th Cir. 1996) ("plaintiffs cite no binding authority for their proposition, relying instead on statements made in Supreme Court concurrences and dissents."); *Ind. Vol. Firemen's Ass'n v. Pearson*, 700 F. Supp. 421, 442 (S.D. Ind. 1988) ("This trial court is bound to follow the clear mandate of the Supreme

11

Court's majority, even if the logic of a concurring opinion might arguably be more persuasive in the abstract.").

The standard adopted by the majority in *Integrity Staffing* draws no distinction between cases that implicate health and safety and those that do not. Indeed, in arriving at the governing standard, the *Integrity Staffing* opinion addressed issues of employee health and safety in at least three ways. <u>*First*</u>, as noted previously, *Integrity Staffing* cited *Steiner* in its analysis of activities that met the intrinsic element legal standard. 135 S. Ct. at 518-19. It is hard to imagine a better way for the Supreme Court to provide assurances that its test bears on health issues in a *Steiner*-type case than to use *Steiner* in its decision. <u>*Second*</u>, to demonstrate that the "Department of Labor's regulations are consistent with [its] approach," the Supreme Court used the illustration of employees changing clothes in a chemical plant. *Id.* at 518. This harkens back to the issues of employee health and safety in *Steiner*. <u>*Third*</u>, *Integrity Staffing* refers to the Solicitor General adopting the Department of Labor's position in a 1951 opinion letter, which found noncompensable pre-shift security checks for "matches, spark producing devices . . . and other items which have a bearing on the safety of the employees . . . ." *Id.* at 518-19. The Supreme Court endorsed the fact that the Department "drew no distinction between searches conducted for the safety of the employees and those conducted for the purpose of preventing theft—neither were compensable under the Portal-to-Portal Act." *Id.* at 519.

Thus, while the *Integrity Staffing* security screenings did not involve workplace health and safety, the opinion nonetheless addressed it. The Supreme Court's legal standard applies to the "*Steiner*-type" health issues presented here.

Notably, since the Court's March 2015 decision, multiple courts have relied on *Integrity Staffing* to reject claims of FLSA compensability for "off the clock" activities employees allegedly engaged in because of health and safety concerns. For example, in *Balestrieri v. Menlo Park Fire Protection Dist.*, 800 F.3d 1094, 1096 (9th Cir. 2015), the Ninth Circuit rejected the firefighter plaintiffs' FLSA compensation claims for time spent picking up heavy duty safety gear from the fire station, despite their claims that they stored it at the station "because of the bulk and dirt, and **concerns about exposing their families to the materials on soiled gear.**" (emphasis added).

Similarly, in *Dinkel v. Medstar Health Inc.*, 99 F. Supp. 3d 37, 41 (D.D.C. 2015), plaintiffs alleged that they had to clean and maintain their uniforms and that these activities were "integral and indispensable" to their principal activities because:

> . . . [r]emoving infectious pathogens from their uniforms made their jobs safer and more efficient by minimizing the spread of hospital-acquired infections to patients, co-workers and family members, reducing lost productivity due to illness, reducing the cost of replacement workers and mitigating financial losses due to repeat hospital admissions.

99 F. Supp. 3d at 41. Here, Plaintiffs make a similar health and safety argument – that they need to immediately shower after their shifts because they "work with toxic or corrosive chemicals, and are exposed to silica and other foundry dust that adheres to the skin and clothing." (Dkt. 606, ¶23(C).)

The *Dinkel* court expressly rejected this argument, noting "[t]he Court's opinion in *Integrity Staffing Solutions* never mentions efficiency, **and the sole reference to safety**

*does not suggest that safety is a key indicator* of whether an activity is 'integral and indispensable.'" 99 F. Supp. 3d at 41 (emphasis added).[5] Rather, *Dinkel* reasoned:

> *While Plaintiffs suggest that the uniform maintenance activities promote safety*, none of the reasons for uniform maintenance approach the way in which the battery-plant employees' activities were critically important—integral and indispensable—to their particular factory jobs. Plaintiffs argue that their uniform maintenance activities were important to the hospital's infection control policy, *but they do not argue and they cannot show that their jobs would be so unsafe as to be effectively impossible to carry out their jobs without their uniform maintenance activities*. For the battery-plant employees, they themselves had to shower and change immediately at their workplace upon completing their other work. By contrast, the parties do not dispute that Plaintiffs conduct their uniform maintenance activities in a wide variety of ways—from the employees completing all cleaning activities themselves to sharing uniform maintenance responsibilities with family members to taking certain items to professional cleaners. *Minimizing infection—even accepting Plaintiffs' experts' testimony regarding the importance of infection control—does not reach the level of importance to Plaintiffs' principal activities as the showering and changing of the battery-plant employees.*

*Id.* at 42-43 (emphases added).

