# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

Ryan DeKeyser, *et al.*, on behalf of themselves and all others similarly situated,

   Plaintiffs,

-v-

ThyssenKrupp Waupaca, Inc., d/b/a
Waupaca Foundry, Inc.

   Defendant.

Civil No. 1:08-cv-488 (WCG)

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANT'S WISCONSIN AND FEDERAL *DE MINIMIS* DEFENSES, OR IN THE ALTERNATIVE, TO DEFER CONSIDERATION OF THAT DEFENSE TO A LATER PHASE IN ACCORDANCE WITH SUPREME COURT PRECEDENT

---

## INTRODUCTION

  Although the time periods determined by Waupaca's time study expert in this case are sharply disputed, it is *not disputed* that the defense expert has proven that: (1) post-shift showering and clothes changing activities take place on a daily basis at the plant; and (2) groupings of employees engage in post-shift doffing and showering activities, on average, in excess of 10 minutes per day. This is not to say there are not additional minutes undertaken pre-shift—but the Plaintiffs focus on post-shift activities in this motion solely because it simplifies the issue.

  With these facts in mind, it is clear that the *de minimis* defense does not apply under Wisconsin or federal law. Since this Court last addressed the federal *de minimis* defense in 2009,

both the Wisconsin Supreme Court and the United States Supreme Court have addressed the defense under state and federal law.

As to Wisconsin state law, the Wisconsin Supreme Court has refused to formally adopt the defense due to the absence of a state regulatory corollary to the federal *de minimis* regulation. Under the *Erie* doctrine, this Court sitting in diversity should not expand state law where the state's judiciary, legislature and regulators have not seen fit to act. However, even if this Court chooses to become the first court to adopt the defense in the absence of state precedent, the putative defense would have no application here given the time estimates of the defense time study expert. As to the federal *de minimis* defense, the Supreme Court recently favorably cited the Department of Labor's ("DOL") *de minimis* regulation as the governing standard. The federal *de minimis* regulation forecloses the application of the federal defense based upon the defense expert's findings and measurements.

Finally, even if this Court disagrees with Plaintiffs' legal analysis, even the defense expert found that a portion of the employees at issue spent more than 10 minutes engaging in the disputed activities at issue—even if those activities are limited to just post-shift activities. At a minimum, therefore, under recent Supreme Court precedent, the *de minimis* defense cannot be applied to the entire class. Resolution of the defense must be deferred until later proceedings.

## MATERIAL FACTS

Pursuant to Civil L.R. 56(b)(1)(C), Plaintiffs have filed concurrently herewith a separate statement of proposed material facts (hereinafter "PSOF"). These facts are not repeated here, but are incorporated by reference and specifically addressed below as appropriate.

## PROCEDURAL HISTORY

On September 29, 2010, the Court denied Plaintiffs' motion for partial summary judgment, a request that sought dismissal of Defendant's affirmative defense that Plaintiffs' changing clothes and showering is not compensable under the doctrine of *de minimis non curat lex*, or "of trifles the law cares not." The Court determined that the motion prematurely sought dismissal because the evidence may show (1) that showering is not required by the nature of the work performed, (2) that it may be administratively difficult for Waupaca to keep track of such time, and (3) the defense expert concluded post-shift activities were under 10 minutes per day. ECF No. 266, at 17-20. In pertinent part, the Court's decision relied on the Supreme Court's *Anderson v. Mt. Clemens Pottery Co.* decision from 1945, which had extended the *de minimis* doctrine to disregard "a few seconds or minutes of work beyond the scheduled working hours" in a Fair Labor Standards Act ("FLSA") case. 328 U.S. 680, 692 (1946); ECF No. 266 at 17-18.

## STANDARD OF CONSIDERATION

Here, controlling decisional law from both the Wisconsin and United States Supreme Courts has emerged since the Court's 2010 order clarifying application of the *de minimis* defense. The Wisconsin Supreme Court has now made clear that Wisconsin has never adopted the *de minimis* defense in wage and hour cases for purposes of state law claims. In any case, the *de minimis* defense cannot apply where even very small, daily time increments are at issue, because courts applying Wisconsin law would be required to *aggregate* those increments over the period of at least one year, resulting in significant totals that cannot be considered "trifles."

