# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

---

RYAN DeKEYSER, *et al.*, on behalf of
themselves and all others similarly situated,

       Plaintiffs,

-v-

WAUPACA FOUNDRY, INC. f/k/a
THYSSENKRUPP WAUPACA, INC.,

    Defendant.

Civil No. 1:08-cv-488 (WCG)

---

JASON VANHOOSE, *et al.*,
on behalf of themselves
and others similarly situated,

       Plaintiffs,

v.

WAUPACA FOUNDRY, INC.,

    Defendant.

Civil No. 1:18-cv-01193-WCG

---

MICHAEL SARRELL, *et al.*,
on behalf of themselves
and others similarly situated,

       Plaintiffs,

v.

WAUPACA FOUNDRY, INC.,

    Defendant.

Civil No. 1:18-cv-01192-WCG

---

HOY GARRETT, JR., *et al.*,

    Plaintiffs,

-v-

WAUPACA FOUNDRY, INC.,

    Defendant.

Civil No. 1:18-cv-01186-WCG

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION PRELIMINARILY APPROVING THE PARTIES' PROPOSED SETTLEMENT, APPROVING CLAIM FORMS AND DISSEMINATION OF CLASS NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL**

---

## I. INTRODUCTION

The parties have agreed to settle the above captioned Actions regarding Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), the Wisconsin Labor Standards Laws ("WFLSA"), the Indiana Wage Payment Statute and the common law. The terms of their settlement are contained in the Settlement Agreement attached as Exhibit 1.[1] Plaintiffs respectfully request that the Court:

- Grant preliminary approval of the settlement;

- Approve the parties' proposed forms and manner of notice of the settlement; and

- Schedule a hearing wherein the Court will consider Plaintiffs' motion for final approval of the settlement, and Plaintiffs' Counsels' motion for an award of service fees, attorneys' fees, costs and disbursements.

Defendant in the Actions, Waupaca Foundry, Inc. ("Waupaca"), has agreed to pay up to $1.7 million to Class Members who submit a valid claim. Plaintiffs' Counsel estimates that Class Member

---

[1] Exhibit 1 also contains a proposed order of preliminary approval, the class settlement notices and claim forms. All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the parties' Settlement Agreement.

1

payment awards will range from $50 to $600 per work year based upon individual post-shift activities (showering and/or removing clothes) and the percentage of time they engaged in those activities, as declared upon penalty of perjury by the employees, all as more fully described below. A third-party Claims Administrator will administer the settlement claims process, monitored by all counsel. Waupaca will pay various categories of attorneys' fees, expenses, costs, expert witness fees, service awards to Class representatives and Class Members who assisted Plaintiffs' Counsel, class notice and claims administration in the amount of $3.5 million subject to the Court's approval. Payment of these fees, expenses and costs will not affect Class Member recoveries.

The proposed settlement addresses Plaintiffs' litigation objectives and falls within the range of possible final recovery. The settlement was negotiated by lawyers experienced in complex litigation who had the benefit of a fully developed record and months of mediation efforts, presided over by Joseph T. Dixon, Jr. of Henson & Efron, P.A. For these reasons, the settlement enjoys a presumption of fairness. Therefore, Plaintiffs respectfully request that the Court grant their motion for preliminary approval.

## II. SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. The Litigation

#### 1. The Wisconsin (*DeKeyser*) Litigation

This litigation and settlement involves four separate lawsuits against Waupaca. The first, *DeKeyser v. ThyssenKrupp Waupaca, Inc., d/b/a Waupaca Foundry, Inc.*, was filed on June 4, 2008, in the Eastern District of Wisconsin. The *DeKeyser* Plaintiffs asserted claims against Waupaca under both the FLSA and WFLSA, alleging that Waupaca fails to compensate its hourly-paid employees for time spent before and after their work-shifts engaging in donning, doffing, walking and showering on-site

at Waupaca's six grey-iron foundries located in Waupaca and Marinette, Wisconsin, Tell City, Indiana, and Etowah, Tennessee. Dkt. 1.[2]

On December 18, 2008, this Court conditionally certified Plaintiffs' FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b). Approximately 488 Wisconsin, Indiana and Tennessee employees opted-in to the collective action.[3]

On July 19, 2012, the Court granted Waupaca's motion for summary judgment, holding that Plaintiffs' time spent donning uniforms and PPE before work, and doffing and showering after work, was not compensable under the FLSA and WFLSA. Dkts. 427, 437. On appeal, a split-panel of the Seventh Circuit reversed summary judgment based on factual disputes concerning whether Plaintiffs' donning, doffing and showering activities were required by the nature of their work in Waupaca's foundries. *DeKeyser v. ThyssenKrupp Waupaca, Inc.*, 735 F.3d 568, 571 (7th Cir. 2013).