Likewise, in *Olive v. TVA*, 2015 U.S. Dist. LEXIS 103549 (N.D. Ala. Aug. 7, 2015), the district court expressly rejected the argument that because an "off the clock" activity was allegedly performed for health and safety reasons it should be deemed compensable work under the FLSA. In *Olive,* plaintiffs worked as security guards at a nuclear power plant. Both their employer *and* federal regulations *required* the plaintiffs to undergo radiation screenings after clocking out at the end of their shift, but before they could leave the plant. *Id.* at *4. These screenings typically took 10 to 15 minutes, but

---

[5] The district court in *Bonds v. GMS Mine Repair & Maint., Inc.,* 2015 U.S. Dist. LEXIS 127769, at *37 (W.D. Pa. Sept. 23, 2015) favorably cited this statement analyzing *Integrity Staffing,* and dismissed the FLSA claims of mining company employees seeking compensation for time spent at mandatory "pre-shift safety meetings."

14

could take as long as 90 minutes during peak times and outages. *Id.* Relying on *Integrity Staffing,* the court granted the defendant's motion to dismiss:

> **The fact that the [] scans are conducted for the purposes of safety**, unlike the theft prevention screening in Integrity Staffing Solutions, **has no significance** on the determination, because the Department of Labor has 'drawn no distinction between . . . searches conducted for the safety of the employees' and identical procedures implemented for theft or other purposes.

*Id.* at **9-10 (quoting *Integrity Staffing*, 135 S. Ct. at 519) (emphasis added).

In short, district courts routinely apply *Integrity Staffing* to dismiss "off the clock" claims under the FLSA at the motion to dismiss stage, even when alleged employee health and safety concerns are raised. The Court should do the same here.

### C. Waupaca Did Not Employ Plaintiffs to Perform the Activities for Which They Now Seek Compensation.

*Integrity Staffing* was decided on a motion to dismiss. After establishing the legal standard, the Supreme Court had little trouble concluding the warehouse workers could not state a claim for relief under the FLSA because they were employed to retrieve products from warehouse shelves and package those products for shipment, not stand in line for security screenings. This analytical approach requires an identical conclusion here—Plaintiffs' alleged clothes changing and showering are noncompensable preliminary and postliminary activities under the FLSA.

Waupaca employed Plaintiffs to make iron castings – not to don or doff protective gear, or to shower. These are not "principal . . . activities which [the] employee is *employed to perform*." *Integrity Staffing,* 135 S. Ct. at 519 (emphasis added) (citing 29 U.S.C. §254(a)(1)); *see also Balestrieri,* 800 F.3d at 1101 (dismissing firefighters' FLSA claim for

time spent picking up their protective gear, as they were not employed to perform such tasks). As in *Integrity Staffing,* there can be no legitimate dispute that Waupaca did not employ Plaintiffs to perform the clearly non-productive activities of donning and doffing gear or showering after their shift.

These activities are also not "integral and indispensable" to Plaintiffs' job duties as employees of an iron foundry. None are an "intrinsic element" of making iron castings; and Plaintiffs do not allege they are. Just as Integrity Staffing could have eliminated security screenings without impairing its employees' ability to perform their work, Waupaca could disconnect its showers and close its locker rooms tomorrow and Plaintiffs could still make iron castings. These activities are **not** of the type "the employee **cannot** dispense [with] if he is to perform his principal activities." *Integrity Staffing,* 135 S. Ct. at 518 (emphasis added). Indeed, nothing in the Occupational Safety and Health Administration ("OSHA") regulations or any other rule of law requires Waupaca to provide locker rooms or shower facilities to its employees. The fact that Waupaca does so voluntarily as a convenience to its workforce does not convert the activities in issue into intrinsic elements of Plaintiffs' jobs.