Furthermore, the U.S. Supreme Court clarified that a federal regulation promulgated in 1961 narrowed the application of the *de minimis* defense notwithstanding any conflicting standard articulated in *Anderson v. Mt. Clemens Pottery Co.* Under the DOL regulation, all time

*must* be counted, "however small," except where the time is irregular (*not* daily), where it "cannot as a practical administrative matter be precisely recorded for payroll purposes," and also where the failure to count the time is not arbitrary (such as where you must record the time for some employees). 29 C.F.R. § 785.47. Thus, an activity may not be considered *de minimis* merely because of its short duration. A defendant bears the burden of demonstrating that the activity is not undertaken daily, "cannot as a practical administrative matter be precisely recorded," and is not applied arbitrarily. *Id.* Here, Waupaca cannot do so in light of its expert's findings.

Another reason for the Court to revisit the *de minimis* defense is that, unlike the motion brought in 2009, Plaintiffs will not dispute—for purposes this motion only—the findings offered by Dr. Fernandez in connection with his 2012 time study. The Court's 2010 order expressly cited the dispute of material fact engendered by Dr. Fernandez's earlier study as a basis to deny summary judgment.

Summary judgment is appropriate with respect to affirmative defenses when there is no genuine issue as to any material fact. *Certain Underwriters of Lloyd's & Companies Subscribing to Excess Aviation Liab. Ins. Policy No. FL-10959 A & B v. Gen. Acc. Ins. Co. of Am.*, 909 F.2d 228, 231 (7th Cir. 1990); *Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 3189202, *8 (E.D. Wis. June 7, 2016).[1] The defendant must set forth specific facts showing that a genuine factual issue exists. *Design Basics*, 2016 WL 3189202 at *8. If the existing record shows a rational trier of fact could not find for the non-moving party, then there is no genuine issue and summary judgment is appropriate. *A & M Records, Inc. v. A.L.W., Ltd.*, 855 F.2d 368, 372 (7th Cir. 1988).

---

[1] Copies of all cited unpublished decisions are attached as Exhibit F to the Declaration T. Joseph Snodgrass ("Snodgrass Decl."), filed concurrently herewith.

4

**ARGUMENT**

I. **Because the Wisconsin Supreme Court Has Determined that Wisconsin Has Not Adopted the *De Minimis* Defense in Wage and Hour Cases, This Court Should Not Create the Defense under Wisconsin Law.**

In 1938, Congress enacted the FLSA. In 1946, the Supreme Court held in *Anderson v. Mt. Clemens Pottery* that the *de minimis* doctrine could be applied to the FLSA. 328 U.S. at 692. In 1961, the United States Department of Labor published regulations defining time worked and clarifying the scope[2] of the so-called *de minimis* defense. 29 C.F.R. § 785.47.

In the 1970s, the Wisconsin legislature adopted its own wage and hour law with enabling legislation exclusively providing the Wisconsin Department of Workforce Development (DWD) with the broad power to issue rules and orders concerning the act. Wis. Stat. § 104.01 *et seq*. At that time, the DWD promulgated regulations governing, *inter alia*, overtime and standards for payment of time worked. Wis. Admin. Code §§ 272, 274 *et seq*. These DWD regulations specifically included a rule concerning the compensability of extremely short periods of time, *expressly including just the time to change clothes*. *Id.* at § 272.12(e)(1)(c) ("If an employee of a chemical plant, for example, cannot perform their principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and the end of the workday would be an integral part of the employee's principal activity."). The DWD did *not* promulgate a *de minimis* regulation.

In 2016, the Wisconsin Supreme Court repeatedly stated that, while a species of the *de minimis* doctrine may apply in FLSA cases, "the *de minimis* doctrine has no explicit basis in the Wisconsin Statutes or Wisconsin regulations in the instant [donning and doffing] case." *United*

---

[2] As discussed, *infra*, the Supreme Court recently clarified that the 1961 regulations significantly narrowed the *de minimis* defense articulated in *Anderson*.

*Foods & Commercial Workers Union Local 1473 v. Hormel Foods Corp.*, 876 N.W.2d 99, 114-15 (Wis. 2016).

Time and time again, the court in *United Foods* expressly declined to decide whether the *de minimis* doctrine exists as a defense to a Wisconsin state wage and hour claim. At the same time, the supreme court repeatedly noted that there is no Wisconsin regulatory corollary to the doctrine.