On remand, the parties extensively briefed the applicable legal standard for determining whether Plaintiffs' donning, doffing and showering activities were required by the nature of their work and are therefore compensable. On November 25, 2014, the Court held that, "[t]o prevail at trial, Plaintiffs must convince the finder of fact that changing clothes and showering at work will significantly reduce the risk to the health of the employee." Dkt. 504, at 9; *see also generally* Dkts. 529 and 537.

On March 31, 2016, this Court certified Plaintiffs' WFLSA claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, denied Waupaca's motion to decertify the FLSA collective action, and ordered the severance and transfer of the Indiana and Tennessee opt-in

---

[2] "Dkt" refers to the Court's docket entries in *DeKeyser*. All other referenced docket entries from the Southern District of Indiana and the Eastern District of Tennessee are preceded by the specific case being referenced.

[3] Subsequently, 7 employees withdrew their consents to join the *DeKeyser* collective action. Accordingly, there are currently a total of 481 individuals who opted-in to *DeKeyser*.

3

Plaintiffs' claims to the Southern District of Indiana and Eastern District of Tennessee, respectively. Dkt. 582. In doing so, the Court certified a Rule 23 class comprised of:

> All persons who are or were employed by Waupaca Foundry at any time after June 4, 2006, as nonexempt, hourly paid, production employees … at plants located in Waupaca, Wisconsin, or Marinette, Wisconsin, and who are not or have not been paid for their onsite donning, doffing, or showering.

*Id.* at 13. The Court's class certification decisions were affirmed in their entirety by the Seventh Circuit on Waupaca's appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. *See DeKeyser v. ThyssenKrupp Waupaca, Inc.*, 860 F.3d 918 (7th Cir. 2017).

The Court subsequently determined that a first phase trial, involving two of the work groups at issue—the Plant 2/3 Melt and Plant 2 Millroom departments—would be held as to liability issues only beginning October 22, 2018. Additional phases would follow depending upon the outcome of the first phase trial. Dkt. 617, at 1; Dkt. 619, at ¶ 7.

### 2. The Indiana (*Garrett*) And Tennessee (*VanHoose* and *Sarrell*) Cases

On February 28, 2017, Plaintiff Michael Sarrell filed a civil action individually and on behalf of other similarly-situated persons, against Waupaca in the Eastern District of Tennessee, Case No. 1:17-cv-0056-TRM-SKL. As in *DeKeyser*, Plaintiff Sarrell alleged that Waupaca had violated the FLSA by failing to compensate its non-Wisconsin foundry workers for time they spent donning, doffing, walking and showering on-site at Waupaca's non-Wisconsin foundries. *Sarrell* Dkt. 1.

As previously stated, on March 31, 2016, this Court ordered that the claims of the Indiana opt-in Plaintiffs in *DeKeyser* be severed from the *DeKeyser* case and transferred to the Southern District of Indiana. Dkt. 582, at 12-14. Subsequently, a complaint for these same claims was filed and re-captioned *Adams, et al. v. Waupaca Foundry, Inc.*, Case No. 3:17-cv-00140-WCG. Although venued in the Southern District of Indiana, the case was specially assigned to this Court.

Similarly, the claims of the Tennessee opt-in Plaintiffs in *DeKeyser* were severed from that case and transferred to the Eastern District of Tennessee. A complaint for these same claims was

4

filed and re-captioned *Allen, et al. v. Waupaca Foundry, Inc.*, No. 1:17-cv-00248. The *Allen* complaint was later amended and again re-captioned as *VanHoose, et al. v. Waupaca Foundry, Inc.,* under the same case number. The Eastern District of Tennessee then consolidated *VanHoose* and *Sarrell* for pre-trial purposes and ordered the issuance of an FLSA collective action notice in both cases—pursuant to agreements between Plaintiffs and Waupaca. *VanHoose* Dkts. 127-129, 148. Several hundred individuals opted into the consolidated Tennessee litigation.