Despite this, Plaintiffs allege "showering after their shifts" is "necessary and indispensable to their work" in part because they are exposed to silica and other foundry dust, which presents "a health hazard." (Dkt. 606, ¶23(C).) This allegation ignores the fact that after conducting an "extensive review of the scientific evidence" and performing an in-depth analysis of various potential "protective measures," OSHA determined

Case 1:08-cv-00488-WCG   Filed 10/10/17   Page 16 of 28   Document 621

in its final standards that ***neither protective clothing***[6] ***nor showering facilities***[7] ***were required*** in work environments such as foundries that have crystalline silica exposures. Thus, the government agency tasked with ensuring workplace safety has specifically considered and rejected Plaintiffs' claim that on-site clothes changing and showering is "integral and indispensable" to the safety of the Waupaca workforce.

### D. Plaintiffs' Claims Fail the "Plausibility" Standard Under *Integrity Staffing*.

To survive a motion to dismiss, a complaint must raise the right to relief "above the speculative level" and state a claim that is facially plausible. *Twombly*, 550 U.S. at 555. To meet this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant ***is liable for the misconduct alleged***." *Iqbal*, 556 U.S. at 678-79 (emphasis added). Here, the vague and sparse allegations in the amended complaint, juxtaposed against *Integrity Staffing's* clear holdings, make Plaintiffs' claims implausible.[8]

The amended complaint fails to allege the factual content necessary to allow the Court to draw any inference, much less a "reasonable" one, that Waupaca violated the

---

[6] *See* "OSHA's Crystalline Silica Rule" 2016 Fact Sheet, discussing "Changes from the Proposed [silica] Rule," *available at https://www.osha.gov/Publications/OSHA3848.pdf* ("The proposed standards would have required use of protective clothing in some situations. ***The final standards do not include that requirement***." (emphasis added)).

[7] OSHA similarly concluded that, despite the proposed requirement that employees shower or bathe after silica exposure, such activities were *not* required in its final rule. *See* Fed. Reg. Vol. 81, No. 58, p.16658, *available at* https://www.gpo.gov/fdsys/pkg/FR-2016-03-25/pdf/2016-04800.pdf (confirming that in the final silica rule, OSHA "removed specific provisions" resulting in the "elimination of compliance costs for change rooms, shower facilities, lunch rooms, and hygiene-specific housekeeping requirements").

[8] All four of Plaintiffs' claims should be dismissed because all are predicated on the assertion that time spent donning, doffing, and showering are compensable.

17

FLSA. As noted earlier, Plaintiffs do not allege, because they cannot, that Waupaca *employed them* to don, doff, or shower. They do not allege they are *unable to perform their job duties* at Waupaca *unless* they donned, doffed or showered at Waupaca's plant. Nor do they allege that they *had to engage in* these donning, doffing and showering activities *in order to* make iron castings. And though the amended complaint contains numerous conclusory statements, it fails to allege any facts that explain how or why various alleged "off the clock" activities were indispensable and integral to Plaintiffs' principal activities of employment.

Furthermore, Plaintiffs do not allege (nor could they) that their donning, doffing, or showering must take place *at Waupaca's facilities*. Because Plaintiffs can change in and out of their work clothes at home, and shower at home after work, the time doing so is not compensable as a matter of law.[9] *See* 29 C.F.R. § 790.8(c) n.65 (changing clothes and showering may be integral to the employee's principal activities only if "changing of clothes on *the employer's premises* is required by law, by rules of the employer, or by the nature of the work") (emphasis added); *see also Bamonte v. City of Mesa*, 598 F.3d 1217, 1232-33 (9th Cir. 2010); *Reed v. Cnty. of Orange*, 716 F. Supp. 2d 876, 882-83 (C.D. Cal. 2010); *Musticchi v. City of Little Rock, Ark.*, 734 F. Supp. 2d 621, 626 (E.D. Ark. 2010);

---

[9] A Department of Labor 2006 advisory memorandum states:

> [D]onning and doffing of required gear is within the continuous workday *only when the employer or the nature of the job mandates that it take place on the employer's premises*. It is our long-standing position that *if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant*.