As a result, there is no Wisconsin judicial, administrative or statutory support for creating a state law corollary to the long-standing federal regulation and case law concerning the federal *de minimis* doctrine. To the contrary, and as it relates to the facts at issue here, there are regulations stating on-premises clothes changing can be fully compensable. Wis. Admin. Code § 272.12(e)(1)(c). Waupaca's request that this Court, sitting in diversity, be the first to judicially create, and then define the scope and limitations of, a new affirmative defense to a Wisconsin cause of action—where the Wisconsin Supreme Court recently declined to adopt the same—runs counter to federal diversity principles counseling against the creation or expansion of state law.

> Under *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion. All the more, the federal courts in diversity cases, whose function is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy.

*St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995) (citations omitted); *see also Sheehan v. Saoud*, 650 Fed. Appx. 143, 155 (4th Cir. 2016) ("Absent a strong countervailing federal interest, the federal court … should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law."); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 588 ("To accept Doe's argument would impermissibly expand Virginia law without any input from Virginia's highest court."). As a result, federal

6

courts "are loathe to engage in the speculation" entailed by a defendant's request to expand or create a state law defense. *In re Scharp*, 463 B.R. 123, 132 (Bankr. C.D. Ill. 2011); *Industrial Piping, Inc. v. Xia*, Case No. 4:15-450, 2016 WL 5496293 at n.6 (D. Idaho Sept. 28, 2016) ("As a federal court sitting in diversity, this Court declines to expand North Carolina law [to create economic loss doctrine defense to statutory cause of action]").

Because the Wisconsin Supreme Court has expressly recognized that the Wisconsin DWD has not yet adopted a *de minimis* defense in wage and hour cases despite enabling legislation that would allow the DWD to do so, (Wis. Stat. § 104.04 and 104.07); because the Wisconsin Supreme Court itself refused to adopt the doctrine when the issue was ripe; and because the DWD has not acted before or after the *United Foods* decision, this Court should not be the first to step in where the Wisconsin legislature, regulators and courts have not. In the absence of DWD action, "the Wisconsin Supreme Court would appear to be the most appropriate forum for hearing" this issue of "first impression in this state." *United Food & Commercial Workers Union, Local 1473 v. Hormel Foods Corp.*, No. 2014AP1880, 2014 WL 7334335, at *1 (Wis. Ct. App. Dec. 23, 2014).

Furthermore, at odds with asking this Court to judicially create the *de minimis* defense is Wisconsin's stated public policy that where individual recoveries would be "small and not likely to justify individual suits," the availability of class certification makes the claims "worthwhile to litigate" through "the aggregation of small claims." *Cruz v. All Saints Healthcare Sys., Inc.*, 625 N.W.2d 344, 348–49 (Wis. Ct. App. 2001). In *Cruz*, the court of appeals determined that, if the view that a copy charge of $29.90 for a single page of records required an individualized analysis of reasonableness "were to prevail, the reasonableness of the copying charges might never be tested" because individual suits would not be economically feasible. *Id.* Thus, Wisconsin's clear

policy preference to deploy the class mechanism to redress damages under $30 that perhaps could be considered "trifles," completely displaces any need to create a *de minimis* doctrine.

## II. Even if the *De Minimis* Defense Exists under Wisconsin Law, *United Foods* Bars Its Application Here as a Matter of Law Based Solely On The Defense Expert's Findings.

If the Court decides to be the first to adopt the *de minimis* defense in Wisconsin, which it should not do, Waupaca's defense to the state law claims would clearly fail under *United Foods* in any event. Even using the flawed data from Waupaca's time study expert, and even limiting the claims to just post-shift activities, the defense expert has proven that the activities in question regularly exceeded 10 minutes. *See* PSOF ¶¶ 15-20. In its 2010 order, the Court noted that Waupaca estimated that its employees spent "less than an aggregate of 9 minutes each day donning and doffing PPE and showering." ECF No. 266, at 20.

The Wisconsin Supreme Court in *United Foods* held that, even if the *de minimis* doctrine were applicable in Wisconsin, the *de minimis* doctrine still would not apply as a matter of law where the time spent donning and doffing amounted to 5.7 minutes per day. 876 N.W.2d at 113. The court determined that, if the *de minimis* defense exists, the time must be "viewed in the aggregate," on a per year basis for each employee. In *United Foods*, that meant the average 5.7 minutes per day translated to "over $500 per year for each employee, a figure that is *certainly significant to an employee and to Hormel*." *Id.* at 115 (emphasis added). The supreme court did *not* state nor suggest that 5.7 minutes or $500 was a threshold limit—it was the only time and value considered.