On January 24, 2018, the Eastern District of Tennessee ordered that the claims of the Indiana Waupaca workers who had originally joined in the *Sarrell* case, be severed from the *Sarrell* complaint so that they could be transferred to the Southern District of Indiana (*Sarrell* Dkt. 144), and subsequently a complaint for these claims was filed and re-captioned *Shadwick, et al. v. Waupaca Foundry, Inc.,* Case No. 3:18-cv-00026-WCG. It too was specially assigned to this Court. On June 27, 2018, this Court consolidated the *Adams* and *Shadwick* cases for all purposes and permitted the filing of a consolidated amended complaint in the case now re-captioned as *Garrett, et al. v. Waupaca Foundry, Inc.*, Case No. 3:17-cv-00140-WCG.

On August 2, 2018, the *Garrett* case was transferred from the Southern District of Indiana to this Court for settlement approval pursuant to 28 U.S.C. § 1404(a). *Garrett* Dkt. 59. That same day, the consolidated *VanHoose* and *Sarrell* cases were transferred by the Eastern District of Tennessee to this Court for settlement approval. *VanHoose* Dkt. 95.

**B.    Settlement Discussions**

After conducting significant discovery concerning Plaintiffs' claims and Waupaca's defenses over the course of the past decade,[4] Plaintiffs' Counsel and counsel for Waupaca engaged in extensive negotiations concerning the possible settlement of all claims, including in-person and

---

[4] *See generally* Declaration of T. Joseph Snodgrass ¶¶ 5, 10-15, filed concurrently herewith (hereinafter "Snodgrass Decl.") (discussing discovery conducted to date).

5

several telephonic negotiation sessions beginning in November 2017. The parties agreed to a formal mediation process overseen by Joseph T. Dixon, Jr. Dkt. 627. On July 13, 2018, Mr. Dixon continued the mediation efforts with an in–person meeting in Minneapolis, Minnesota where the parties reached a settlement concerning the amount of monetary relief to be afforded to the Class under the settlement. Waupaca agreed to pay up to $1.7 million pursuant to a claims process to which the parties have agreed and as is now set forth in their Settlement Agreement.

After monetary relief for the Class had been agreed upon, the parties negotiated various categories of attorneys' fees, costs, expenses, expert witness fees, service awards, class notice and claims administration, to be paid by Waupaca to Plaintiffs' Counsel separate and apart from the Class' settlement fund. These agreed-upon fees, expenses and costs will not reduce any employee's recovery. After the mediation, the parties continued to finalize various aspects of the settlement as well as the substance and form of the settlement notices to Class Members, and claim forms.

### C. The Terms Of The Proposed Settlement

#### 1. Relief Available To Class Members

Under the terms of the proposed settlement, Waupaca will provide cash compensation to Class Members who submit valid claims. The Class is comprised of:

- Members of the Wisconsin Class certified in *DeKeyser* for whom class action notice was disseminated on October 16, 2017, who did not opt out, and who were employed by Waupaca at any time between June 4, 2006 through October 5, 2017, as nonexempt, hourly paid, production employees (defined as employees in the Millroom, Coreroom, Disa, Shakeout, Melt, Maintenance, and Melt Maintenance departments) at plants located in Waupaca and Marinette, Wisconsin, and who are not or have not been paid for their on-site donning, doffing or showering; and

- Opt-in plaintiffs who filed consents to join the *DeKeyser, Garrett, VanHoose* and *Sarrell* Actions as of July 23, 2018, and who were employed by Waupaca at any time after June 4, 2005 as nonexempt, hourly paid, production employees at plants located in Waupaca, Wisconsin, Marinette, Wisconsin, Tell City, Indiana and Etowah, Tennessee, and who are not or have not been paid for their on-site donning, doffing or showering.

6

The amount of $1.7 million will cover all payment obligations of Waupaca under this settlement to Class Members. The Snodgrass Declaration filed concurrently herewith sets forth Plaintiffs' Counsel's view of the appropriateness of the $1.7 million settlement amount for Class Member relief based upon various factors. *See* Snodgrass Decl. ¶¶ 21-32. Under the settlement, the final shares available to be claimed by each Class Member will be based upon a compensation formula allowing for recoveries ranging from up to $50 to $600 per work-year and further upon the Class Member's responses in the claim form with regard to whether he or she engaged in particular post-shift activities (*i.e.*, changing clothes and showering) and the frequency in which he or she engaged in those activities. Class Member awards are subject to a reduction should the amount of valid claims exceed the $1.7 million cap. Accordingly, the final calculation of each Class Member's settlement award has not yet been determined.