Dep't of Labor, Wage & Hour Adv. Mem. No.2006-2, at 3 (May 21, 2006) (emphases added).

18

*Adams v. Alcoa, Inc.*, 822 F. Supp. 2d 156, 163-64 (N.D.N.Y. 2011). This is particularly and obviously true for Plaintiffs' implausible claim to compensation for **donning**, as their alleged marginal risk of exposure has nothing to do with whether they put their gear on at home or at the facility.

Plaintiffs' claim for compensation fails the "plausibility" test of *Iqbal* and *Twombly*. Taking the amended complaint's allegations at face value, the donning, doffing, and showering activities in issue cannot possibly be integral or indispensable to the work being performed at Waupaca. The amended complaint therefore must be dismissed with prejudice. *Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

## II. Plaintiffs' State Law Claims Likewise Fail as a Matter of Law.

### A. The FLSA Preempts Plaintiffs' State Law Claims.

#### 1. <u>The FLSA Preempts Plaintiffs' Breach of Contract Claim.</u>

Waupaca previously moved to dismiss Plaintiffs' common law causes of action as preempted by the FLSA, which the Court denied. (Dkt. 82 at 6-7.) The denial was based on the premise that Plaintiffs' FLSA and common law claims could coexist in the same action as alternative theories of relief. *(Id.* at 7.) That is, the Court reasoned the Plaintiffs could allege the same facts and seek the same relief under both the FLSA and state common law simultaneously.

Respectfully, subsequent case law has rebutted this logic. Like many Circuit courts, the Seventh Circuit has not addressed the extent to which the FLSA preempts state common law claims. But since the Court denied Waupaca's initial motion to dismiss,

district courts in the Seventh Circuit have routinely recognized that the FLSA preempts duplicative state common law claims. *See DeMarco v. Nw. Mem. Healthcare*, 2011 U.S. Dist. LEXIS 88541, at **17-18 (N.D. Ill. Aug. 10, 2011) ("[c]ourts in this District and elsewhere routinely hold that FLSA preempts unjust enrichment and other state common law claims that rest on the same factual foundation and seek the same relief as an FLSA claim"). Indeed, where a common law claim relies on the same factual bases and seeks the same relief as a contemporaneous FLSA claim, federal law preempts that claim. *See Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 779-80 (N.D. Ill. 2015); *Richmond v. Adv. Pain Consultants, S.C.*, 2015 U.S. Dist. LEXIS 109319, at **8-9 (N.D. Ill. Aug. 18, 2015); *Kyriakoulis v. DuPage Health Ctr., Ltd.*, 2011 U.S. Dist. LEXIS 63905, at **4-6 (N.D. Ill. June 9, 2011) (collecting cases); *Farmer v. DirectSat U.S.*, 2010 U.S. Dist. LEXIS 105738, at **43-47 (N.D. Ill. Oct. 4, 2010) (collecting cases) ("[d]efendants' contention that the FLSA preempts state ***common law*** claims is well-supported by persuasive legal authority" (emphasis in original)); *Nicholson v. UTi Worldwide, Inc.*, 2010 U.S. Dist. LEXIS 138468, at **14-16 (S.D. Ill. Feb. 12, 2010) (same).

Here, Plaintiffs' breach of contract claim is plainly duplicative of their FLSA claim and is therefore preempted. *See Kyriakoulis*, 2011 U.S. Dist. LEXIS 63905, at **4-7 (finding that plaintiff's common law unjust enrichment, quantum meruit, and breach of implied contract claims were preempted because they were entirely covered by the FLSA). The factual premise of Plaintiffs' breach of contract claim is not being compensated for time spent donning, doffing, and showering—allegations that mirror their FLSA claim—and Plaintiffs seek the same relief available to them under both theories. As Plaintiffs' con-

20

tract claim is factually similar and seeks the same relief as their FLSA claim, it is preempted and must be dismissed. *See Richmond*, 2015 U.S. Dist. LEXIS 109319 at *10 (dismissing plaintiffs' state common law claims on a motion to dismiss upon finding they were preempted by the FLSA).