The theoretical question of whether the *de miminis* defense exists in Wisconsin is not something the Court must analyze, because Waupaca's defense expert found that just the post-shift time, and for *only a portion* of the discrete activities that must be undertaken in order to

shower, the times regularly exceeded 10 minutes per day, on average, for employees in nearly every department within the Plant 2/3 facility—including the work groups at issue. PSOF ¶¶ 3-20. Further, on an individual basis, the defense expert found employees that engaged in a single individual-timed event (being in the shower room) often exceeded 10 minutes. PSOF ¶ 21.

For example, the defense expert found that in 2009, 71% of the entire facility's production workers showered. PSOF ¶ 6. Waupaca's expert concedes that employees in Plant 2/3 departments exceed 10 minutes per day, on average, for the sum of the following post-shift activities that all have to take place for showering employees: (1) walk time from swipe out spot to locker room; (2) only remove boots; (3) only remove uniform pants; (4) only remove uniform shirt; plus (5) only being in shower room. PSOF ¶¶ 15-20.

The defense expert purposely excluded tallying all other activities leading up to the showering, including activities such as removing undergarments, t-shirts, or socks, and activities such as opening a locker to get soap, shampoo or a towel. PSOF ¶¶ 7-11. All time after leaving the shower room were also excluded by the expert.

Nevertheless, the defense expert still found nearly all departments in the Plant 2/3 facility exceeded 10-minute thresholds. PSOF ¶ 8.





*See* PSOF ¶ 20.

As it relates to the just the two work groups at issue, the defense expert's time to don and doff *just* work boots and a uniform (and no other donning or activities) plus *just* the walking time from the locker room to the swipe in and out area was 5.799 minutes for Plant 2 millroom workers and 5.303 minutes for melt workers. PSOF ¶ 24. Thus, the times at issue meet or exceed the *United Foods*-time even for non-showering workers.

Further, this Court should not abandon common sense. To walk for a few minutes, get to a locker room and shower is not something that can ordinarily be undertaken in under 5 minutes.

In this Court's 2010 order, it noted that Waupaca estimated that its employees spent "less than an aggregate of 9 minutes each day donning and doffing PPE and showering." ECF No. 266, at 20. This number was lower only because the expert excluded walking time from his tally (along with many other activities he never tallied). PSOF ¶ 2. He has since estimated required walking time. *Id.* His numbers for just post-shift activities *far* exceed the lower-bound benchmark of 5.7 established in *United Foods*.

Case 1:08-cv-00488-WCG   Filed 06/15/18   Page 10 of 23   Document 694

But more importantly, *United Foods* makes clear Waupaca—and perhaps this Court's—former emphasis on the *daily* time-data has been made irrelevant. Rather, data points alleged to be "trifles" *must* first be expressed in the aggregate, with cumulative dollar totals for at least one year:

> [E]mployees spend approximately *24 hours per year donning and doffing*. Viewed in light of the employees' hourly rate of $22 per hour, the unpaid period in question may amount to *over $500 per year for each employee and substantial sums for Hormel*. We agree with the circuit court that in the instant case this time is not a "trifle."

*United Foods*, 876 N.W.2d at 115.

Here, even if Fernandez's cramped numbers are applied and were representative of anything (which the Class would dispute at trial), employees regularly spent substantial minutes per day donning, doffing, walking and showering off-the-clock. *See generally* PSOF ¶¶ 3-4, 15-24.

For example, hypothetically assume an employee, who regularly worked overtime, is found to have engaged in compensable activities for only 3.8 minutes per day. For the years 2007-2016,[3] Waupaca Plant 3 employees worked an average of 177.25 days per year,[4] resulting in an average of 11.22 hours per year spent conducting the disputed activities.[5] The hourly rates from 2006 to 2017 ranged from $19.66 to $22.60, with an average of $20.79.[6]

---

[3] Plaintiffs did not include 2006 and 2017 because several months of data are not included due to the limitations imposed by the closed class period.

[4] Snodgrass Decl. ¶ 8 (regarding analysis of structured data with respect to number of days worked per year). The average number of days for Plant 2 employees was slightly higher at 181. *Id.*

[5] *I.e.*, 177.25 days × 3.8 minutes ÷ 60 minutes = 11.22 hours.

[6] Snodgrass Decl. ¶ 9 (regarding analysis of structured data with respect to hourly rates by year)

Over the class period, the hypothetical worker could have tallied up to $350 per employee per year (overtime rate of $31.19 times 11.22 hours) in disputed pay. The Wisconsin Supreme Court would not consider $350 per year to be a "trifle" to a plant worker. Certainly with a class period of over 11 years and with over 5,000 class members, most of whom worked more than one year, this represents a "substantial sum" for Waupaca, the individual employees and the employee class.