### 2. Class Notice And Settlement Administration

The parties agree to provide notice to the Class by first-class mail, which is a method that has previously been approved by the Court in *DeKeyser* and the Court in *VanHoose/Sarrell*,[5] and by publication on the class action website www.Waupacasettlement.com. The parties have agreed to use Dahl Administration as Claims Administrator in this case. Dahl has administered certain notices that have previously been issued in the Actions, and has experience in the administration of similar class action settlements.

Waupaca will fund $20,000 immediately after entry of the Court's order preliminarily approving the parties' settlement, to be used to pay a portion of the reasonable costs of providing notice to Class Members as well as administration costs, which include the cost of class notice, accounting issues associated with the provision of W-2s and 1099s to claiming Class Members, cutting and distributing settlement checks to claiming Class Members, answering questions

---

[5] Dkt. 91, at 12-13; *VanHoose* Dkt. 148, ¶4.

concerning administration of the settlement and handling all settlement administration issues arising in the ordinary course of business. Plaintiffs' Counsel will pay any and all administration costs above this amount.

Class Members' claim forms must be received by the Claims Administrator seventy-five (75) days after the Notice is mailed. Class Members will have six (6) months to cash their settlement checks from the issuance date. If any checks are returned as undeliverable, the Claims Administrator shall update Class Members' last known mailing address through the National Change of Address program certified by the United States Postal Service and other standard skip trace methods, and will re-send the check to the new address. The Claims Administrator will include with the checks a letter stating that the check must be cashed or deposited within six (6) months or it will be cancelled. All funds from checks that were issued in response to a timely claim but that were not cashed will revert to Waupaca and will not result in unclaimed property under state law.

### 3. Objections And Release Provisions

In order to be timely, any objections to the settlement must be received by the Claims Administrator no later than forty-five (45) days after the notice is first mailed to Class Members.

All Class Members will be bound by the final approval order, the judgment and the releases set forth in the Settlement Agreement, except no FLSA claims are released by Class Members who did not participate in these Lawsuits. The back of the settlement checks will include language re-confirming the release of claims as specified in the Settlement Agreement.

### 4. Service Awards

Plaintiffs' Counsel will seek (and Waupaca will not oppose) service payments to the Named Plaintiffs, Class Representatives and other current and former Waupaca employees who assisted Plaintiffs' Counsel in prosecuting these Actions, in the specific amounts set forth in Exhibit B of the Settlement Agreement, ranging from $1,500 to $5,000. These amounts are intended to recognize the

8

Named Plaintiffs' and Class Representatives' roles in this litigation, bearing risks on behalf of the Class, assisting Plaintiffs' Counsel, and most importantly, creating the benefit of a common fund for the Class in the amount of $1.7 million separate and apart from legal fees, costs and other expenses.

These amounts also recognize other current and former Waupaca employees' active participation in this litigation, meeting and speaking with Plaintiffs' Counsel throughout the course of the litigation, providing crucial factual information, providing discovery responses and documentation, and/or appearing for depositions and/or plant inspections. These amounts shall be in addition to these Plaintiffs' shares from the available settlement funds. The service payments shall be paid out of and deducted from the amount of up to $3.5 million awarded by the Court to Plaintiffs' Counsel for claims administration, attorneys' fees, costs and expenses, and will have no impact on the calculation of the pro rata shares that are made available for claims by individual Class Members.

### 5. Attorneys' Fees And Expenses

The parties negotiated an amount for attorneys' fees, costs, expenses, expert witness fees, service awards, class notice and claims administration costs after reaching agreement on Class relief. Prior to the final fairness hearing, Plaintiffs' Counsel will apply to the Court for payment of no more than $3,500,000 in claims administration, attorneys' fees, expenses, service awards and costs. Waupaca will not oppose this request. The total attorneys' fees, expenses, and costs actually paid will be as approved by the Court in its final order, and will not affect any Class Member's recovery.