### 2. Plaintiffs' Wisconsin Statutory Claims Are Also Preempted.

A somewhat different preemption analysis applies with regard to the Plaintiffs' statutory and administrative code claims alleged in their Second and Third Causes of Action. The FLSA unquestionably permits states to create statutes and laws that provide greater protections for workers than those mandated by the FLSA. This permission is found in the FLSA's saving clause, 29 U.S.C. § 218(a):

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage . . . or a maximum work week lower than the maximum work week established under this chapter . . . No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

The terms of this saving clause "are clear and narrowly drawn: they merely establish a wage and hour 'floor' above which the states are free to rise, and 'leave undisturbed 'the traditional exercise of the states' police powers with respect to wages and hours *more generous than the federal standards'.*" *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 450 (W.D. Pa. 2007) (emphasis in original); *see also Mitchell v. JCG Indus.*, 745 F.3d 837, 838 (7th Cir. 2014) ("The [FLSA] does not preempt the [Illinois Minimum Wage Law] *if the latter is more generous to employees*") (emphasis added). And the "limited

saving clause should not be read to obviate FLSA's preemptive implications," because it "does **not** bar the ordinary working of conflict preemption principles whether the preemption is explicit or implicit." *Ellis*, 527 F. Supp. 2d at 451 (emphasis in original).

The FLSA has an elaborate and exclusive statutory scheme.[10] That scheme includes a series of remedies under section 216(b); all of which Plaintiffs seek recovery under in their First Cause of Action. (Dkt 606 at ¶¶42-43; *see also* Prayer for Relief, p. 16.) The amended complaint, however, does not seek greater benefits under their Wisconsin statutory and administrative claims than under the FLSA. Indeed, these claims are subsumed with their FLSA claim, in which they are attempting to get paid for time spent donning and doffing gear and equipment, showering, and walking to and from the production floor. (*Id.* at ¶¶ 38-44, 48, 50, 55 and 57.) Without any allegation indicating that their state claims provide greater protections and remedies than those mandated by the FLSA,[11] Plaintiffs' Wisconsin statutory and administrative claims in their Second and Third Causes of Action are preempted. Accordingly, they should be dismissed.[12]

---

[10] "[I]n the FLSA Congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." *Anderson*, 508 F.3d at 194 (citing *Kendall v. City of Chesapeake*, 174 F.3d 437, 439, 443 (4th Cir. 1999) (plaintiffs could not enforce their FLSA rights by way of a §1983 action)).

[11] In fact, Plaintiffs seek **less** relief through their Wisconsin statutory claims than through their FLSA claims. In their amended complaint, Plaintiffs define their FLSA Period as three years prior to the filing of their original complaint, whereas the Wisconsin Class Period goes back only two years. (Dkt. 606 ¶¶2-3). Plaintiffs' Wisconsin statutory claims seek one year's worth **less** damages than the FLSA.

[12] Logically, if the Plaintiffs' Wisconsin statutory and administrative law claims seek a recovery that is of the same type and scope as that allowed under the FLSA, the only rationale for bringing these claims is to either to seek a double recovery or to take a "second kick at the cat" in the event their FLSA claim fails. Neither of these constitutes valid justifications for circumventing the conflict preemption principles set forth here.

Moreover, looking beyond the allegations of the amended complaint, Wisconsin's wage claim statute, unlike the FLSA, only provides for a maximum *two* year period of liability. Wis. Stat. §109.09(1). This is equal to or less than the FLSA, depending upon whether the conduct involved was ultimately determined to be willful. In addition, Wisconsin's wage claim statute only provides for an "increased wage" penalty of "not more than 50%." Wis. Stat. §109.11(2)(b). In contrast, under the FLSA, Plaintiffs have the potential to recover "liquidated damages" in an amount equal to any wages due and owing (i.e., double damages). 29 U.S.C. 255(a).

Therefore, while this Court denied Waupaca's previous motion to dismiss because "it would seem that state law may offer an alternative legal basis for equal or more generous relief for the same alleged wrongs," (Dkt. 82 at 6), it is evident that the statutes and administrative codes upon which Plaintiffs' Second and Third Causes of Action are premised allow for less relief than the FLSA, are therefore preempted, and should be dismissed.

### B. Plaintiffs' State Law Claims Fail to State Cognizable Claims.

#### 1. <u>The Complaint Fails to State a Claim for Breach of Contract.</u>

Plaintiffs' breach of contract claim should also be dismissed because they cannot plead the necessary elements of contract formation – consideration and a valid offer.