Finally, even if this Court does not rule against Waupaca on its *de minimis* defense as a matter of law, the Court cannot ignore that the defense expert has proven—even under his disputed methodology—that certain employees in the First Phase Trial work groups, individually, take more than both 5.7 minutes *and* 10 minutes to perform their donning, doffing, and showering activities. PSOF ¶¶ 16-19, 22. With this undisputed fact, Waupaca cannot prevail on its defense against the class—assuming the defense exists in the first place. At best, and as discussed *infra*, this means that Waupaca's *de minimis* defense cannot be resolved in a class liability stage. It must wait for the damages proceedings, assuming any class members are found to have engaged in compensable donning and doffing activities under whatever threshold is adopted by the Court in its legal analysis.

## III. The Undisputed Facts Show That FLSA's *De Minimis* Doctrine Is Inapplicable Here as a Matter of Law.

Unlike Wisconsin, which has not adopted a state *de minimis* defense, the defense may be available for the opt-in claimants' federal claims under the FLSA. The defendant bears the burden to show that the *de minimis* doctrine applies. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011); *Spoerle v. Kraft Foods Glob., Inc.*, 527 F. Supp. 2d 860, 868 (W.D. Wis. 2007).

As stated earlier, just the post-shift activities alone for a large portion of employees (including the work groups at issue here) exceed an average of 10 minutes per day according to Waupaca's expert. PSOF ¶¶ 15-24. This logically eliminates the availability of the defense, because if an employer must record disputed work time for "above 10 minutes" employees, the employer cannot arbitrarily refuse to record time for "below 10 minute" employees engaging in similar activities at the very same time and at the same location. In other words, the *de minimis* defense has never provided an employer an automatic 10-minute credit to be arbitrarily used against its workforce, where the same employer is required by law to record time for similarly-situated employees. In fact, Plaintiffs have not found any federal case law suggesting that the defense may even arguably be available to an employer under these circumstances. Plaintiffs are entitled to prevail on this defense, based upon the defense expert "over 10 minute" measurements.

Even if the defense expert did not have measurements in excess of 10 minutes (which he did) subsequent to this Court's application of *Anderson v. Mt. Clemens Pottery Co.*[7] in 2010, the Supreme Court in *Sandifer v. United States Steel Corp.* directly addressed *Anderson*'s *de minimis* doctrine in a donning and doffing metal worker FLSA case—and referenced and adopted the FLSA *de minimis* regulatory test. 134 S. Ct. 870, 880 n.8 (2014). That test precludes Waupaca's defense.

Further, even before *Sandifer*, the Seventh Circuit in *Kellar* also made clear in 2011 that the regularity of the activity—not the per-day average time—is a key consideration in determining whether disputed time may be considered *de minimis*. 664 F.3d at 176-77. And additional, persuasive precedent, decided since 2010, demonstrates that modern workplace

---

[7] 328 U.S. 680 (1946).

environments like Waupaca's make application of the *de minimis* doctrine a defense wholly inappropriate for the jury's consideration.

  A. **The Federal *De Minimis* Regulation Precludes Application of the De Minimis Test to any Time, However Small, That Occurs Daily or Is Practically Ascertainable.**

  The federal regulatory mandate that an employer must count all time worked by employees, "however small," has grown teeth. The Supreme Court recently held that "the current regulations of the Labor Department apply a stricter *de minimis* standard than *Anderson* expressed," and noted that the Act itself is "all about trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs." *Sandifer*, 134 S. Ct. at 880 and n.8. As recognized by the Court, the current federal regulation specifies, "An employer may not arbitrarily fail to count as hours worked any part, *however small*, of the employee's fixed *or* regular working time *or* practically ascertainable period of time he is regularly required to spend on duties assigned to him." 29 CFR § 785.47 (emphasis added).

  The Court determined that the language adopted by the federal regulation necessarily narrowed the standard articulated in *Anderson*, which had focused only on the quantity and quality of the donning and doffing at issue and not on the absence of both regularity *and* feasibility. *Sandifer*, 134 S. Ct. at 880 n.8.