## III. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. The Proposed Settlement Meets The Standards For Approval.

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits. It provides that a "class may be settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. P. 23(e). The court approval process has three principal steps:

9

(1) preliminary approval of the settlement;[6] (2) notice; and (3) a formal fairness hearing. *See* David F. Herr, MANUAL FOR COMPLEX LITIGATION FOURTH §§21.632-35 (2017) (hereinafter "MANUAL"); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (describing two-step preliminary and final approval process), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see, e.g., Black v. Renaissance Learning, Inc.*, No. 16-635, 2016 WL 9460662, at *4 (W.D. Wis. Nov. 9, 2016) (preliminarily approving collective and class action utilizing same process).[7] This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the Court to fulfill its role as the guardian of the class members' interests. 4 NEWBERG ON CLASS ACTIONS § 11.25 (Fourth) (2002) (citation omitted) (hereinafter "NEWBERG").

"Although [class action] settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); *accord Black*, 2016 WL 9460662, at *5 ("To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." (internal quotation and citation omitted)). This determination is entrusted to the sound discretion of the district court. *Armstrong*, 616 F.2d at 313 (court's determination that settlement is fair, reasonable and adequate will only be reversed for a clear abuse of discretion).[8] When making this determination, the district court acts as a

---

[6] The parties do not believe a hearing is necessary prior to preliminary approval of the settlement. If the Court believes a hearing is necessary at this stage, the parties respectfully request that the Court consider conducting such a hearing by telephone.

[7] All cited unpublished orders and decisions are attached as Exhibit 2 to the Snodgrass Declaration, filed concurrently herewith.

[8] According to the Seventh Circuit, "[s]uch deference is due the judgment of the district judge because of his familiarity with the litigants, the history of the litigation and the merits of the substantive claims asserted." *Armstrong*, 616 F.2d at 315.

10

fiduciary, serving as a guardian of the rights of absent class members. *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002).

"By definition, a fair settlement need not satisfy every concern of the plaintiff Class, but may fall anywhere within a broad range of upper and lower limits. The essence of settlement is compromise . . . a solution somewhere between the two extremes." *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982). Courts "view the facts in the light most favorable to the settlement," *Armstrong*, 616 F.2d at 315,[9] and "are not to substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Great Neck*, 212 F.R.D. at 409.

Plaintiffs request that the Court take the first step in the settlement approval process and grant preliminary approval of the settlement.

### B. The Proposed Settlement Negotiated By The Parties Enjoys A Presumption Of Fairness.

At the outset, this settlement should be accorded a presumption of fairness. "A strong presumption of fairness attaches to a settlement agreement when it is a result of arms-length negotiations by competent counsel," as is the case here. *Great Neck*, 212 F.R.D. at 410 (presuming fairness where settlement was negotiated at arms-length over several telephone conferences and an in-person mediation session with an experienced mediator); *see also* 4 NEWBERG § 11.41 (noting that where the settlement is the product of arm's-length negotiations between capable counsel experienced in complex class action litigation, the court should begin its analysis with a presumption that the settlement is fair and should be approved). Courts give "significant weight" to, and are entitled to rely on, the judgment of experienced counsel in their evaluation of the merits of a class action settlement. *Isby*, 75 F.3d at 1200; *In re Lawnmower Engine Horsepower Marketing & Sales Practices*

---

[9] *See also In re Lawnmower Engine Horsepower Marketing & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1005 (E.D. Wis. 2010) (same).

11

*Litig.*, 733 F. Supp. 2d 997, 1007 (E.D. Wis. 2010). Additionally, the court does not have the responsibility of trying the case or ruling on the merits of the matters resolved by the agreement. Rather, the very purpose of compromise is to avoid the delay and expense of such a trial. *Isby*, 75 F.3d at 1196; *Armstrong*, 616 F.2d at 314 (in making its fairness determination, "the district court must refrain from reaching conclusions upon issues which have not been fully litigated"); *accord Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975), *cert. denied,* 423 U.S. 864 (1975) ("[N]either the trial court in approving the settlement nor this Court in reviewing the approval have the right or duty to reach any ultimate conclusions of the issues of fact and law which underlie the merits of the dispute.").