If a promise is made without the promisor receiving consideration from the promisee, the promise does not become an enforceable contract. *Levin v. Perkins*, 12 Wis. 2d 398, 403, 107 N.W.2d 492 (1961). Here, Plaintiffs claim Waupaca "breached the terms of the employment agreements by failing to provide . . . full payment based upon all of the

23

hours they worked." (Dkt. 606 at ¶60.) And this "full amount" ostensibly stems from the requirements of the FLSA. (*Id.* at ¶2 (describing class as those "who have not received full compensation for all hours worked under the FLSA.").) Plaintiffs do not—and cannot—allege that Waupaca expressly agreed to full payment as they contend is proscribed in the FLSA. Thus, they allege essentially that Waupaca impliedly "agreed" to comply with the FLSA, thereby forming a contract.

But this does not state a cognizable claim for breach of contract. Indeed, a promise to do that which the promisor is already bound to do, or a promise to perform an existing legal obligation, does not constitute consideration. *Holcomb v. United States*, 622 F.2d 937, 941 (7th Cir. 1980); *Bartley v. Thompson*, 198 Wis. 2d 323, 333, 542 N.W.2d 227 (Ct. App. 1995). If Waupaca was **required** to pay for all time worked by law, then that legal obligation would not be sufficient consideration to form an enforceable contract. And here, time and again, Plaintiffs' allegations make clear they are merely seeking compensation owed to them via federal law. (Dkt. 606 at ¶23 ("Defendant has not compensated its nonexempt employees for all hours worked as required by federal and state law."), ¶24 ("Defendant did not exercise good faith in willfully failing to fully compensate its employees under the FLSA"), ¶25 ("Defendant's practices violate FLSA and the state laws pled herein").)

Respectfully, the Court erred in previously rejecting this argument. (Dkt. 82 at 14-15.) The Court concluded that Plaintiffs sufficiently pled consideration in the form of "wages" in exchange for their work. (*Id.* at 14.) But that is not what they alleged: "As at-will employees, the Named Plaintiffs and members of the Wisconsin class are entitled

24

to compensation for all time they work, as consideration for the services they provide to Defendant." (Dkt. 606 at ¶58.) Plaintiffs are therefore not claiming mere wages as consideration, but compensation for all the time they work as defined by the FLSA and Wisconsin law. Thus, according to Plaintiffs' own amended complaint, Waupaca was already required by law to do what Plaintiffs allege Waupaca agreed to do. Accordingly, there is no consideration and Plaintiffs' breach of contract claim should be dismissed.

It is also black-letter law that every contract requires offer and acceptance. *Hooper v. O.M Corwin Co.*, 199 Wis. 139, 225 N.W. 822, 824 (1929). And there can be no offer without a manifested willingness to enter into a bargain. *Malone v. Fons*, 217 Wis. 2d 746, 768-69, 580 N.W.2d 697 (Ct. App. 1998). Here, Plaintiffs claim Waupaca did not compensate them for all time they spent working (i.e., the time spent donning and doffing gear and equipment, showering, and walking to and from the production floor). (Dkt. 606 at ¶1.) Thus, in order for their breach of contract claim to succeed, Plaintiffs must demonstrate that Waupaca promised to compensate them for time spent donning and doffing gear and equipment, showering, and walking to and from the production floor.

But there is *no* allegation of either an express or implied agreement by which Waupaca agreed to pay for the time spent donning and doffing gear and equipment, showering, and walking to and from the production floor in the amended complaint. To the contrary, Plaintiffs allege the opposite: that Waupaca either has not paid or has refused to pay for these services for years. (*Id.* at ¶¶2, 3, 154.) As a matter of law and common sense, the fact that Waupaca has refused to pay for this time over the years re-

25

futes any reasonable inference that the parties reached a "meeting of the minds" with regard to the "compensation" Plaintiffs seek.