  Historically, in determining whether the *de minimis* doctrine can apply, "courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Kellar*, 664 F.3d at 176. However, because the amount of time has largely been made irrelevant by the Supreme Court's emphasis that time should be included "however small," the employer must also prove the absence of regularity *and* the

absence of administrative feasibility for all employees for all disputed time. *See Jones v. C & D Techs., Inc.*, 8 F. Supp. 3d 1054, 1065–66 (S.D. Ind. 2014) (holding that where defendant had ability to measure disputed time without administrative difficulty, 3.43 minutes of time per day, though it "may seem small," was "*not de minimis* and must be compensated").

B. **Defendant Cannot Dispute The "Regularity" of Donning and Doffing Activities.**

Even before *Sandifer* held that the FLSA *de minimis* regulation significantly narrowed *Anderson*, the Seventh Circuit held that if a compensable activity is typically performed daily, the employer cannot assert the *de minimis* defense. *Kellar*, 664 F.3d at 176-77. Consistent with this holding, the regulation plainly states that an "employer may not arbitrarily fail to count as hours worked any part, *however small*, of the employee's fixed *or* regular working time …" 29 CFR § 785.47 (emphasis added).

Because hundreds of employees have conducted donning, doffing and showering activities at Plant 2/3 every single day for over a decade,[8] *Kellar* and the *de minimis* regulation preclude application of the defense. Waupaca cannot prove the absence of regularity against the class.

C. **The Disputed Time Is "Practically Ascertainable."**

In addition to the fact that the disputed activities occur on a daily basis, and take more than 10 minutes for some employees, there is a separate, independent basis for denying Waupaca its defense under the DOL's *de minimis* regulation. The only evidence Waupaca has attempted to offer to support its allegation of administrative difficulty is a single conclusory paragraph from

---

[8] *See, e.g.,* PSOF ¶ 14; Snodgrass Decl. Ex. A (opt-in plaintiffs' interrogatories verifying they typically decontaminated on-site each workday).

the October 2009 declaration of Human Resources employee Joey Leonard. Mr. Leonard predicted that the administrative difficulties would include:

- Placing several supervisors directly outside the showers with a stopwatch to record showering time and socializing time;
- Placing several supervisors in the employee lunch room to observe and record when each employee arrived early, stopped socializing, and actually started donning and doffing PPE; and
- Placing several supervisors at next to a time clock to record what items of PPE each employee put on before and after swiping in, or took off before and after swiping out.

ECF No. 177 at 5-6. However, Mr. Leonard's parade of horribles is belied by the fact that Waupaca already, in fact, compensates its Lawrenceville, Pennsylvania foundry workers for a total of 10 minutes a day for "wash up time" both before the workers' lunch period and after their work-shifts, without *any* difficulty. PSOF ¶¶ 48-49; Snodgrass Decl. Ex. C. Other foundries both in and outside of Wisconsin similarly compensate foundry workers to decontaminate post-shift and/or do not require the workers to swipe out of time-clocks before doing so. PSOF ¶¶ 50-51; Snodgrass Decl. D. Waupaca offers no explanation as to why it is administratively feasible to compensate workers for clothes-changing and showering in these foundries—*including one that it owns and operates*—but it is allegedly impossible to do so at Plant 2/3. The conditions Mr. Leonard describes are not unique to Plant 2/3.

Moreover, case law that has emerged since this Court's 2010 decision demonstrates that Waupaca's alleged difficulties are simply *inapplicable* to the administrative difficulty analysis. The first two issues described by Mr. Leonard relate to the potential difficulty in distinguishing between compensable time and time spent socializing. Waupaca's assumption is that time spent socializing would not be compensable. But as recent decisions make clear, under the continuous workday doctrine, an employer is absolutely *not* entitled to dock idle time, but rather must obtain relief by exercising its managerial authority to prevent it from happening in the first place.

16

The *de minimis* doctrine assumes that the activity in question is compensable and covered by the FLSA. *Anderson*, 328 U.S. at 692-93. If an activity is covered, it is part of the continuous workday. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). Courts have noted since this Court's decision in 2010, that idle time is captured by the continuous workday rule. *See Sandifer*, 134 S. Ct. at 875 (noting that the continuous workday rule defines compensable time to include all principal activities and those integral to them, "whether or not the employee engages in work throughout all of that period.") (quoting 12 Fed. Reg. 7658; 29 CFR § 790.6(b)); *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1243 (10th Cir. 2016) ("[A]n activity (such as walking to or from a work station) that occurs between the first and last principal activities of the day is compensable even if that same activity would be excluded from compensable time under the Portal-to-Portal Act….").