Here, the settlement is presumed fair and falls within the range of possible recovery. The settlement was reached exclusively through arm's-length bargaining, numerous written exchanges, telephone conferences and ultimately, a successful mediation presided over by Mr. Dixon. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (affirming approval of class settlement negotiated with the assistance of a third-party mediator after parties' legal positions were "extensively briefed and debated" before the district court). Attorneys for Plaintiffs and attorneys for Waupaca were present during the settlement negotiations. The parties extensively discussed the merits of the claims and defenses and the relief available to the Class. After reaching a settlement in principle, the parties turned their attention to documenting the settlement and exchanged multiple draft settlement agreements, forms of notice of the settlement, and claim forms.

In negotiating the settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of these Actions. In Plaintiffs' Counsel's view, the settlement provides substantial benefits to the Class, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. *See generally* Snodgrass Decl. ¶¶ 21-32. Waupaca and its

12

Case 1:08-cv-00488-WCG   Filed 08/20/18   Page 13 of 20   Document 725

counsel believe the settlement represents a fair and reasonable compromise of bona fide legal and factual disputes. Thus, the parties believe the settlement here is presumptively fair and worthy of preliminary approval.

>  C. **The Settlement Benefits Fall Within The Range Of Possible Recovery.**

In determining whether a settlement is fair, adequate and reasonable, courts consider such factors as: (1) the strength of the plaintiffs' case balanced against the settlement offer; (2) the defendant's ability to pay; (3) the burdens of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion; (6) the opinion of competent counsel; and (7) the stage of the proceedings and the amount of discovery that has been conducted. *Great Neck*, 212 F.R.D. at 409 (citing *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). These factors track the considerations that the Court must weigh for reviewing proposed collective action settlements under the FLSA—accordingly, preliminary approval under Rule 23 typically results in preliminary approval under FLSA. *See Black,* 2016 WL 9460662, at *5 (holding that "for the same reasons that the court has approved the parties' Rule 23 settlement, the court will also approve the parties' FLSA and prevailing wage settlement" given the similarity of the settlement approval-factors).

The preliminary approval determination is not an ultimate determination of whether the settlement is fair, reasonable and adequate, however. Rather, the Court must determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). This necessarily involves a preliminary determination of the settlement's fairness, reasonableness and adequacy. *See* MANUAL § 21.632. If the Court finds the settlement "within the range of possible approval," it should then order that the Class be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval. *See id.* at § 40.42 (model preliminary approval order); *Armstrong*, 616

13

F.2d at 314; *Hoffmaster v. Coating Place, Inc.*, No. 16-258, 2017 WL 945107, at *2 (W.D. Wis. Mar. 10, 2017) (preliminarily approving settlement of FLSA collective action and Rule 23 Wisconsin class action for donning and doffing as "within the range of possible approval" (citation omitted)).

Before reaching the proposed settlement here, the parties engaged in extensive factual investigation and thorough discovery over the course of a decade. This settlement is also informed by the decisions previously entered by the various district courts, including this Court, on numerous motions filed by the parties in these Actions, as well as the published decisions of the Seventh Circuit in *DeKeyser*. The settlement provides the Class with substantial relief, without the delay and expenses of the trial and post-trial proceedings. This is especially true here, given that the First Phase Trial in *DeKeyser* is just one of what could be several multi-phase trials. Indeed, the Settlement Agreement permits ready access to the Settlement Fund for Class Members, as opposed to the mere possibility of relief at some unknown time in the future. These considerations favor preliminary approval. *See Wong*, 773 F.3d at 864; *Black*, 2016 WL 9460662, at *5.

As one district court noted in another context, "[l]engthy litigation is hard on any party," but for certain classes of people it is even harder. *Rexam v. United Steel Workers of Am.*, No. 03-2998, 2007 WL 2746595, at *5 (D. Minn. Sept. 17, 2007) (considering needs of plaintiffs-retirees whose receipt of health-care benefits produced by settlement would be substantially delayed or curtailed entirely if litigation continued). Similar concerns apply here: the certainty of a monetary recovery, over 10 years after *DeKeyser* was first filed, means a lot to these Class Members. Additionally, none of the absent Class Members have to take days off of work, and use valuable vacation or leave time that would otherwise be spent with their families, to prepare for and appear for deposition or trial. And, given the expected turnover at the various plants and the transient nature of the Class over this decades-long litigation, if this case proceeds through trial and appeal, it will become more difficult to locate absent Class Members who might participate in any eventual recovery. In this respect, it is "'proper

14

to take the bird in the hand instead of a prospective flock in the bush.'" *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (internal citation omitted).