In denying Waupaca's initial motion to dismiss, the Court acknowledged this contradiction but concluded that "although the conduct of parties can be considered on the question of whether there was mutual assent sufficient to form a contract, other evidence could support a finding that a contract existed." (Dkt. 82 at 14-15.) The problem with this conclusion is that Plaintiffs' amended complaint is explicit: Waupaca did not pay for donning, doffing, and showering. (Dkt. 606 at ¶¶2, 3, 154.) And the amended complaint does not allege or identify any additional facts that suggest any offer by Waupaca or mutual assent between the parties. The burden is on Plaintiffs to allege sufficient facts to support a claim for breach of contract. The amended complaint here fails.

For both of these reasons, the Court should dismiss Plaintiffs' breach of contract claim with prejudice.

### 2. Plaintiffs' Statutory Claims Fail as a Matter of Law.

In their original complaint, Plaintiffs brought claims under Wisconsin wage laws and regulations, which Waupaca moved to dismiss. (Dkt. 82, at 12-13.) This Court denied Waupaca's motion, reasoning that Plaintiffs alleged a plausible cause of action for unpaid wages under Wisconsin's wage statutes. (*Id*.) Specifically, the Court pointed to Wisconsin Statutes section 109.03 as a source for Plaintiffs' right of action to seek allegedly unpaid wages. (*Id*.) Plaintiffs' amended complaint renews their claim to unpaid wages through chapter 109 in their Second and Third Causes of Action.

Section 109.03 provides "a procedure for employees to get prompt payment of monies clearly owed to them by their employers." *Sliwinski v. Milwaukee*, 2009 WI App 162, ¶ 17, 321 Wis. 2d 774, 777 N.W.2d 88. Yet, not every dispute over remuneration between employers and their employees falls within section 109.03's ambit. Rather, to be recoverable under section 109.03, the money allegedly due must be encompassed by section 109.01's definition of "wages." Wis. Stat. §109.01(3).

In *Sliwinski*, decided less than a year after this Court's decision here, the Wisconsin Court of Appeals determined that two facets constituted a wage claim under section 109.01(3):

> (1) the employee must have at some time performed personal services that entitle him or her to the wages; and (2) **the employee's entitlement to the wages must be clear and already determined by either an agreement or employer's policy**.

2009 WI App at ¶ 17 (emphasis added). If an employee's entitlement to pay is in dispute, her claim does not fall within chapter 109.

For example, in *DILHR v. Coatings, Inc.,* 123 Wis. 2d 418, 423, 367 N.W.2d 812 (Ct. App. 1985), discussed in *Sliwinski*, the employee brought a claim under chapter 109 for the balance of her employment contract. That action, the court determined, fell beyond chapter 109's procedure:

> What [plaintiff] really seeks are liquidated damages based on [defendant's] alleged breach of the employment contract. Under the employment contract, [plaintiff] would be entitled to damages if it were determined that [defendant] terminated his employment without cause. Thus, [plaintiff] seeks to adjudicate whether he was fired for cause or without cause. [Plaintiff] may have a valid breach of contract claim, **but it is not the type of claim embraced by ch. 109, Stats.**

*Id.* (emphasis added). The same logic applies here. Through their statutory wage claims, Plaintiffs seek payment for wages they allege are owed them for time spent donning, doffing, and showering. However, it is not clear that this time is compensable; indeed, this entire lawsuit is centered on this exact question. Plaintiffs seek to adjudicate whether they should be compensated for their time spent donning, doffing, and showering. Regardless of the merits of that question, chapter 109 does not offer the procedure to answer it. Accordingly, Plaintiffs' Second and Third Causes of Action should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Waupaca respectfully requests this Court dismiss Plaintiffs' amended complaint in its entirety and with prejudice.

Dated this 10th day of October, 2017.

MICHAEL BEST & FRIEDRICH LLP

By:    *S/Paul E. Benson*
       Mitchell W. Quick, SBN 1001493
       *mwquick@michaelbest.com*
       Paul E. Benson, SBN 1001457
       *pebenson@michaelbest.com*
       Joseph Louis Olson, SBN 1046162
       *jlolson@michaelbest.com*
       Benjamin A. Kaplan, SBN 1082802
       *bakaplan@michaelbest.com*
       100 East Wisconsin Avenue, Ste. 3300
       Milwaukee, Wisconsin  53202-4108
       Telephone:    (414) 271-6560
       Facsimile:     (414) 277-0656

       *Attorneys for Defendant, Waupaca Foundry, Inc.*