While employers are certainly not powerless to protect themselves against employee socializing or foot-dragging, the law is clear. If employees are socializing during work, the employer's remedy is not docking everyone's pay by 10 minutes. Rather, the employer must exercise its authority to manage its workforce through rules and enforcement. *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 374–75 (4th Cir. 2011) ("Mountaire is free to set policies restricting the employees' nonessential conduct during the donning and doffing process."); *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 667–68 (E.D. Ark. 2011) ("Butterball, as the employer, has the authority to manage its employees' continuous workday so as to avoid idle wait time. Butterball can control … the activities they engage in while at the plant."); *Acosta v. Tyson Foods, Inc.*, No. 8:08CV86, 2012 WL 6552772, *12 (D. Neb. Dec. 14, 2012) ("[A]ny potential 'time-wasting' issues can be adequately addressed through the development of sound managerial and human resources policies.").

17

Waupaca's own records demonstrate that, when it wants to, it can easily manage such issues and accurately record time broken down by specific tasks. *See* PSOF ¶ 46; Snodgrass Decl. Ex. B, at TKW0515868 (issuing verbal "insubordination" warning for employee exceeding 12.3 hours one day); TKW0515728 and TKW0515733 (issuing verbal warning for failure to accurately record specific job task, which employees must do when they swipe); TKW0531246 (issuing second verbal "insubordination" warning for exceeding break time limit by 8 minutes); TKW0546242 (issuing verbal warning for long breaks). Not only does the case law *not* permit Waupaca's "cannot stop goofing off" arguments, but Waupaca's prior prediction that such discipline would be difficult is contradicted by its actual records and the fact that it is already compensating workers for on-site decontamination at its Lawrenceville foundry. PSOF ¶¶ 40-47; Snodgrass Decl. Exs. B and C.

The third issue raised by Mr. Leonard—micromanaging articles of PPE—relates to Defendant's apparent argument that, after the continuous work day starts or before it stops, donning and doffing certain PPE would not be compensable. However, the continuous workday rule makes any such tasks irrelevant. *See Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 809, n.23 (M.D. Tenn. 2008) ("[T]hat the donning and doffing of the frock constitutes compensable work that is integral and indispensable to their principal activities, then, under the continuous workday rule, there is no need to consider independently the compensability of the other activities that occur within that period.").

Furthermore, because Waupaca already uses sophisticated timekeeping technology,[9] it has the ability to capture the disputed time as well. *See Perez*, 650 F.3d at 375 (holding that existing timekeeping system could be modified to include donning and doffing time); *Blakes v.*

---

[9] *See* PSOF ¶¶ 25-33.

*Illinois Bell Tel. Co.*, 77 F. Supp. 3d 776, 787 (N.D. Ill. 2015) (holding there is minimal administrative difficulty in recording additional time worked where system recorded when timesheets were submitted and kept track of each worker's scheduled shift); *Jones*, 8 F. Supp. 3d at 1066 (fact that employees engaged in same pattern of activity every day indicated that "it would be possible to measure how much time all of that activity takes"); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 929 (N.D. Ill. 2003); *Acosta*, 2012 WL 6552772 at *12 (holding that employer who already had a timekeeping system could modify it to include donning, doffing, and sanitizing).

Waupaca's statements that it "*would not* be able to accurately record all of the time" and that "this *would be* a huge administrative nightmare" are not facts. ECF 177 at 6. Hundreds of other employers record donning and doffing time, including foundries. PSOF ¶¶ 50-51. Waupaca's assertions to the contrary in a litigation declaration are nothing more than purported expert opinion provided by an unqualified layman.

The record disproves these opinions. First, it is worth noting that no time-study expert (or any other expert for that matter) has opined that it is administratively difficult to record this "practically ascertainable" time.

Second, the defense time study expert was able to measure average and median times for the disputed activities. *See generally* ECF. Nos. 180, 373-18. He does not opine that there would be any problem timing any activities at issue, much less that there would be administrative difficulty in doing so. *See Perez*, 650 F.3d at 374 (holding that because experts for both parties were able to measure amount of time required by employees to don and doff protective gear, "the time expended in these activities is not so miniscule that it would be difficult to measure as a practical matter").