Under the Settlement Agreement, each Class Member who submits a timely, completed claim and release form is presumptively entitled to claim his or her share of a total settlement amount up to $1.7 million. There is no indication that Waupaca will be unable to pay, or incur undue hardship as a result of the settlement. Moreover, the settlement fund provides Class Members with substantial relief and reflects *inter alia* the reality that, even if Plaintiffs were successful at both the liability and damages phases of trial, Waupaca would seek a credit against any recovery based on its "double time" payments to employees for work on Sundays. Based on Plaintiffs' Counsel's review of Waupaca's wage and hour data, application of the weekly premium pay credit would reduce Plaintiffs' overall recovery by approximately 40%.

Further, if the parties did not agree to settle this case, a trial would be lengthy and expensive. As this Court well knows, the *DeKeyser* case involves complicated factual and legal issues, requiring significant expert testimony. That would likely be true in the other Actions as well. Notably, the costs associated with expert witnesses are not recoverable as either attorneys' fees or costs in FLSA collective actions. *See Hampton v. Am. Plumbing & Sewer, Inc.*, 95 F.3d 1154, at *1, 3 (7th Cir. 1996) (unpublished); *Bankston v. State of Illinois*, 60 F.3d 1249, 1257 (7th Cir. 1995). Accordingly, without settlement, the ongoing expenses associated with expert witness fees would continue to eat away at the Class' potential recovery in this case.

The Class would also face continued arguments by Waupaca that these Actions are not maintainable and cannot fairly be tried as class actions, and that some or all of the Plaintiffs are not entitled to be paid for their time engaging in clothes changing and showering activities because such activities will not substantially reduce risks to their health. Indeed, despite over 10 years of litigation, "many complex questions of law remain unanswered and would have to be resolved at or before

15

trial. Preparing the jury instructions alone would have been a time-consuming and unenviable task." *In re BankAmerica*, 210 F.R.D. at 702. Even if the Class obtained a judgment in their favor, an appeal would inevitably follow. "Given the prospects for a long and arduous trial and appeal process, settlement at this stage is beneficial to class members." *Great Neck,* 212 F.R.D. at 410. As evidenced by the vigor in which Plaintiffs' Counsel has prosecuted these Actions and the amount of time expended toward that end, Plaintiffs' Counsel strongly believes in the merits of their case. Nevertheless, Plaintiffs' Counsel recognizes the risk that their case could ultimately fail.

In addition, Plaintiffs' Counsel will petition the Court for service fees to the Named Plaintiffs, Class Representatives and other current and former Waupaca employees who have substantially assisted them, in advance of the final fairness hearing. Service awards to such individuals are routine, appropriate and serve public policy by encouraging individuals to come forward to protect the rights of others, while at the same time compensating them for their time, risk, effort, and inconvenience—including testifying at depositions, attending plant inspections and otherwise assisting Plaintiffs' Counsel—to represent the interests of absent Class Members. *See, e.g.*, *Berndt v. Cleary Bldg. Corp.*, No. 11-791, 2013 WL 6331344, at *2 (W.D. Wis. Dec. 5, 2013) (approving service awards ranging from $500-$5,000 to 14 employees in FLSA collective and multi-state wage and hour class action); *Great Neck*, 212 F.R.D. at 412 (incentive awards of $5,000); *Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15, 2006 WL 2191422, at *1 (S.D. Ill. July 31, 2006) (incentive awards of $3,000); *Follansbee v. Discover Financial Services, Inc.*, No. 99 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (incentive awards of $1,000).[10] More importantly, because the Named Plaintiffs and

---

[10] Such awards are routinely issued in donning and doffing litigation. *See also* Order of Final Approval at 2, *Helmert v. Butterball, LLC*, No. 08-0342 (E.D. Ark. Nov. 9, 2012) (approving $6,000 service payments each to ten named plaintiffs in donning and doffing collective and class action); Final Order of Approval of Settlement at 2, *Morales v. Farmland Foods, Inc.*, No. 08-0504 (D. Neb. Aug. 2, 2012) (approving service awards of $5,000 each to named plaintiffs in donning and doffing collective action); Order at ¶13, *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018 (D. Minn. Apr. 18, 2008) ($12,500 service awards to each of four class representatives in donning and doffing collective and class action).