Third, after Leonard claimed in 2009 that it was impossible to make changes to record more time, Waupaca in fact changed practices in 2016 to allow employees to swipe closer to their donning and doffing area and away from the management employees in their work areas. *See* ECF No. 686-2, ¶ 14.b. (stating that Waupaca changed swipe-out policy to allow employees to swipe out closer to the locker rooms rather than their work areas), and ¶ 27 (asserting that effect of change in swipe policy was to capture more walking time). These facts plainly demonstrate that, contrary to Leonard's 2009 lay opinion, it is not difficult for Waupaca to change its policies to allow employees to swipe in and out near their donning and doffing activities while remote from management employees in their work areas. Obviously, Waupaca could also add or move swipe clocks even closer to where donning and doffing occur so more time could be captured.

Because Waupaca's earlier speculation has been supplanted by, *inter alia*, its own expert's facts and testimony, the record as a whole reflects that no genuine issue of material fact exists concerning administrative feasibility. *A & M Records, Inc.*, 855 F.2d at 372 (whether disputed fact issue is genuine is determined by viewing the record as a whole).

IV. **Because Large Groupings of Individual Employees Are Not Subject to the FLSA's *De Minimis* Defense as a Matter of Law, at the Least, the Court Must Defer Adjudication until the Damages Phase of the Proceedings.**

Even if the Court were to deny Plaintiffs' instant motion (brought on behalf of all class members in the trial groupings at issue), the Court cannot include the *de minimis* defense in the first phase of trial because, no matter how the Court interprets the *de minimis* test, the test *never* applies to "over 10 minute" employees. *Kellar*, 664 F.3d at 177 ("Summit does not point to any cases that have found that work exceeding between 10 and 15 minutes in duration is *de minimis*.").

In donning and doffing class cases (and other class actions), if an affirmative defense potentially applies only to some individual class members but not others, the class trial should not include those issues, which will have to be resolved separately. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (determining that properly certified class action should proceed, "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."); 7AA C. Wright, A. Mill, & M. Kane, Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2005) (same).

The defense expert has now found that a percentage of employees in the trial grouping regularly averaged over 10 minutes per day doffing, walking and showering (just considering certain post-shift activities). PSOF ¶¶ 3-24. Under Seventh Circuit precedent, and as a matter of law, Defendant cannot prevail against these employees, as discussed *supra. Kellar*, 664 F.3d 169, 176–77. That is, even if the Court does not agree that all time must be counted, "however small," if it is possible to do so, the *de minimis* defense could still conceivably apply to only a portion of class members because daily time *over* 10 minutes is *never de minimis* under *Kellar*. Under *Tyson Foods*, therefore, the affirmative defense has to be resolved separately, during the damages phase of the class proceedings.

Another reason to defer consideration of the federal *de minimis* defense to a later phase is that its potential application in the context of this case is itself trifling: because, at best, the FLSA class period extends a mere 6 months prior to the start of the Wisconsin class—a class for whom no *de minimis* doctrine likely exists or applies. The Wisconsin class subsumes all but 6 months' worth of damages for just 15 opt-in FLSA plaintiffs.[10] Because the defense can only conceivably be tapped in the context of the amount of damages to award 15 workers over six months, the

_____

[10] Snodgrass Decl. ¶ 10.

Court should defer addressing whether to apply the federal *de minimis* defense until the damages phase.

But under either rationale, and under clear Supreme Court precedent, the defense cannot and should not be part of the liability phase.

## CONCLUSION

Based on the foregoing points, authorities, and undisputed facts, Waupaca's *de minimis* defense cannot apply to any class member under state or federal law. Plaintiffs respectfully request that the Court enter partial summary judgment in favor of the class on that issue.

In the alternative, Plaintiffs respectfully request that the Court defer consideration of the *de minimis* defense to the later stage of the proceedings, which is required for defenses that potentially apply to some, but not all, class members.

Respectfully submitted,

Dated: June 15, 2018                           **ZIMMERMAN REED LLP**

*s/ J. Gordon Rudd, Jr.*
J. Gordon Rudd, Jr. (MN#222082)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
gordon.rudd@zimmreed.com

T. Joseph Snodgrass (MN#231071)
Kelly Lelo (MN#330838)
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Tel: (651) 312-6500
jsnodgrass@larsonking.com
klelo@larsonking.com

David W. Garrison (TN#24968)
Seth M. Hyatt (TN#31171)
**BARRETT JOHNSTON MARTIN & GARRISON, LLC**
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Tel: (615) 244-2202
dgarrison@barrettjohnston.com
shyatt@barrettjohnston.com

*Attorneys for Plaintiffs*