16

Class Representatives here have obtained a settlement that will provide up to $1.7 million available to be claimed by members of the absent Class (exclusive of fees and costs), Plaintiffs' Counsel will contend that equity dictates that they receive service awards for the benefit that they have conferred.

IV. **THE COURT SHOULD APPROVE THE PROPOSED FORMS AND METHOD OF CLASS NOTICE**

A. **Notice By First Class Mail Is Sufficient When A Large Class Is Present.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See* MANUAL §§ 21.632, 21.633. In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members with enough information to make informed decisions concerning the settlement. *See Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985). The notice required under the FLSA is in accord. *See Black*, 2016 WL 9460662, at *6 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Notice by first class mail is practical when, as here, the names and addresses of most of the Class Members are known. *See* MANUAL §§ 21.311-21.312. Neither Rule 23 nor due process require receipt of actual notice by all class members, rather, notice should be mailed to the last known addresses of those who can be identified. NEWBERG § 8.04; *Hoffmaster*, 2017 WL 945107, at *3 (approving mailed notice to last known addresses of FLSA and WFLSA settlement class). If notices are returned as undeliverable, the Claims Administrator here will take additional steps to locate the intended recipient, including performing a standard skip trace to try to find a better address for subsequent mailing.

Because the identities of the individual Class Members are known by Waupaca, the parties propose notice through first class mail. The proposed notice and claim form are included in Exhibit 1. The notice will also be published on the class action website www.Waupacasettlement.com.

17

Under the circumstances present here, the proposed notice is consistent with the applicable law and this method avoids unnecessary expense that would otherwise diminish the amount of the money available to Class Members. The Court should find that the Class notice complies with the requirements imposed by Rule 23 and the FLSA, and approve the same.

### B. The Proposed Form Of Notice Adequately Informs Class Members Of Their Rights In This Litigation

The proposed notices included in Exhibit 1 clearly and accurately disclose the information material to a Class Member's decision whether to object to the settlement or to make a claim. The proposed notice provides information on the proposed Class; the terms and provisions of the Settlement Agreement; the relief the settlement will provide; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting claims or objections. The proposed notice advises Class Members that Plaintiffs' Counsel will apply to the Court for service awards for the Named Plaintiffs, Class Representatives and other current and former employees and in what amounts, and that they will seek an award of claims administration, service awards, attorneys' fees, costs and expenses in an amount not to exceed $3.5 million.

The proposed notice comprehensively informs Class Members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form of notice and direct that notice be given to the Class as proposed by the parties. *See Black*, 2016 WL 9460662, at *6 (approving mailing of collective and class notice describing the case and overtime wage issues in plain language and also detailing class members' options for objecting, opting-out or making a claim).

### V. CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the parties' proposed settlement and enter the proposed Order of Preliminary Approval that accompanies this motion.

Respectfully submitted,

Date: August 20, 2018                                **LARSON · KING, LLP**

By: *s/T. Joseph Snodgrass*
    T. Joseph Snodgrass (MN 231071)
    Kelly A. Lelo (MN 330838)
    30 E. Seventh Street, Suite 2800
    St. Paul, MN 55101
    Tel: (651) 312-6510
    jsnodgrass@larsonking.com
    klelo@larsonking.com

    J. Gordon Rudd, Jr. (MN 222082)
    ZIMMERMAN REED, L.L.P.
    1100 IDS Center
    80 South 8th Street
    Minneapolis, MN 55402
    Tel: (612) 341-0400
    gordon.rudd@zimmreed.com

    David W. Garrison (TN 24968)
    BARRETT JOHNSTON MARTIN &
        GARRISON, LLC
    Bank of America Plaza
    414 Union Street, Suite 900
    Nashville, TN 37219
    Tel: (615) 244-2202
    dgarrison@barrettjohnston.com

    Kyle F. Biesecker (IN 24095-49)
    BIESECKER DUTKANYCH &
        MACER, LLC
    411 Main Street
    Evansville, IN 47708
    Tel: (812) 424-1000
    kfb@bdlegal.com

    and

    J. Russ Bryant
    JACKSON, SHIELDS, YEISER & HOLT
    262 German Oak Drive
    Memphis, TN 38018
    Tel: (901) 754-8001
    rbryant@jsyc.com

    *Attorneys for Plaintiffs*

19

Case 1:08-cv-00488-WCG   Filed 08/20/18   Page 20 of 20   Document 725